## IN THE UNITED STATES DISTRICT COURT OF PENNSYLVANIA
### WESTERN DISTRICT

| | |
|---|---|
| ERIE COUNTY ENVIRONMENTAL COALITION,<br>501 E 38th Street, Erie, PA 16546, and<br><br>PENNENVIRONMENT, INC.,<br>1334 Walnut Street, 6th Floor, Philadelphia, PA 19107,<br><br>and<br><br>THE GAIA DEFENSE LEAGUE,<br>912 West 2nd Street, Erie, PA 16507,<br><br>Plaintiffs,<br><br>v.<br><br>MILLCREEK TOWNSHIP SEWER AUTHORITY,<br>3608 West 26th Street<br>Erie, PA 16506, and<br><br>MILLCREEK TOWNSHIP<br>3608 West 26th Street<br>Erie, PA 16506,<br><br>Defendants. | ) **Civ. Act. No: 05cv59**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **FOR INJUNCTIVE AND**<br>) **DECLARATORY**<br>) **RELIEF AND FOR**<br>) **CIVIL PENALTIES**<br>) *Electronic Filing*<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AMENDED COMPLAINT

Plaintiffs, Erie County Environmental Coalition (hereinafter referred to as "ECEC"), PennEnvironment, Inc. (hereinafter referred to as "PennEnvironment"), and The Gaia Defense League (hereinafter referred to as "GDL"), hereby complain of the Defendants, Millcreek Township Sewer Authority and Millcreek Township (hereinafter collectively referred to as "Millcreek"), as follows:

## Nature of this Action

1.    This is a citizen's action for declaratory and injunctive relief and for the imposition of civil penalties under the Federal Water Pollution Control Act, 33 U.S.C. § 1251 ("Clean Water Act" or "CWA").  The claim arises as a result of Defendants' discharges of pollutants without a National Pollution Discharge Elimination System permit (hereinafter referred to as "NPDES"), in violation of 33 U.S.C. § 1342, from its wastewater treatment facility at 3608 West 26th Street, Erie, Pennsylvania 16506. Specifically, these violations involve the Kearsarge Pumping Station, the 51st and Zimmerly bypass, the Larchmont and Beaver bypass, and the Church and Patton bypass, all of which are outfalls from Millcreek.  These discharges adversely affect and cause environmental harm to Walnut Creek and have injured and continue to injure the interests of the members of ECEC, PennEnvironment, and GDL.  These violations are of special concern to ECEC, PennEnvironment, and GDL because Millcreek's discharges have severely impacted Walnut Creek, as well as other important waterbodies in the watershed.

## Jurisdiction and Venue

2.    This court has subject matter jurisdiction over the claims enumerated in this Complaint pursuant to 33 U.S.C. §1365 (CWA) and 28 U.S.C. §1331 (federal question jurisdiction). The relief requested is authorized pursuant to the Clean Water Act, 33 U.S.C. §1319 and §1365 and 28 U.S.C. §2201 and §2202.

3.     In compliance with section 505(b) of the Clean Water Act, 33 U.S.C. §1365(b)(i)(a), Plaintiffs provided Mike Leavitt, the Acting Administrator of the United States Environmental Protection Agency ("USEPA") at that time, Donald S. Welsh, the Regional Administrator for USEPA Region III, Edward G. Rendell, Pennsylvania Governor, Kathleen McGinty, Secretary, Pennsylvania Department of Environmental Protection (DEP) and the Defendants with notice of intent to sue by letter dated December 9, 2004 ("the Notice"), sent by certified mail return receipt requested.  A copy of the Notice is attached to this Complaint as Exhibit A.

4.     In compliance with §1365(b)(1)(B), Plaintiffs have ensured that more than sixty days have passed since the Notice was served, and that Defendants' violations are ongoing. Defendants' discharges cause environmental harm to the receiving waters on an ongoing basis, and continue to be in violation of the Clean Water Act.  Neither the EPA nor the Pennsylvania DEP has commenced and diligently prosecuted a court action to redress these violations.

5.     The source of Defendants' discharges and violations is located in this District.  Therefore, venue in the United States District Court of Pennsylvania, Western District, Erie Division, is proper according to 33 U.S.C. §1365(c)(1) and 28 U.S.C. §1391(b)&(c).

**Identification of Parties and Standing**

6.     The Erie County Environmental Coalition ("ECEC") has been in existence for 21 years.  The purpose of the Coalition is to provide for member organizations and citizen members a united presence that will maintain and improve the quality of the environment and address related social justice concerns.  ECEC consists of over 2,000

individuals in various local struggles to protect the environmental quality of the region. Its members have used, continue to use and will in the future use Walnut Creek for various forms of recreation and aesthetic enjoyment.

7.      PennEnvironment, Inc. ("PennEnvironment") is a statewide citizen-based research and advocacy group committed to improving water and air quality and preserving open spaces in Pennsylvania. PennEnvironment has 13,000 citizen members throughout the Commonwealth. Its members have used, continue to use and will in the future use Walnut Creek for various forms of recreation and aesthetic enjoyment.

8.      The Gaia Defense League ("GDL") seeks to protect natural resources for citizens by utilizing the laws of the Commonwealth of Pennsylvania and the United States. The organization monitors the activities of the environmentally regulated community, and state and federal agencies. When necessary, the GDL will bring enforcement actions in the courts. Additionally, the organization will undertake and promote the education of the citizenry in the protection of natural resources. The organization also promotes other civic interests such as assisting local governments on community building and sustainable development.  Its members have used, continue to use and will in the future use Walnut Creek for various forms of recreation and aesthetic enjoyment.

9.      Defendants' discharges have degraded and continue to degrade the quality of Walnut Creek, and thereby adversely affect the recreational, aesthetic, environmental, property, and other interests of the members of ECEC, PennEnvironment, and GDL.  The interests of the members of ECEC, PennEnvironment, and GDL have been, and will continue to be, affected by the defendants' failure to comply with the CWA.

10.    The interests ECEC, PennEnvironment, and GDL seek to protect are germane to their organizational purposes.

11.    Neither the claims asserted, nor the relief requested, require the participation of the individual members of ECEC, PennEnvironment, and GDL.

12.    Millcreek continues to discharge significant amounts of raw sewage and/or inadequately treated sewage into Walnut Creek and its surrounding tributaries without a NPDES permit or a Pennsylvania water quality management permit.

13.    Defendants' violations of the CWA allow this court to impose injunctive relief and assess civil penalties pursuant to sections 301 and 309 of the Clean Water Act, 33 U.S.C. §1311 and §1319.

14.    Without the issuance of injunctive relief and the assessment of civil penalties, Defendants will continue to degrade the quality of Walnut Creek and its surrounding tributaries to the further injury of the plaintiffs, plaintiffs' members, and the environment.

15.    The issuance of injunctive relief and imposition of civil penalties is likely to encourage Defendants to discontinue its current violations and deter it from committing future ones and thereby redress the injuries caused by Defendants' violations.

16.    Defendant Millcreek Township Sewer Authority owns the sewage treatment facility and Defendant Millcreek Township manages and operates the sewage treatment facility. The sewage treatment facility's mailing address is 3608 West 26th Street, Erie, Pennsylvania 16506.

**Factual and Legal Background**

17.     In 1972, Congress enacted the Clean Water Act to "restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. §1251(a).  The CWA's goal is to attain water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water." 33 U.S.C. §1251(a)(2).

18.     Except as in compliance with a NPDES permit "the discharge of any pollutant by any person shall be unlawful." 33 U.S.C. §1311(a).

19.     Neither the Millcreek Township Sewer Authority nor Millcreek Township currently possess, or at any time in the past have possessed, a NPDES permit or a Pennsylvania Water Quality Management Permit.

20.     Therefore any discharge by the Defendants is a violation of the CWA.

21.     The Kearsarge Pumping Station discharges into Walnut Creek. The 51st and Zimmerly Pumping Station discharges into Walnut Creek. The Larchmont and Beaver Pumping Station discharges into Walnut Creek, and the Church and Patton Pumping Station discharges into Walnut Creek.

22.     Walnut Creek is a navigable water of the United States as defined in section 502(7) of the Clean Water Act, 33 U.S.C. §1362(7).

23.     The Kearsarge Pumping Station, the 51st and Zimmerly Pumping Station, the Larchmont and Beaver Pumping Station, and the Church and Patton Pumping Station are point sources as defined in section 502(14) of the Clean Water Act, 33 U.S.C. §1362(14).

24.    The Kearsarge Pumping Station, the 51st and Zimmerly Pumping Station, the Larchmont and Beaver Pumping Station and the Church and Patton Pumping Station discharge "pollutants" as defined in section 502(6) of the Clean Water Act, 33 U.S.C. §1362(6).

25.    Defendants are each considered a "person" as defined in section 502(5) of the Clean Water Act 33 U.S.C. §1362(5).

26.    ECEC, PennEnvironment, and GDL are considered "citizens" as defined in section 505(g) of the Clean Water Act, 33 U.S.C. §1362(g).

27.    In 1992, following numerous discharges of raw sewage into Walnut Creek, Millcreek Township and Millcreek Township Sewer Authority entered into a Consent Order and Agreement with the Commonwealth of Pennsylvania DEP, pursuant to which Millcreek Township and Millcreek Township Sewer Authority were required to install flow meters, implement various corrective measures, and submit written quarterly reports of their efforts to comply with the consent order.  Following the establishment of the 1992 Consent Order and Agreement, Millcreek Township and Millcreek Township Sewer Authority continued to violate the CWA and the Pennsylvania Clean Streams Law.

28.    In 2003, a second consent order was entered into by Millcreek Township and Millcreek Township Sewer Authority and the Commonwealth of Pennsylvania DEP, in regard to violations of the Pennsylvania Clean Streams Law.

29.    Defendants have delayed raising and spending money for improvements to its facility needed to prevent future discharges.

## COUNT I – VIOLATIONS OF THE CLEAN WATER ACT FOR DISCHARGES OF POLLUTANTS WITHOUT A NPDES PERMIT

30.     Plaintiffs re-allege and incorporate by reference paragraphs 1-29 above as if fully set forth herein.

31.     Violations of the terms of the CWA have occurred and continue to occur at the Millcreek Township Sewer Authority facility.  Quarterly reports and monthly notification letters submitted by Millcreek Township Sewer Authority, pursuant to a 2003 Consent Order and Agreement, demonstrate that Millcreek violated and continues to violate the CWA on a constant and/or seasonal basis at several discharge points including: the Kearsarge Pumping Station, the 51st and Zimmerly Pumping Station, the Larchmont and Beaver Pumping Station, and the Church and Patton Pumping Station.

32.     Raw and/or inadequately treated sewage contains regulated pollutants and/or parameters including biochemical oxygen demand, total suspended solids, oil and grease, fecal coliform, pH, volatiles (e.g. benzene), pesticides, and PCBs.

33.     At least each of the aforementioned individual pollutants multiplied by the number of discharges listed below represents the total number of violations under the Clean Water Act.

34.     Below is a summary of the actual discharges, that the plaintiffs have knowledge of, without a permit with regard to each site maintained by Millcreek as of September 17th, 2004:

a.     **Kearsarge Pumping Station**

| WHEN | Hours of discharge | Amount of discharge |
|---|---|---|
| April 5, 2005 | 2 hours and 40 minutes | 207,000 Gallons |
| January 12, 2005 | 6 hours | 455,605 Gallons |

| WHEN | Hours of discharge | Amount of discharge |
|---|---|---|
| December 31, 2004 | 11 hours and 15 minutes | 2,156,100 Gallons |
| December 23, 2004 | 4 hours and 15 minutes | 618,000 Gallons |
| September 17, 2004 | 13 hours | 1,914,000 gallons |
| September 9, 2004 | 22 hours | 5,044,000 gallons |
| September 10, 2004 | 10 minutes | 156,000 gallons |
| August 1, 2004 | 2.5 hours | unknown number of gallons |
| July 31, 2004 | 13 hours | 150,000-1,800,000 gallons |
| July 16, 2004 | 7 minutes | 10,500 gallons |
| May 21, 2004 | 1 hour 25 minutes | 75,000 gallons |
| March 20, 2004 | 3 hours 26 minutes | 231,000 gallons |
| November 28, 2003 | 7 minutes | 14,000 gallons |
| September 29, 2003 | 6 hours 55 minutes | 1,019,780 gallons |
| May 12, 2002 | 5 hours | unknown number of gallons |
| April 14, 2002 | 3 hours 30 minutes | unknown number of gallons |
| February 1, 2002 | 12 hours | 108,000 gallons |
| August 16, 2001 | 39 minutes | 10,000 gallons |
| November 7, 2000 | unknown time span | "minor discharge" |
| December 14, 1999 | 7 hours | 300,000-1,000,000 gallons |

b.    **51st, 52nd, and Zimmerly Street Pumping Stations**

| | | |
|---|---|---|
| September 9, 2004 | 15 hours | 378,000 gallons |
| July 31, 2004 | 2 hours 10 minutes | 58,500 gallons |
| September 29, 2003 | unknown time span | 108,000 gallons |
| April 14, 2002 | 1 hour | "did not exceed 24,999 gallons" |
| February 1, 2002 | 6 hours | unknown number of gallons |

| | | |
|---|---|---|
| May 12, 2002 | 4 hours | unknown number of gallons |
| August, 2000 | 3 hours 30 minutes | 25,000-74,999 gallons |

c.    **Larchmont and Beaver Street Pumping Stations**

| | | |
|---|---|---|
| September 9, 2004 | 1.5 hours | 306,000 gallons |
| April 14, 2002 | 1 hour | "did not exceed 24,999 gallons" |
| February 1, 2002 | 6 hours | "intermittent ~ 40,000 gallons" |

d.    **Church and Patton and Pershing Street Pumping Stations**

| | | |
|---|---|---|
| September 9, 2004 | 15 hours | 129,000 gallons |
| July 31, 2004 | 2 hours 10 minutes | 19,500 gallons |
| April 14, 2002 | 2 hours | "did not exceed 24,999 gallons" |

35.    The Clean Water Act authorizes civil penalties of up to twenty-seven thousand five hundred dollars ($27,500) per violation occurring prior to March 15, 2004 and thirty-two thousand five hundred ($32,500) for each violation occurring after March 15, 2004. 40 C.F.R. § 19.4.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this court grant the following relief:

a)        Declare, pursuant to 28 U.S.C. §2201, the Defendants are in violation of the Clean Water Act;

b)      Enjoin the Defendants from further violating the Clean Water Act;

c)      Order the Defendants to assess and mitigate the environmental injuries caused by their illegal discharges;

d)      Order the Defendants to obtain a publicly available independent assessment of the facility by a qualified individual or organization, agreed upon by all parties, to determine how the defendants can best comply with the requirements of the CWA;

e)      Order the Defendants to develop adequate standard operating procedures and an environmental management system to enable defendants to attain and maintain compliance;

f)      Assess significant civil penalties, in accordance with the CWA, against Defendants for each violation

g)      Award the plaintiffs the cost of litigation, including reasonable attorney's fees and expert witness expenses; and

h)      Grant such additional relief as justice may require.

Respectfully submitted,

s/ Jennifer A. Murphy
Jennifer A. Murphy, Esquire
PA90851
Mid-Atlantic Environmental Law Center
4601 Concord Pike, P.O. Box 7474
Wilmington, DE 19803-0474
(302) 477-2182
(302) 477-2032 (fax)
jennifer.a.murphy@law.widener.edu
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document by electronic means utilizing the Court's CM/ECF system that will serve notice of electronic filing to Marc J. Shaw and Robert Ernest Gandley of MacDonald, Illig, Jones & Britton LLP, Attorneys for Defendants, on this 15th day of November, 2005.

 s/ Jennifer A. Murphy
Jennifer A. Murphy, Esquire
PA90851
Mid-Atlantic Environmental Law Center
4601 Concord Pike, P.O. Box 7474
Wilmington, DE 19803-0474
(302) 477-2182
(302) 477-2032 (fax)
jennifer.a.murphy@law.widener.edu
Attorney for Plaintiffs