IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE COUNTY ENVIRONMENTAL    )
COALITION, PENNENVIRONMENT,    )
INC. and THE GAIA DEFENSE LEAGUE,    )
    Plaintiffs    )
        )
        v.    )    CIVIL ACTION NO. 05-59 ERIE
        )    ELECTRONICALLY FILED
MILLCREEK TOWNSHIP SEWER    )
AUTHORITY AND MILLCREEK    )
TOWNSHIP,    )
    Defendants    )

**BRIEF IN SUPPORT OF**
**MOTION FOR RECONSIDERATION**

Defendants MILLCREEK TOWNSHIP SEWER AUTHORITY and MILLCREEK TOWNSHIP, by their attorneys, MacDonald, Illig, Jones & Britton LLP, file this Brief in Support of Motion for Reconsideration and state the following in support thereof:

I.    <u>Introduction</u>

On January 31, 2006, Plaintiffs Erie County Environmental Coalition, PennEnvironment, Inc. and The Gaia Defense League (hereinafter "Plaintiffs") filed a Motion to Quash Subpoenas and for Protective Order. In their motion and memorandum in support thereof, the Plaintiffs objected to ten subpoenas issued to their ten identified standing witnesses, on the basis that "(1) the standing declarations alone are legally sufficient, and thus Defendants are not entitled to depose Plaintiffs standing witnesses; (2) the Defendants cannot make a showing of factual issues

with the standing declarations justifying depositions; and (3) the burden of this discovery so outweighs the benefit that Plaintiffs have good cause justifying entry of a protective order."

On February 1, 2006, one day later, this Honorable Court issued an Order Granting Plaintiffs' Motion to Quash Subpoenas and for Protective Order. The Court's Order quashes the subpoenas served by Defendants Millcreek Township Sewer Authority and Millcreek Township (hereinafter "Defendants") on the ten standing witnesses identified by Plaintiffs, declares that Plaintiffs already have produced affidavits that demonstrate standing, and states that further discovery on standing is inappropriate.

Defendants respectfully request that the Court reconsider its February 1, 2006 Order granting Plaintiffs' Motion, that the Court vacate the February 1, 2006 Order, and that the Court issue an Order reinstating the subpoenas and requiring Plaintiffs to provide dates for the requested depositions.

II.    Factual Background

This case involves a citizen suit filed by Plaintiffs in February 2005 under the Federal Clean Water Act against the Defendants relating to a bypass that exists at the Kearsarge pump station on the Defendants' sanitary sewer system. In October 2003, more than sixteen (16) months before Plaintiffs instituted suit, Defendants entered into a Consent Order and Agreement with the Pennsylvania Department of Environmental Protection ("Department") that required Defendants to pay civil penalties relating to the operation of the bypass and requires Defendants to remove the bypass by March 2007. The work that will enable Defendants to remove the bypass has been put out to bid, and construction on the work is expected to begin in the Summer

of 2006, with the bypass being removed no later than March 2007, all in accordance with the Consent Order and Agreement. Thus, Defendants already were under a Consent Order and Agreement with the Department that achieves the relief sought by Plaintiffs before Plaintiffs filed suit, and even before Plaintiffs served notice of suit.

Discovery in this case closes on February 28, 2006. After efforts at trying to settle the case failed, Defendants served their first set of discovery on September 23, 2005. In Defendants' First Set of Interrogatories to Plaintiffs, Defendant asked Plaintiffs to identify their standing witnesses and specifically describe the injuries claimed and all facts supporting those claims. In Plaintiffs' responses, submitted on October 27, 2005, Plaintiffs identified eight individuals and briefly described their injuries. Plaintiffs also indicated that they were in the process of completing standing declarations that would respond to Defendants' discovery and promised to produce them.

On January 11, 2006, in anticipation of the close of discovery on February 28, 2006, Defendants sent a letter to Plaintiffs requesting deposition dates in February 2006 for the eight witnesses they identified, but for whom they had yet to produce the promised declarations. (Plaintiffs' Motion, Ex. 10). In that letter, Defendants informed Plaintiffs that the eight depositions would likely take about two hours such that all eight could be completed within three days.

On January 17, 2006, Plaintiffs responded to Defendants request for deposition dates with supplemental discovery responses that included the long-promised standing declarations, but now from ten standing declarants (the eight witnesses identified previously and two previously unidentified additional witnesses). Plaintiffs also stated that they would consider any request for a deposition to be harassment because such depositions would be unnecessary and unduly

burdensome considering the minimal standing requirements in environmental cases. (Plaintiffs' Motion, Ex. 11).

On January 20, 2006, Defendants sent Plaintiffs a letter proposing specific dates and times for depositions of the now ten standing witnesses identified by Plaintiffs in an attempt to give Plaintiffs one more opportunity to cooperate. (Plaintiffs' Motion, Ex. 12). In this letter, Defendants stated that the dates and times were flexible and they expressed their willingness to forego deposing any standing witnesses that Plaintiffs would agree not to use as witnesses at trial. (Plaintiffs' Motion, Ex. 12). This offer was rejected by Plaintiffs in a letter dated January 24, 2006, in which they maintained their position that no depositions could be taken and stated that if Defendants found deficiencies in the declarations, Plaintiffs would supplement the declarations or accept interrogatories directed at the declarants. (Plaintiffs' Motion, Ex. 13).

On January 25, 2006, Defendants informed Plaintiffs that they would proceed to issue Notices of Depositions shortly. (Plaintiffs' Motion, Ex. 14). On January 25, 2006 Defendants prepared and began serving Subpoenas/Notices of Deposition on the ten standing witnesses.

On January 31, 2006, Plaintiffs filed their Motion to Quash Subpoenas and for Protective Order with this Court. On February 1, 2006, prior to receiving a response from Defendants, this Honorable Court issued an Order Granting Plaintiffs' Motion to Quash Subpoenas and for Protective Order. Defendants now seek reconsideration of this February 1, 2006 Order.

III.     Argument


PLAINTIFFS HAVE NOT MET THEIR BURDEN UNDER RULES 26(c) AND 45(c) OF THE FEDERAL RULES OF CIVIL PROCEDURE TO LIMIT DISCOVERY AND QUASH THE SUBPOENAS.


Generally, the party that is seeking discovery is allowed to choose the method and the court will not interfere without good reason. Fed.R.Civ.Pro. 26(b). "[Rule 26(c)(3)] gives the party, not the witness, the option of conducting a deposition by written questions." National Life Insurance Co. v. Hartford Accident & Indemnity Co., 615 F.2d 595, 599-600 (3rd Cir. 1980). "[T]here are strong reasons why a party will select to proceed by oral deposition rather than alternate means, most significantly the spontaneity of responses." National Life at 600. "[A]n oral deposition has the advantage of allowing cross-examination of an evasive, recalcitrant, or hostile witness. " 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure Civil 2d § 2039 at 512-13 (1994) (footnote omitted). For these reasons, the burden is on the party seeking an order preventing oral depositions to demonstrate that such depositions should not be held. In re: Subpoena Issued to Dennis Friedman, 350 F.3d 65, 69 fn.2 (2nd Cir. 2003). It is clear that Plaintiffs have not met their burden under either Rule 26(c) or Rule 45(c).

Rule 26(b)(2) provides that the Court can limit discovery if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into

account the needs of the case, the amount in controversy, the parties resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or upon a motion under Rule 26(c).

Rule 45 provides, in pertinent part, as follows:

Rule 45. Subpoena

(c) Protection of Persons Subject to Subpoenas.
…
(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
…
(iv) subjects a person to undue burden.

The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant. Jones v. Hirschfeld, 219 F.R.D. 71 (S.D.N.Y. 2003); Linder v. Department of Defense, 133 F.3d 17, 24 (Cir. 1998). Further, the mere assertion that compliance with a subpoena is burdensome and onerous is alone not sufficient without showing the manner and extent of the burden and the injurious consequences of compliance. Long Beach Federal Savings and Loan Ass'n v. Federal Home Loan Bank Bd., 189 F.Supp. 589, 604 (S.D.Cal. 1960), reversed on other grounds, 295 F.2d 403 (9th Cir. 1961). A party's representation that a witness does not have relevant information is not enough to demonstrate undue burden under Rule 45 or any other basis for prohibiting a deposition altogether. CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 993 (7th Cir. 2002).

The determination of a subpoena's reasonableness requires the court to balance the hardship on the party against whom discovery is sought if discovery is allowed, with the harm to the party seeking discovery if the requested discovery is denied. Deitchman v. E.R. Squibb and Sons, Inc., 740 F.2d 556, 560 (7th Cir. 1984). A trial court errs when it quashes a subpoena

based upon the potential hardship resulting from the discovery without considering its relevance and the other party's need for the information.  Heat and Control, Inc. v. Hester Industries, Inc., 785 F.2d 1017, 1024 (Fed.Cir. 1986).   Only if the evidence sought can have no possible bearing upon the issues should a court deny discovery by quashing a deposition.  Cash Today of Texas, Inc. v. Greenberg, 2002 WL 31414138, 1 (D.Del. 2002).  "When a court is confronted with a motion to quash, its duty is not to deny discovery altogether, but to reduce the demand to a reasonable level, considering the parties' concerns."  Heat and Control, 785 F.2d at 1025, citing Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556, 560 (7th Cir. 1984).

Although the proposed deponents appear to be only members of the Plaintiff organizations based on their declarations, Plaintiffs have taken the position that these witnesses are, in fact, parties.  Given Plaintiffs' position, the witnesses conceded party status in the action further raises the standard that Plaintiffs must meet to demonstrate that the proposed discovery creates an undue burden.  Wyoming v. United States Department of Agriculture, 208 F.R.D. 449, 452 (D.D.C. 2002).  Under any of these standards, Plaintiffs have failed to meet their burden.

First, Plaintiffs have not shown that the deposition testimony sought would be unreasonably cumulative or duplicative, or that it is available from another source that is more convenient, less burdensome and less expensive.   None of these witnesses have been deposed before in this case.  Further, it is the Plaintiffs who have chosen to identify ten standing witnesses.  Thus, if there is any cumulative evidence, it is the Plaintiffs that have created that situation.  Plaintiffs cannot preclude depositions of their witnesses by simply naming an unreasonable number of standing witnesses.  There also is no other source for the information the standing witnesses possess.

Second, Plaintiffs also have not met, and cannot meet, their burden to show that Defendants have had ample opportunity to obtain the discovery. Discovery is still open in this case, thereby entitling Defendants to continue to conduct discovery. Further, Plaintiffs only recently produced these declarations, despite the fact that all but one of these declarations were signed back in November 2005. Thus, Plaintiffs withheld the promised declarations for over two months before producing them on the eve of the close of discovery. The requested depositions were the only discovery sought from these witnesses, and depositions are clearly the best method to efficiently determine the credibility of the witnesses as well as the scope of the witnesses' knowledge regarding the discharges and any harms that are alleged to have arisen therefrom.

Lastly, Plaintiffs have not established that the burden of the discovery outweighs the benefits. Plaintiffs first argue that the depositions of these witnesses would be burdensome because most of the witnesses have jobs and would have to take time off to attend the depositions. If this argument would be sufficient to defeat an effort to depose a plaintiff witness, then virtually all employed plaintiffs would be able to avoid a deposition. Further, Defendants offered to work with each deponent to schedule the depositions at a convenient time; however, Plaintiffs refused those overtures. Even after the subpoenas were issued, Defendants continued to offer to work with the deponents on scheduling. Again, Plaintiffs rejected such overtures. Plaintiffs should not be able to now complain that the depositions were scheduled at an inconvenient time.

Plaintiffs next argue that four days of depositions of ten witnesses is unduly burdensome because it will consume four days of attorney time.[1] This argument should fail as a matter of law

---

[1] It should be noted that the initial proposed deposition schedule was only 3 days until Plaintiffs added two additional standing witness, thereby increasing the deposition time to four days.

given that Rule 30 of the Rules of Civil Procedure allow ten depositions up to seven hours each, which totals seventy (70) hours of depositions. This essentially amounts to ten days of depositions allowed by Rule. In sharp contrast, Defendants have only estimated twenty (20) to twenty-four (24) hours of depositions over a period of four days.[2] Certainly, four days of depositions covering the nine "party" witnesses identified by Plaintiffs, which are the only depositions in the case to date, is not unduly burdensome. The reality is that Plaintiffs' counsel, who is located in Wilmington, Delaware, and who chose not to personally attend the Initial Case Management Conference in this case, does not want to travel to Erie to attend four days of depositions in February.

In summary, Plaintiffs have not met their burden to limit discovery and quash the subpoenas where there has been no prior opportunity for Defendants to conduct discovery concerning the allegations made by these individuals in their declarations. There is no undue burden in being subjected to an estimated two hours of depositions in Erie, Pennsylvania, which is within a few miles of each party witnesses' home, and where the Court could not balance the burden or expense of the depositions to the need for the information because Defendants were never provided an opportunity to inform the Court of the significant need for the information that is uniquely within the knowledge of these witnesses.

Plaintiffs assert that Defendants must establish a lack of credibility of Plaintiffs' standing witnesses before being allowed to depose them. Although Defendants disagree that they must meet this type of burden before they should be allowed to depose these witnesses, there are numerous statements made throughout the declarations that raise credibility issues. For example,

---

[2]    During this process, one of the witnesses apparently changed her mind about participating as a witness. Thus, the estimated hours of deposition is only eighteen (18) to twenty-two (22) hours over four (4) days.

in her declaration, Audrey Weber suggests, among other things, that the alleged discharge from the bypass caused or contributed to her son's polio. (Plaintiffs' Motion, Ex. 9 at ¶ 7).  Certainly, Defendants should be able to explore that suggestion by deposition, which could impact her credibility.  Another example is Jesse Davis, who in his declaration suggests that the alleged discharge from the bypass caused beach closings this past Summer.  (Plaintiffs' Motion, Ex. 6 at ¶ 8).  Again, Defendants should be able to explore that suggestion by deposition, which could impact his credibility.  There are similar such statements in all of the declarations submitted by Plaintiffs, many of which also go beyond that needed to simply establish standing.  Defendants should be entitled to explore those statements and any other evidence these witnesses posses regarding Plaintiffs' claims and the relief Plaintiffs seek.  In fact, Plaintiffs' mere identification of these persons as witnesses in this case should be sufficient to justify their depositions.

The real crux of Plaintiffs' argument was that, as a general proposition, depositions of standing witnesses should not be allowed where those witnesses already have submitted affidavits.  To support this proposition, Plaintiffs primarily rely upon two cases.  Each of the cases cited by Plaintiffs in their Memorandum is readily distinguished from the facts of this case and neither supports such a general proposition.  In fact, each of the cases recognize a plaintiff's burden of establishing standing throughout the proceeding and the need for a defendant to be able to challenge standing.

Plaintiffs rely on <u>Piney Run Preservation Association v. County Commissioners of Carroll County, Md</u>, 50 F.Supp.2d 443 (D.Md. 1999), <u>vacated on other grounds</u>, 268 F.3d 255 (4th Cir. 2001), for the proposition that the "[d]istrict court could rely upon plaintiff's affidavit to establish standing for Citizen suit under Clean Water Act; deposition was unnecessary absent evidence from defendant that affidavit was not credible".

First, it is critical to realize that the Court in <u>Piney Run</u> did not address the propriety of deposing standing witnesses generally; it only addressed whether it should delay deciding a motion for summary judgment on the issue of standing until the defendant had an opportunity to depose the standing witness. <u>Piney Run</u>, 50 F.Supp.2d at 445-446. Second, the need to depose a standing witness solely on the issue of standing was minimized or eliminated in <u>Piney Run</u> by the fact that the witness already had been granted standing by the state courts in protracted state litigation on the same issue. <u>Piney Run</u>, 50 F.Supp.2d at 444. Given the unique procedural history of the <u>Piney Run</u> case, and given that the Court was presented with a motion for summary judgment, the Court was not willing to revisit the standing granted to declarant in the state action unless the defendant could provide evidence that the declarant's affidavit was not credible. <u>Piney Run</u>, 50 F.Supp.2d at 446.

Thus, contrary to Plaintiff's argument, the <u>Piney Run</u> case does not create or impose upon all defendants in environmental cases the initial hurdle or burden to produce evidence raising into question the witnesses' credibility before even being able to depose the witnesses. Nor is the Court in this case presented with a scenario under which Plaintiffs' standing witnesses have been found to have standing by another court.

Plaintiffs have also cited <u>Southwest Center for Biological Diversity v. Clark</u>, 90 F.Supp.2d 1300 (D.N.M. 1999), for the proposition that "diversion for discovery could reach only to issues of standing and Defendants have not provided any indication that with or without discovery, it can create a factual dispute which would be material in the final analysis". The <u>Southwest Center</u> case does not stand from this proposition. First, contrary to Plaintiffs' summary, it is critical to note that it was not the defendant seeking discovery on the issue of standing in the <u>Southwest Center</u> case, rather it was an intervenor in the action whose

-11-

participation had been limited by the court to particular matters.  Id. at 1302.  In fact, the defendant in Southwest Center was not challenging the standing of the plaintiffs.  Id.  The court even noted the unusual posture of the case by stating "I find the situation of this case unique. Both in procedure and in substance, the issues presented here differ from what precedes them in other environmental cases."  Id.  Second, the Court in Southwest Center found that what the intervenor sought to prove factually through discovery (i.e. that due to their size and habitat, plaintiffs could not actually see the endangered minnows for which they sought Endangered Species Act protection, therefore they could not demonstrate injury or redressability), even if proven, would not eliminate plaintiffs' standing.  Id. at 1306-1307.  Third, the Southwest Center case is unique in that the holding and remedy sought by the plaintiffs was dependent only on facts that were uncontested by the defendant, thus there was no need for the discovery that would ordinarily be allowed prior to ruling on the plaintiffs' summary judgment motion.  Id. at 1311, citing Fed. R. Civ. Proc. 56.

 In fact, the most relevant portion of the Southwest Center opinion is the Court's discussion of standing generally.  The Court observed that "the question of standing is all the more critical and complex 'when … a plaintiff's asserted injury arises from government's allegedly unlawful regulation (or lack of regulation) of someone else  Southwest Center for Biological Diversity v. Clark, 90 F.Supp.2d 1300, 1302 (D.N.M. 1999), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 562, 112 S.Ct. 2130 (1992).  The Southwest Center Court also cited Defenders of Wildlife for the principle that "the issue of standing in an environmental action demands early and persistent examination." Southwest Center for Biological Diversity v. Clark, 90 F.Supp.2d at 1302.  Thus, properly read, the Southwest Center opinion supports the

notion that discovery (by deposition or other means) is a proper mechanism for the defendant to determine the credibility of a plaintiff's standing witnesses.

It is precisely the need for early and persistent examination of standing that is completely ignored by the Plaintiffs' Memorandum. None of the other cases cited by Plaintiffs support the Plaintiffs' broader contention that once affidavits have been submitted by standing witnesses, there is no need to depose those individuals. Rather, the cases cited by the Plaintiffs stand for the proposition that affidavits and declarations are the type of evidence typically relied upon to demonstrate standing in a citizen suit at the motion to dismiss or summary judgment stage of the action. The cases do not support the notion that depositions of standing witnesses are improper if they already have provided declarations to the defendant.

In Lujan v. National Wildlife Federation, 497 U.S. 871, 110 S.Ct. 3177 (1990), the Supreme Court granted summary judgment on the issue of standing to the defendants in the citizen suit on the basis that "the affidavits submitted did not set forth specific facts showing that there was a genuine issue for trial." Id. at 888, quoting Fed. R. Civ. Pro. 56(e). The court observed that the point of Rule 56(e) was to "enable a party who believes there is no genuine issue as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." Lujan v. National Wildlife Federation, 497 U.S. at 888-889. Thus, there is no need for the defendants to incur the cost and effort of further discovery if the plaintiffs are unable to even allege facts sufficient to demonstrate standing.

In Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 108 S.Ct. 376 (1987), the Supreme Court stated that allegations of fact (and not necessarily proof) in the complaint or supporting affidavits are sufficient to demonstrate standing such that the Court

has subject matter jurisdiction, but, the Court went on to state "[t]his is not to say, however, that such allegations may not be challenged."  Id. at 65-66 citing United States v. Students Challenging Regulatory Action Procedures, SCRAP, 412 U.S. 669, 689, 93 S.Ct. 2405, 2417 (1973).

In SCRAP, the Supreme Court stated that if the appellants needed additional information to challenge the appellees' standing, they "could have moved for a more definite statement, see 12(e), Fed. R. Civ. Proc., and certainly normal civil discovery devices were available to the [appellant]." U.S. v. SCRAP, 412 U.S. at 689, fn. 15.  In Gwaltney, the Supreme Court likewise stated that if the defendant chooses not to challenge the truthfulness of the plaintiffs' allegations of standing and file a motion for summary judgment on standing, then "the case proceeds to trial on the merits, where the plaintiff must prove the allegations in order to prevail." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. at 66.  Thus, neither of these cases support Plaintiffs' attempt here to limit the discovery of their standing witnesses.

Lastly, in American Canoe Association, Inc. v. Murphy Farms, Inc., 326 F.3d 505, (4th Cir. 2003), the United States Court of Appeals for the Fourth Circuit held that it was an abuse of discretion for the district court to deny the defendants' request for reconsideration on the issue of standing where further discovery could impact the determination of whether the plaintiffs continued to demonstrate standing:

> [W]e cannot help but conclude that the district court abused its' discretion in denying the [defendant's] reconsideration request. [Plaintiffs'] motion for a judgment on standing came a mere three months after it initiated suit.  The district court's decision on the issue was also rendered early in the litigation, before there had been much factual development, discovery, or opportunity for the defendants to consult experts.  While a ruling on the standing issue at that time may have served beneficial purposes, such as isolating the real issues in the case and allowing the plaintiffs to test the sufficiency of their own evidence, it

should not be given the preclusive effect of a decision rendered after full trial, or even a decision rendered after full discovery.

American Canoe, 326 F.3d at 516. Thus, it does not support Plaintiffs' position; rather, it supports Defendants' position by recognizing the need for discovery on standing issues.

The scheduled depositions do not present an undue burden on the declarants and are, in fact, the exact type of discovery that must be allowed by the Court for the Defendants to fully explore the Plaintiffs' credibility and the accuracy of their factual allegations such that their ability to demonstrate standing can be fully examined. Not only do the depositions held near the declarants' homes present a minimal burden, the standard for an undue burden is much higher for parties than for non-party witnesses. Since Plaintiffs contend these witnesses are parties, Plaintiffs must meet that higher burden and have failed to do so. Wyoming v. United States Department of Agriculture, 208 F.R.D. 449, 452 (D.D.C. 2002).

IV.    Conclusion

In conclusion, Defendants Millcreek Township Sewer Authority and Millcreek Township respectfully request that this Honorable Court reconsider its February 1, 2006 Order, that it vacate the Order dated February 1, 2006, and that it order Plaintiffs' standing witnesses to appear at depositions prior to February 28, 2006.

Respectfully submitted,


_____s / Mark J. Shaw_____

Mark J. Shaw
PA50763
Robert E. Gandley
PA82524
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7607
(814) 454-4647 (Facsimile)
mshaw@mijb.com

Attorneys for Defendants
  Millcreek Township Sewer Authority
  and Millcreek Township

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that I filed the foregoing Brief in Support of Motion for Reconsideration by electronic means utilizing the Court's CM/ECF system that will serve notice of electronic filing to the following attorney of record for Plaintiffs Erie County Environmental Coalition, PennEnvironment, Inc. and The GAIA Defense League, this 10th day of February, 2006:

               Jennifer A. Murphy, Esq.
               Mid-Atlantic Environmental Law Center
               4601 Concord Pike, P.O. Box 7474
               Wilmington, DE 19803-0474

                                 s / Mark J. Shaw
                                   Mark J. Shaw