RECD 3-3-05

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

WESTERN ——— DISTRICT OF ——— PENNSYLVANIA

Erie County Environmental Coalition
PennEnvironment, Inc.
The Gaia Defense League

### SUMMONS IN A CIVIL CASE

V.

CASE NUMBER: 05-59E

Millcreek Township Sewer Authority
Millcreek Township

TO: (Name and address of defendant)

Millcreek Township
3608 West 26th Street
Erie, PA  16506

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Jennifer A. Murphy, Esq.
Michael D. Fiorentino, Esq.
Mid-Atlantic Environmental Law Center
4601 Concord Pike
Wilmington, DE  19803

an answer to the complaint which is herewith served upon you, within ____**twenty (20)**____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_R.V. Barth, Jr._

CLERK .

DATE  2-14-05

_Nicole M Kregel_

(BY) DEPUTY CLERK

**ATTACHMENT IV**

☐ AO 440  (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me[1] | DATE | |
| NAME OF SERVER *(PRINT)* | TITLE | |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant.  Place where _____

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were _____

☐  Returned _____

☐  Other (specify): _____

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |

| DECLARATION OF SERVER |
|---|

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                          Date                    *Signature of Server*

                                                   _____
                                                   *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Westlaw.

56 FR 41687-01                                                    Page 1

56 FR 41687-01, 1991 WL 160580 (F.R.)

**(Cite as: 56 FR 41687)**

NOTICES

ENVIRONMENTAL PROTECTION AGENCY

[FRL-3987-1]

Pennsylvania's General Permits Program Approval

Thursday, August 22, 1991

**\*41687** AGENCY: Environmental Protection Agency.

ACTION: Notice of approval of the **National Pollutant Discharge** Elimination System
General Permits Program of the **Commonwealth** of **Pennsylvania**.

SUMMARY: On June 26, 1991, a revised Memorandum of Agreement between the
Environmental Protection Agency (EPA) and the **Commonwealth** of **Pennsylvania** was
approved to include provisions for the Commonwealth's **National Pollutant Discharge**
Elimination System (NPDES) General Permits Program.   This action authorized the
**Commonwealth** of **Pennsylvania** to issue general permits in lieu of individual NPDES
permits.   The approval was made under 40 CFR 123.62 which sets forth procedures
for revision of a State's NPDES program.

FOR FURTHER INFORMATION CONTACT: Racine Leonard at (215) 597-7329.

SUPPLEMENTARY INFORMATION:

I. Background

 EPA regulations at 40 CFR 122.28 provide for the issuance of general permits to
regulate discharges of wastewater which result from substantially similar
operations, are of the same type wastes, require similar monitoring, and are more
appropriately controlled under a general permit rather than by individual permits.

 Pennsylvania was authorized to administer the NPDES program in June, 1978.  Their
program, as previously approved, did not include provisions for the issuance of
general permits.   There are several categories which could appropriately be
regulated by general permits.   For this reason, Pennsylvania has requested a
revision of their NPDES program to provide for issuance of general permits.   The
categories which have been proposed for coverage under the general permits program
include:  Non-contact cooling water, heat pump discharges, and small fish hatchery
operation.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**App. 3**

56 FR 41687-01                                                              Page 2

56 FR 41687-01, 1991 WL 160580 (F.R.)

**(Cite as: 56 FR 41687)**


 Each general permit will be subject to EPA review as provided by 40 CFR 123.44.
Public notice and opportunity to request a hearing is also provided for each
general permit.

II. Discussion

 Pennsylvania's general permits submission consists of an Attorney General's
statement, a copy of the State statutes providing authority to carry out the
program, a copy of the revised Memorandum of Agreement (MOA), and a program
description.   Based upon this information and Pennsylvania's experience in
administering an approved NPDES program, EPA has concluded that the State will
have the necessary procedures and resources to administer the general permits
program.

 Under 40 CFR 123.62, NPDES program revisions are either substantial  (requiring
publication of proposed program approval in the Federal Register for public
comment) or non-substantial (where approval may be granted by letter from EPA to
the State).   EPA has determined that assumption by Pennsylvania of general permit
authority is a non-substantial revision of its NPDES program. EPA has generally
viewed approval of such authority as non-substantial because it does not alter the
substantive obligations of any discharger under the State program, but merely
simplifies the procedures by which permits are issued to a number of point
sources.   Moreover, under the approved state program, the state retains authority
to issue individual permits where appropriate, and any person may request the
state to issue an individual permit to a discharger eligible for general permit
coverage.   While not required under § 123.62, EPA is publishing notice of this
approval action to keep the public informed of the status of its general permit
program approvals.

III. Federal Register Notice of Approval of State NPDES Programs or Modifications

 EPA will provide Federal Register notice of any action by the Agency approving or
modifying a State NPDES program.   The following table will provide the public
with an up-to-date list of the status of NPDES permitting authority throughout the
country.   Today's Federal Register notice is to announce the approval of
Pennsylvania's authority to issue general permits.


                      State NPDES Program Status

| | Approved state NPDES permit program | Approved to regulate federal facilities | Approved state pretreatment program | Approved state general permits program |
|---|---|---|---|---|
| Alabama .............. | 10/19/79 ...... | 10/19/79 ........ | 10/19/79 .... | 06/26/91 |
| Arkansas ............. | 11/01/86 ...... | 11/01/86 ........ | 11/01/86 .... | 11/01/86 |

            © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**App. 4**

56 FR 41687-01                                                          Page 3

56 FR 41687-01, 1991 WL 160580 (F.R.)

**(Cite as: 56 FR 41687)**

| State | | | | |
|---|---|---|---|---|
| California | 05/14/73 | 05/05/78 | 09/22/89 | 09/22/89 |
| Colorado | 03/27/75 | ------------ | -------------- | 03/04/83 |
| Connecticut | 09/26/73 | 01/09/89 | 06/03/81 | ----------- |
| Delaware | 04/01/74 | ------------ | -------------- | ----------- |
| Georgia | 06/28/74 | 12/08/80 | 03/12/81 | 01/28/91 |
| Hawaii | 11/28/74 | 06/01/79 | 08/12/83 | ----------- |
| Illinois | 10/23/77 | 09/20/79 | -------------- | 01/04/84 |
| Indiana | 01/01/75 | 12/09/78 | -------------- | 04/03/91 |
| Iowa | 08/10/78 | 08/10/78 | 06/03/81 | ----------- |
| Kansas | 06/28/74 | 08/28/85 | -------------- | ----------- |
| Kentucky | 09/30/83 | 09/30/83 | 09/30/83 | 09/30/83 |
| Maryland | 09/05/74 | 11/10/87 | 09/30/85 | ----------- |
| Michigan | 10/17/73 | 12/09/78 | 06/07/83 | ----------- |
| Minnesota | 06/30/74 | 12/09/78 | 07/16/79 | 12/15/87 |
| Mississippi | 05/01/74 | 01/28/83 | 05/13/82 | ----------- |
| Missouri | 10/30/74 | 06/26/79 | 06/03/81 | 12/12/85 |
| Montana | 06/10/74 | 06/23/81 | -------------- | 04/29/83 |
| Nebraska | 06/12/74 | 11/02/79 | 09/07/84 | 07/20/89 |
| Nevada | 09/19/75 | 08/31/78 | -------------- | ----------- |
| New Jersey | 04/13/82 | 04/13/82 | 04/13/82 | 04/13/82 |
| New York | 10/28/75 | 06/13/80 | -------------- | ----------- |
| North Carolina | 10/19/75 | 09/28/84 | 06/14/82 | ----------- |
| North Dakota | 06/13/75 | 01/22/90 | -------------- | 01/22/90 |
| Ohio | 03/11/74 | 01/28/83 | 07/27/83 | ----------- |
| Oregon | 09/26/73 | 03/02/79 | 03/12/81 | 02/23/82 |
| Pennsylvania | 06/30/78 | 06/30/78 | -------------- | 08/02/91 |
| Rhode Island | 09/17/84 | 09/17/84 | 09/17/84 | 09/17/84 |
| South Carolina | 06/10/75 | 09/26/80 | 04/09/82 | ----------- |
| Tennessee | 12/28/77 | 09/30/86 | 08/10/83 | 04/18/91 |
| Utah | 07/07/87 | 07/07/87 | 07/07/87 | 07/07/87 |
| Vermont | 03/11/74 | ------------ | 03/16/82 | ----------- |
| Virgin Islands | 06/30/76 | ------------ | -------------- | ----------- |
| Virginia | 03/31/75 | 02/09/82 | 04/14/89 | 05/20/91 |
| Washington | 11/14/73 | ------------ | 09/30/86 | 09/26/89 |
| West Virginia | 05/10/82 | 05/10/82 | 05/10/82 | 05/10/82 |
| Wisconsin | 02/04/74 | 11/26/79 | 12/24/80 | 12/19/86 |
| Wyoming | 01/30/75 | 05/18/81 | -------------- | ----------- |
| Total | 39 | 34 | 27 | 23 |

Number of Complete NPDES Programs (Federal Facilities, Pretreatment, General
  Permits)=15


**\*41688** IV. Review under Executive Order 12291 and the Regulatory Flexibility Act

  The Office of Management and Budget has exempted this rule from the requirements
of Executive Order 12291 pursuant to section 8(b) of that Order.  Under the
Regulatory Flexibility Act, EPA is required to prepare a Regulatory Flexibility

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**App. 5**

56 FR 41687-01                                                                                    Page 4

56 FR 41687-01, 1991 WL 160580 (F.R.)

**(Cite as: 56 FR 41687)**


Analysis for all rules which may have a significant impact on a number of small entities.

 Pursuant to section 605(d) of the Regulatory Flexibility Act (5 U.S.C. 601 et seq.), I certify that this State General Permits Program will not have a significant impact on a substantial number of small entities.   Approval of the Pennsylvania NPDES State General Permits Program merely provides a simplified administrative process.

 Dated:  August 8, 1991.

Alvin R. Morris,

Acting Regional Administrator.

[FR Doc. 91-20118 Filed 8-21-91;  8:45 am]

BILLING CODE 6560-50-M

 56 FR 41687-01, 1991 WL 160580 (F.R.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**App. 6**

 Pennsylvania Department of Environmental Protection

**230 Chestnut Street**
**Meadville, PA  16335-3481**
**OCT 3 1 2001**

**Northwest Regional Office**

814-332-6942
Fax:  814-332-6121

David J. Sterrett, P.E., Chairman          A          Douglas Mitchell
Erie Sewer Authority                       N          Assistant Director of Public Works
120 West 10th Street                       D          City of Erie
Erie, PA  16501                                       c/o Knox, McLaughlin, Gornall & Sennett, P.E.
                                                      120 West 10th Street
                                                      Erie, PA  16501-1461

Re:   Sewage
      Erie Sewer Authority and the City of Erie
      NPDES Permit No. PA0026301
      City of Erie, Erie County

Dear Messrs. Sterrett and Mitchell:

Your permit is enclosed.  Read the permit and the special conditions carefully.

A Discharge Monitoring Report (DMR) and Supplemental Reporting Forms are included.  The master DMR will be prepared and distributed by the U.S. Environmental Protection Agency (EPA) in the near future.  Use the enclosed DMR Form until you receive a master from EPA.  The reporting forms must be submitted to the Department and the EPA Regional Office as instructed in the permit and the enclosed Instruction Sheet.

Also attached for your use is a form titled "Combined Sewer Overflow Discharge Monitoring Report."  In accordance with Page 24 of your permit, the monitoring data for your combined sewers shall be recorded on this form, and submitted monthly with the DMR for your treatment plant.

We note the recent developments and planned shutdown of the International Paper (IP) facility in the near future.  As you probably know, this change will likely impact this NPDES Permit and its conditions in many ways.  We thought it best to finalize Erie's NPDES Permit now in its current form, as it is unknown how long this shutdown will take, the degree of changes involved, or whether it will occur at all.  We verbally received the City's concurrence on this issue.  Nevertheless, please note the City is obligated by page 8 of the NPDES to notify the Department of "Planned Changes" to the POTW that may affect the permit.  This may require the submittal of an NPDES Permit Amendment application once the impact of the IP changes on the City's NPDES Permit are understood.  Please contact this office with any questions on this issue.

3600-PM-WQ0003 8/95

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF ENVIRONMENTAL PROTECTION
## WATER MANAGEMENT PROGRAM

## AUTHORIZATION TO DISCHARGE UNDER THE
## NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM

### NPDES PERMIT NO. PA0026301

In compliance with the provisions of the Clean Water Act, 33 U.S.C. Section 1251 et seq. (the "Act") and Pennsylvania's Clean Streams Law, as amended, 35 P.S. Section 691.1 et seq.,

**Erie Sewer Authority and the City of Erie**

is authorized to discharge from a facility located at   68 Port Access Road
Erie, PA  16507-2202

Municipality:   **Erie**
County:   **Erie**

to receiving waters named   **Lake Erie (Outer Erie Harbor and Presque Isle Bay) for Outfalls 001, 001A, 043**
**Mill Creek for Outfalls 002-005, 007-008, 014, 017, 020, 024, 025A-030, 901 & 902**
**Garrison Run for Outfalls 903-908**

in accordance with effluent limitations, monitoring requirements and other conditions set forth in Parts A, B, and C hereof.

### THIS PERMIT SHALL EXPIRE AT MIDNIGHT, OCT 3 0 2006 .

The authority granted by this permit is subject to the following further qualifications:

1.   If there is a conflict between the application, its supporting documents and/or amendments and the terms and conditions of this permit, the terms and conditions shall apply.

2.   Failure to comply with the terms, conditions, or effluent limitations of this permit is grounds for enforcement action; for permit termination, revocation and reissuance, or modification; or for denial of a permit renewal application.

3.   Complete application for renewal of this permit, or notification of intent to cease discharging by the expiration date, must be submitted to the Department at least 180 days prior to the above expiration date (unless permission has been granted by the Department for submission at a later date), using the appropriate NPDES permit application form.

   In the event that a timely and complete application for renewal has been submitted and the Department is unable, through no fault of the permittee, to reissue the permit before the above expiration date, the terms and conditions of this permit, including submission of the Discharge Monitoring Reports, will be automatically continued and will remain fully effective and enforceable pending the grant or denial of the application for permit renewal.

4.   This NPDES permit does not constitute authorization to construct or make modifications to wastewater treatment facilities necessary to meet the terms and conditions of this permit.

**DATE PERMIT ISSUED** ___OCT 3 1 2001___

**ISSUED BY** _____

**DATE PERMIT AMENDMENT ISSUED**_____

TITLE:   Jon E. Lester
Acting Environmental Program Mgr.
Northwest Regional Office

**DATE EFFECTIVE** ___NOV 0 1 2001___

**App. 8**

# DISCHARGE REQUIREMENTS FOR PUBLICLY OWNED TREATMENT WORKS (POTWs)

PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING, AND REPORTING REQUIREMENTS

1. For Outfall 001 (Long submerged outfall)  Latitude 42° 09' 38"  Longitude 80° 02' 54"   River Mile Index _____  Stream Code Lake Erie
   For Outfall 001A (Short submerged outfall)  Latitude 42° 09' 13"  Longitude 80° 03' 39"   River Mile Index _____  Stream Code Lake Erie

   a. The permittee is authorized to discharge during the period from ___date of issuance___ to ___date of expiration___

   b. Based on the anticipated wastewater characteristics and flows described in the permit application and its supporting documents and/or amendments,
      the following effluent limitations and monitoring requirements apply (Also see additional requirements, Footnotes and Supplemental Information on
      page 3)

| Discharge Parameter | EFFLUENT LIMITATIONS Mass Units (lbs/day)[1] | | | Concentrations (mg/l) | | | | MONITORING REQUIREMENTS | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Average Monthly | Average Weekly | Minimum | Average Monthly | Average Weekly | Instantaneous Maximum[2] | | Minimum Measurement Frequency | Required Sample Type | 24 Hr Report Under Part A.3.c.(4) |
| Flow (MGD) | XX | | | | | | | Continuous | Meas. Flow | |
| Total Residual Chlorine (Final)* | | | | 0.5 | | 1.6 | | 3/Day | Grab** | |
| Fecal Coliform | | | | (Refer to Pg. 3 Paragraph c) | | | | Daily | Grab** | |

Samples taken in compliance with the monitoring requirements specified above shall be taken at the following location(s):  The junction chamber
*See Special Condition 1.
**For total residual chlorine and fecal coliform, hold samples in an air tight container to replicate the chlorine contact time in the submerged outfall for  no more than 60 minutes
  for wastewater flows less than 100 MGD and no more than 30 minutes for wastewater flows greater than 100 MGD before commencing the tests.
XX - Monitor and Report

App. 9

# DISCHARGE REQUIREMENTS FOR PUBLICLY OWNED TREATMENT WORKS (POTWs)

PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING, AND REPORTING REQUIREMENTS

1. For Suboutfall **101** (Internal monitoring point for the main treatment plant waste stream)

   a. The permittee is authorized to discharge during the period from ___date of issuance___ to ___date of expiration___

   b. Based on the anticipated wastewater characteristics and flows described in the permit application and its supporting documents and/or amendments, the following effluent limitations and monitoring requirements apply (Also see additional requirements, Footnotes and Supplemental Information on page 3A)

| Discharge Parameter | EFFLUENT LIMITATIONS Mass Units (lbs/day)[1] | | | EFFLUENT LIMITATIONS Concentrations (mg/l) | | | | MONITORING REQUIREMENTS | | 24 Hr Report Under Part A.3.c.(4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Average Monthly | Average Weekly | | Minimum | Average Monthly | Average Weekly | Instantaneous Maximum[2] | Minimum Measurement Frequency | Required Sample Type | |
| Flow (MGD) | XX | | | | | | | Continuous | Meas. Flow | |
| BOD$_3$ | 28,116 | 42,174 | | | 49 | 73 | 98 | 3/Day | 8-Hr Comp | |
| Total Suspended Solids | 40,048 | 60,073 | | | 70 | 105 | 140 | 3/Day | 8-Hr Comp | |
| Total Phosphorus (as P) | 572 | | | | 1.0 | | | 3/Day | 8-Hr Comp | |
| Color | | | | | | | XX | 2/Year | Grab | |
| pH | | | | 6.0 | | | 9.0 | 3/Day | Grab | |

Samples taken in compliance with the monitoring requirements specified above shall be taken at the following location(s):  Prior to mixing with suboutfall 201.
XX - Monitor and Report

App. 10

# DISCHARGE REQUIREMENTS FOR PUBLICLY OWNED TREATMENT WORKS (POTWs)

PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING, AND REPORTING REQUIREMENTS

1.  For Suboutfall **201** (effluent from the Overflow Retention Facility (ORF)).

a.   The permittee is authorized to discharge during the period from _____ date of issuance _____ to _____ date of expiration _____

b.   Based on the anticipated wastewater characteristics and flows described in the permit application and its supporting documents and/or amendments, the following effluent limitations and monitoring requirements apply (Also see additional requirements, Footnotes and Supplemental Information on page 3)

| Discharge Parameter | EFFLUENT LIMITATIONS Mass Units (lbs/day)[1] | | | EFFLUENT LIMITATIONS Concentrations (mg/l) | | | | MONITORING REQUIREMENTS | |
|---|---|---|---|---|---|---|---|---|---|
| | Average Monthly | Average Weekly | Minimum | Minimum | Average Monthly | Average Weekly | Instantaneous Maximum[2] | Minimum Measurement Frequency | Required Sample Type |
| Flow (MGD)* | XX | | | | | | | Continuous | Meas. Flow |

*When discharging.
See Special Condition 4.
XX - Monitor and Report

24 Hr
Report
Under Part
A.3.c.(4)

App. 11

3600-PM-WQ0003 8/95

Page 2C
Permit No. PA0026301

Case 1:05-cv-00059-MBC    Document 30    Filed 03/31/2006    Page 12 of 50

24 Hr Report Under
A.3.c.(4b)

# DISCHARGE REQUIREMENTS FOR PUBLICLY OWNED TREATMENT WORKS (POTWs)

## PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING, AND REPORTING REQUIREMENTS

1. For Suboutfall **002** (ORF overflow) Latitude 42° 08' 32" Longitude 80° 04' 44"    River Mile Index 0.19    Stream Code 62418

a. The permittee is authorized to discharge during the period from ___date of issuance___ to ___date of expiration___

b. Based on the anticipated wastewater characteristics and flows described in the permit application and its supporting documents and/or amendments, the following effluent limitations and monitoring requirements apply (Also see additional requirements, Footnotes and Supplemental Information on page 3)

| Discharge Parameter | Mass Units (lbs/day)[1] | | | EFFLUENT LIMITATIONS Concentrations (mg/l) | | | | MONITORING REQUIREMENTS | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Average Monthly | Average Weekly | Minimum | Average Monthly | Average Weekly | Instantaneous Maximum[2] | | Minimum Measurement Frequency | Required Sample Type | |
| Flow (MGD)* | XX | | | | | | | Continuous | Meas. Flow | |
| Fecal Coliform* | | | | (Fecal coliforms/ 100 ml)—During the swimming season (May 1 through September 30), the maximum fecal coliform level shall be a geometric mean of 200 per 100 milliliters (ml) based on a minimum of five consecutive samples each sample collected on different days during a 30-day period. No more than 10% of the total samples taken during a 30-day period may exceed 400 per 100 ml. For the remainder of the year, the maximum fecal coliform level shall be a geometric mean of 2,000 per 100 milliliters (ml) based on a minimum of five consecutive samples collected on different days during a 30-day period. | | | | 3/day | Grab | |
| Total Residual Chlorine* | | | | | | 1.6 | | 3/day | Grab | |

Samples taken at the following location(s): After the ORF overflow emergency chlorine contact tank*
*When discharging
See Special Condition 4.
XX - Monitor and Report

# DISCHARGE REQUIREMENTS FOR PUBLICLY OWNED TREATMENT WORKS (POTWs)

PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING, AND REPORTING REQUIREMENTS

1.  For Outfall 901  Latitude 42° 08' 24"  Longitude 80° 04' 41"  Stream Code
    For Outfall 902  Latitude 42° 08' 36"  Longitude 80° 04' 43"  Stream Code
    For Outfall 903  Latitude 42° 08' 36"  Longitude 80° 04' 42"  Stream Code
    For Outfall 904  Latitude 42° 08' 36"  Longitude 80° 04' 40"  Stream Code
    For Outfall 905  Latitude 42° 08' 36"  Longitude 80° 04' 38"  Stream Code
    For Outfall 906  Latitude 42° 08' 36"  Longitude 80° 04' 37"  Stream Code
    For Outfall 907  Latitude 42° 08' 36"  Longitude 80° 04' 36"  Stream Code
    For Outfall 908  Latitude 42° 08' 36"  Longitude 80° 04' 27"  Stream Code

a.  The permittee is authorized to discharge during the period from ___ date of issuance ___ to ___ date of expiration ___

b.  Based on the anticipated wastewater characteristics and flows described in the permit application and its supporting documents and/or amendments, the following effluent limitations and monitoring requirements apply.

| Discharge Parameter | EFFLUENT LIMITATIONS | | | | | | MONITORING REQUIREMENTS | | |
| | Mass Units (lbs/day)[1] | | Concentrations (mg/l) | | | | Minimum Measurement Frequency | Required Sample Type | 24 Hr Report Under Part A.3.c.(4) |
| | Average Monthly | Average Weekly | Minimum | Average Monthly | Average Weekly | Instantaneous Maximum[2] | | | |

These 900 Series outfalls shall only consist of storm water runoff from the Treatment Plant Site.  See Special Condition 3 in Part C of the permit.

App. 13

Page 2E
PA0026301

## COMBINED SEWER OVERFLOWS

**EAST SIDE CSO'S: (537 PHASE II PLAN)**

| Point<br>Source | Location | Latitude<br>Longitude |
|---|---|---|
| 043 | East Second Street and Dunn Boulevard | 42° 08' 36"<br>80° 04' 44" |

**WEST SIDE CSO'S: (537 PHASE II PLAN)**

| | | |
|---|---|---|
| 002A | Hamot Hospital | 42° 08' 02"<br>80° 05' 13" |

**CENTRAL PORTION CSO'S: (537 PHASE III PLAN)**

| | | |
|---|---|---|
| 003 | Second Street between Parade and Wallace Streets<br>(Sobieski Street) | 42° 08' 30"<br>80° 04' 40" |
| 004 | Third Street between Parade and Wallace Streets | 42° 08' 25"<br>80° 04' 40" |
| 005 | Southeast Corner of Fourth and Parade Streets | 42° 08' 20"<br>80° 04' 40" |

Page 2F
PA0026301

## (Cont. - CENTRAL PORTION CSO'S:  (537 PHASE III PLAN)

| Point Source | Location | Latitude Longitude |
|---|---|---|
| 007 | East of the intersection of Fourth and Parade Streets | 42° 08' 20"<br>80° 04' 45" |
| 008 | Fifth Street between Parade and German Streets | 42° 08' 10"<br>80° 04' 45" |
| 014 | French Streets between East 12th and 13th Streets | 42° 07' 25"<br>80° 04' 58" |
| 017 | 14th Street west of Commerce Street | 42° 07' 20"<br>80° 04' 50" |
| 020 | Intersection of 17th and State Streets | 42° 07' 00"<br>80° 04' 45" |
| 024 | Intersection of 21st and State Streets (west) | 42° 04' 45"<br>80° 04' 35" |
| 025A | 22nd and French Streets | 42° 06' 42"<br>80° 04' 32" |
| 027 | Intersection of 24th and French Streets | 42° 06' 35"<br>80° 04' 30" |
| 029 | Intersection of 26th and French Streets | 42° 06' 25"<br>80° 04' 35" |
| 030 | Intersection of Hill Road and Glenwood Park Avenue | 42° 06' 15"<br>80° 04' 25" |

3600-PM-WQ003 8/95

**Page 3**
**Permit No. PA0026301**

## DISCHARGE REQUIREMENTS FOR PUBLICLY OWNED TREATMENT WORKS

PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING, AND REPORTING
REQUIREMENTS

Additional Requirements

c.    The permittee shall provide for effective disinfection of this discharge to control disease-
producing organisms during the swimming season (May 1 through September 30) to achieve a
fecal coliform concentration not greater than 200/100 ml as a geometric average (mean), and
not greater than 1,000/100 ml in more than 10% of the samples tested. During the period
October 1 through April 30 the fecal coliform concentration shall not exceed 100,000/100 ml as
a geometric average (mean).

d.    All discharges of floating materials, oil, grease, scum and substances which produce tastes,
odors, turbidity or settle to form deposits shall be controlled to levels which will not be inimical
or harmful to the water uses to be protected or to human, animal, plant or aquatic life (93.6)(b).

Footnotes (Refer to Page 2)

(1)    When sampling to determine compliance with the mass discharge limitations, discharge flow at
the time of sampling must be measured, recorded, and reported on the Discharge Monitoring
Report Form.

(2)    The instantaneous maximum discharge limitations are for compliance use by the Department
only.  Do not report instantaneous maximums on the Discharge Monitoring Report (DMR) or
Supplemental DMR unless specifically required on those forms to do so.

Supplemental Information

(1)    If a flow limitation is included on Page 2, it is based upon the rated hydraulic capacity of the
treatment facility and is used to help determine whether a hydraulic overload exists.

(2)    The effluent limitations for outfalls 001/001A were determined using an effluent discharge rate
of N/A million gallons per day.

**App. 16**

3600-PM-WQ003 8/95

Page 3A
Permit No. PA0026301

## DISCHARGE REQUIREMENTS FOR PUBLICLY OWNED TREATMENT WORKS

PART A - EFFLUENT LIMITATIONS, MONITORING, RECORDKEEPING, AND REPORTING
REQUIREMENTS

Additional Requirements

c.    The permittee shall provide for effective disinfection of this discharge to control disease-
producing organisms during the swimming season (May 1 through September 30) to achieve a
fecal coliform concentration not greater than N/A as a geometric average (mean), and not
greater than N/A ml in more than 10% of the samples tested. During the period October 1
through April 30 the fecal coliform concentration shall not exceed N/A ml as a geometric
average (mean).

d.    All discharges of floating materials, oil, grease, scum and substances which produce tastes,
odors, turbidity or settle to form deposits shall be controlled to levels which will not be inimical
or harmful to the water uses to be protected or to human, animal, plant or aquatic life (93.6)(b).

Footnotes (Refer to Page 2)

(1)    When sampling to determine compliance with the mass discharge limitations, discharge flow at
the time of sampling must be measured, recorded, and reported on the Discharge Monitoring
Report Form.

(2)    The instantaneous maximum discharge limitations are for compliance use by the Department
only.  Do not report instantaneous maximums on the Discharge Monitoring Report (DMR) or
Supplemental DMR unless specifically required on those forms to do so.

Supplemental Information

(1)    If a flow limitation is included on Page 2A, it is based upon the rated hydraulic capacity of the
treatment facility and is used to help determine whether a hydraulic overload exists.

(2)    The effluent limitations for outfall 101 were determined using an effluent discharge rate of
68.6 million gallons per day and loads calculated using municipal and industrial allowances.

3600-PM-WQ0003 8/95

Page 4

## PART A

2. DEFINITIONS

a. "Bypass" means the intentional diversion of waste streams from any portion of a treatment facility.

b. "Severe property damage" means substantial physical damage to property, damage to the treatment facilities which causes them to become inoperable, or substantial and permanent loss of natural resources which can reasonably be expected to occur in the absence of a bypass. Severe property damage does not mean economic loss caused by delays in production.

c. "Daily discharge" means the discharge of a pollutant measured during a calendar day or any 24-hour period that reasonably represents the calendar day for purposes of sampling. For pollutants with limitations expressed in units of mass, the "daily discharge" is calculated as the total mass of the pollutant discharged over the day. For pollutants with limitations expressed in other units of measurement, the "daily discharge" is calculated as the average measurement of the pollutant over the day.

d. "Average" refers to the use of an arithmetic mean, unless otherwise specified in this permit.

e. "Geometric Average (mean)" means the average of a set of n sample results given by the $n^{th}$ root of their product.

f. "Average monthly" discharge limitation means the highest allowable average of "daily values" over a calendar month, calculated as the sum of all "daily values" measured during a calendar month divided by the number of "daily values" measured during that month.

g. "Average weekly" discharge limitation means the highest allowable average of "daily values" over a calendar week, calculated as the sum of all "daily values" measured during a calendar week divided by the number of "daily values" measured during that week.

h. "Maximum daily" discharge limitation means the highest allowable "daily discharge."

i. "Maximum any time" (or instantaneous maximum) means the level not to be exceeded at any time in any grab sample.

j. "Composite Sample" (for all except GC/MS volatile organic analysis) means a combination of at least 8 individual samples of at least 100 milliliters each obtained at periodic intervals during the operating hours of a facility over a 24 hour period  The composite must be flow-proportional, either the volume of each individual sample is proportional to discharge flow rates, or the sampling interval (for constant volume samples) is proportional to the flow rates over the time period used to produce the composite.

   "Composite Sample for GC/MS volatile organic analysis" consists of at least four (rather than eight) aliquots or grab samples collected during actual hours of discharge over a 24 hour period and need

not be flow proportioned. The four samples are composited in the laboratory immediately before analysis, and only one analysis performed.

The maximum time period between individual samples used for any "composite sample" shall not exceed two hours, except that for wastes of a uniform nature the samples may be collected on a frequency of at least twice per working shift and shall be equally spaced over a 24-hour period (or over the operating day if flows are of a shorter duration).

k.  "Grab Sample" means an individual sample of at least 100 milliliters collected at a randomly-selected time over a period not to exceed 15 minutes.

l.  "i-s" means immersion stabilization - in which a calibrated device is immersed in the wastewater until the reading is stabilized.

m.  The "Daily Average" temperature means the average of all temperature measurements made, or the mean value plot of the record of a continuous automated temperature recording instrument, either during a calendar day or during the operating day if flows are of a shorter duration.

n.  "Measured Flow" means any method of liquid volume measurement, the accuracy of which has been previously demonstrated in engineering practice, or for which a relationship to absolute volume has been obtained.

o.  "At outfall XXX" means a sampling location in outfall line XXX below the last point at which wastes are added to outfall line XXX, or where otherwise specified.

p.  "Estimate" means to be based on a technical evaluation of the sources contributing to the discharge including, but not limited to, pump capabilities, water meters and batch discharge volumes.

q.  "Non-contact cooling water" means water used to reduce temperature which does not come in direct contact with any raw material, intermediate product, waste product (other than heat), or finished product.

Such water may on occasion, as a result of corrosion, cooling system leakage or similar cooling system failures contain small amounts of process chemicals: provided, that all reasonable measures have been taken to prevent, reduce, eliminate and control the maximum extent feasible such contamination: and provided further, that all reasonable measures have been taken that will mitigate the effects of such contamination once it has occurred.

r.  "Toxic Pollutant"- Those pollutants, or combinations of pollutants, including disease-causing agents, which after discharge and upon exposure, ingestion, inhalation, or assimilation into any organism, either directly from the environment or indirectly by ingestion through food chains, will, on the basis of information available to the Department, cause death, disease, behavioral

3600-PM-WQ0003 8/95

abnormalities, cancer, genetic mutations, physiological malfunctions, including malfunctions in reproduction, or physical deformations in such organisms or their offspring.

s.   "Hazardous substance" means any substance designated under 40 CFR Part 116 pursuant to Section 311 of the Clean Water Act.

t.   "Publicly Owned Treatment Works" or "POTW" means a facility as defined by Section 212 of the Clean Water Act which is owned by a State or Municipality, as defined by Section 502(4) of the Clean Water Act, including any sewers that convey wastewater to such a treatment works, but not including pipes, sewers or other conveyances not connected to a facility providing treatment. The term also means the municipality as defined in Section 502(4) of the Clean Water Act which has jurisdiction over the indirect discharges to and the discharges from such a treatment works.

u.   "Industrial User" means an establishment which discharges or introduces industrial wastes into a Publicly Owned Treatment Works (POTW).

v.   "Total Dissolved Solids" means the total dissolved (filterable) solids as determined by use of the method specified in 40 CFR Part 136.

w.   "Storm water associated with industrial activity" means the discharge from any conveyance which is used for collecting and conveying storm water and which is directly related to manufacturing, processing, or raw materials storage areas as defined at 40 CFR Part 122.26(b)(14).

x.   "Storm water" means storm water runoff, snow melt runoff, and surface runoff and drainage.

y.   "Best Management Practices ("BMPs")" means schedules of activities, prohibitions of practices, maintenance procedures, and other management practices to prevent or reduce the pollution of "Waters of the United States." BMPs also include treatment requirements, operating procedures, and practices to control plant site runoff, spillage or leaks, sludge or waste disposal, or drainage from raw material storage.

## 3. SELF-MONITORING, REPORTING, AND RECORDS KEEPING

a.   Representative Sampling

   (1) Samples and measurements taken for the purpose of monitoring shall be representative of the monitored activity.

3600-PM-WQ0003 8/95

(2)  Records Retention

Except for records of monitoring information required by this permit related to the permittee's sewage sludge use and disposal activities which shall be retained for a period of at least 5 years, all records of monitoring activities and results (including all original strip chart recordings for continuous monitoring instrumentation and calibration and maintenance records), copies of all reports required by this permit, and records of all data used to complete the application for this permit shall be retained by the permittee for three (3) years from the date of the sample measurement, report, or application.  The three year period shall be extended as requested by the Department or the EPA Regional Administrator.

(3)  Recording of Results

For each measurement or sample taken pursuant to the requirements of this permit, the permittee shall record the following information:

(i)    The exact place, date, and time of sampling or measurements;
(ii)   The person(s) who performed the sampling or measurements;
(iii)  The date(s) the analyses were performed;
(iv)   The person(s) who performed the analyses;
(v)    The analytical techniques or methods used; and the associated detection level; and
(vi)   The results of such analyses.

(4)  Test Procedures

Unless otherwise specified in this permit, the test procedures for the analysis of pollutants shall be those contained in 40 CFR Part 136 (or in the case of sludge use or disposal, approved under 40 CFR Part 136 unless otherwise specified in 40 CFR Part 503), or alternate test procedures approved pursuant to those parts, unless other test procedures have been specified in the permit.

(5)  Quality Assurance/Control

In an effort to assure accurate self-monitoring analyses results:

(a)  Permittee or its designated laboratory shall participate in the periodic scheduled quality assurance inspections conducted by the Department and EPA.

(b)  The permittee or its designated laboratory shall develop and implement a program to assure the quality and accurateness of the analyses performed to satisfy the requirements of this permit in accordance with 40 CFR Part 136, Appendix A

3600-PM-WQ0003 8/95

Page 8

b.   Reporting of Monitoring Results

(1)  The permittee shall effectively monitor the operation and efficiency of all wastewater treatment and control facilities, and the quantity and quality of the discharge(s) as specified in this permit.

(2)  Unless instructed otherwise in Part C of this permit, monitoring results obtained each month shall be summarized for that month and reported on a Discharge Monitoring Report (DMR).

(3)  The completed DMR Form shall be signed and certified either by the following applicable person (as defined in 40 CFR 122.22(a)) or by that person's duly authorized representative (as defined in 40 CFR 122.22(b)):

   • For a corporation - by a responsible corporate officer
   • For a Partnership or Sole Proprietorship - by a general partner or the proprietor, respectively
   • For a Municipality, State, Federal or other public agency - by a principle executive officer or ranking elected official.

   If signed by other than the above, written notification of delegation of DMR signatory authority must be submitted to the Department.

(4)  If the permittee monitors any pollutant, using analytical methods described in A.3.a(4) above, more frequently than the permit requires, the results of this monitoring shall be incorporated, as appropriate, into the calculations used to report self-monitoring data on the DMR.

c.   Reporting Requirements

(1)  Planned Changes - The permittee shall give notice to the Department as soon as possible of any planned physical alterations or additions to the permitted facility.  Notice is required only when:

   (a)  The alteration or addition to a permitted facility may meet one of the criteria for determining whether a facility is a new source in §122.29(b); or

   (b)  The alteration or addition could significantly change the nature or increase the quantity of pollutants discharged.  This notification applies to pollutants which are subject neither to effluent limitations in the permit, nor to notification requirements under §122.42(a)(1).

   (c)  The alteration or addition results in a significant change in the permittee's sludge use or disposal practices, and such alteration, addition, or change may justify the application of permit conditions that are different from or absent in the existing permit, including notification of additional use or disposal sites not reported during the permit application process or not reported pursuant to an approved land application plan;

3600-PM-WQ0003 8/95

(2) Anticipated Non-Compliance

The permittee shall give advance notice to the Department of any planned changes in the permitted facility or activity which may result in noncompliance with permit requirements.

(3) Compliance Schedules
Reports of compliance or noncompliance with, or any progress reports on, interim and final requirements contained in any compliance schedule of this permit shall be submitted no later than 14 days following each schedule date.

(4) Twenty-Four Hour Reporting

    (a) The permittee shall report any noncompliance which may endanger health or the environment. Any information shall be provided orally within 24 hours from the time the permittee becomes aware of the circumstances. A written submission shall also be provided within 5 days of the time the permittee becomes aware of the circumstances. The written submission shall contain a description of the noncompliance and its cause; the period of noncompliance, including exact dates and times, and if the noncompliance has not been corrected, the anticipated time it is expected to continue; and steps taken or planned to reduce, eliminate, and prevent reoccurrence of the noncompliance.

    (b) The following shall be included as information which must be reported within 24 hours under this paragraph.

        (i) Any unanticipated bypass which exceeds any effluent limitation in the permit.

        (ii) Any catastrophic event which causes the discharge to exceed effluent limitations in this permit.

        (iii) Violation of a maximum daily discharge limitation for any of the pollutants listed by the Department in the permit to be reported within 24 hours.

    (c) The Department may waive the written report on a case-by-case basis for reports under paragraph c (4)(a) of this section if the oral report has been received within 24 hours.

(5) Other Noncompliance

The permittee shall report all instances of noncompliance not reported under paragraphs c (3), (4) of this section, at the time monitoring reports are submitted. The reports shall contain the information listed in paragraph c (4) of this section.

Compliance with reporting requirements under A.3.c. above shall not excuse a person from immediate notification of incidents causing or threatening pollution pursuant to 25 PA Code 101.2.

3600-PM-WQ0003 8/95

**PART B**

1. MANAGEMENT REQUIREMENTS

  a.  <u>Compliance Schedules</u>

    (1)  The permittee shall achieve compliance with the terms and conditions of this permit within the time frames specified in Part C of this permit.

    (2)  The permittee shall submit reports of compliance or noncompliance with, or progress reports as applicable, any interim and final requirements contained in this permit. Such reports shall be submitted no later than 14 days following the applicable schedule date or compliance deadline.

  b.  <u>Permit Modification, Termination, or Revocation and Reissuance</u>

    (1)  This permit may be modified, suspended, or revoked in whole or in part during its term for cause, including, but not limited to, any of the causes specified in 25 Pa. Code, Chapter 92.

    (2)  The filing of a request by the permittee for a permit modification, revocation and reissuance, or termination, or a notification of planned changes or anticipated non-compliance, does not stay any permit condition.

    (3)  In the absence of a Departmental action to modify or revoke and reissue this permit, the permittee shall comply with effluent standards or prohibitions established under Section 307(a) of the Clean Water Act for toxic pollutants within the time specified in the regulations that establish those standards or prohibitions.

  c.  <u>Duty to Provide Information</u>

    (1)  The permittee shall furnish to the Department, within a reasonable time, any information which the Department may request to determine whether cause exists for modifying, revoking and reissuing, or terminating this permit, or to determine compliance with this permit.

    (2)  The permittee shall furnish to the Department, upon request, copies of records required to be kept by this permit.

    (3)  <u>Other Information</u> - Where the permittee becomes aware that it failed to submit any relevant facts in a permit application, or submitted incorrect information in a permit application or in any report to the Department, it shall promptly submit such facts or information to the Department.

3600-PM-WQ0003 8/95

(4) Where the permittee is a POTW, the permittee shall provide adequate notice to the Department of the following:

    (a) Any new introduction of pollutants into the POTW from an indirect discharger which would be subject to Sections 301 and 306 of the Clean Water Act if it were otherwise discharging those pollutants.

    (b) Any substantial change in the volume or character of pollutants being introduced into the POTW by an Industrial User which was discharging into the POTW at the time of issuance of this permit.

    (c) For the purpose of this paragraph, adequate notice shall include information on:

        (i)   any change in the quality and quantity of the effluent introduced into the POTW, and

        (ii)  any anticipated impact of the change on the quality or quantity of the effluent to be discharged from the POTW.

    The submission of the above information in the POTW's Annual Wasteload Management Report, required under the provisions of 25 Pa. Code Chapter 94, will normally be considered as providing adequate notice to the Department, unless a more stringent time period is required by law, regulation, or permit condition in which case the more stringent submission date shall apply

    (d) The identity of Industrial Users served by the POTW which are subject to pretreatment standards adopted under Section 307(b) of the Clean Water Act; the POTW shall also specify the total volume of discharge and estimated concentration of each pollutant discharged into the POTW by the Industrial Users.

    (e) The POTW shall require all Industrial Users to comply with the reporting requirements of Sections 204(b), 307, and 308 of the Clean Water Act and any regulations adopted thereunder, and the Clean Streams Law and any regulations adopted thereunder.

d.  <u>Facilities Operation</u>

The permittee shall at all times maintain in good working order and properly operate and maintain all facilities and systems which are installed or used by the permittee to achieve compliance with the terms and conditions of this permit. Proper operation and maintenance includes, but is not limited to, adequate laboratory controls including appropriate quality assurance procedures. This provision also includes the operation of backup or auxiliary facilities or similar systems which are installed by the permittee, only when necessary to achieve compliance with the terms and conditions of this permit.

3600-PM-WQ0003 8/95

The permittee shall develop, install, and maintain Best Management Practices to control or abate the discharge of pollutants when the practices are reasonably necessary to achieve the effluent limitations and standards in this permit or to carry out the purposes and intent of the Clean Water Act, or when required to do so by the Department.

e.  Adverse Impact

The permittee shall take all reasonable steps to minimize or prevent any discharge or sludge use or disposal in violation of this permit which has a reasonable likelihood of adversely affecting human health or the environment.

f.  Bypassing

(1)  Bypassing Not Exceeding Permit Limitations - The permittee may allow a bypass to occur which does not cause effluent limitations to be violated, but only if the bypass is essential for maintenance to assure efficient operation. This type of bypassing is not subject to the reporting and notification requirements of Part A.3.c.

(2)  Other Bypassing - In all other situations bypassing is prohibited unless all of the following conditions are met:

(a)  A bypass is unavoidable to prevent loss of life, personal injury or "severe property damage";

(b)  There are no feasible alternatives to the bypass, such as the use of auxiliary treatment facilities, retention of untreated wastes, or maintenance during normal periods of equipment downtime. This condition is not satisfied if adequate backup equipment should have been installed (in the exercise of reasonable engineering judgment) to prevent a bypass which occurred during normal periods of equipment downtime or preventive maintenance;

(c)  The permittee submitted the necessary reports required under Part A.3.c.

(3)  The Department may approve an anticipated bypass, after considering its adverse effects, if the Department determines that it will meet the three conditions (a through c) listed above.

## 2. PENALTIES AND LIABILITY

a.  Violations of Permit Conditions

Any person violating Sections 301, 302, 306, 307, 308, 318, or 405 of the Clean Water Act or any permit condition or limitation implementing such sections in a permit issued under Section 402 of

3600-PM-WQ0003 8/95

the Act is subject to civil, administrative, and/or criminal penalties as set forth in 40 CFR 122.41(a)(2).

Any person or municipality who violates any provision of this permit, any rule, regulation, or order of the Department, or any condition or limitation of any permit issued pursuant to the Clean Streams Law is subject to criminal and/or civil penalties as set forth in Sections 602, 603 and 605 of the Clean Streams Law.

b.  Falsifying Information

Any person who does any of the following:

Falsifies, tampers with, or knowingly renders inaccurate any monitoring device or method required to be maintain under this permit; or

Knowingly makes any false statement, representation, or certification in any record or other document submitted or required to be maintained under this permit (including monitoring reports or reports of compliance or non- compliance).

shall, upon conviction, be punished by a fine and/or imprisonment as set forth in 18 P.S. §4904 and 40 CFR 122.41(j)(5) and (k)(2).

c.  Liability

Nothing in this permit shall be construed to relieve the permittee from civil or criminal penalties for noncompliance pursuant to Section 309 of the Clean Water Act or Sections 602, 603 or 605 of the Clean Streams Law.

Nothing in this permit shall be construed to preclude the institution of any legal action or to relieve the permittee from any responsibilities, liabilities, or penalties to which the permittee is or may be subject to under the Clean Water Act and the Clean Streams Law.

d.  Enforcement Proceedings

(1) It shall not be a defense for the permittee in an enforcement action that it would have been necessary to halt or reduce the permitted activity in order to maintain compliance with the conditions of this permit.

### 3. OTHER RESPONSIBILITIES

a. <u>Right of Entry</u>

Pursuant to Sections 5(b) and 305 of Pennsylvania's Clean Streams Law and 25 Pa. Code, Chapter 92, the permittee shall allow the head of the Department, the EPA Regional Administrator, and/or their authorized representatives, upon the presentation of credentials and other documents as may be required by law:

(1) To enter upon the permittee's premises where a regulated facility or activity is located or conducted, or where records must be kept under the conditions of this permit;

(2) To have access to and copy at reasonable times any records that must be kept under the conditions of this permit;

(3) To inspect at reasonable times any facilities, equipment (including monitoring and control equipment), practices or operations regulated or required under this permit;

(4) To sample or monitor at reasonable times, for the purposes of assuring permit compliance or as otherwise authorized by the Clean Water Act, any substances or parameters at any location.

b. <u>Transfer of Permits</u>

(1) *Transfers by modification.* Except as provided in paragraph (2) of this section, a permit may be transferred by the permittee to a new owner or operator only if the permit has been modified or revoked and reissued, or a minor modification made to identify the new permittee and incorporate such other requirements as may be necessary under CWA.

(2) *Automatic transfers.* As an alternative to transfers under paragraph (1) of this section, any NPDES permit may be automatically transferred to a new permittee if:

(a) The current permittee notifies the Department at least 30 days in advance of the proposed transfer date in paragraph (2)(b) of this section;

(b) The notice includes the appropriate Department transfer form signed by the existing and new permittees containing a specific date for transfer of permit responsibility, coverage, and liability between them; and

(c) The Department does not notify the existing permittee and the proposed new permittee of its intent to modify or revoke and reissue the permit. A modification under this subparagraph may also be a minor modification. If this notice is not received, the transfer is effective on the date specified in the agreement mentioned in paragraph (2)(b) of this section.

3600-PM-WQ0003 8/95

(3)  In the event the Department does not approve transfer of the permit, the new owner or controller must submit a new permit application.

c.   Property Rights

The issuance of this permit does not convey any property rights of any sort, or any exclusive privilege.

d.   Other Laws

The issuance of a permit does not authorize any injury to persons or property or invasion of other private rights, or any infringement of State or local law or regulations.

## PART C

### I.   OTHER REQUIREMENTS

ONE:    Properly completed and signed Discharge Monitoring Reports (DMRs), as described in Part A.3.b of this permit, shall be submitted, within 28 days after the end of each monthly reporting period, to the Department (and the EPA Regional Office, if noted below) at the following address:

PA Dept. of Environmental Protection
Field Office-Water Management
230 Chestnut Street
Meadville, PA 16335

Erie County Department of Health
Environmental Health
606 West Second Street
Erie, PA  16507

Program Management Section (3WP31)
Permits Enforcement Branch
Water Management Division
U.S. EPA - Region III
1650 Arch Street
Philadelphia, PA  19103-2029

TWO:    No storm water from pavements, area ways, roofs, foundation drains or other sources shall be admitted to any new sanitary sewer construction nor allowed to be added to any portion of the existing sanitary sewer system.

THREE:  The approval herein given is specifically made contingent upon the permittee acquiring all necessary property rights by easement or otherwise, providing for the satisfactory construction, operation, maintenance and replacement of all sewers or sewerage structures associated with the herein approved discharge in, along, or across private property, with full rights of ingress, egress and regress.

FOUR:    If, in the opinion of the Department, these works are not so operated or if by reason of change in the character of wastes or increased load upon the works, or changed use or condition of the receiving body of water, or otherwise, the said effluent ceases to be satisfactory or the sewerage facilities shall have created public nuisance, then upon notice by the Department the right herein granted to discharge such effluent shall cease and become null and void unless within the time specified by the Department, the permittee shall adopt such remedial measures as will produce an effluent which, in the opinion of the Department, will be satisfactory for discharge into the said receiving body of water.

FIVE:    Collected screenings, slurries, sludges, and other Solids shall be handled and disposed of in compliance with 25 Pa. Code, Chapter 75, and in a manner "equivalent" to the requirements indicated in Chapters 271, 273, 275, 283 and 285 (relating to permits and requirements for landfilling, land application, incineration, and storage of sewage sludge), Federal Regulation 40 CFR 257, Pennsylvania Clean Streams Law, Pennsylvania Solid Waste Management Act of 1980, and the Federal Clean Water Act and its amendments.

The permittee is responsible to obtain or assure that contracted agents have all necessary permits and approvals for the handling, storage, transport and disposal of solid waste materials generated as a result of wastewater treatment.

## PART C

## II.    SPECIAL CONDITIONS:

### 1.    Requirements For Total Residual Chlorine (TRC)

A.    Source Reduction and Chlorine Minimization

To reduce or eliminate the amount of chlorine discharged into water bodies, the permittee must: (1) implement source reduction activities, (2) improve operation/maintenance practices and, (3) improve/adjust process controls.

The permittee will ensure that applied chlorine dosages, used for disinfection or other purposes, are optimized to the degree necessary such that the total residual chlorine in the discharge does not cause an adverse stream impact. In doing so, the permittee shall consider relevant factors affecting chlorine dosage, such as wastewater characteristics, mixing and contact times, desired result of chlorination, and expected impact on the receiving water body.

If the Department determines or receives documented evidence levels of TRC in the permittee's effluent are causing adverse impacts in the receiving water, the permittee shall institute necessary additional steps to reduce or eliminate such impact.

### 2.    Permit Condition for the Operation and Implementation of a Pretreatment Program

A.    *General Requirement* - The permittee shall operate, and implement an industrial pretreatment program in accordance with the Federal Clean Water Act, the Pennsylvania Clean Streams Law, and the federal regulations at 40 CFR Section 403. The program shall also be implemented in accordance with the pretreatment program and any modifications thereto submitted by the permittee and approved by the Approval Authority.

B.    *Annual Report and Other Requirements* - The permittee shall submit an Annual Report by March 31 of each year to DEP and EPA that describes the permittee's pretreatment activities for the previous calendar year. The Annual Report shall include a description of pretreatment activities in all municipalities from which wastewater is received at the permittee's POTW. The submission to DEP shall be incorporated into the permittee's Annual Municipal Wasteload Management Report required by 25 Pa. Code Chapter 94. In addition, the permittee shall meet all of the conditions specified below whether or not they relate to the Annual Report:

1.    *Control Mechanism Issuance* - The Annual Report shall contain a summary of Significant Industrial User (SIU) control mechanism issuance, including a list of issuance and expiration dates for each SIU;

## PART C

2.  *Sampling and Inspection* - The Annual Report shall contain a summary of the number and type of inspections and samplings of SIUs by the permittee, including a list of all SIUs either not sampled or not inspected, and the reason that the sampling and/or inspection was not conducted;

3.  *Industrial User Compliance and POTW Enforcement* - The Annual Report shall contain a summary of the number and type of violations of pretreatment standards and requirements, including local limits, and the actions taken by the permittee to obtain compliance, including civil penalty assessments and actions for injunctive relief. The report shall state whether each SIU was in significant noncompliance, as that term is defined in 40      CFR Section 403.8(f)(2)(vii);

4.  *Industrial Listing* - The Annual Report shall contain an updated industrial listing showing all current SIUs and the categorical standard, if any, applicable to each. In addition, the report shall contain a summary of any trucked or hauled wastewater accepted at the plant including the source of the wastewater (domestic or industrial), the amount of wastewater received on a monthly basis, any controls imposed on the users, and the discharge point designated by the POTW for acceptance of such wastewater;

5.  *Summary of POTW Operation* - The Annual Report shall contain a summary of any interference, pass-through, or permit violations by the POTW which may be attributed to industrial users, and actions taken to address these events. The summary shall also include sampling and analysis of treatment plant influent, effluent, and sludge for toxic and incompatible pollutants, and an analysis of any trends in such data for the last three years;

6.  *Pretreatment Program Changes* - The Annual Report shall contain a summary of any changes to the approved program and the date of submission to the Approval Authority;

7.  *Monitoring* - The permittee shall conduct monitoring at its treatment plant that, at a minimum, includes quarterly influent, effluent, and sludge analysis for all local limit parameters, and an annual priority pollutant scan for influent and sludge.

C.  *Notification of Pass-Through or Interference* - The permittee shall notify EPA and DEP, in writing, of any instance of pass-through or interference related to an industrial discharge from an IU into the POTW. The notification shall be attached to the discharge monitoring report submitted to EPA and DEP and shall describe the incident, including the date, time, length, cause (including responsible user if known), and the steps taken by the permittee and IU (if identified) to address the incident. A copy of the notification shall also be sent to the EPA at the address provided below.

## PART C

D.    *Changes to Pretreatment Program* - DEP and EPA may require the permittee to submit for approval changes to its pretreatment program if any one or more of the following conditions is present:

    1.    The program is not implemented in accordance with 40 CFR Part 403;

    2.    Problems such as interference, pass-through or sludge contamination develop or continue;

    3.    Federal, State, or local requirements change;

    4.    Changes are needed to assure protection of waters of the Commonwealth.

E.    *Procedure For Pretreatment Program Changes* - Upon submittal by the permittee, and written notice of approval by the Approval Authority to the permittee of any changes to the permittee's approved pretreatment program, such changes are effective and binding upon the permittee.

F.    *Correspondence* - The Approval Authority shall be EPA at the following address:

> Pretreatment Coordinator (3WP24)
> Water Protection Division
> U.S. EPA Region III
> 1650 Arch Street
> Philadelphia, PA  19103-2029

Copies of all correspondence and reports dealing with this program shall be sent to:

> Department of Environmental Protection
> Northwest Regional Office
> Water Management Program
> 230 Chestnut Street
> Meadville, PA  16335

## 3.    Storm water Outfalls

A.    Prohibition of Non-storm water Discharges

    1.    Except as provided in A.2., all storm water outfalls shall be composed entirely of uncontaminated storm water.

## PART C

2. The following non-storm water discharges are authorized provided the non-storm water component of the discharge is in compliance with A.3 below: discharges from firefighting activities, fire hydrant flushings, potable water sources including waterline flushings, irrigation drainage, lawn water, routine external building washdown which does not use detergents or other compounds, pavement washwaters where spills or leaks of toxic or hazardous materials have not occurred (unless all spilled material has been removed) and where detergents are not used, air conditioning condensate, springs, uncontaminated ground water, and foundation or footing drains where flows are not contaminated with process materials such as solvents.

3. This permit does not authorize any discharge (storm water or non-storm water) which contains any pollutant that may cause or contribute to an impact on aquatic life or pose a substantial hazard to human health or the environment due to its quantity or concentration.

B. Spills

This permit does not authorize the discharge of any pollutant resulting from an on-site spill, any such occurrence is subject to Sections A.3.c. or d of this permit.

C. Preparedness, Prevention and Contingency Plans (PPC)

1. Operators of facilities shall review and revise as appropriate the PPC Plan for the site in accordance with 25 Pa. Code Section 101.3 to address storm water. The PPC Plan shall identify potential sources of pollution which may reasonably be expected to affect the quality of storm water discharges from the facility. Each of the following shall be evaluated for the reasonable potential for contributing pollutants to runoff: loading and unloading operations, outdoor storage activities, outdoor manufacturing or processing activities, significant dust or particulate generating process, and on-site waste disposal practices. Factors to consider include the toxicity of chemicals; quality of chemicals used, produced or discharged; the likelihood of contact with storm water; and history of significant leaks or spills of toxic or hazardous pollutants. In addition, the PPC Plan shall describe the implementation of practices which are to be used to reduce the pollutants in storm water discharges ensuring compliance with the terms and conditions of this permit.

2. Facilities subject to SARA Title III, Section 313 reporting requirements for releases of Section 313 water priority chemicals to water that have occurred within the last three years shall include a description of such releases in the PPC Plan.

## PART C

3. Qualitified personnel shall conduct site compliance evaluations at least once a year. A report summarizing the evaluation and any required follow-up actions shall be prepared and kept on-site. Such evaluations shall include the items in 3.a below.

   a. Areas contributing to a storm water discharge shall be visually inspected for evidence of, or the potential for, pollutants entering the drainage system. Measures to reduce pollutant loadings shall be evaluated to determine whether they are adequate and properly implemented in accordance with the terms of the permit or whether additional control measures are needed. Structural storm water management measures, sediment and erosion control measures, and other structural pollution prevention measures identified in the plan shall be observed to ensure that they are operating correctly.

   b. Based on the results of the inspection, the description of potential pollutant sources identified in the PPC Plan, and pollution prevention measures and controls identified in the plan shall be revised as appropriate and shall provide for implementation of any changes to the plan in a timely manner.

## 4. CSO – Related Bypass

A CSO-related bypass of the secondary treatment portion of the POTW treatment plant is authorized when *. Bypasses that occur when the flow at the time of the bypass is under the specified flow rate are not authorized under this condition and are subject to the bypass provision at 40 CFR 122.41(m). In the event of a CSO-related bypass authorized under this condition, the permittee shall minimize the discharge of pollutants to the environment. At a minimum, CSO-related bypass flows must receive primary clarification, solids and floatables removal, and disinfection. The permittee shall report any substantial changes in the volume or character of pollutants being introduced into the POTW. Authorization of CSO-related bypasses under this provision may be modified or terminated when there is a substantial change in the volume or character of pollutants being introduced into the POTW. The Overflow Retention Facility (ORF) located at the City of Erie's POTW is an integral part of the facility's treatment process, and is permitted for operation under the following scenarios:

*For Sub-outfall 201:
- The permittee is required to maximize municipal flows through the main treatment plant at all times.
- The flow rate (domestic and storm water) to the main treatment plant as a result of a precipitation event exceeds the target flow *of 90 MGD.
- The Overflow Retention Facility (ORF) shall be filled to its' maximum capacity.
- The permittee shall provide documentation of bypasses authorized under this provision as part of the DMR for the treatment plant.

## PART C

*For Outfall 002:
- The permittee is required to maximize municipal flows through the main treatment plant at all times.
- The flow rate (domestic and storm water) to the main treatment plant as a result of a precipitation event exceeds the target flow * of 90 MGD.
- The ORF is filled to its' maximum capacity.
- The flow rate out of the Overflow Retention Facility through Sub-Outfall 201 exceeds 60 MGD.
- The permittee shall provide notice to the Department of the bypass within 24 hours of occurrence of the bypass.

*[It is recognized in accordance with Part B.1.f.(1) that there may be occasions when it is necessary to divert flows from the treatment plant through Sub-outfall 201 and/or Outfall 002 at flows less than the target flow of 90 MGD as a result of maintenance or to assure efficient operations. In such events the permittee must demonstrate that effluent limitations have not been violated, and include the reason(s) for such a bypass as part of the monthly DMR report.]

## 5.    MANAGEMENT AND CONTROL OF COMBINED SEWER OVERFLOWS

Combined sewer overflows (CSOs) are allowed to discharge only in compliance with this permit when flows in combined sewer systems exceed conveyance or treatment capacities of the system during wet weather periods. Overflows which occur without an accompanying precipitation event or snow-melt are termed "dry weather overflows" and are prohibited. CSOs are point source discharges that must be provided with control measures in accordance with the Federal Clean Water Act and the 1994 National CSO Policy.

The point source discharge locations (outfalls) identified in the renewal application submitted by the permittee serve as known combined sewer overflow locations on the permittee sewer system.

### A.    CONTINUE IMPLEMENTATION OF TECHNOLOGY-BASED NINE MINIMUM CONTROLS

Upon issuance of this permit, the permittee shall continue the implementation of the NMCs, demonstrate system wide compliance with the NMCs and submit discharge monitoring reports and annual reports to the Department with appropriate documentation. The NMC documentation report is incorporated in this permit.

The Department will use the EPA guidance document entitled "Guidance For Nine Minimum Controls" (EPA 832-B-95-003), dated May, 1995, and specific comments provided during review of the NMC documentation reports to determine continued compliance with the CSO permit requirements.

**PART C**

**B.    IMPLEMENTATION OF WATER QUALITY-BASED LONG TERM CONTROL PLAN (LTCP)**

The long- term goal of the LTCP requirements in this permit is to achieve compliance with the state water quality standards upon completion of the LTCP implementation.  Until completion of the implementation, the CSO discharge(s) shall comply with the performance standards of the selected CSO controls, when installed, and shall comply with the water quality standards found in Chapter 93, Section 93.6.  When sufficient CSO-related information and data are available to develop water quality-based effluent limitations, the permit should be revised to reflect the new effluent limitations.

Upon issuance of this permit, the permittee shall continue the implementation of the LTCP, demonstrate system-wide compliance with the LTCP's installed alternatives and submit with the Annual Report referenced in paragraph C.2 below, annual progress reports on implementation.

The permittee shall continue to implement its approved long term control plan (LTCP). The LTCP, at a minimum, shall provide consideration of the following requirements:

1.    Continued implementation of the nine minimum controls
2.    Consideration of sensitive areas (recreation areas, public water supply, unique ecological habitat, etc.);
3.    Characterization, monitoring and modeling of overflows and assessment of water quality impacts;
4.    Evaluation and selection of control alternative - presumptive or demonstrative approach;
5.    Public participation in LTCP plan development and implementation;
6.    Implementation schedule and financing plan for selected control options;
7.    Maximizing treatment at the existing POTW treatment plant;
8.    Post-construction monitoring program plan; and
9.    CSO System Operational Plan.

These LTCP requirements are described in the EPA's guidance document entitled "Guidance For Long Term Control Plan" (EPA 832-B-95-002), dated September, 1995.  Using a post-construction compliance monitoring program, the permittee shall periodically review the effectiveness of the LTCP and propose any changes or revisions to the LTCP to the Department for review and approval before its implementation.  The Department will use the EPA guidance document to determine permittee compliance with the CSO permit requirements.

The permittee shall implement and effectively operate and maintain the CSO controls identified in the LTCP.  The interim implementation schedule for the short term controls shall be in accordance with the approved LTCP.  The final implementation of the LTCP is expected to exceed the life of the current five year permit and shall be consistent with the approved LTCP or where applicable a CO&A or other enforcement mechanism.

## PART C

C.    **MONITORING AND REPORTING REQUIREMENTS**

1.    Special Supplemental CSO Discharge Monitoring Report:

The permittee shall record data on all CSO discharges in the format specified in the Department's Supplemental Combined Sewer Overflow Discharge Monitoring Report attached with this permit. The data shall be submitted to the Department 30 days following a month in which one or more CSO discharges occurred. The Supplemental DMRs should be attached to and submitted along with the permittee's regular discharge monitoring report (DMR) if applicable. Supplemental DMRs must be retained at the STP site for at least five (5) years.

2.    Annual CSO Status Report: Supplement

On March 31 of each year, a CSO supplement shall be submitted to the Department with the annual "Municipal Wasteload Management Report" required by 25 Pa. Code Chapter 94, Section 94.12. For a satellite CSO system, a copy of the annual report shall also be provided to the POTW providing treatment for its wastewater.

i.    The CSO supplement shall:

    a.    Provide a summary of the frequency, duration and volume of the CSO discharges for the past calendar year;

    b.    Provide the operational status of major overflow points;

    c.    Provide an identification of known or potential in-stream water quality impacts, their causes, and their effects on downstream water uses;

    d.    Summarize all actions taken to implement the NMCs and the LTCP and their effectiveness; and

    e.    Evaluate and provide necessary revisions to NMC and LTCP reports approved by the Department.

ii.    Specifically, the following CSO-related information shall be included in the report:

    a.    Rain gauge data - total inches (to the nearest 0.01 inch) that caused each CSO discharge being reported in the supplemental DMR for CSO.

    b.    Inspections and maintenance.

        -    Total number of regulator inspections conducted during the period of the report (reported by drainage system).

        -    A list of blockages (if any) corrected or other interceptor maintenance performed, including location, date and time discovered, date and time corrected, and any discharges to the stream observed.

    c.    Dry weather overflows

        Dry weather CSO discharges are prohibited. Indicate location, date and time discovered, date and time corrected/ceased, and action(s) taken to prevent their reoccurrence. Where dry weather discharges are chronic or continuous, a plan to correct this condition and schedule to implement the plan must be submitted with the CSO Supplement.

PART C

    d.    Wet weather overflows

- For all locations that have automatic level monitoring of the regulators, report all exceedances of the overflow level during the period of the report, including location, date, time, and duration of wet weather, overflows. Also describe actions taken to prevent their reoccurrence.
- For all locations at which flows in the interceptors can be controlled by throttling and/or pumping, report all instances when the overflow level was reached or the gates were lowered. For each instance, provide the location, date, time, and duration of the overflow. Also describe actions taken to prevent their reoccurrence.

## D.   AREA-WIDE PLANNING/PARTICIPATION REQUIREMENT FOR SATELLITE CSO SYSTEMS

Where applicable, the permittee shall cooperate with and participate in any satellite CSO system's NMCs and LTCP activities being developed and/or carried out by the operator(s) of these systems, and shall participate in implementing applicable portions of the approved NMC and LTCP for these systems.

## E.   PERMIT REOPENER CLAUSE

The Department reserves the right to modify, revoke and reissue this permit as provided pursuant to 40 CFR 122.62 and 124.5 for the following reasons:

1. To include new or revised conditions developed to comply with any State or Federal law or regulation that addresses CSOs that is adopted or promulgated subsequent to the effective date of this permit.

2. To include new or revised conditions if new information, not available at the time of permit issuance, indicates that CSO controls imposed under the permit have failed to ensure the attainment of State WQSs.

3. To include new or revised conditions based on new information resulting from implementation of the LTCP.

## PART C

### F.    COMBINED SEWER OVERFLOW COMPLIANCE SCHEDULE

The permittee shall complete the above CSO activities in accordance with the following compliance schedule:

| Schedule Activity Description | Compliance Due Date |
| --- | --- |
| Continue Implementation of the NMC Reports | Permit effective date |
| Begin Implementation of the LTCP | Permit effective date |
| Submit Annual CSO Status Supplement to Department Chapter 94 Report | March 31 of each year with with Wasteload Mgmt. Report |
| Submit Supplemental CSO Discharge Monitoring Reports | Within 30 days of a month with any CSO discharge(s) |

| Scheduled Interim Milestones | Compliance Due Date |
| --- | --- |

LTCP items:

| | |
| --- | --- |
| Submit Stage 3 – Presumptive Verification Program Work plan | December 31, 2002 |
| Submit Stage 3 - Presumptive Verification Program Report for PADEP review | October 31, 2004 |
| Complete Stage 3 – Presumptive Verification Program and PADEP approval of report | December 31, 2004 |
| Complete Remaining Stage 1 – Initial Presumptive Construction Items: | |
| Complete Emergency Mill Creek Chlorine Contact Tank (CCT) Study and Construct Emergency Mill Creek CCT | December 31, 2004 |
| Complete Phase III/Act 537 sewer projects, conduct post-construction flow monitoring, revisit SWMM modeling, determine strategic locations of any new/remaining CSO locations in the east, west, and center city areas, complete construction of new/existing CSO modifications | December 31, 2004 |
| Complete Stage 2 – East Side Interceptor Improvements Study, devise plan of improvements, complete construction of recommended improvements to East Side Interceptor from Dunn Boulevard to the POTW | January 1, 2003 to December 31, 2010 |
| Begin Stage 4 – Water Quality Compliance Evaluation | January 1, 2005 |

**PART C**

6.    The permittee shall submit the results of Whole Effluent Toxicity (WET) tests with its next permit renewal application, as required in the federal regulation 40 CFR 122.21(j)(5).  The permittee shall obtain the appropriate biomonitoring protocol for the testing from the PADEP Regional Office.

NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM (NPDES)
**DISCHARGE MONITORING REPORT (DMR)**

FORM APPROVED.
OMB NO. 2040-0004.
Northwest Region Facsimile

PERMITTEE NAME ADDRESS (include Facility Name / Location if different)
NAME: Erie Sewer Authority and the City of Erie
ADDRESS: 68 Port Access Road
Erie, PA 16507-2202

FACILITY: WQ/Sew/Tech
LOCATION: Erie
COUNTY: Erie

PERMIT NUMBER: PA0026301
DISCHARGE NUMBER: 001/001A

| Parameter (32-37) | | | QUANTITY OR LOADING (54-61) | | | QUALITY OR CONCENTRATION (54-61) | | | | NO. EX (62-63) | FREQUENCY OF ANALYSIS (64-68) | SAMPLE TYPE (69-70) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | AVERAGE (46-53) | MAXIMUM (54-61) | UNITS | AVERAGE (46-53) | MAXIMUM (54-61) | MINIMUM (38-45) | UNITS | | | |
| Flow | Sample Measurement | | | | | | | | | | | |
| | Permit Requirement | Monthly XX | | MGD | | | | | | | Continuous | Meas. Flow |
| Total Residual Chlorine (Final)* | Sample Measurement | | | | | | | | | | | |
| | Permit Requirement | | | | | 0.5 | | | mg/l | | 3/Day | Grab** |
| Fecal Coliform (5/1-9/30) (10/1-4/30) | Sample Measurement | | | | | | | | | | | |
| | Permit Requirement | | | | | 200 100,000 | | | /100ml | | Daily | Grab** |

I CERTIFY UNDER PENALTY OF LAW THAT I HAVE PERSONALLY EXAMINED AND AM FAMILIAR WITH THE INFORMATION SUBMITTED HEREIN AND BASED ON MY INQUIRY OF THOSE INDIVIDUALS IMMEDIATELY RESPONSIBLE FOR OBTAINING THE INFORMATION, I BELIEVE THE SUBMITTED INFORMATION IS TRUE, ACCURATE AND COMPLETE. I AM AWARE THAT THERE ARE SIGNIFICANT PENALTIES FOR SUBMITTING FALSE INFORMATION, INCLUDING THE POSSIBILITY OF FINE AND IMPRISONMENT SEE 18 U.S.C. §1001 AND 33 U.S.C. §1319. (Penalties under these statutes may includes fines up to $10,000 and or maximum imprisonment of between 6 months and 5 years)

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE   AREA CODE   NUMBER

DATE   YEAR   MO   Page 1 of 1   APR 3 0 2006

TYPE OR PRINT

COMMENT AND EXPLANATION OF ANY VIOLATIONS (Reference all attachments here)

*See Special Condition 1.
**For Total Residual Chlorine and Fecal Coliform, hold samples in an air tight container to replicate the chlorine contact time in the submerged outfall for no more than 60 minutes for wastewater flows less than 100 MGD and no more than 30 minutes for wastewater flows greater than 100 MGD before commencing the tests.
XX = Monitor and Report

EPA FORM 3320-1 (Rev 9 - 88) previous edition maybe used    OCT 3 0 2006    (REPLACES EPA FORM T -40 WHICH MAY NOT BE USED)

NOTE: YOUR PERMIT WILL EXPIRE ON _____ ; PLEASE SUBMIT YOUR RENEWAL APPLICATION BEFORE APR 3 0 2006

NOTE: Read instructions before completing this form.

App. 42

NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM (NPDES)
DISCHARGE MONITORING REPORT (DMR)

FORM APPROVED.
OMB NO. 2040-0004.
Northwest Region Facsimile

PERMITTEE NAME ADDRESS (include Facility Name / Location if different)
NAME:     Erie Sewer Authority and the City of Erie
ADDRESS:  68 Port Access Road
          Erie, PA 16507-2202

FACILITY:  WQ/Sew/Tech
LOCATION:  Erie
COUNTY:    Erie

PERMIT NUMBER: PA0026301
DISCHARGE NUMBER: 101

MONITORING PERIOD

| | | YEAR | MO | DAY | | YEAR | MO | DAY |
|---|---|---|---|---|---|---|---|---|
| | (2-16) | (17-19) | | | (20-21) | (22-23) | (24-25) | |

NOTE: Read instructions before completing this form.

| Parameter (32-37) | | QUANTITY OR LOADING (54-61) | | | QUALITY OR CONCENTRATION (54-61) | | | NO. EX (62-63) | FREQUENCY OF ANALYSIS (64-68) | SAMPLE TYPE (69-70) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | (3 Card Only) (46-53) AVERAGE | MAXIMUM | UNITS | MINIMUM (4 Card Only) (38-45) | AVERAGE (46-53) | MAXIMUM (54-61) | UNITS | | |
| Flow | Sample Measurement | | | | | | | | | |
| | Permit Requirement | Monthly XX | | MGD | | | | | Continuous | Meas. Flow |
| BOD5 | Sample Measurement | 28,116 | 42,174 | Lbs/ day | | 49 | 73 | Mg/l | 3/Day | 8-Hr Comp |
| | Permit Requirement | | | | | | | | | |
| Total Suspended Solids | Sample Measurement | 40,048 | 60,073 | Lbs/ day | | 70 | 105 | Mg/l | 3/Day | 8-Hr Comp |
| | Permit Requirement | | | | | | | | | |
| Total Phosphorus (as P) | Sample Measurement | 572 | | Lbs/ day | | 1.0 | | Mg/l | 3/Day | 8-Hr Comp |
| | Permit Requirement | | | | | | | | | |
| Color | Sample Measurement | | | | | XX | XX | | 2/Year | Grab |
| | Permit Requirement | | | | | | | | | |
| pH | Sample Measurement | | | | 6.0 | | 9.0 | Std. Units | 3/Day | Grab |
| | Permit Requirement | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

I CERTIFY UNDER PENALTY OF LAW THAT I HAVE PERSONALLY EXAMINED AND AM FAMILIAR WITH THE INFORMATION SUBMITTED HEREIN AND BASED ON MY INQUIRY OF THOSE INDIVIDUALS IMMEDIATELY RESPONSIBLE FOR OBTAINING THE INFORMATION. I BELIEVE THE SUBMITTED INFORMATION IS TRUE, ACCURATE AND COMPLETE. I AM AWARE THAT THERE ARE SIGNIFICANT PENALTIES FOR SUBMITTING FALSE INFORMATION, INCLUDING THE POSSIBILITY OF FINE AND IMPRISONMENT. SEE 18 U.S.C. §1001 AND 33 U.S.C. §1319. (Penalties under these statutes may includes fines up to $10,000 and or maximum imprisonment of between 6 months and 5 years)

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE

| AREA CODE | NUMBER | | | DATE |
|---|---|---|---|---|
| | | | | YEAR | MO | DAY |

TYPE OR PRINT

COMMENT AND EXPLANATION OF ANY VIOLATIONS (Reference all attachments here)

XX = Monitor and Report

EPA FORM 3320-1 (Rev 9 - 88) previous edition maybe used    (REPLACES EPA FORM T -40 WHICH MAY NOT BE USED)    Page 1 of 1

NOTE: YOUR PERMIT WILL EXPIRE ON ___OCT 3 0 2006___ ; PLEASE SUBMIT YOUR RENEWAL APPLICATION BEFORE ___APR 3 0 2006___

OCT 3 0 2006

App. 43

NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM (NPDES)
**DISCHARGE MONITORING REPORT (DMR)**

FORM APPROVED.
OMB NO. 2040-0004.
Northwest Region Facsimile

PERMITTEE NAME ADDRESS (include
Facility Name / Location if different)

NAME: Eric Sewer Authority and the City of Erie
ADDRESS: 68 Port Access Road
Erie, PA 16507-2202

FACILITY: WQ/Sew/Tech
LOCATION: Erie
COUNTY: Erie

| PERMIT NUMBER (2-16) | | | | | DISCHARGE NUMBER (17-19) | | | |
|---|---|---|---|---|---|---|---|---|
| PA0026301 | | | | | 201 | | | |

| MONITORING PERIOD | | | | | | |
|---|---|---|---|---|---|---|
| YEAR (20-21) | MO (22-23) | DAY (24-25) | TO | YEAR (26-27) | MO (28-29) | DAY (30-31) |

NOTE: **Read instructions before completing this form**

| Parameter (32-37) | | (3 Card Only) (46-53) | QUANTITY OR LOADING (54-61) | | | (4 Card Only) (38-45) | QUALITY OR CONCENTRATION (54-61) | | | NO. EX (62-63) | FREQUENCY OF ANALYSIS (64-68) | SAMPLE TYPE (69-70) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | AVERAGE | MAXIMUM | UNITS | | MINIMUM | AVERAGE | MAXIMUM | UNITS | | | |
| Flow (MGD)* | Sample Measurement | | | | | | | | | | | |
| | Permit Requirement | Monthly XX | | MGD | | | | | | | Continuous | Meas. Flow |
| | Sample Measurement | | | | | | | | | | | |
| | Permit Requirement | | | | | | | | | | | |
| | Sample Measurement | | | | | | | | | | | |
| | Permit Requirement | | | | | | | | | | | |
| | Sample Measurement | | | | | | | | | | | |
| | Permit Requirement | | | | | | | | | | | |
| | Sample Measurement | | | | | | | | | | | |
| | Permit Requirement | | | | | | | | | | | |
| | Sample Measurement | | | | | | | | | | | |
| | Permit Requirement | | | | | | | | | | | |
| | Sample Measurement | | | | | | | | | | | |
| | Permit Requirement | | | | | | | | | | | |

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

I CERTIFY UNDER PENALTY OF LAW THAT I HAVE PERSONALLY EXAMINED AND AM FAMILIAR WITH THE INFORMATION SUBMITTED HEREIN AND BASED ON MY INQUIRY OF THOSE INDIVIDUALS IMMEDIATELY RESPONSIBLE FOR OBTAINING THE INFORMATION. I BELIEVE THE SUBMITTED INFORMATION IS TRUE, ACCURATE AND COMPLETE. I AM AWARE THAT THERE ARE SIGNIFICANT PENALTIES FOR SUBMITTING FALSE INFORMATION, INCLUDING THE POSSIBILITY OF FINE AND IMPRISONMENT. SEE 18 U.S.C. §1001 AND 33 U.S.C. §1319. (Penalties under these statues may includes fines up to $10,000 and or maximum imprisonment of between 6 months and 5 years)

| SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT | TELEPHONE | | | DATE | | |
|---|---|---|---|---|---|---|
| | AREA CODE | NUMBER | | YEAR | MO | DAY |

TYPE OR PRINT

COMMENT AND EXPLANATION OF ANY VIOLATIONS (Reference all attachments here)

*When Discharging.
XX = Monitor and Report

EPA FORM 3320-1 (Rev 9 - 88) previous edition maybe used    (REPLACES EPA FORM T -40 WHICH MAY NOT BE USED)    Page 1 of 1

NOTE: **YOUR PERMIT WILL EXPIRE ON** OCT 3 0 2006 **; PLEASE SUBMIT YOUR RENEWAL APPLICATION BEFORE** APR 3 0 2006

App. 44

NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM (NPDES)
**DISCHARGE MONITORING REPORT (DMR)**

FORM APPROVED.
OMB NO. 2040-0004.
Northwest Region Facsimile

PERMITTEE NAME ADDRESS (include Facility Name / Location if different)

NAME: Eric Sewer Authority and the City of Erie
ADDRESS: 68 Port Access Road
Erie, PA 16507-2202

FACILITY: WQ/Sew/Tech
LOCATION: Erie
COUNTY: Erie

PERMIT NUMBER: PA0026301
DISCHARGE NUMBER: 002

| Parameter (32-37) | | | QUANTITY OR LOADING (54-61) | | | QUALITY OR CONCENTRATION (54-61) | | | | NO. EX (62-63) | FREQUENCY OF ANALYSIS (64-68) | SAMPLE TYPE (69-70) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | AVERAGE | MAXIMUM | UNITS | MINIMUM | AVERAGE | MAXIMUM | UNITS | | | |
| Flow (MGD) | Sample Measurement | | | | MGD | | | | | | Continuous | Meas. Flow |
| | Permit Requirement | | Monthly XX | | | | | | | | | |
| Fecal Coliform* | Sample Measurement | | | | | | | | mg/l | | 3/Day | Grab |
| | Permit Requirement | | | | | | | | | | | |
| Total Residual Chlorine* | Sample Measurement | | | | | | | | mg/l | | 3/Day | Grab |
| | Permit Requirement | | | | | | | 1.6 | | | | |

(Fecal coliforms/100ml) – During the swimming season (May 1 through September 30), the maximum fecal coliform level shall be a geometric mean of 200 per 100 milliliters (ml) used on a minimum of five consecutive samples collected on different days during a 30 day period. No more than 10% of the total samples taken during a 30-day period may exceed 400 per 100 ml. For the remainder of the year, the maximum fecal coliform level shall be a geometric mean of 2,000 per 100 milliliters (ml) based on a minimum of five consecutive samples collected on different days during a 30-day period.

NAME/TITLE PRINCIPAL EXECUTIVE OFFICER

I CERTIFY UNDER PENALTY OF LAW THAT I HAVE PERSONALLY EXAMINED AND AM FAMILIAR WITH THE INFORMATION SUBMITTED HEREIN AND BASED ON MY INQUIRY OF THOSE INDIVIDUALS IMMEDIATELY RESPONSIBLE FOR OBTAINING THE INFORMATION, I BELIEVE THE SUBMITTED INFORMATION IS TRUE, ACCURATE AND COMPLETE. I AM AWARE THAT THERE ARE SIGNIFICANT PENALTIES FOR SUBMITTING FALSE INFORMATION, INCLUDING THE POSSIBILITY OF FINE AND IMPRISONMENT SEE 18 U.S.C. §1001 AND 33 U.S.C. §1319. (Penalties under these statutes may includes fines up to $10,000 and or maximum imprisonment of between 6 months and 5 years)

SIGNATURE OF PRINCIPAL EXECUTIVE OFFICER OR AUTHORIZED AGENT

TELEPHONE AREA CODE / NUMBER

DATE: MO ___ YEAR ___

TYPE OR PRINT

COMMENT AND EXPLANATION OF ANY VIOLATIONS (Reference all attachments here)

*When discharging.
XX = Monitor and Report
See Special Condition 4.

EPA FORM 3320-1 (Rev 9 - 88) previous edition maybe used    (REPLACES EPA FORM T-40 WHICH MAY NOT BE USED)    Page 1 of 1

NOTE: YOUR PERMIT WILL EXPIRE ON  OCT 3 0 2006 ; PLEASE SUBMIT YOUR RENEWAL APPLICATION BEFORE  APR 3 0 2006

App. 45

**Supplemental Discharge Monitoring Report (DMR) for
Combined Sewer Overflows**

Permittee Name Erie Sewer Authority & City of Erie___        Prepared By: _____

County Erie _____           Month: _____

Municipality Erie _____          Signature _____

NPDES # PA0026301 _____                   Date _____

Overflow Location: _____          Title/Position: _____

Outfall No. _____

| DATE | FLOW (mg)* | DURATION | CAUSE | COMMENTS |
|------|-----------|----------|-------|----------|
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |
|      |           |          |       |          |

Use one report form each month for each monitored overflow point; use separate sheets for additional comments or narrative explanations.

*Identify the method used to determine overflow volumes, (for example, 10 MG C):
O   =   Observed duration and rate of flow to approximate overflow volume.
C   =   Calculated overflow volume utilizing a model or empirical analysis.
M   =   Measured overflow volume from data collected by a calibrated flow monitor.

**App. 46**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION
WATER MANAGEMENT

| For Department Use Only |
|---|

**FACT SHEET**

| NAME OF APPLICANT | Erie Sewer Authority City of Erie | PROJECT LOCATION | City of Erie, Erie County | APPLICATION NUMBER | PA0026301 |
|---|---|---|---|---|---|

**BRIEF DESCRIPTION OF PROJECT AND DISCUSSION** (Use additional sheets if necessary)

This application is for renewal of a Part I (NPDES) Permit, for an existing discharge of treated sewage. This is a major discharge (SIC Code 4592).

The name and address of the applicant are as follows:

David Sterrett, Chairman
Erie Sewer Authority
120 West 10th Street
Erie, PA 16501

Mr. Douglas Mitchell
Assistant Director of Public Works
City of Erie
c/o Knox, McLaughlin, Gornall & Sennett, P.E.
120 West 10th Street
Erie, PA 16501-1461

The responsible officials are: David Sterrett, Chairman of the Erie Sewer Authority
Mr. Douglas Mitchell, Assistant Director of Public Works-City of Erie

The EPA Waiver is not in effect.

A PPC Plan is not required at this time.

## RECOMMENDATION AND ACTION

| Approve -Issue by Region | Approve - Issue By Central Office | Refuse | Signature | | Date |
|---|---|---|---|---|---|
| X | | | REVIEWING ENGINEER | David S Balog   DRAFT   8-17-2001   FINAL | |
| X | | | PERMITS SECTION CHIEF  M. J. (Acting) 10-31-01 | Robert P. Hutchin | 10/30/01 |
| X | | | ENVIRONMENTAL PROGRAM MANAGER | | 10-31-01 |

**PERMIT CONDITIONS:**
1. STANDARD --


2. SPECIAL  (Use additional sheets if necessary) -- See Permit Page 18.

**App. 47**

Erie Sewer Authority, City of Erie
City of Erie, Erie County
NPDES Permit No. PA0026301
Internal Review Page 2

Permit Requirements:

The draft discharge limitations are based on either Best Available Treatment (BAT) or Best Conventional Treatment (BCT) as defined by the promulgated effluent limitation guidelines, Best Professional Judgment (BPJ), Water Quality based on criteria in Chapter 93 (WQ-93), Water Quality based on criteria in the Department's Chapter 16 (CH-16), monitoring only (MO) in order to develop a firmer database for future evaluation, discharge standards based on Chapter 97 (Chapter 97), or other requirements as identified in a subnote to the outfall (subnote). The basis of the following permit limits are identified in the parenthesis beside each parameter.

River Mile Index ---        Stream Code Lake Erie

Lat:    42° 09' 38"    Long:  80° 02' 54" - Outfall 001 (Long)
Lat:    42° 09' 13"    Long:  80° 03' 39" - Outfall 001A (Short)

The proposed discharge limits are based upon a design average flow of 68.6 MGD.

| Parameters | Loadings (lb/day) | | Concentrations (mg/l) | | | Monitoring | |
| | Monthly Average | Average Weekly | Monthly Average | Average Weekly | Instant Maximum | Measurement Frequency | Sample Type |
|---|---|---|---|---|---|---|---|
| (MO) Flow (MGD) | XX | | | | | continuous | meas. |
| *(WQ-93)Total Residual Chlorine (Final) | | | 0.5 | | 1.6 | 3/day | grab |
| (WQ-93) Fecal Coliform | | | | | | | |
| (5/1-9/30) | | | 200/100ml as a geometric mean | | | daily | grab |
| (10/1-4/30) | | | 100,000/100ml as a geometric mean | | | daily | grab |

Samples taken at the following location(s): The junction chamber
XX - Monitor and Report

* The TRC final limit is being assigned in this re-draft from day 1 because it is believed the previous draft schedule of compliance is no longer applicable, as the treatment plant modifications are believed to be complete, and that was what the previous interim limit (monitoring) was based on.

Erie Sewer Authority, City of Erie
City of Erie, Erie County
NPDES Permit No. PA0026301
Internal Review Page 3

Suboutfall 101 – (Internal monitoring point for the main treatment plant waste stream)

The proposed discharge limits are based upon a design average flow of <u>68.6</u> MGD.

| Parameters | Loadings (lb/day) | | Concentrations (mg/l) | | | Monitoring | |
|---|---|---|---|---|---|---|---|
| | Monthly Average | Average Weekly | Monthly Average | Average Weekly | Instant Maximum | Measurement Frequency | Sample Type |
| (MO) Flow (MGD) | XX | | | | | continuous | Meas. |
| (BAT)BOD$_5$ | 28,116 | 42,174 | 49 | 73 | 98 | 3/day | 8-hr comp |
| (BAT) TSS | 40,048 | 60,073 | 70 | 105 | 140 | 3/day | 8-hr comp |
| (IJC) Phosphorus "P" | 572 | | 1.0 | | | 3/day | 8-hr comp |
| Color | | | | | XX | 2/year | grab |
| PH | | | Within limits of 6.0 to 9.0 std. Units at all times. | | | 3/day | grab |

Samples taken at the following location(s):  <u>Prior to mixing with Suboutfall 201</u>
XX - Monitor and Report

Suboutfall No. 201 (Effluent from the Overflow Retention Facility (ORF))

The proposed discharge limits are based upon a design average flow of <u>N/A</u> MGD.

| Parameters | Loadings (lb/day) | | Concentrations (mg/l) | | | Monitoring | |
|---|---|---|---|---|---|---|---|
| | Monthly Average | Average Weekly | Monthly Average | Average Weekly | Instant Maximum | Measurement Frequency | Sample Type |
| Flow (MGD)* | XX | | | | | continuous | meas. |

*when discharging.
See Special Condition 4.
XX - Monitor and Report

Erie Sewer Authority, City of Erie
City of Erie, Erie County
NPDES Permit No. PA0026301
Internal Review Page 4

Outfall No. 002 (Overflow Retention Facility overflow)     Lat:   42° 08' 32"    Long:  80° 04' 44"
The proposed discharge limits are based upon a design average flow of N/A MGD.

| | Loadings (lb/day) | | Concentrations (mg/l) | | | Monitoring | |
|---|---|---|---|---|---|---|---|
| Parameters (MO) | Monthly Average XX | Average Weekly | Monthly Average | Average Weekly | Instant Maximum | Measurement Frequency | Sampl Type |
| Flow (MGD)* | | | | | | continuous | meas. |
| Fecal Coliform* | | | # (Fecal coliforms/ 100 ml)—During the swimming season (May 1 through September 30), the maximum fecal coliform level shall be a geometric mean of 200 per 100 milliliters (ml) based on a minimum of five consecutive samples each sample collected on different days during a 30-day period. No more than 10% of the total samples taken during a 30-day period may exceed 400 per 100 ml. For the remainder of the year, the maximum fecal coliform level shall be a geometric mean of 2,000 per 100 milliliters (ml) based on a minimum of five consecutive samples collected on different days during a 30-day period. | | | 3/day | grab |
| TRC* | | | | | # 1.6 | 3/day | grab |

Samples taken at the following location(s):  After the ORF overflow emergency chlorine contact tank*
*when discharging.
See Special Condition 4.
XX - Monitor and Report

# The most recent $Bac_1$ standard from Chapter 93 (current through January 13, 2001) is added to the latest re-draft permit for the ORF overflow discharge to protect the Water Contact designated use in Chapter 93. The Total Residual Chlorine (TRC) I-Max limit is derived from the Chapter 92 0.5 mg/l BAT for TRC, converted to an instantaneous maximum using the "daily sampling" multipliers from EPA's Toxics Support Document (TSD).