12)  PA Historical Society – A "Cultural Resources Notice" has been submitted and comments have been received. No historical or archaeological sites were found. The comments are found in Appendix A-2.

C.  **Agency Concurrence**

Copies of the draft plan have been provided to the Erie County Planning Department, the PA Department of Environmental Protection, and the Erie County Health Department for comment. The alternates have been selected to comply with the Consent Agreement between the PA DEP and Millcreek Township and Sewer Authority. The comments are found in Appendix A-2. The Planning Department concurred without comment. The PA DEP made comments which have been addressed. The inconsistency regarding the 1972 Plan boundaries and the existing service boundary were resolved between Summit and the Great Lakes International Joint Committee so as to allow Great Lakes' water to be removed from the watershed by returning it used to the watershed via the sewer system. The flow agreement discrepancy relates to an interpretation of the source of flow and payment of penalties not sewer or treatment capacity exceedances. Capacity provided for Kearsarge flows has not been exceeded.

D.  **Applicable Water Quality standards**

No discharges to waters of the Commonwealth are contemplated by the alternates presented.

E.  **Cost Estimates**

Cost estimates are provided in Table S-8/XI-1 for the selected alternate options. The calculations of user costs, financing methods, implementation schedules and administrative organizations, and legal authority are found in the chapter on Alternate Selection/Justification. Cost estimates for all the alternates and for the proposed sewer construction and the household back water valves are found in Appendix A-4.

F.  **Funding Methods**

The funding method proposed is through general revenue bonds and increasing the user rates to retire the annual bond payment. Costs should be shared between Summit Township Sewer Authority and Millcreek Township Sewer Authority based on flow percentages each discharge to the station since capacity is needed to accept and properly handle existing storm water flows and future growth found in both municipalities. Since the primary factor effecting the expansion needs is peak flows, the peak flow proportions should determine the shares to be paid by each municipality. Normal or average peaks have produced 77% Millcreek and 23% Summit values. However, instantaneous peaks have been measured at 74% to 75% Millcreek and 26% to 25% Summit.

**App. 301**

**TABLE S-8 / XI-1**
**OPINION OF PROBABLE CONSTRUCTION COSTS**
**MILLCREEK TOWNSHIP SEWER AUTHORITY**
**KEARSARGE PUMP STATION**

| PHASE | ITEM | PHASE 1 | COST ESTIMATE | | | |
|---|---|---|---|---|---|---|
| | | | PHASE 2 | | | |
| | | | ABOVEGROUND | | BELOWGROUND | BELOWGROUND |
| | | | CAISSONS 500,000 gal. | SPREAD 500,000 gal. | 500,000 gal. | 1,000,000 gal. |
| 1 | Pump/Shaft/Motor (3) | $150,000 | | | | |
| | Variable Frequency Drives (1) (150 hp) | $15,000 | | | | |
| | Generator (Gas) | $160,000 | | | | |
| | SCADA | $25,000 | | | | |
| | Monitoring Equipment | $20,000 | | | | |
| | Odor Control | $210,000 | | | | |
| | **SubTotal Phase 1** | $580,000 | | | | |
| 2 | ORF Tank | | $400,000 | $400,000 | $580,000 | $780,000 |
| | ORF Foundation | | $550,000 | $100,000 | $550,000 | $750,000 |
| | ORF Pump Station Pumps | | | | | |
| | ORF Pump Station Controls | | | | | |
| | ORF Pump Station Piping | | $300,000 | $300,000 | $300,000 | $300,000 |
| | ORF Pump Station Valves | | | | | |
| | ORF Pump Station Structure | | | | | |
| | **SubTotal Phase 2** | | $1,250,000 | $800,000 | $1,430,000 | $1,830,000 |
| | **Contingency (30%)** | $170,000 | $380,000 | $240,000 | $430,000 | $550,000 |
| | **TOTAL** | $750,000 | $1,630,000 | $1,040,000 | $1,860,000 | $2,380,000 |

**OPINION OF TOTAL PROJECT COSTS**

| | PHASE 1 & 2 | | | |
|---|---|---|---|---|
| | ABOVEGROUND TANK | | BELOW GROUND TANK | |
| | CAISSONS | SPREAD | 500,000 | 1,000,000 |
| Construction Cost | 2,380,000 | 1,790,000 | 2,610,000 | 3,130,000 |
| Engineering Cost | 500,000 | 360,000 | 540,000 | 620,000 |
| TOTAL | 2,880,000 | 2,150,000 | 3,150,000 | 3,750,000 |

opconstructioncostskearsargepstableS-8.xl

**MSA-MT 2255**

**App. 302**

G.    **Immediate or Phased Implementation**

Pump Station Upgrade – It would be advantageous to make some additions to the station to upgrade it or improve its operation. Unfortunately the pump station upsizing proposals will impact the facilities sizing and placement and the upgrade must therefore progress with the pump station upsizing program. Some improvements have been identified and are proceeding or are completed. They are:

1)   Replacement and upsizing of the two existing variable frequency drives
2)   Purchase or location and reservation of a replacement motor for either pumps #1 or #2
3)   Replacement of air release valves on the force main
4)   Replacement of pump station discharge meter
5)   Installation of staff gage in the wet well to judge surcharge volumes

Other improvements that would be desirable to implement early would be the replacement of pump #3 with a larger pump equal or larger in capacity to #1 and #2 pumps and installation of an automatic transfer switch to switch power sources in the event of a power failure. The latter change was attempted but design found it impossible to implement with the existing generator. The replacement generator must be sized to match the future pumps and thus must wait (it should be noted that a power failure has never been documented to contribute to a surcharge and overflow). Similarly, replacement of pump #3 will require completion of design of replacement pumps if applicable.

Pump Station Upsize – Phasing is included in this alternate but only on a ten-year versus ultimate basis. Design of facilities is recommended for a ten-year projection providing contingencies for upgrading in the future depending on the results of various activities including but not limited to: I&I abatement, connection flow negotiations, and the accuracy of contingent peak flow estimates and selection. Contingencies include proceeding with a design which will allow for expansion of storage and pumps.

Tributary Sewers – Since surcharge problems exist in both the 18-inch Beaver Run sewer and the 10-inch Zimmerly Road sewer, MTSA has implemented construction of a 15-inch relief sewer for the 10-inch which will eliminate concern over surcharges due to sewer capacity (problems are still possible due to pump station surcharge). The 12-inch sewer on Peach serving Interchange Road diversion to the 24-inch. Costs should be minimal ($40,000) and it could effect immediate relief. Other changes, specifically the diversion of the Kuntz Road flows, should wait determination of the future need. This project will be more expensive ($300,000) and more complicated involving utility displacement, traffic interruptions, road bore, stream crossing, and property acquisition. The alternate requires a pump station and the Authority should begin searching for available land.

As stated, the Authority is implementing an I&I abatement project. This project should continue as its success could eliminate the need for future diversions and even eliminate

40

the need for future expansion of the Kearsarge pump station (requires elimination of 1,000 gpm or 1.4 MGD of I&I).

<u>Miscellaneous</u> – Regardless of the alternate selection the houses on 51st Street,Dixson Drive, and Enfield Lane will remain in danger of flooding since their basements' elevation are lower than the pump station ground elevation. Back flow preventers should be installed on the 39 houses identified without waiting the design of station changes and activity is proceeding to accomplish that goal.

H.   **Administrative Organization & Legal Authority**

MTSA has the necessary structure and legal authority to implement the project. Millcreek Township Supervisors will need to approve the financing for the proposed projects. The existing intermunicipal agreements between Summit (Authority and township) and Millcreek (Authority and township).

## XII.   INSTITUTIONAL EVALUATION

This chapter was excerpted from the "Act 537 Sewage Facilities Plan for Millcreek Township Sewer Authority, Erie County, Pennsylvania" - 2nd draft, December, 2003. Changes were made where necessary to make the chapter appropriate for this "Special Study."

A.   **Analysis of the Millcreek Township Sewer Authority**

1.   <u>Financial and Debt Status</u>

MTSA's financial and debt status, as reported in its 2002 and 2003 Annual Audit dated January 29, 2004, is found in Appendix B-6.

2.   <u>Available Staff and Administrative Resources</u>

MTSA has a documented track record of capability in planning, designing, financing and constructing sanitary sewer projects. Staff includes the following:

- Manager
- Technical Services Manager
- Engineering Assistant
- Financial Manager
- Clerical Support

**MSA-MT 2257**

**App.  304**

MTSA plans to retain the services of qualified engineering consultants to perform the detailed design and construction administration services required for these projects.

The Millcreek Township maintenance staff performs the operation and maintenance chores for the Authority's property. They inspect, clean, monitor, and maintain the station and equipment. They respond to emergencies and tend the station during emergencies. They are qualified and dedicated. They also have the necessary equipment and skills to maintain the facilities in excellent condition. They are well qualified to operate the upgrade station.

3.    Existing Legal Authority

a.    Implement Wastewater Planning Recommendations

As stated in Millcreek Township Ordinance 99-8, MTSA was established by Millcreek Township, pursuant to the Municipality Authorities Act of 1945 (Public Law 382), for the purpose of owning, acquiring, holding, constructing, improving, maintaining, and operating sewage systems within Millcreek Township. Per the Municipality Authorities Act, MTSA also has the authority to acquire rights in land through purchase or eminent domain.

b.    Implement System-wide Operation and Maintenance Activities

MTSA has the legal authority to implement system-wide operation and maintenance activities per Millcreek Township Ordinance 99-8.

c.    Set User Fees and Take Purchasing Actions

User fees are defined under Millcreek Township Ordinance 99-8 The ordinance states that the Millcreek Township Board of Supervisors shall review these rates at least once per year. The township sets and collects sewer revenues and operates the facilities under existing agreements. They provide the Authority with their operating cash.

The Millcreek Township Ordinance 99-8 also states that MTSA is designated by the Township to own, hold, construct, and improve the sanitary sewer system.

d.    Take Enforcement Actions Against Ordinance Violators

Section 1.12 of the Millcreek Township Ordinance 2002-23 defines unlawful acts. Section 1.11 states that the "Manager of the

42

Authority and the Township Engineer are vested with the authority to issue enforcement notices and commence actions for enforcement of this Ordinance."

e.    Negotiate Agreements with Other Parties

The Municipality Authorities Act of 1945 allows an Authority to enter into contracts and agreements necessary and convenient to carry on its business.

f.    Raise Capital for Construction and Operation and Maintenance of Facilities

As defined under Millcreek Township Ordinance 99-8, MTSA leases its sanitary sewer system back to the Township and authorizes the Township to assess and collect use charges to defray the costs of construction, operation and administration of the sanitary sewer system. Under the ordinance, rate increases to increase capital reserves or repay loans must be established by the Township Board of Supervisors. Thus, any borrowing for construction must be approved by the township supervisors to assure creditors that money will be available to pay debts.

B.    **Analysis of Institutional Alternatives for Implementation**

1.    Need for New Municipal Departments or Municipal Authorities

Implementation of the technical alternatives proposed in this Act 537 Special Study does not require new municipal department or authorities. Additional MTSA staff may be required if a Sewage Management Program is ultimately implemented.

2.    Functions of Existing and Proposed Organizations

No changes in the functions of either the MTSA or the Millcreek Township Board of Supervisors will be necessary to implement the proposed actions under this Act 537 Special Study.

3.    Cost of Administration, Implementability, and the Capability of the Authority to React to Future Needs

MTSA currently has sufficient capital reserves to cover the cost of administration of the technical alternatives discussed in the Plan. Implementation of the Plan will be funded through combination of tap-in fees and other funding mechanisms paid through user fees.

**MSA-MT 2259**

**App. 306**

C.    **Necessary Administrative and Legal Activities**

    1.    Incorporation of Authorities or Agencies

MTSA is a municipal authority established under the Municipal
Authorities Act of 1945, P.L. 382, with all of the necessary legal authority
to implement the technical alternatives recommended under this Act 537
Plan Update.

    2.    Development of All Required Ordinances, Regulations, Standards and
Intermunicipal Agreements

The implementation of the technical alternatives recommended under this
Act 537 Plan Update do not require the development of additional
ordinances, regulations, standards, or intermunicipal agreements, except
those that may be required as part of a Sewage Management Program.

There is an existing municipal agreement between Millcreek Township
and its Sewer Authority and Summit Township and its Sewer Authority
dated July 5, 1994. That agreement in paragraph 10 requires all
municipalities to participate in any project they share flow in which is
required by any state or federal governmental agency. For projects not
mandated they must be mutually agreed upon. The overflow abatement
portion of this project is required by the PA DEP but the growth aspects
are not. Thus, Summit Township Sewer Authority must agree to the
project.

Paragraph 10 also specifies that all municipalities using the sewers or
sewage facilities will participate in the costs.

The financing of the project is also covered in the agreement in paragraph
11 which requires Summit to participate in the financing and paragraph
11a states that the design shall be based on peak flows determined by each
municipality (Summit commitment is found in Appendix 7. The peak
flows shall be added to the then existing peak flows and become the total
sewage flow in the improved project.

Paragraph 11c requires each party to pay a percentage of the actual project
using the ratio of anticipated sewage flows through their respective
portions of the improved Joint Transporting System. Both communities'
sewage flows through the facilities included in the pump station
improvements.

3.  Description of Activities to Provide Right-of-Way, Easements, and Land Transfers

MTSA has sufficient authority to acquire any of the right-of-ways necessary to implement this Act 537 Plan Update through either the purchase of easements or through eminent domain. Land need for construction of the study alternates are under Authority or township ownership with the possible exception of the routing of any force main work.

4.  Adoption of Other Municipal Sewage Facilities Plans

This Act 537 Special Study will, after adoption by the Millcreek Township Board of Supervisors, be an amendment to the existing Millcreek Township Act 537 Plan. There are no requirements to adopt other municipal sewage facilities plans under this Act 537 Special Study.

5.  Any Other Legal Documents

MTSA is unaware of requirements to develop and/or adopt other legal documents under this Act 537 Special Study.

6.  Dates or Time Frames for Items 1-5 Above on the Project's Implementation Schedule

There are no actions required to fulfill Items 1-5 above once the Summit Township Sewer Authority and township agree to participate in the project.

D.  **Institutional Requirements for Implementation**

MTSA is the proposed institutional alternative for implementing the chosen technical alternatives discussed in this Act 537 Plan Update. The MTSA is an existing Authority with the administrative, organizational, and legal authority to continue to oversee public wastewater within Millcreek Township.

## XIII.  SELECTED TECHNICAL ALTERNATIVE DESCRIPTION, JUSTIFICATION, AND FINANCING & INSTITUTIONAL SELECTIONS

A.  **Description**

The MTSA has voted to pursue alternate A using the 10-year projection for contingency flows resulting from a 1-year frequency storm ($\approx 0.9$"/hour). The appurtenant construction included follows: station upgrade to include duplicate facilities; phased sewer relief; back flow preventers in potential flooding areas

**MSA-MT 2261**

under catastrophic failures; continued I&I abatement to minimize future construction requirements and provide reserve capacity in receiving sewers. Contingency recommendations include: using storage tanks where capacity can be expanded without foot print changes; investing in structural additions to allow the storage tank to be increased in height or for a second tank nearby. Minimizing aesthetic impact to the extent possible (location, height, etc.); and allowing for all pumps to operate together to allow for increased forward and storage flow to address possible extreme weather conditions.

The proposed construction includes:

1) Replacement of existing pumps with three new variable frequency controlled pumps with a capacity of 4,500 gpm forward with two pumps operating at 135 ft. total head

2) 500,000 gallon glass-coated steel tank (80 ft. diameter, 15 ft. high with dome roof, dormer, stairs, platform and water cannons for cleaning)

3) Self-contained submersible pump station, three pumps (2,500 gpm with two operating @ 30 ft. of head)

4) New generator gas operated, sized to operate three 150 Hp pumps and two 75 Hp pumps

5) Pump station upgrade features:

   a. Auto transfer switch
   b. SCADA
   c. Odor Control
   d. Ancillary features (panels, lighting, rain gage, etc.)

6) Sewers – diversion, backflow preventers, I&I abatement

B.  **Justification**

1.  Existing Wastewater Disposal Needs

The proposed plan will enable the elimination of the overflow and manhole pumping required by the Consent Order and Agreement and allow the waste to be pumped forward to the Erie Wastewater Treatment Plant at the proposed contingency peak flow event of a one-year storm during a wet saturated condition. It will enable service to existing residential units both in Summit and Millcreek which have been demonstrated by separate studies to be served with malfunctioning onlot systems.

**MSA-MT 2262**

46

**App. 309**

We conclude that a conceptual design which uses as a design flow a 1-year occurrence frequency storm based on old NOAA storm frequencies * (0.9 inch/hour; 1.05 inch/2 hour; 1.22 inch/3 hour; and 2.1 inch/24-hour) during the cooler months is adequate protection during those months.

Further it has been demonstrated that such a design will more than compensate for a 50 to 25-year storm occurring in the warmer months (May through November). However, the concern is that a sustained rain during the warmer months could saturate the soils leaving the station susceptible to a higher probability of being subjected to a less frequent high intensity storm. Provision to use standby pumping facilities to address such an extreme event will be included.

2.    Future Wastewater Disposal Needs

The proposed facilities are sized to handle the ten-year growth in Millcreek and Summit and to be easily expandable to encompass the ultimate growth flows by forward pumping or storage if I&I abatement efforts do not eliminate the need.

*    New NOAA frequencies do not give a 1-year frequency storm

3.    Operation & Maintenance Considerations

The proposal will not increase the number of facilities needing service and it will simplify operation and maintenance by automating the emergency generator operation; eliminating the need to manually attend the station and tributary sewer manholes during high flow events (minimizing alarms); replacing aging equipment; and reduction of odors and basement flooding. It will increase power requirements, complicate control commands, and increase the number and size of facilities required to be maintained, particularly the control equipment. There should be no net change in the township maintenance employees' duties but will require more contract activity to maintain electronic and control equipment. The MTSA and township technical and operating personnel will be responsible for the O&M requirement. The changes can be accommodated with the existing staff.

Additional discussion of the conceptual operation of the pump station upgrade is found in Appendix A-5.

4.    Cost Effectiveness

The proposed alternate is not the least costly (Alternate B is) but it is the most effective. It recognizes the forward flow limitations; and minimizes storage requirements to optimize esthetic and expandability capabilities. It

**MSA-MT 2263**

allows for the greatest adaptability at the end of ten years. If more capacity is needed, either storage or forward pumping can be increased. If storage capacity provided is excessive at the end of the I&I abatement effort, storage could be used for flow equalization if downstream flows need reduced or could be sold to Summit if their ultimate flows exceed 3.9 MGD in lieu of their promised use of an ORF in the township.

5.    Available Management & Administrative Systems

No new management or Administrative Systems will be required.

6.    Available Financing Methods

The only method available is sewer revenue bonds. The Authority would float the bonds but the township would be required to raise rates to fund them. Since Summit Township would be responsible for approximately 27% of the cost of facilities (2014 usage) they likewise will be required to raise rates if they choose to participate in the MTSA bond issue. The Summit share is based on 24% (Table VIII-5 / XIII-1) of the existing peak flows and flow increases to 2014 from Table S-3 / IX-1 / X-2 [(0.24 x 6400 + 320) ÷ 6840 = 27%].

7.    Environmental Soundness

The program will eliminate existing untreated wastewater overflows basement flooding, and septic tank malfunctions. It will equalize downstream flows reducing instantaneous treatment needs and sewer capacity needs. It is concluded that the proposed construction is both environmentally sound and meets the goals of natural resource planning and preservation programs.

The proposed tank location and sizing will meet residential zoning requirements for height (40 ft.), setbacks, and lot coverage (Appendix B-1).

The tank will also be located so as to shield its south, north, and east elevations from view utilizing a 10 foot embankment and tree screening on the north, 20 foot+, embankment and tree screening on the east, and Walnut Creek embankments and tree screening on the south. There is residential units to the northwest, northeast, and north along the north side of Zimmerly Road. No residence s are found on the south side of Zimmerly in this area. A computer generated visualization of the tank is found in Figure XIII-a and further discussion is found in Appendix A-3.

**MSA-MT 2264**

App. 311

**TABLE VIII-5 / XIII-1**

**COMPARISON OF KEARSARGE METERS**

| | OCT '03 % | NOV '03 % | DEC '03 % | JAN '04 % | FEB '04 % | MAR '04 % | APR '04 % | AVG % |
|---|---|---|---|---|---|---|---|---|
| **K1 as a % of ∑K  (10")** | | | | | | | | |
| All Dates | 20 | 18 | 17 | 16 | 18 | 17 | | |
| High Flow | 22 | 16 | 18 | - | 16 & 20 | 18 | | |
| | | | | | | | | |
| **K2 as a % of ∑K  (18")** | | | | | | | | |
| All Dates | 58 | 58 | 63 | 62 | 59 | 62 | | 60.3 |
| High Flow | 57 | 67 | 64 | - | 61 & 50 | 63 | | 60.3 |
| | | | | | | | | |
| **K3 as a % of ∑K  (24')** | | | | | | | | |
| All Dates | 22 | 24 | BAD | 21 | 22 | 21 | | 22 |
| High Flows | 22 | 18 | DATA | - | 22 & 25 | 19 | | 21.2 |
| | | | | | | | | |
| **S1 as a % of ∑K** | | | | | | | | |
| All Dates | 22 | 22 | 23 | 22 | 25 | 25 | | 23.2 |
| High Flow | 21 | 24 | 23 | - | 22 & 29 | 25 | | 24 |
| | | | | | | | | |
| **K3 as a % of S1** | | | | | | | | |
| All Dates | 102 | 107 | BAD | 96 | 90 | 85 | | 96 |
| High Flow | 102 | 75 | DATA | - | 99 & 85 | 76 | | 87.4 |
| From Plots | 99 | 102 | | 94 | 88 | 84 | | 93.4 |
| | | | | | | | | |
| **K4 as a % of K2** | | | | | | | | |
| All Dates | 18 | 17 | 18 | 17 | 17 | 17 | | 17.3 |
| High Flows | 18 | 23 | 21 | - | 18 | 26 | | 21.2 |

Note:  K1 - Zimmerly Road Sewer
       K2 - Beaver Run Sewer
       K3 - Mall Sewer
       K4 - Beaver Run Extension
       S-1 - Summit Meter

comparisonofkearsargemeters.xl

**MSA-MT 2265**

**App. 312**

## C.    Capital Financing Plan

Assuming a 20-year bond issue financed at 5% the annual costs for a project costing between 2.15 and 2.88 million dollars (Table S-3/IX-1/X-2 on page 24) will equal between $172,000 and $230,000.  If the cost is divided among the existing users (Millcreek, 28,599 and Summit 2,562) the quarterly rate increase for Millcreek (73% of total cost) will be between $1.10 and $1.47 and for Summit (27% of total cost) will be between $4.53 and $6.06.  There is no backup financing plan.

Future costs for expansion of the station to allow for ultimate flows will be based on the 1994 agreement.  At that time participation in the original bond issue will be reviewed to determine if the percentages need adjusted to reflect changes in peak flow rates.

Costs for relief sewer or diversion construction recommended for immediate implementation and the installation of back water valves are the responsibility of the Millcreek Township Sewer Authority.  The ultimate relief of the Interchange Road sewer if needed is believed will be the responsibility of Summit Township but will need to be resolved under the agreement when it becomes necessary.  Cost estimates are found in Appendix A-4.

**App. 313**

JUNE 2004 – MTSA – KEARSARGE PUMP STATION
OVERFLOW RETENTION FACILITY (ORF)

15 ft

MSA-MT 2267

App. 314

Figure XIII-a

# **APPENDICES**

## **APPENDIX A-1 through A-5**

# APPENDIX A-1

# MUNICIPAL RESOLUTIONS

# APPENDIX A-1

## CONTENTS

- Millcreek Township Resolution #2004-R-27 adopting the Special Study as a revision to its Act 537 Plan

- Summit Township Resolution #2004-16 adopting the Special Study as a revision to its Act 537 Plan

- Millcreek Township Sewer Authority Resolution #2004-07 adopting the Special Study as its plan for the upgrade and expansion of the Kearsarge pump station

- Summit Township Sewer Authority Resolution #2004-2 concurring with the Special Study recommendations

- Erie County Department of Planning letter dated June 9, 2004, finding the "Special Study" generally consistent with the County's Community Facilities and Utilities Plan

**MSA-MT 2270**

## RESOLUTION 2004-R-27

**A Resolution to approve a Special Study for expansion and upgrade of the Kearsarge Pump Station as an amendment to the Millcreek Township Act 537 official plan subject to approval by the Pennsylvania Department of Environmental Protection.**

**WHEREAS,** Section 5 of the Pennsylvania Sewage Facilities Act, Act of January 4, 1966, P.L. 1535, No. 537, known as the Pennsylvania Sewage Facilities Act as amended, and the rules and regulations of the Pennsylvania Department of Environmental Protection ("PaDEP") adopted thereunder in Chapter 71 of the Pennsylvania Code, require a municipality to adopt an Official Sewage Facilities Plan ("Act 537 official plan") providing for sewage services adequate to prevent contamination of waters and/or environmental health hazards with sewage wastes, and to revise said plan whenever it is necessary to meet the sewage disposal needs of the municipality; and

**WHEREAS,** Millcreek Township and the Millcreek Township Sewer Authority ("Sewer Authority") have prepared a Special Study for the Expansion and Upgrade of the Kearsarge Pump Station, which provides for sewage facilities in Millcreek Township which will accept and transport both Millcreek Township and Summit Township sewage flows; and

**WHEREAS,** this Special Study was required to abate periodic overflows from the Kearsarge Pump Station during high flows associated with wet weather events; and

**WHEREAS,** the alternative of choice to be implemented is increased forward pumping capacity and retention of peak flow above pumping capacity, with key implementation activities including complete design within nine (9) months after approval of the Special Study by PaDEP; complete construction within eighteen (18) months after issuance by PaDEP of a permit for such work and abandonment of the overflow within thirty (30) days after completion of construction; and

**WHEREAS,** an agreement exists between Summit Township Sewer Authority and Millcreek Township and the Sewer Authority defining participating requirements and cost sharing percentages; and

**WHEREAS,** the Summit Township Sewer Authority has agreed to the future flow projections used in the Special Study through an acknowledgment dated March 29, 2004 of the March 25, 2004 letter of the consultant for the Sewer Authority, which outlined flows of 2.762 MGD for 2014 and 3.9 MGD for ultimate flows from Summit Township; and

**WHEREAS**, the Board of Supervisors finds that the Special Study described above conforms to applicable zoning, development and other municipal ordinances and plans and is a comprehensive program of pollution control and water quality that is needed for Millcreek Township and the Sewer Authority to provide continued service to both Millcreek Township and Summit Township in accordance with their Official Sewage Facilities Plans and the 1994 Joint Transporting Agreement between Millcreek, Summit and Fairview Townships.

**IT IS HEREBY RESOLVED** by the Board of Supervisors of Millcreek Township, Erie County, Pennsylvania as follows:

1.     The Special Study recommendation for expansion and upgrade of the Kearsarge Pump Station as described above is hereby adopted as a revision to the Township's Act 537 Official Plan, subject to its approval by PaDEP.

2.     Upon adoption of this Resolution, the Township and/or the Sewer Authority shall submit the Special Study to PaDEP for its review and approval.

3.     The Board of Supervisors by adopting this Special Study assures PaDEP that the Township will complete in timely manner implementation of the said revision of the Act 537 Official Plan as required by law upon its approval and issuance of necessary permits by PaDEP.

4.     The Chair of the Board and the Township Secretary are authorized to sign and attest all documents necessary to effectuate this Resolution.

**ADOPTED** this 15th day of June, 2004.

**MILLCREEK TOWNSHIP SUPERVISORS**

_____
Joseph S. Kujawa

_____
Brian P. McGrath

_____
Lawrence G. Curtis

2004R-27/MLK/RES

2

**SUPERVISORS**

*LAWRENCE G. CURTIS*
*JOSEPH S. KUJAWA*
*BRIAN P. MCGRATH*



3608 WEST 26TH STREET
ERIE, PA 16506-2037
TELEPHONE: 814-833-1111
FAX: 814-833-8336

I hereby certify that this is a true and correct copy of Resolution 2004-R-27

approved by the Millcreek Township Board of Supervisors at their meeting held

on June 15, 2004.

*Phyllis A. Vollbrecht*

**Phyllis A. Vollbrecht**
**Assistant Secretary**
**June 15, 2004**



**MSA-MT 2273**

**App. 320**

**SUMMIT TOWNSHIP BOARD OF SUPERVISORS
ERIE COUNTY, PENNSYLVANIA
RESOLUTION FOR PLAN REVISION
2004-16**

Resolution of the Board of Supervisors of Summit Township, Erie County, Pennsylvania.

WHEREAS, Section 5 of the Act of January 24, 1966, P.L. 1535, No 537, known as the "Pennsylvania Sewage Facilities Act", as amended, and the Rules and Regulations of the Department of Environmental Protection (Department) adopted thereunder, Chapter 71 of title 25 of the Pennsylvania Code, requires the municipality to adopt an Official Sewage Facilities Plan providing for sewage services adequate to prevent contamination of waters and/or environmental health hazards with sewage wastes and to revise said plan whenever it is necessary to meet the sewage disposal needs of the municipality and

WHEREAS, Millcreek Township and Millcreek Township Sewer Authority have prepared a Special Study for the expansion and upgrade of the Kearsarge Pump Station and which Study also provides for additional sewage facilities in Millcreek Township which will accept and transport sewage flow from both Millcreek and Summit Townships.

The improvements recommended by this study are necessary to abate periodic overflows from the station during high sewer system flow associated with wet weather events.

The recommended alternative to be implemented by Millcreek Township consists of increased forward pumping capacity and the retention of peak system flow greater than the forward pumping capacity. Under the alternative of choice, Summit Township receives 1,909 gallons per minute (gpm) peak flow conveyance capacity at the Kearsarge Pumping Station. This represents approximately 28 percent of the projected 2014 design peak flow of 6,840 gpm. Summit Township ultimately receives 2709 gpm peak capacity at the Kearsarge Station which represents approximately 35 percent of the projected ultimate peak design flow of 7,773 gpm. The key implementation activities/dates include complete design; nine (9) months after Special Study approval by the PA DEP and complete construction eighteen (18) months after permit issuance. The overflow is to be abandoned thirty (30) days after completing construction.

WHEREAS, Summit Township finds that the Special Study described above conforms to applicable zoning, subdivision, other municipal ordinances and plans and to a comprehensive program of pollution control and water quality management and is needed to enable Millcreek Township to provide wastewater conveyance service to Summit Township in accordance with Summit's Official Sewage Facilities Plan and the 1994 Joint Transporting Agreement with Millcreek Township.

**MSA-MT 2274**                                          **App. 321**

NOW, THEREFORE, BE IT RESOLVED that the Supervisors of the Township of Summit hereby adopt as a revision to the "Official Sewage Facilities Plan of Summit Township and approve for submission to the Pennsylvania Department of Environmental Protection (DEP) for its approval, the above referenced Special Study.  Summit Township hereby assures DEP of its complete and timely participation in the implementation of recommendations within the said Special Study in accordance with the existing Joint Transporting Agreement, as required by law. (Section 5, Pennsylvania Sewage Facilities Act as amended).


_____
Thomas H. Church, Jr., Supervisor


_____
Marlin K. Coon, Supervisor


_____
Shirley A. King, Supervisor


I, Shirley A. King, Secretary, Summit Township Board of Supervisors hereby certify that the foregoing is a true copy of Township Resolution No. 2004-16, adopted June 7, 2004 at a duly advertised meeting of the Board of Supervisors.


_____
Shirley A. King, Secretary                                    S E A L

sak 06-07-04

## MILLCREEK TOWNSHIP SEWER AUTHORITY

### RESOLUTION FOR
### KEARSARGE PUMP STATION UPGRADE
### SPECIAL STUDY PLAN ADOPTION

### RESOLUTION 2004-07

### RESOLUTION OF THE MILLCREEK TOWNSHIP SEWER AUTHORITY OF MILLCREEK TOWNSHIP, ERIE COUNTY, PENNSYLVANIA (HEREINAFTER " the authority").

WHEREAS, Section 5 of the Act of January 24, 1966, P.L. 1535, No. 537, known as the "Pennsylvania Sewage Facilities Act," as amended, and the Rules and Regulations of the Department of Environmental Protection (Department) adopted thereunder, Chapter 71 of Title 25 of the Pennsylvania Code, requires municipalities to adopt an Official Sewage Facilities Plan providing for sewage services adequate to prevent contamination of waters and/or environmental health hazards with sewage wastes, and to revise said plan whenever it is necessary to meet the sewage disposal needs of the municipality, and

WHEREAS, Millcreek Township and Millcreek Township Sewer Authority has prepared a Special Study for the Expansion and Upgrade of the Kearsarge Pump Station which provides for sewage facilities in Millcreek Township which will accept and transport both Millcreek Township and Summit Township sewage flows.

This study was necessitated to abate periodic overflows from the station during high flows associated with wet weather events.

The alternative of choice to be implemented is increased forward pumping capacity and retention of peak flow above pumping capacity. The key implementation activities/dates include complete design: nine (9) months after Special Study approval by the PA DEP and complete construction eighteen (18) months after permit issuance. The overflow is to be abandoned thirty (30) days after completing construction.

WHEREAS, Millcreek Township Supervisors have adopted the Special Study as a revision to the township's Official Plan

WHEREAS, an Agreement exists between Summit and Millcreek defining the participation requirements and cost sharing percentages.

1

MSA-MT 2276

App. 323

WHEREAS, Summit Township Sewer Authority has agreed to the future flow projections used in the Special Study through an acknowledgement, dated March 29, 2004, of Millcreek Township Sewer Authority's consultant's letter of March 25, 2004, outlining flows of 2.762 MGD for 2014 and 3.9 MGD for ultimate flows from Summit.

WHEREAS, Summit Township Sewer Authority, by letter of June 7, 2004, indicated the Authority concurs with the "plan recommendation" and agreed in that letter to pay their "fair share of costs for improvements."

WHEREAS, Millcreek Township Sewer Authority finds that the Special Study described above is needed for Millcreek Township Sewer Authority to provide continued service to both Millcreek Township and Summit Township in accordance with Millcreek's and Summit's Official Sewage Facilities Plans and the 1994 Joint Transporting Agreement between Millcreek, Summit, and Fairview Townships.

NOW, THEREFORE, BE IT RESOLVED that the Millcreek Township Sewer Authority hereby adopts the above referenced Special Study Recommendations as its plan for the upgrade and expansion of the Kearsarge pump station in accordance with the implementation schedule found in the plan and in the Consent Order and Agreement with the PA DEP.

I, _____GEORGE W. RIEDESEL_____, Secretary,

Millcreek Township Sewer Authority hereby certify that the foregoing is a true copy of

the Authority's Resolution No. _2004-05_, adopted ____June 17, 2004____.

AUTHORIZED SIGNATURE

_George H. Riedesel_
Secretary

2

2004-2
RESOLUTION
FOR
KEARSARGE PUMP STATION UPGRADE
SPECIAL STUDY
PLAN ADOPTION

RESOLUTION OF THE SUMMIT TOWNSHIP SEWER AUTHORITY OF SUMMIT
TOWNSHIP, ERIE COUNTY, PENNSYLVANIA (HEREINAFTER "SUMMIT
AUTHORITY").

WHEREAS, Section 5 of the Act of January 24, 1996, P.L. 1535, No. 537, known as the
"Pennsylvania Sewage Facilities Act," as amended, and the Rules and Regulations of the Department
of Environmental Protection (Department) adopted thereunder, Chapter 71 of Title 25 of the
Pennsylvania Code, requires municipalities to adopt an Official Sewage Facilities Plan proving for
sewage services adequate to prevent contamination of waters and/or environmental health hazards
with sewage wastes, and to revise said plan whenever it is necessary to meet the sewage disposal
needs of the municipality, and

WHEREAS, Millcreek Township and Millcreek Township Sewer Authority has prepared a Special
Study for the Expansion and Upgrade of the Kearsarge Pump Station which provides for sewage
facilities in Millcreek Township which will accept and transport both Millcreek Township and
Summit Township sewage flows.

This study was necessitated to abate periodic overflows from the station during high flows
associated with wet weather events.

The alternative of choice to be implemented is increased forward pumping capacity and retention of
peak flows above pumping capacity. The key implementation activities/dates include complete
design: nine (9) months after Special Study approval by the PA DEP and complete construction
eighteen (18) months after permit issuance. The overflow is to be abandoned thirty (30) days after
completing construction.

WHEREAS, Summit Township Supervisors have adopted the Special Study as a revision to the
Township's Official Plan pending concurrence with the Special Study's recommendations by the
Summit Township Sewer Authority.

WHEREAS, an Agreement exists between Summit and Millcreek defining the participation
requirements and cost sharing percentages and Millcreek and Summit Authorities have agreed to
revisit the agreement to clarify the definition of cost sharing terms to be more appropriate to the
selected pump station upgrade concept.

WHEREAS, the Millcreek Township Sewer Authority has agreed by letter dated June 15, 2004, to
revisit the study to address the remaining concerns expressed by the Summit Authority in a letter
dated June 7, 2004.

**MSA-MT 2278**

WHEREAS, Summit Township Sewer Authority finds that implementation of the Special Study recommendations described above is needed for Millcreek Township Sewer Authority to provide continued service to both Millcreek Township and Summit Township in accordance with Millcreek's and Summit's Official Sewage Facilities Plans and the 1994 Joint Transporting Agreement between Millcreek, Summit, and Fairview Townships.

NOW, THEREFORE, BE IT RESOLVED that the Summit Township Sewer Authority hereby concurs with the above referenced Special Study Recommendations and agrees to pay for its fair share of the improvements needed for the upgrade and expansion of the Kearsarge pump station in accordance with the implementation schedule found in the plan and in the Consent Order and Agreement with the PA DEP.

I, _____ Cloyd J. Rose _____, Secretary, Summit Township

Sewer Authority, hereby certify that the foregoing is a true copy of the Authority's Resolution

No. __2__, adopted _____ June 23 ____, 20 __04__.

AUTHORIZED SIGNATURE

_Cloyd J Rose_

**MSA-MT 2279**



CTEE, INC
JUN 10 2004
RECEIVED

**COUNTY OF ERIE**
**DEPARTMENT OF PLANNING**
ERIE COUNTY COURT HOUSE
140 WEST SIXTH STREET – ROOM 119
ERIE, PENNSYLVANIA 16501
Phone: (814) 451-6336
FAX: (814) 451-7000
TDD: (814) 451-7065
http://www.eriecountyplanning.org

RICK SCHENKER
COUNTY EXECUTIVE

JANET ANDERSON
DIRECTOR

June 9, 2004

Gerald C. Allender, P.E.
Project Manager
CTE Engineers
155 West 8th Street
Erie, PA 16501

RE:    Act 537 Notification
       Act 247 Review

Millcreek Township, Erie County, PA
Act 537 Special Study:  June, 2004

Dear Mr. Allender:

With this letter, this Department is acknowledging the receipt of the above-referenced project under Act 537 notification.

Under Act 247 review, this Department has reviewed the above-referenced project. We find that it is generally consistent with the Erie County Community Facilities and Utilities Plan.

Should you have any questions, please feel free to contact me.

Sincerely,

Matthew T. Trepal
Planner IV

**MSA-MT 2280**

**App. 327**

# APPENDIX A-2

# PUBLIC NOTICE, PRESENTATIONS, COMMENTS & RESPONSES

# APPENDIX A-2

## CONTENTS

- A copy of the Oath of Publication for the Special Study Public Advertisement published on May 26, 2004

- March 24, 2004 letter from Consoer Townsend Envirodyne Engineers countersigned by Summit Township Sewer Authority indicating concurrence with the population and flow projection used for Summit

- June 9, 2004 letter from Pennsylvania Natural Diversity Inventory that no species of special concern are known to exist in the project area. The request is attached to the letter

- June 10, 2004 letter from the Pennsylvania Historical & Museum Commission finding no national register eligible or listed historic or archaeological properties in the area of the proposed project. A copy of the notice is attached.

- Summit Township Sewer Authority letter dated June 3, 2004, to Summit Township.

- Summit Township Sewer Authority letter dated June 7, 2004, to Consoer Townsend Envirodyne Engineers commenting on the plan and denoting approval of the concept and agreeing to pay fair share

- June 15, 2004 Consoer Townsend Envirodyne Engineers letter to Summit Township Sewer Authority transmitting Millcreek Township Sewer Authority responses to their comments

- Memorandum on Special Study presentation to Summit Township on June 7, 2004

- Study presentation packet

- Letter from Summit Township Sewer Authority dated June 17, 2004, recommending the township adopt the plan

- Letter from the PA DEP dated June 22, 2004, commenting on the study

- Listing of Study Presentations

- Listing of Comments & Responses

**MSA-MT 2282**

OATH of PUBLICATION
In
THE ERIE TIMES-NEWS

COMBINATION EDITION

-----------------------------------------------------------------------

MILLCREEK TWP SEWER AUTHORITY
3608 WEST 26TH STREET
ERIE PA  16506-2037


REFERENCE: L0002200
        0000508184 PUBLICADVERTISEMENTT

STATE OF PENNSYLVANIA)
COUNTY OF ERIE        )    SS:

James E. Dible being duly sworn, deposes and says
that he is the Publisher of the Times Publishing
Company, which publishes: the
Erie Times-News, established October 2,2000, a
daily newspaper of general circulation, successor,
by consolidation, of the Morning News, established
January 1957, and
the Erie Daily Times, established April 1888,
daily newspapers of general circulation, and
published at Erie, Erie County, Pennsylvania, and
that the notice of which the attached is a copy
published, in the regular editions of said
newspaper of the dates referred to below.
Affiant further deposes that he is duly authorized
by the TIMES PUBLISHING COMPANY, publisher of The
Erie Times-News to verify the foregoing statement
under oath, and affiant is not interested in the
subject matter of the aforesaid notice or
advertisement, and that all allegations in the
foregoing statement as to time, place and
character of publication are true.

PUBLISHED ON: 05/26


TOTAL COST:     143.65              AD SPACE: 59 LINE
FILED ON:       05/26/04

-----------------------------------------------------------------------

Sworn to and subscribed before me this
26th day of May 2004   Affiant: _James E. Dible_

NOTARY: _Marycath Swoger_

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Marycath Swoger, Notary Public
City Of Erie, Erie County
My Commission Expires Oct. 6, 2007
Member, Pennsylvania Association Of Notaries

PUBLIC
ADVERTISEMENT
THE Millcreek Township
Sewer Authority, Mill-
creek, Erie County, Penn-
sylvania is providing a
thirty (30) day period for
public comment on a
Special Study Supple-
menting the township's
Act 537 Sewage Facilities
Plan covering the Kear-
sarge Pump Station Up-
grade.
The purpose of this Special
Study is to define the fa-
cilities necessary to pro-
vide capacity to eliminate
existing and future station
overloads. The study in-
cludes facilities sizing,
cost estimates, proposed
funding, user charge
implementation schedule
and environmental review
documentation.
The comment period shall
extend from May 24, 2004,
to June 25, 2004. The doc-
ument is an office copy
and will be on display for
public review at the Mill-
creek Township Sewer
Authority and Millcreek
Township offices at the
Municipal Building at 3608
West 26th Street, Erie, PA
16506 and at the Summit
Township Sewer Author-
ity, Building at 8890 Old
French Road, Erie, PA
16509.
Please direct comments
and questions pertaining
to said document in writ-
ing to the Millcreek
Township Sewer Author-
ity, 3608 West 26th Street,
Erie, PA 16506 or Conser
Townsend Environdyne
Engineers, 155 West 8th
Street, Suite 418, Erie, PA
16501 on or before June
25, 2004.
George Riedesel, P.E.
Manager
Millcreek Township Sewer
Authority
(5-508184-NT-26)

# CTE ENGINEERS

**CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.**

155 West 8th Street

Erie, Pennsylvania 16501

Phone: (814) 453 4394

Fax: (814) 455 6596

March 24, 2004

**Summit Township**
**8890 Old French Road**
**Erie, PA 16509**

**Attn: Bill Steff, P.E.**

Ladies/Gentlemen:

In response to our discussions with your manager and engineer on March 19, 2004, we have concluded that your anticipated flows at the Kearsarge pump station can be represented by the numbers found in the following paragraphs.

For the initial ten-year design period, annual increases of 88 units assuming 1 EDU/unit will approximate your expected growth. We estimate an EDU at 3 persons with an average flow of 70 gpc per day which equals an average increase in flow of 18,480 gpd per year which ultimately equals 184,800 gpd in a ten-year period. The peak flow is estimated at 2-1/2 times that number or 462,000 gpd increase within ten years.

Ultimate flow we estimate at the agreement number between Summit Township Sewer Authority and the City of Erie equaling 3.9 MGD. It is our assumption that once this flow is reached, Summit Township will have provided for flow equalization to prevent the peak flows from exceeding that number. Thus, for ultimate flow considerations at Kearsarge pump station, 3.9 MGD will be considered as Summit Township's peak contribution for pump station sizing.

**RECEIVED**

MAR 2 5 2004

**SUMMIT TOWNSHIP**
**SEWER AUTHORITY**

**MSA-MT 2284**

**App. 331**

AN AECOM COMPANY

**CTE** *ENGINEERS*

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Summit Township
Attn: Bill Steff, P.E.
March 24, 2004
Page 2

The number to be utilized for Summit Township's existing peak flow is
to equal the highest number that is presently available from your
metering point entering Millcreek Township which equals 2.3 MGD.

In ten years the peak fifteen minute flow would be expected to equal
2,762,000 gpd with an ultimate peak flow of 3,900,000 gpd to be
controlled if necessary by flow equalization facilities.

If you have no objection to the use of these values in the conceptual
design of the facilities to be provided at Kearsarge pump station to
allow for the existing overflow to be eliminated, please advise us by
either so noting at the bottom of this letter and returning a copy to our
office or by responding separately indicating either your concurrence or
your suggested values.

Please be advised that the Erie County population projection using the
current trend scenario, only estimate the Summit Township population
to increase by 100 persons by the year 2010. The PA DEP projections
on the other hand which were completed in the 90's had projected
Summit Township to grow by approximately 290 persons in that same
time frame. The Summit Township population increased
approximately 245 people from 1990 to 2000. We believe this trend
and the estimate of the PA DEP to be more indicative of Summit's
growth and suggest the value of 300 persons over a ten-year period as
being more indicative of the growth potential. This equals 30
persons/year or approximately ten homes of which one might estimate
that seven would be constructed within the Rt. 19 or Kearsarge
drainage area. Even this number does not approximate the recent five-
year history which demonstrated approximately 30 of the 88 EDU's or
connections seen on an annual basis to be residential homes.
Therefore, we have concluded that the use of the observed EDU's or

**MSA-MT 2285**



CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

CTEE, INC

MAR 3 1 2004

RECEIVEI

Summit Township
Attn: Bill Steff, P.E.
March 24, 2004
Page 3

connections as a population projection is both the more conservative value and the most legitimate value.

Once we have obtained your concurrence on flows, we will be able to proceed with the necessary facilities to expand the Kearsarge pump station capabilities and estimate cost and determine participation. Within the next month and a half it will be necessary for us to obtain your concurrence and the township supervisors' concurrence in both the conceptual plan for the Kearsarge pump station and cost sharing proposals for that plan.

Very truly yours,

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Gerald C. Allender, P.E.
Project Manager

GCA:lb

cc:    Millcreek Township Sewer Authority
       Summit Township Supervisors
       Millcreek Township Supervisors

We concur with the flow numbers found in the preceeding paragraph.

Signed: _William C Steff_   3-29-04   per Board
        Summit Township Sewer Authority   Directive

MSA-MT 2286

App. 333



# Pennsylvania Natural Diversity Inventory

Scientific information and expertise for the conservation of Pennsylvania's native biological diversity

June 9, 2004

**CTEE, INC.**
Fax 717-772-0271
717-772-0258

**JUN 1 4 2004**

**RECEIVED**

**Ecological Services Section**

Gerald Allender
Consoer Townsend Envirodyne Engineers, Inc.
155 West 8th Street
Erie, PA 16501

**Re:** Pennsylvania Natural Diversity Inventory Review for the Proposed Construction of Overflow Retention Tank, City of Erie, Erie County **PER NO: 16088**

Dear Mr. Allender:

In response to your request May 20, 2004 to review the above mentioned project, we have reviewed the area using the Pennsylvania Natural Diversity Inventory (PNDI) information system. PNDI records indicate that no occurrences of species of special concern are known to exist within the project area, therefore we do not anticipate any impact on endangered, threatened, or rare species at this location. PNDI attempts to be a complete information resource on species of special concern within the Commonwealth. However, it may not contain all location information for species within the jurisdiction of other agencies. Please contact the Fish and Boat Commission and US Fish and Wildlife Service for information on species within their purview.

PNDI is the environmental review function of the Pennsylvania Natural Heritage Program, and uses a site-specific information system that describes significant natural resources within the Commonwealth. This system includes data descriptive of plant and animal species of special concern, exemplary natural communities and unique geological features. PNDI is a cooperative project of the Department of Conservation and Natural Resources, The Nature Conservancy and the Western Pennsylvania Conservancy. This response represents the most up-to-date summary of the PNDI data files and is **good for one year**. An absence of recorded information does not necessarily imply actual conditions on-site. A field survey of any site may reveal previously unreported populations.

Feel free to phone our office if you have questions concerning this response or the PNDI system, and please refer to the P.E.R. Reference Number at the top of the letter in future correspondence concerning this project.

Sincerely,

**App. 334**

Justin P. Newell
Environmental Review Specialist

Western Pennsylvania Conservancy
209 Fourth Ave.
Pittsburgh, PA 15222
(412)288-2777
www.paconserve.org

Pennsylvania Dept. of Conservation and Natural Resources
Bureau of Forestry
P. O. Box 8552
Harrisburg, PA 17105-8552
(717)787-3444
www.dcnr.state.pa.us

**MSA-MT 2287**

The Nature Conservancy
208 Airport Drive
Middletown, PA 17057
(717)948-3962
www.tnc.org

Appendix L

# REQUEST FOR PENNSYLVANIA NATURAL DIVERSITY INVENTORY (PNDI) DATA

5/20/04
Date

TO:    Department of Conservation and Natural Resources
       Bureau of Forestry (FAS)
       PNDI Program
       PO Box 8552
       Harrisburg, PA 17105-8552

FROM: Gerald C. Allender                FOR: Millcreek Township Sewer Authority
Consoer Townsend Envirodyne Engineers, Inc.    3608 West 26th Street
       155 West 8th Street                      Erie, PA 16506
       Erie, PA 16501
(municipal planning consultant address)              (municipality address)

                                                Erie        County

Please conduct a review of the Pennsylvania Natural Diversity Inventory (PNDI) information system for records of species of special concern reported from the above municipality. This information will be incorporated in initial planning assessments under the Pennsylvania Sewage Facilities Act and in specific alternative proposals. At this time, the planning process is addressing:

The construction of overflow retention tank.  Two alternative locations for the tank are provided one near and one remote from the pump station being protected.

Site A, "near": is in a mowed area just east of the station.

Site B, "remote": isin a wooded area 600 ft. east of the station and will require construction of a maintenance roadway and utilities including pipe lines and electric.

(current project details)

The location of the proposed project components are shown on the attached partial copy of the
       Erie South                    7.5 minute U.S.G.S. topographic maps.

In its reply, DCNR will notify this municipality regarding plant and animal species of special concern listed by any state agency or tracked by PNDI and reported in the project vicinity. In addition, DCNR will identify the agencies having management authority and expertise to assist with evaluation and mitigation of potential impacts on these species.

If you have questions concerning this project please contact:

Gerald C. Allender                        814-453-4394
Planning Consultant                       Telephone Number

George Riedesel, P.E.                     814-835-6721                **App. 335**
Municipal Official                        Telephone Number

SWANVILLE, PA
ERIE SOUTH, PA
7.5 MIN QUAD

SITE A

SITE B

Copyright (C) 2001, Maptech, Inc.

# CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

**155 West 8th Street**                    **FACSIMILE TRANSMITTAL**

**Erie, Pennsylvania 16501**

DATE: _5/20/04_    NO. OF PAGES: _3_

TO: _PNDI_

ATTN: _Justin Newell_

**Phone: (814) 453 4394**

FAX NO: _717-772-0231_

**Fax: (814) 455 6596**    RE: _Request for Pennsylvania_
_Natural Diversity Inventory_
_(PNDI) Data_

FROM: _Jerry Allender_

____ AS REQUESTED    ____ FOR APPROVAL

____ FOR YOUR USE    _X_ FOR REVIEW AND COMMENT

____ FOR YOUR INFORMATION    _X_ Y __ N HARDCOPY MAILED

NOTES: _Please Comment_

This facsimile is CONFIDENTIAL. It may contain information which is privileged or subject to other confidentiality requirements and exemptions from disclosure under applicable law. It is intended solely for the use of the individual(s) named above. If you are not the intended recipient(s), or the person responsible to deliver it to the intended recipient(s), you are hereby advised that any dissemination, distribution or copying of this communication is prohibited. If you have received this facsimile message in error, please immediately notify sender by telephone collect and return the original message to sender by U.S. Mail. Postage on return facsimile transmissions will be refunded.

**MSA-MT 2290**    **App. 337**



Commonwealth of Pennsylvania
**Pennsylvania Historical and Museum Commission**
**Bureau for Historic Preservation**
Commonwealth Keystone Building, 2nd Floor
400 North Street
Harrisburg, PA 17120-0093



June 10, 2004

Gerald C. Allender
Consoer Townsend Envirodyne Engineers, Inc.
155 West 8th Street
Erie, PA 16501

Re:    File No. ER 04-1969-049-A
        DEP 537 PROGRAM: 537 Planning, Kearsarge
        Pump Station Special Act 537 Study, Millcreek
        Twp., Erie Co.

TO EXPEDITE REVIEW USE
BHP REFERENCE NUMBER

Dear Mr. Allender:

        The Bureau for Historic Preservation has reviewed the above named
project under the authority of the Environmental Rights amendment, Article 1,
Section 27 of the Pennsylvania Constitution and the Pennsylvania History Code,
37 Pa. Cons. Stat. Section 500 et seq. (1988). This review includes comments on
the project's potential effect on both historic and archaeological resources.

        Based on our survey files, which include both archaeological sites and
standing structures, there are no National Register eligible or listed historic or
archaeological properties in the area of this proposed project. Therefore, your
responsibility for consultation with the State Historic Preservation Office for this
project is complete. Should you become aware, from any source, that historic or
archaeological properties are located at or near the project site, please notify the
Bureau for Historic Preservation at (717) 783-8946.

                        Sincerely,

                        Kurt W. Carr, Chief
                        Division of Archaeology &
                         Protection

Cc: DEP, Northwest Regional Office

KWC/tmw

**MSA-MT 2291**

**App. 338**

Bar Code

0120-PM-PY0003  Rev. 8/97

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**

**CULTURAL RESOURCE NOTICE**

| | OFFICIAL USE ONLY |
|---|---|
| **Before completing this form, read the step-by-step instructions provided with this form** | ID# (Assigned by State Agency) _____ <br> Stamp Date Application Received |

---

**SECTION A.  APPLICANT IDENTIFIER**

Applicant Name
Millcreek Township Sewer Authority                     814-835-6721
_____     _____
                    Street Address                              Telephone Number

3608 West 26th Street
Erie                              PA        16506
City                              State      Zip

Project Title   KEARSARGE PUMP STATION SPECIAL ACT 537 STUDY

**SECTION B.  LOCATION OF PROJECT**

| Municipality   Millcreek Township | County Name   Erie <br> DEP County Code  25 |
|---|---|

**SECTION C.  REQUEST**

☐ DEP Permit        ☒ DEP Approval        List other permits, funding or approvals required, if known (federal/state/local).

537 Planning
_____
Name of Specific DEP Permit or Approval Requested

**SECTION D.  RESPONSIBLE DEP REGIONAL, CENTRAL, DISTRICT MINING or OIL AND GAS MANAGEMENT OFFICE**

DEP Regional Office Responsible for Review of Permit Application

☐ Southeast Regional Office (Conshohocken)
☐ Southcentral Regional Office (Harrisburg)
☐ Southwest Regional Office (Pittsburgh)
☐ District Mining Office: _____

☐ Central Office (Harrisburg)
☐ Northeast Regional Office (Wilkes-Barre)
☐ Northcentral Regional Office (Williamsport)
☒ Northwest Regional Office (Meadville)
☐ Oil and Gas Office: _____

**SECTION E.  RESPONSIBLE COUNTY CONSERVATION DISTRICT, if applicable.**

Erie County Conservation District                814-825-6403
_____     _____
        County Conservation District                  Telephone Number, if known

**MSA-MT 2292**

0120-PM-PY0003  Rev. 8/97

## SECTION F.  CONSULTANT

Gerald C. Allender

Consultant, if applicable

Consoer Townsend Envirodyne Engineers, Inc.

Street Address

155 West 8th Street

City, State, Zip

Erie, PA 16501

Telephone Number    814-453-4394

## SECTION G.  PROJECT BOUNDARIES AND DESCRIPTION

### REQUIRED

Indicate the total acres in the property under review. Of this acreage, indicate the total acres of earth disturbance for the proposed activity

Attach a 7.5' U.S.G.S. Map indicating the defined boundary of the proposed activity.

Attach photographs of any building any 50 years old. Indicate what is to be done to all buildings in the project area.

Attach a narrative description of the proposed activity.

Attach the return receipt of delivery of this notice to the Pennsylvania Historical and Museum Commission.

### REQUESTED

Attach photographs of any building over 40 years old

Attach site map, if available.

## SECTION H.  SIGNATURE BLOCK

_____          _____
Date of Submission of Notice to PHMC                      Applicant's Signature

**MSA-MT 2293**

**App. 340**

# KEARSARGE PUMP STATION
## 537 SPECIAL STUDY
## CULTURAL RESOURCE NOTICE
## SECTION G REPORT

The proposed project involves the construction of an approximate 100 ft. diameter 20 foot high overflow retention facility. The tank will be located either next to or 600 ft. east of an existing sewage pumping station. The nearby tank will be located in a grassy area presently which is mowed. The remote site is in a wooded area at the base of a bluff. A 7.5 minute USGS map is enclosed showing the boundaries of the proposed activity and outlining the two potential sites.

There are no buildings affected by the construction other than the pump station which is 46 years old (pictures attached). Total acreage in the property is approximately three acres with only one-half acre of total earth disturbance anticipated.

**MSA-MT 2294**





Kearsarge Pump Station

MSA-MT 2295

App. 342

0120-PM-PY0003  Rev. 8/97
CHECKLIST

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**



# CULTURAL RESOURCE NOTICE

### APPLICANT'S ✓ CHECKLIST

Please check the following list to make sure that you have included all the required information.  Place a checkmark in the column provided for all items completed and/or provided.

Failure to provide all of the requested information will delay the processing of the application and may result in the application being placed **on hold** with **no action,** or will be considered withdrawn and the application filed closed.

| | Requirement | Check ✓ If Included |
|---|---|---|
| 1. | Attachments, where appropriate, are included.) | |
| | a)   Section B - Additional municipality information. | |
| | b)   Section B - Additional county information. | |
| | c)   Section G - 7.5' USGS Map (with defined boundaries of proposed activity). | X |
| | d)   Section G - Narrative description of proposed activity. | X |
| | e)   Section G - Photographs of any buildings over 50 years old, Indicate what is to be done to all buildings in the project area. | N/A |
| | f)   Section G - Total acres in property under review. Of this acreage, total acres of earth disturbance for the proposed activity. | X |
| | h)   Return receipt of delivery of Cultural Resource Notice to the Pennsylvania Historical and Museum Commission | X |
| 2. | Mailings | |
| | a)   Notice mailed to PHMC on _____5/20/04_____ . | |
| | b)   Received Returned Receipt from PHMC on _____ | |
| | c)   Submitted application to DEP Regional, Central, District Mining or Oil and Gas Mgmt. Office on _____ with copy of Returned Receipt from PHMC as proof of submittal. | |
| | or | |
| | d)   Submitted application to County Conservation District Office _____ with copy of return receipt from PHMC as proof as submittal. | |
| | Requests | Check ✓ If Included |
| 3. | Attachments requested, where appropriate, are included | |
| | a)   Section G - Photographs of any buildings over 40 years old. | X |
| | b)   Section G - Site maps of the proposed activity, if available. | |

**MSA-MT 2296**



MSA-MT 2297



CTEE, INC.

JUN 07 2004

RECEIVED

**SUMMIT TOWNSHIP SEWER AUTHORITY**
8890 Old French Road • Erie, Pennsylvania 16509-5459
Phone (814) 868-4495 • Fax (814) 866-5821

June 3, 2004

Marlin K. Coon, Chairperson
Summit Township Supervisors
8900 Old French Road
Erie, PA 16509

> Re:     Official Sewage Facilities Plan Update
>         Millcreek Township - Kearsarge Pumping Station

Dear Supervisor Coon:

Millcreek Township and the Millcreek Township Sewer Authority propose to design and construct facilities, which upgrade and expand the existing Kearsarge Pumping Station. This station is included in the Joint Transporting System as provided for in the 1994 Transporting Agreement between Millcreek Township, Summit Township and its respective Sewer Authorities. Summit Township wastewater flow from the Route 19 and Route 99 subsystems are tributary to this pumping station.

A Special Planning Study has been completed by Consoer Townsend Evirodyne Engineers, Inc. This Planning Study develops and considers various alternates and recommends a Plan that will allow the existing overflow at this pumping station to be abandoned and also remove limitations on sewer service connections in areas tributary to the Kearsarge Pumping Station. This Special Planning Study was prepared by Millcreek Township in accordance with requirements of a Consent Order and Agreement with the Pennsylvania Department of Environmental Protection (DEP) as an official update to their Township's Official Sewage Facilities Plan under PA Act 537. In order for this planning update to be accepted and hopefully approved by DEP, the Summit Township Supervisors must modify its Official Sewage Facilities Plan to incorporate the recommendations of Millcreek's Special Study.

The Sewer Authority and the Township have been provided with copies of this draft Plan and have been requested to comment within an allotted 30 day time period. The Sewer Authority will be making detailed comments with respect to the draft Plan on or about June 7th. We welcome written comments from the Supervisors and its engineer which may be incorporated with our comments, or may be filed separately at your option. We expect that Millcreek's response to comments will be both sufficiently timely and complete so as to allow Supervisor adoption of a Resolution modifying Summit's Official Sewage Facilities Plan at the regular meeting of the Supervisors on June 21, 2004.

**MSA-MT 2298**

Supervisor Marlin K. Coon, Chairperson
June 3, 2004
Page 2

Attached for consideration by the Summit Township Board of Supervisors is a Resolution which we believe, when adopted, will accomplish the necessary modification of Summit Township's Official Plan. After our detailed review of the Special Study is complete, we will provide a recommendation for Resolution adoption to the Supervisors. It is anticipated that this recommendation will be made in time for adoption of a Resolution by the Supervisors on June 21, 2004.

Should you have any questions concerning this correspondence or if you can see any changes you would like made in the final Resolution draft, don't hesitate to contact us.

Sincerely,

SUMMIT TOWNSHIP SEWER AUTHORITY

John H. Willow
Authority Chairman

Encl.:    Attachment:  Resolution – Official Sewage Facilities Plan Modification

CC.:     Millcreek Township Supervisors
         Millcreek Township Sewer Authority
         Jerry Allender, P.E., Project Manager, Consoer Townsend Envirodyne Engineers, Inc.
         Tim Sennett, Solicitor, Knox, McLaughlin, Gornall and Sennett
         George Joseph, Solicitor, Quinn, Buseck, Leemhuis, Toohey & Kroto Inc.
         Douglas C. Sceiford, P.E., HEI,



CTEE, INC
JUN 0 8 2004
RECEIVED

**SUMMIT TOWNSHIP SEWER AUTHORITY**
8890 Old French Road • Erie, Pennsylvania 16509-5459
Phone (814) 868-4495 • Fax (814) 866-5821

June 7, 2004

Gerry Allender, P.E.
Project Manager
Consoer Townsend Envirodyne Engineers, Inc.
155 West 8th Street
Erie, PA 16501

                                    Re: Official Sewage Facilities Plan Update
                                        Kearsarge Pump Station Act 537 Special Study
                                        Millcreek Township Sewer Authority

Dear Mr. Allender:

The Summit Township Sewer Authority takes this opportunity to thank you for your comprehensive presentation of the Millcreek Township Sewer Authority's Official Sewage Facilities Plan Update at its May 27th meeting. This presentation was especially beneficial since representatives of the Summit Township Supervisors were also able to attend. This Authority and the Summit Supervisors have each had opportunity to review the subject draft Plan. This letter serves to provide detailed comments on Plan specifics and convey the Summit Township Sewer Authority's position with regard to the general approach recommended for the corrective action Plan.

Detailed Plan Review Comments:

1. The Plan should reference and incorporate flow values from the Route 99 subsystem in Summit. The Authority purchased a maximum 1.3 MGD peak flow capacity in the Millcreek Township Sewer System from this Summit subsystem.

2. The Plan uses available flow information to the best possible extent in developing the "flow ahead" and storage alternatives. The existing peak flow provided in Table S-3 utilizes the maximum 15 minute peak flow spike that has occurred in the Summit Township parshall flume metering chamber on Route 19. We do not believe that 15 minute peak flow data is available for Millcreek flow. Comparing peak flow rates such as peak day to peak hour or peak 15 minutes are not equivalent measurements. This is less important for alternative development and evaluation, but becomes very important in determining respective peak components (Summit/Millcreek) for cost sharing. No matter which method is selected, the measurement should be uniform and demonstrable for both Summit and Millcreek. Anything less than an equivalent unit of measurement is like comparing apples to oranges. In this regard, the 1994 Joint Transporting Agreement's definition of peak flow is in terms of "peak day flow" as shown on Exhibit E.

Mr. Gerry Allender
June 7, 2004
Page Two

However, the peak day flow listed in Exhibit E has been updated by flow values found in the current Plan. We request affirmation from Millcreek as to the definition of peak flow to be utilized for cost sharing. Further, we request a pledge from Millcreek to agree to amend our current Joint Transporting Agreement to restate the definition of peak flow, as mutually acceptable, and modify Exhibit E to reflect 2014 and ultimate flow utilized in the Special Study relating to the Kearsarge Pumping Station. We recognize that this Agreement amendment cannot not be completed quickly, which is why Millcreek Township's pledge to amend is considered sufficient for us to recommend approval of this Plan to the Summit Supervisors.

3. Table S-3 in the Plan documents provide a peak flow projection from Summit Township over the next 10 years until 2014 of 320 gallons per minute. It is our understanding this flow was developed using Summit's historic 5-year average connection level of 88 EDU's per year. Currently, Summit and Millcreek are parties to a Memorandum of Understanding (MOU) related to the DEP Consent Order and Agreement that limits Summit to 27 EDU's per year unless additional EDU's are granted by Millcreek. In fact, on March 29, 2004 the Summit Sewer Authority agreed to 88 EDUs per year and has no problem paying its share based upon this projection. However, Summit would request that Millcreek amend the MOU to provide for an annual total of 88 EDU's if these projections are used. In the alternative, if Summit is not given its full 88 EDU allocation of flow, then the cost sharing ratio must be adjusted downward to reflect the connection limitations imposed.

4. The Authority requests that during detailed design, meter instrumentation improvements be made such that flow at the Pump Station be continuously monitored and recorded in downloadable spreadsheet format for 15 minute flow intervals. This would make peak flow readings at the pumping station compatible with similar readings taken at the Summit Township Boundary.

STSA Position on recommended Plan Approach:

The Summit Township Sewer Authority concurs with the plan recommendation for a combination of increased "pump ahead" capacity and peak flow storage retention system. This Authority encourages DEP to expedite its review and approval process that will lead to the shortest possible project implementation time. The sooner a project can be completed, the least adverse water quality and economic development impacts there will be to this vital area of Millcreek and Summit Townships.

As you would expect, the Sewer Authority's greatest interest is in cost sharing for improvements made in Millcreek Township. We believe this to be adequately addressed in the 1994 Joint Transporting Agreement. Three of five Authority members currently serving on this Board actively negotiated this Agreement and have a clear understanding of its provisions and recollection of the time and effort it took to develop this Agreement. The Authority agrees to pay its fair share of costs for improvements made to the Joint Transporting System in accordance with the 1994

**MSA-MT 2301**

**App. 348**

Mr. Gerry Allender
June 7, 2004
Page Three

Agreement. Based upon our Agreement and the use of comparable peak flows from each municipality, the Summit Township share of any Kearsarge Pump Station improvements, now or in the future, will likely be between 20 to 40 percent.

Again, thank you for you excellent presentation and this opportunity to review and comment on Millcreek Township's Official Sewage Facilities Planning Update.

Sincerely,

SUMMIT TOWNSHIP SEWER AUTHORITY

John H. Willow
Authority Chairman

CC.:    Summit Township Supervisors
        Tim Sennett, Solicitor, Knox, McLaughlin, Gornall, and Sennett
        Millcreek Township Supervisors
        Millcreek Township Sewer Authority
        Evan E. Adair, Solicitor, Williams, and Adair
        George Joseph, Solicitor, Quinn, Buseck, Leemhuis, Toohey & Kroto Inc.
        Douglas C. Sceiford, P.E., HEI
        File

**MSA-MT 2302**

# CTE ENGINEERS

**CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.**

155 West 8th Street

June 15, 2004

Erie, Pennsylvania 16501

Summit Township Sewer Authority
8890 Old French Road
Erie, PA 16509-5459

Phone: (814) 453 4394

Attn:   John H. Willow
        Authority Chairman

Fax: (814) 455 6596

Ladies/Gentlemen:

We wish to acknowledge receipt of your letter of June 7, 2004, with both detailed plan review comments and Summit Township Sewer Authority's (STSA) position on the Recommended Plan Approach. If we may, we would like to address STSA's position on the plan approach first and then the detailed plan review comments.

We note that STSA's stated position concurs with the plan recommendations. It states that the Authority agrees to pay its fair share of the costs for improvements in accordance with the 1994 Agreement based upon the use of comparable peak flows. This latter comment is addressed in greater detail in your detailed plan review comments. There you state that you desire a commitment from the Millcreek Township Sewer Authority (MTSA) to define comparable peak flows.

We have discussed your plan review comments with the MTSA and the Millcreek Township supervisors. The comments are structured in the same manner as was yours.

1.  The plan will include a statement that MTSA acknowledges capacity provided Summit in Millcreek's Rt. 99 sewer. The 1.3 MGD, if utilized, is part of Summit's 3.9 MGD ultimate to Kearsarge as anticipated by CTE's letter of 3/25/04. This is not an increment to be added to the 3.9 MGD tributary to Kearsarge. We will also investigate the existing 12-inch Millcreek sewer in Peach Street

**MSA-MT 2303**

**App. 350**