**Specifications**   SD6L

# 8" NON-CLOG DRY PIT PUMPS

**1.01   GENERAL**

A. Contractor shall furnish all labor, materials, equipment and incidentals required to provide ___ non-clog dry pit submersible centrifugal sewage pump(s) as specified herein.

B. The contractor shall supply a control panel which contains all necessary components for proper starting and operation of the pump. This panel shall also provide a circuit that monitors the seal sensors in the pump.

C. Pump shall be equipped with stainless steel nameplate.

**2.01   OPERATING CONDITIONS**

A. Each pump shall be rated _____ H.P., _____ volts, __ phase, 60 hertz, _____ R. P. M. The unit shall produce _____ gpm at ___ ft TDH, with a minimum pump efficiency of ___% and maximum input kW of ____ kW. The pump shall be capable of handling a 3 1/4" spherical solid. The pump shall be non-overloading throughout the entire range of operation without employing service factor.

B. The pump shall be suitable operating continuously at full load in a dry pit application with a ambient temperature of 95° F. The pump shall also be capable of operating fully submersed without damage. The pump shall reserve a minimum service factor of 1.15.

C. The performance curve submitted for approval shall state in addition to head and capacity performance, the pump efficiency, solid handling capacity, and reflect motor service factor.

**3.01   CONSTRUCTION**

A. The pump shall be a centrifugal, non-clog, solids handling, submersible, wastewater type, model SD6L as manufactured by Hydromatic Pumps. The pump volute, motor and seal housing shall be high quality gray cast iron, ASTM A-48, Class 30. The pump discharge shall be fitted with a 6" standard ASA 125 lb. flange, faced and drilled.

B. The pump shall be fitted with a 8" or 10" suction elbow. A hand hole clean out shall be provided on the suction elbow. A steel pump stand shall be provided.

C. All external mating parts shall be machined and Buna N Rubber O-ring sealed on a beveled edge. Gaskets shall not be acceptable. All fasteners exposed to the pumped liquids shall be 300 series stainless steel.

**3.02   ELECTRICAL POWER CORD**

A. Electrical power cord shall be STW-A, water resistant 600V, 60°C., UL and CSA approved and applied dependent on amp draw for size.

B. The pump shall be triple protected with a compression fitting and an epoxy potted areas at the power cord entry to the pump. A separation between the junction box area of the pump and the motor by a stator lead sealing gland or terminal board shall not be acceptable.

C. The power cable entry into the cord cap assembly shall first be made with a compression fitting. Each individual lead shall be stripped down to bare wire at staggered intervals, and each strand shall be individually separated. This area of the cord cap shall then be filled with an epoxy compound potting which will prevent water contamination to gain entry even in the event of wicking or capillary attraction.

D. The power cord leads shall then be connected to the motor leads with extra heavy connectors having brass inserts with a screwed wire to wire connection, rather than a terminal board that allows for possible leaks.

**4.01**   **TESTING**

A. Commercial testing shall be required and include the following:

1. The pump shall be visually inspected to confirm that it is built in accordance with the specification as to HP, voltage, phase and hertz.

2. The stator motor leads shall be tested for integrity using a megohm meter at the highest setting.

3. Pump shall be allowed to run dry to check for proper rotation.

4. Discharge piping shall be attached, the pump submerged in water and amp readings shall be taken in each leg to check for an imbalanced stator winding. If there is a significant difference in readings, the stator windings shall be checked with a bridge to determine if an unbalanced resistance exists. If so, the stator shall be replaced.

5. The pump shall be removed from the water, megohm meter tested again, dried and the motor housing filled with dielectric oil.

B. (OPTIONAL) In addition to the above commercial testing, a special megohm meter test shall be performed and include the following:

1. The pump shall be submerged in water and allowed to run at maximum load for 30 minutes.

2. A written report on the above shall be prepared by the test engineer, certified and submitted to the engineer.

C. (OPTIONAL) A hydrostatic test shall also be performed on the pump. The hydrostatic test shall require that the volute and impeller be removed and a fixture installed to hold the spring and lower mechanical seal in place. A double plate, gasket and throughbolt shall be installed on the pump. A discharge mating flange, gasket and pressure fitting shall be installed. The inlet port, volute and discharge nozzle shall then be pressurized with water to 150% of the maximum pump shut off pressure. This hydrostatic pressure shall be maintained for at least 5 minutes and the housing checked for leaks and/or loss of pressure.

D. (OPTIONAL) A non-witnessed Hydraulic Institute performance test shall be performed. This shall include the following:

1. The pump shall be tested at the design point as well as at least 4 other points to develop a curve. Data shall be collected to plot the head capacity curve as well as a kW input and amperage curve.

2. In making these tests, no minus tolerance or margin shall be allowed with respect to capacity, total head or efficiency at the specified design condition. Pump shall be held within a tolerance of 10% of rated capacity or at rated capacity with a tolerance of 5% of rated head. The pump shall be tested at shutoff, but not be plotted, and only used as a reference point when plotting the performance curve.

3. Complete records shall be kept of all information relevant to the test, as well as the manufacturer's serial number, type and size of pump, as well as any impeller modifications made to meet the design conditions.

4. A written test report shall be prepared, signed and dated by the test engineer incorporating 3 curves (head capacity, kW input, and amperage) along with the pump serial number, test number, date, speed, volts, phase, impeller diameter, and certification number. This report shall then be submitted to the engineer.

**5.01**   **WARRANTY**

A. The pump unit or any part thereof shall be warranted against defects in material or workmanship within one year from date of installation or 18 months from date of manufacture, whichever comes first, and shall be replaced at no charge with a new or manufactured part, F.O.B. factory or authorized warranty service station. The warranty shall not assume responsibility for removal, reinstallation or freight, nor shall it assume responsibility of incidental damages resulting from the failure of the pump to perform. The warranty shall not apply to damage resulting from accident, alteration, design, misuse or abuse.



**MSA-MT 2355**

App. 402

**Technical Data**

**SD8L**

# MODEL: SD8L — Non-Clog Dry Pit Pumps

## Physical Data:

| | |
|---|---|
| DISCHARGE SIZE | 8" |
| SUCTION SIZE | 8" OR 10" |
| SOLIDS SIZE | 4" |
| IMPELLER TYPE | BALANCED, ENCLOSED, 2 VANE |
| CABLE LENGTH | 30' STANDARD<br>50' OPTIONAL |
| PAINT | PAINTED AFTER ASSEMBLY DARK GREEN, WATER REDUCIBLE ENAMEL, ONE COAT, AIR DRIED. |

## Temperature:

| | | |
|---|---|---|
| MAXIMUM LIQUID | | 140°F |
| MAXIMUM STATOR | | 311°F |
| OIL FLASH POINT | | 390°F |
| HEAT SENSOR | Open: | 311°F MAX./293°F MIN. |
| | Closed: | 243°F MAX./192°F MIN. |

## Technical Data:

| | | | | | |
|---|---|---|---|---|---|
| POWER CORD TYPE | | STW-A/G WATER RESISTANT 600V, 90°C | | | |
| SENSOR CORD TYPE | | 16-4 STW-A WATER RESISTANT 600V, 60°C, 10 AMPS | | | |
| MATERIALS OF CONSTRUCTION | MOTOR HOUSING | CAST IRON | ASTM | A-48 | CLASS 30 |
| | CASING | CAST IRON | ASTM | A-48 | CLASS 30 |
| | IMPELLER | DUCTILE IRON | ASTM | A-536 | GRADE 65-45-12 |
| | SUCTION ELBOW | CAST IRON | ASTM | A-48 | CLASS 30 |
| | PUMP STAND | STEEL | | | |
| | CASING WEAR RING | BRONZE | ASTM | B-584-836 | ALLOY 115 |
| | MOTOR SHAFT | 416 STAINLESS STEEL | | | |
| | HARDWARE | 300 SERIES STAINLESS STEEL | | | |
| | "O" RINGS | BUNA N | | | |
| MECHANICAL SEALS | Standard:<br>Optional: | UPPER AND LOWER CARBON/CERAMIC, TYPE 21, BF1C1<br>LOWER TUNGSTEN CARBIDE/TUNGSTEN CARBIDE, TYPE 21, BD1D1 | | | |
| UPPER BEARING | | (RADIAL) SINGLE ROW — BALL | | | |
| LOWER BEARING | | (THRUST) SINGLE ROW — BALL | | | |

**MSA-MT 2356**



**HYDROMATIC**

**App. 403**

Case 4:05-cv-00059-MBC   Document 38-10   Filed 03/31/2006   Page 4 of 50

**Electrical Data**


**SD8L**

# MODEL: SD8L — Non-Clog Dry Pit Pump

| | |
|---|---|
| R.P.M. | 1750 |
| MOTOR TYPE | ENCLOSED, OIL COOLED INDUCTION, VFD SUITABLE |
| MOTOR DESIGN NEMA TYPE | B (3ø) |
| GENERAL INSULATION CLASS | H |
| STATOR WINDING CLASS | H |
| MAXIMUM STATOR TEMPERATURE | 311°F |
| MOTOR PROTECTION | BI-METALLIC, TEMPERATURE SENSITIVE DISC, SIZED TO OPEN AT 120°C AND AUTOMATICALLY RESET @ 30–35°C DIFFERENTIAL, ONE IN SINGLE PHASE, TWO IN THREE PHASE |

| ELECTRICAL RATINGS | HEAT SENSOR | 24VDC 5AMPS | 115VAC 5AMPS | 230VAC 5AMPS |
|---|---|---|---|---|
| | SEAL FAIL | 300VAC 5mA | | |
| VOLTAGE TOLERANCE | ±10% | | | |

| HP | VOLTAGE | PHASE | NEC CODE | SF | FULL LOAD AMPS | SF AMPS | LOCD. RTR. AMPS | RUN KW | START KVA | RUN KVA | MTR. EFF. @ SF | MTR. EFF. 100% FL | MTR. EFF. 75% FL | MTR. EFF. 50% FL | PWR. FACT. @ SF | PWR. FACT. 100% FL | PWR. FACT. 75% FL | PWR. FACT. 50% FL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 75 | 460 / 575 | 3 | F | 1.2 | 94.4 / 75.5 | 113.3 / 90.6 | 490 / 392 | 64.7 | 390 | 75.2 | .87 | .87 | .85 | .81 | .86 | .86 | .86 | .82 |
| 100 | 460 / 575 | 3 | G | 1.2 | 122.3 / 97.8 | 148.4 / 118.8 | 725 / 580 | 85.3 | 580 | 97.4 | .87 | .88 | .87 | .84 | .87 | .88 | .86 | .83 |
| 125 | 460 / 575 | 3 | E | 1.0 | 172 / 137.6 | 172 / 137.6 | 725 / 580 | 102.9 | 580 | 118 | .87 | .87 | .87 | .87 | .87 | .87 | .87 | .86 |
| 150 | 460 / 575 | 3 | E | 1.2 | 200 / 160 | 240 / 192 | 932 / 745.6 | 125 | 742 | 159.2 | .89 | .89 | .89 | .85 | .79 | .78 | .75 | .66 |

**MSA-MT 2357**


**HYDROMATIC®**

App. 404

# *Miller Pump Supply* ——————— *FAX*

4911 Peach Street
Erie, PA        16509
PH   814-864-4871
Fax  814-864-4873

| | |
|---|---|
| *Date:* | 5/25/2004 |
| *Reference:* | Kersarge lift station |
| | Storm flow pumps |
| *Pages:* | 8 |

*To:*   Mr. Gerry Allender
        CTE Engineers

*FAX:*  455-6596

*MESSAGE* ............................

Mr. Allender,

    Please review attached data on Hydromatic's model S8LX submersible sewage pump proposed for the storm flow pump system.  Horsepower will be 20 or 25 depending upon final TDH
    Should you have nay questions, please call.

Many Thanks !

Sid Himes



*Miller Pump Supply*
*4911 Peach St      Erie, PA      16509*
*PH  814-864-4871      Fax  814-864-4873*

**MSA-MT 2358**

**App. 405**

PUMP DATA SHEET

HYDROMATIC

Miller Pump Supply
CTE Engineers
Kersarge Lift Station - storm flow pumps

Selection list: ---

Search Criteria:
  Flow: 1500 US gpm
  Head: 40 ft
  Tolerance: --- % of head

Fluid: Water
  Temperature: 60 °F
  SG: 1
  Viscosity: 1.105 cP
  Vapor pressure: 0.2563 psi a
  Atm pressure: 14.7 psi a

NPSHa: --- ft

Advanced Criteria:
  Preferred Operating Area: ---
  Secondary Operating Point: ---
  Max temperature: --- °F
  Max suction pressure: --- psi g
  Max sphere size: --- in
  Max power: --- bhp
  Max suction specific speed: --- (Nss)
  Min trim: --- % of max diameter
  Min head rise: --- % to shutoff

Curve Corrections: none

Catalog: Non-Clog Pumps 60Hz vers Dec 2003

Pump: S8L/S8LX
  Type: NCLOG-8
  Synch speed: 900 rpm
  Speed: 870 rpm
  Dia: 14.875 in
  Curve no.: S8L870

Specific Speeds
  Ns: ---      Nss: ---

Dimensions:
  Suction: --- in    Discharge: 8 in

Pump Limits:
  Temperature: 140 °F
  Pressure: 125 psi g
  Sphere size: 4 in
  Power: --- bhp

Motor: Consult vendor

---- Data Point ----

Flow: 1500 US gpm
Head: 41 ft
Eff: 77%
Power: 20.2 bhp
NPSHr: --- ft

-- Design Curve --

Shutoff Head: 64.6 ft
Shutoff dP: 27.9 psi
Min Flow: 509 US gpm
BEP: 79% eff
    @ 1958 US gpm
NOL Pwr: 22.6 bhp
    @ 2281 US gpm

-- Max Curve --

Max Pwr: 23.3 bhp
    @ 2320 US gpm



Case 1:05-cv-00059-MBC    Document 38-10    Filed 03/31/2006    Page 7 of 50

Miller Pump Supply                              PUMP DATA SHEET                     05/24/04
CTE Engineers                                   HYDROMATIC
Kersarge Lift Station - storm flow pumps

Selection list: —                              Catalog: Non-Clog Pumps 60Hz  vers Dec 2003
                                               Pump: S8L/S8LX

Performance Evaluation:

| Flow US gpm | Speed rpm | Head ft | Pump %eff | Power bhp | NPSHr ft | Motor %eff | Motor kW | Hrs/yr | Cost /kWh |
|---|---|---|---|---|---|---|---|---|---|
| 1800 | 870 | 38 | 79 | 21.9 | — | | | | |
| 1500 | 870 | 41 | 77 | 20.2 | — | | | | |
| 1200 | 870 | 43.8 | 72 | 18.2 | — | | | | |
| 900 | 870 | 47.3 | 65 | 16.5 | — | | | | |
| 600 | 870 | 51.5 | 49 | 15.9 | — | | | | |

H2Optimize vers 7.1a

**MSA-MT 2360**

App. 407

MHT-25-2004 11:18 MILLER PUMP SUP 814 864 4873 P.12





**HYDROMATIC°**

MAY-25-2004 11:11 MILLER PUMP SUP 814 864 4873 P.13
Case 1:05-cv-00059-MBC    Document 38-10    Filed 03/31/2006    Page 9 of 50

## Installation Data

# H-O-R



S8L/S8LX
S8LA/S8LAX

| D | G | i | J | K | M | N | P |
|---|---|---|---|---|---|---|---|
| 20-7/8 | 21-5/16 | 54-3/4 | 45-1/2 | 31-11/16 | 7 | 6 | 29-11/16 |

| Q | R | S | T | X | Y | Z | MM |
|---|---|---|---|---|---|---|---|
| 14-27/32 | 35-1/2 | 24-1/16 | 14-27/32 | 16 | 7 | 43-1/2 | 12-1/2 |

ALL DIMENSIONS IN INCHES
NOTE: CASTING DIMENSIONS MAY VARY ± 1/8"

**HYDROMATIC** ®

MSA-MT 2362

App. 409

# Dimensional Data    S8L/S8LX



DISCHARGE FLANGE
8 - 125# FLG.

S8LX illustrated above

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| **S8L** | 54-7/16 | 25 | 31-1/2 | 11 | 19 | 13-7/16 | 11-9/16 | 5-3/16 | 12-1/2 |
| **S8L15000** | 56-7/16 | 25 | 31-1/2 | 11 | 19 | 13-7/16 | 11-9/16 | 5-3/16 | 12-1/2 |
| **S8LX** | 56-3/16 | 25 | 31-1/2 | 11 | 19 | 13-7/16 | 11-9/16 | 5-3/16 | 12-1/2 |
| **S8LX15000** | 58-3/16 | 25 | 31-1/2 | 11 | 19 | 13-7/16 | 11-9/16 | 5-3/16 | 12-1/2 |

ALL DIMENSIONS IN INCHES
NOTE: CASTING DIMENSIONS MAY VARY ± 1/8"
ALL DIMENSIONS IN INCHES

**HYDROMATIC** ®

Section **NON-CLOG** Page **336**

Dated **MAY 2001**

Supersedes **MAY 2000**

## Electrical Data — S8L/S8LX

# MODEL: S8L & S8LX—Non-Clog Sewage Pump

| R.P.M. | 870 | | | |
|---|---|---|---|---|
| MOTOR TYPE | ENCLOSED, OIL COOLED INDUCTION, VFD SUITABLE | | | |
| MOTOR DESIGN NEMA TYPE | B (3ø) | | | |
| GENERAL INSULATION CLASS | H | | | |
| STATOR WINDING CLASS | H | | | |
| MAXIMUM STATOR TEMPERATURE | 311°F | | | |
| MOTOR PROTECTION | BI-METALLIC, TEMPERATURE SENSITIVE DISC, SIZED TO OPEN AT 120°C AND AUTOMATICALLY RESET @ 30–35°C DIFFERENTIAL, ONE IN SINGLE PHASE, TWO IN THREE PHASE | | | |
| ELECTRICAL RATINGS | HEAT SENSOR | 24VDC 5AMPS | 115VAC 5AMPS | 230VAC 5AMPS |
| | SEAL FAIL | 300VAC 5mA | | |
| VOLTAGE TOLERANCE | ±10% | | | |

| HP | VOLTAGE | PHASE | NEC CODE | SF | FULL LOAD AMPS | SF AMPS | LCKD. RTR. AMPS | RUN KW | START KVA | RUN KVA | MTR. EFF. @ SF | MTR. EFF. 100% FL | MTR. EFF. 75% FL | MTR. EFF. 50% FL | PWR. FACT. @ SF | PWR. FACT. 100% FL | PWR. FACT. 75% FL | PWR. FACT. 50% FL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15 | 200 | 3 | J | 1.2 | 53.4 | 61.2 | 334 | 13.4 | 116 | 18.5 | .85 | .84 | .82 | .75 | .75 | .73 | .68 | .59 |
| | 230 | | | | 46.4 | 53.2 | 290 | | | | | | | | | | | |
| | 460 | | | | 23.2 | 26.6 | 145 | | | | | | | | | | | |
| | 575 | | | | 18.6 | 21.3 | 116 | | | | | | | | | | | |
| 20 | 200 | 3 | G | 1.2 | 67.2 | 78.5 | 334 | 17.6 | 116 | 23.2 | .86 | .85 | .84 | .80 | .77 | .76 | .73 | .66 |
| | 230 | | | | 58.4 | 68.3 | 290 | | | | | | | | | | | |
| | 460 | | | | 29.2 | 34.1 | 145 | | | | | | | | | | | |
| | 575 | | | | 23.3 | 27.3 | 116 | | | | | | | | | | | |
| 25 | 200 | 3 | H | 1.2 | 81.5 | 94.1 | 501 | 21.2 | 175 | 28.3 | .88 | .88 | .87 | .83 | .78 | .75 | .69 | .60 |
| | 230 | | | | 70.9 | 81.8 | 436 | | | | | | | | | | | |
| | 460 | | | | 35.5 | 40.9 | 218 | | | | | | | | | | | |
| | 575 | | | | 28.4 | 32.7 | 174 | | | | | | | | | | | |

 **HYDROMATIC**®

MSA-MT 2364

App. 411

# Technical Data

## S8LX

## MODEL: S8LX — Explosion Proof Non-Clog Sewage Pumps

**Physical Data:**

| | |
|---|---|
| DISCHARGE SIZE | 8" |
| SOLIDS SIZE | 4" |
| IMPELLER TYPE | BALANCED, ENCLOSED, 2 VANE |
| CABLE LENGTH | 30' STANDARD<br>50' OPTIONAL |
| PAINT | PAINTED AFTER ASSEMBLY. DARK GREEN, WATER REDUCIBLE ENAMEL, ONE COAT, AIR DRIED. |

**Temperature:**

| | |
|---|---|
| MAXIMUM LIQUID | 104°F LABELED / 140°F UNLABELED |
| MAXIMUM STATOR | 311°F |
| OIL FLASH POINT | 390°F |
| HEAT SENSOR        Open:<br>                     Closed: | 311°F MAX. / 293°F MIN.<br>243°F MAX. / 192°F MIN. |

**Technical Data:**

| POWER CORD TYPE | | STW-A/W WATER RESISTANT 600V, 60°C | |
|---|---|---|---|
| SENSOR CORD TYPE | | 18-5 STW-A WATER RESISTANT 600V, 60°C, 5.5 AMPS | |
| **MATERIALS OF CONSTRUCTION** | MOTOR HOUSING | CAST IRON    ASTM    A-48 | CLASS 30 |
| | CASING | CAST IRON    ASTM    A-48 | CLASS 30 |
| | IMPELLER | CAST IRON    ASTM    A-48 | CLASS 30 |
| | CASING WEAR RING | BRONZE    ASTM    B-584-836 | ALLOY 115 |
| | MOTOR SHAFT | 416 STAINLESS STEEL | |
| | HARDWARE | 300 SERIES STAINLESS STEEL | |
| | "O" RINGS | BUNA N | |
| MECHANICAL SEALS<br>                     Standard:<br>                     Optional: | | UPPER AND LOWER CARBON/CERAMIC, TYPE 21, BF1C1<br>LOWER TUNGSTEN CARBIDE/TUNGSTEN CARBIDE, TYPE 21, BD1D1 | |
| UPPER BEARING | | (RADIAL)  SINGLE ROW — BALL | |
| LOWER BEARING | | (THRUST) SINGLE ROW — BALL | |

**MSA-MT 2365**



**HYDROMATIC°**

# **ADDENDA**

MSA-MT 2366

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Environmental Protection**
**Northwest Regional Office**

Tel: 814-332-6942
Fax: 814-332-6121

SEP 2 8 2004

**SUBJECT:**   Act 537 Special Study for the Kearsarge Pump Station & Tributary Sewers
Dated June 2004 (Revisions Received August 25, 2004)
Millcreek Township, Erie County

**TO:**   Ricardo F. Gilson
Regional Manager
Water Management

**FROM:**   Eric C. Kichell
Sewage Planning Specialist
Water Management

**THROUGH:** William T. Crawford
Sewage Planning Specialist Supervisor
Water Management

And

Michael K. Zimmerman
Planning and Finance Chief
Water Management

Attached for you consideration is the Millcreek Township Act 537 Special Study for the Kearsarge Pump Station. The Special Study was submitted under an October 31, 2003 Consent Order and Agreement (CO&A) that requires Millcreek Township and the Millcreek Township Sewer Authority to eliminate all overflow events at the Kearsarge Pump Station and its tributary sewers. According to the CO&A, the Pump Station contains an unauthorized manual relief valve and overflow line by which untreated sewage has been discharged on occasion to Walnut Creek, in order to prevent surcharging and basement backups during heavy precipitation events. The CO&A specifies three alternatives that must be evaluated as part of the Study: 1) the replacement of the pump station; 2) the installation of an in-line booster on the force main; and, 3) the construction of an overflow retention facility. Additional alternatives may also be considered under the document.

**DEP 00 629**

**App. 414**

Ricardo F. Gilson                    -2-

The alternatives of: 1) replacing the pump station, and 2) installing an in-line booster, are considered in the Study but were immediately abandoned. The Millcreek Township sewage flows currently entering the City of Erie from the Kearsarge pump station already exceed their peak-flow allowances based on an inter-municipal agreement. In addition, a significant increase in forward pumping capacity would require the enlargement of approximately 1700 feet of force main. Therefore, the Study concludes that the pumped forward flow rates should be kept to a minimum, and as a result, the following alternatives were evaluated: 1) upgrade the pump station; 2) increase the station's forward pumping capacity (without further exceeding inter-municipal peak flow allowances); 3) construction of an overflow retention facility; and, 4) relieve tributary interceptors. The Study recommends implementing a combination of these alternatives.

The alternatives selected in the Study will address a 10-year planning period (2014) that considers both growth and wet weather events. The Study also addresses ultimate flows beyond 2014, which will be discussed later in this summary.

1) Pump Station Upgrade

The pump station's last major upgrade was in 1984. The Study indicates that the pump station will require some upgrades regardless of the alternative selected. The Study recommends the following:

- New Variable Frequency drives
- New controller
- Replace pump #3 (to match pump #'s 1 and 2)
- Provide an automatic transfer switch for power protection
- Replace the generator
- Install SCADA, odor control, and rain gauge equipment.

2) Increase Pump Station's Forward Pumping Capacity

The pump station currently has a forward pumping capacity of 3600 gpm. As documented in the CO&A, this capacity is periodically exceeded during wet weather. Several options are evaluated under this alternative that compare and coordinate various forward pumping rates with the construction of overflow retention facilities of different sizes. Any flow reduction benefits due to continuing inflow/infiltration (I&I) abatement was not considered. As instructed by DEP under the CO&A, I&I abatement is to continue but cannot be relied upon for any significant flow reduction.

The design flow considerations were based on data gathered during pump station overflow events and the flow impacts of selected storm events. Consideration was also given to the frequency of storm events occurring during environmental conditions (saturated soils) that could cause overflows. The flow rate that was selected represents a 1-year frequency storm occurring during the wet season between December 1 and April 30th. The Study indicates that such a storm has not occurred in the past 10 years but certainly has the potential to occur. There is significant discussion throughout the Study that compares precipitation data and the potential effects of various storm events on design flows. The Study suggests that it is difficult to predict future flows based on the limited data available and the inability to predict high-intensity storms not yet experienced.

DEP 00 630    App. 415

Ricardo F. Gilson                                        -3-

Consideration is also given to the potential growth in the areas of Millcreek and Summit Townships that are tributary to the Kearsarge pump station. Approximately 25% of the existing flows to the pump station are from Summit Township. Because the majority of the tributary areas in Millcreek are already developed, any significant loading from future flows will likely come from the Route 19 corridor in Summit Township.

The alternative recommended to increase the pump station's forward pumping capacity is the replacement of the existing pumps with three new variable speed pumps, resulting in an increase in forward pumping capacity from 3600 gpm to 4500 gpm.

3) Construction of an Overflow Retention Facility

As mentioned above, the Plan indicates that it is difficult to predict flow volumes from less frequent, high intensity storms. To address this, the Study recommends the construction of an overflow retention facility at the pump station. When the sewage flow into the pump station exceeds the 4500 gpm forward pumping capacity, the excess flows would be conveyed to the retention facility. As the incoming flow to the station decreases, the stored wastewater in the retention facility will be bled back into the pump station to be pumped forward. When the retention facility is utilized, the event will be recorded on the proposed SCADA system. The retention facility will also aid in the removal of the manual relief valve and overflow line when the pump station is taken off-line and flows must be temporarily diverted.

Like the forward pumping capacity alternative described above, both growth and storm events were considered in sizing the retention facility. The recommended tank size is 500,000 to 1,000,000 gallons. Storm events will continue to be monitored during the design phase in order to determine the most appropriate tank size prior to permitting. A 500,000-gallon tank is the minimum required based on data contained within the Study.

4) Relieve Tributary Interceptors

Of the three interceptors tributary to the pump station, two are currently, and will continue to be, overloaded. Either the excess flows entering them must be abated or they must be relieved. While I&I abatement will continue to be pursued, it cannot be relied upon to create capacity in the sewers. Therefore, the recommended alternative in the Study is to relieve the 10" Zimmerly and 18" Beaver Run interceptors by diverting them.

The Zimmerly interceptor will be diverted to a 15" relief sewer that will intercept flows from Dixson Drive and 51st Street leaving only flow from the areas west of the interstate and Zimmerly Road to be transported by the existing 10" sewer. This project is currently being pursued by the sewer authority.

Portions of the Beaver Run interceptor will be diverted to an existing 24" sewer. The Study assumes that approximately 1.2 MGD will be removed (based on a 1-year storm event), reducing the Beaver Run flow to 4.6 MGD. The Plan indicates that this flow is still 300,000 gallons above the Beaver Run sewer's capacity, but that any surcharge remaining in the in the line will not cause basement backups or overflows if a discharge at the pump station is prevented. It should be emphasized that this surcharge would be caused by a 1-year frequency storm during wet weather conditions and without consideration of any continuing I&I abatement. The current Beaver Run interceptor's peak flows vary between 1.7 and 3.5 MGD without the diversion. If it is determined in the future that the Beaver Run diversion is not

Ricardo F. Gilson                                    -4-

adequate, the Kuntz Rd sewer could also be diverted to the existing 24" sewer which would reduce the
Beaver Run flows to 3.5 MGD, well below its capacity. The Kuntz Rd. alternative was not
recommended in the Study due to the costs associated with constructing an additional pump station and
crossing Walnut Creek.

In addition to the Zimmerly and Beaver Run diversions, the Study recommends that backflow preventers
be installed on 36 homes in the Dixson Drive/51st Street areas. The purpose of the back flow valves is
to prevent basement backups due to a "catastrophic" event that would cause the pump station to
surcharge.

As mentioned at the beginning of this summary, the Study also addresses ultimate flows beyond year
2014. It is anticipated that ultimate flows would require an additional 1,000 gpm of forward pumping
capacity. This increase in flow could be handled by an increase in pumping capacity or by increasing
storage in the overflow retention facility. The Study suggests that the proposed retention facility will be
built larger than what is required and that the storage tank could be easily expanded to accommodate
additional flows if needed. In order to predict future expansion needs, the Millcreek Township Sewer
Authority (MTSA) will commit to including a summary of the Kearsarge operation status in the annual
MTSA Chapter 94 Report. The data will include forward flows, storage flows, overflow retention
utilization, rainfall, and Summit Township flows. Both Summit and Millcreek Township's projected
growth will be added to the peak flow numbers. Projections will be provided for two and five-year
periods.

The funding method proposed for the pump station upgrades and storage tank construction (Alternatives
1-3) is general revenue bonds and an increase in user rates. The total project cost is $2,880,000. The
cost sharing for the project is estimated at 73% for Millcreek and 27% for Summit. User fees are
projected to increase between $1.10-1.47 per quarter in Millcreek and $4.53-6.06 in Summit. The costs
associated with construction of the sewer diversions and back-flow preventers (Alt. 4) will be covered
by the MTSA capital reserve fund. The project costs for these items are $224,400.

The implementation schedule found on page 3 of the Study is consistent with the CO&A:

-        Submit Act 537 Special Study to DEP, July 1, 2004.
-        Submit permits 9 months after 537 approval (say, June 2005)
-        Complete construction 18 months after permit issuance (December 2006)
-        Remove overflow 30 days after construction (January 2007)
-        Initiate feasibility study for ultimate flow, 2012 or as needed.

The Study was adopted by resolution by Millcreek Township, Summit Township, Millcreek Sewer
Authority and Summit Township Sewer Authority. The resolutions provide for the Study's timely
implementation in accordance with the CO&A. The Plan is consistent with 25 Pa Code Chapter 71 both
technically and administratively. I recommend its approval. An approval letter for your signature is
attached.

Attachments

cc:    K. Hoesch
       E. Kicher

**DEP 00 632**

**App. 417**

 Pennsylvania Department of Environmental Protection

**230 Chestnut Street**
**Meadville, PA 16335-3481**

**SEP 3 0 2004**

**Northwest Regional Office**

814-332-6942
Fax: 814-332-6121

Millcreek Township Supervisors
3608 West 26th Street
Erie, PA 16506

Re:    Act 537 Special Study Approval for the Kearsarge
         Pump Station
         Millcreek Township, Erie County

Dear Supervisors:

The Department of Environmental Protection hereby approves the document entitled "Act 537 Special Study: Kearsarge Pump Station & Tributary Sewer Network Upgrade & Expansion, Volumes I & II." The Study is dated June 2004 (revisions dated August 25, 2004) and was prepared by Consoer Townsend Envirodyne Engineers, Inc. on behalf of Millcreek Township and the Millcreek Township Sewer Authority. The Study was submitted in accordance with the October 31, 2003 Consent Order and Agreement by and between the Department, Millcreek Township and the Millcreek Township Sewer Authority which requires the Township and Sewer Authority to eliminate all overflow events at the Kearsarge Pump Station and its tributary sewers. The Study addresses a 10-year planning period based on flows from a 1-year frequency storm event during saturated conditions, as well as ultimate flows beyond year 2014.

The Study recommends the following alternatives be implemented:

- Pump station upgrades consisting of SCADA, odor control and rain gauge equipment; replacement of the existing pumps with three new variable frequency drive pumps; replacement of the generator; and installation of an automatic transfer switch.

- Increasing the pump station's forward pumping capacity from 3600 gpm to 4500 gpm.

- Construction of a 500,000-gallon (minimum) overflow retention facility with related components.

- Tributary sewer upgrades consisting of the Zimmerly and Beaver Run Interceptor diversions, installation of backflow preventers on 36 homes in the Dixson Drive/51st Street area and continuing inflow/infiltration abatement.

- Include a summary of the Kearsarge Pump Station's operation status in future Chapter 94 Reports submitted by the Millcreek Township Sewer Authority. Flow projections are to be provided for two and five-year periods.

**DEP 00 627**

**App. 418**

Millcreek Township Supervisors                    -2-

-     Initiate a feasibility study to address ultimate flows at the Kearsarge Pump Station in 2012 (or as needed).

The Department will hold Millcreek Township and the Millcreek Township Sewer Authority responsible for the timely implementation of the Study. A summary of the Implementation Schedule contained within the Study and October 31, 2003 Consent Order & Agreement is as follows:

-     Complete design and submit all necessary permit applications and other information to the Department within 9 months after approval of the Special Study.

-     Complete construction within 18 months after permit issuance.

-     Remove the pump station overflow and eliminate all overflow events tributary to the Kearsarge Pump Station within 30 days after construction.

-     Initiate a feasibility study to address ultimate flows and construct the Kuntz Road diversion and Interchange Road relief sewer in 2012, or as needed.

Please feel free to contact Eric Kicher of my staff if you have any questions on this matter.

Sincerely,

Ricardo F. Gilson
Regional Manager
Water Management

Enclosure

cc:    George Riedesel, Manager, Millcreek Township Sewer Authority
      Erie County Dept. of Planning
      Erie County Dept of Health
      Gerald Allender, PE, CTE Engineers
      William Steff, Manager, Summit Township Sewer Authority
      Summit Township Supervisors
      A. Oprendek
      W. Crawford
      M. Zimmerman
      E. Kicher
      File: Planning/ Act 537

RFG:ECK:brs

App. 419

DEP 00 628

PROGRAM _____ CONF. Y/N _____
FILE NAME _Millcreek Twp Act 537 Base Plan Update_
BREAKDOWN _Planning_
TYPE _Act 537_
COUNTY _Erie_
COMMENTS _Kearsarge PS to Q Temp_

 Pennsylvania Department of Environmental Protection

**230 Chestnut Street**
**Meadville, PA 16335-3481**

JAN 1 7 2006,

**Northwest Regional Office**

814-332-6942
Fax: 814-332-6121

Mr. George W. Riedesel, Manager
Millcreek Township Sewer Authority
3608 West 26th Street
Erie, PA 16506

                         Re:    Sewage
                                Peach Street Interceptor Diversion
                                WQM Permit No. 2595402 - Amendment 1
                                APS ID No. 558235
                                Authorization No. 601439
                                Millcreek Township, Erie County

Dear Mr. Riedesel:

Your permit amendment is enclosed.

You must comply with all Standard and Special Conditions attached to this Permit. Construction must be done in accordance to the permit application and all supporting documentation. Please review the permit conditions and the supporting documentation submitted with your application before starting construction.

Please take the time to complete the enclosed questionnaire and return it in the enclosed postage-paid return envelope.

Any person aggrieved by this action may appeal, pursuant to Section 4 of the Environmental Hearing Board Act, 35 P.S. Section 7514, and the Administrative Agency Law, 2 Pa. C.S. Chapter 5A, to the Environmental Hearing Board, Second Floor, Rachel Carson State Office Building, 400 Market Street, P.O. Box 8457, Harrisburg, PA 17105-8457, 717-787-3483. TDD users may contact the Board through the Pennsylvania Relay Service, 800-654-5984. Appeals must be filed with the Environmental Hearing Board within 30 days of receipt of written notice of this action unless the appropriate statute provides a different time period. Copies of the appeal form and the Board's rules of practice and procedure may be obtained from the Board. The appeal form and the Board's rules of practice and procedure are also available in braille or on audiotape from the Secretary to the Board at 717-787-3483. This paragraph does not, in and of itself, create any right of appeal beyond that permitted by applicable statutes and decisional law.

Mr. George W. Riedesel                    -2-

    IF YOU WANT TO CHALLENGE THIS ACTION, YOUR APPEAL MUST REACH THE BOARD WITHIN 30 DAYS.  YOU DO NOT NEED A LAWYER TO FILE AN APPEAL WITH THE BOARD.

    IMPORTANT LEGAL RIGHTS ARE AT STAKE, HOWEVER, SO YOU SHOULD SHOW THIS DOCUMENT TO A LAWYER AT ONCE.  IF YOU CANNOT AFFORD A LAWYER, YOU MAY QUALIFY FOR FREE PRO BONO REPRESENTATION.  CALL THE SECRETARY TO THE BOARD 717-787-3483 FOR MORE INFORMATION.

    If you have any questions, please call Peter J. Link, Erie County Department of Health, 606 West Second Street, Erie, Pennsylvania 16507; telephone:  814-451-6773.

Sincerely,

Ricardo F. Gilson
Regional Program Manager
Water Management


Enclosures

cc    CTE/AECOM
       Summit Township Sewer Authority
       Erie County Dept. of Health
       Wastewater Management
       Monitoring & Compliance Section
       File

RFG:PJL:RPH:cas:lsl

3800-PM-WSWM0015  Rev. 4/2003
Permit

**dep**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION
BUREAU OF WATER SUPPLY AND WASTEWATER MANAGEMENT

# WATER QUALITY MANAGEMENT
# PERMIT

PERMIT NO. 2595402

AMENDMENT NO. 1

APS ID. 558235

AUTH. ID.601439

| | |
|---|---|
| A. PERMITTEE (Name and Address):  CLIENT ID#: 80837<br><br>Millcreek Township Sewer Authority<br>3608 West 26th Street<br>Erie, PA 16506 | B. PROJECT/FACILITY (Name):<br><br>Peach Street Interceptor Diversion |

C. LOCATION (Municipality, County):            SITE ID#: 261499
West Side of Peach Street
North of Interchange Road
Millcreek Township, Erie County

D. **This amendment approves the construction/operation of sewerage facilities consisting of:**

Relief sewer consisting of 200 LF of 15-in. PVC pipe and three new manholes to divert the 10-in. Peach Street interceptor to the

24-in. Beaver Run relief sewer

| | | | |
|---|---|---|---|
| Pump Stations: **N/A**<br><br>Design Capacity: —— GPM | Sewage Treatment Facility:<br><br>Annual Average Flow: | ---- | MGD |
| | Design Hydraulic Capacity: | ---- | MGD |
| | Design Organic Capacity: | ---- | lb. BOD$_5$/day |

E. APPROVAL GRANTED BY THIS PERMIT IS SUBJECT TO THE FOLLOWING:

1. **Amendments:** All construction, operations, and procedures shall be in accordance with the Water Quality Management Permit Amendment application dated **6/29/05** and its supporting documentation, and addendums dated **N/A**, which are hereby made a part of this amendment.

   Except for any herein approved modifications, all terms, conditions, supporting documentation and addendums approved under Water Quality Management Permit No. **2595402** dated **3/22/95** shall remain in effect.

2. Permit conditions relating to **Sewerage** are attached and made part of this permit.

F. THE AUTHORITY GRANTED BY THIS PERMIT IS SUBJECT TO THE FOLLOWING FURTHER QUALIFICATIONS:

1. If there is a conflict between the application or its supporting documents and amendments and the attached conditions, the attached conditions shall apply.

2. Failure to comply with the rules and regulations of DEP or with the terms or conditions of this permit shall void the authority given to the permittee by the issuance of this permit.

3. This permit is issued pursuant to the Clean Streams Law Act of June 22, 1937, P.L. 1987, as amended 35 P.S. §691.1 et seq., and/or the Dam Safety and Encroachments Act of November 26, 1978, P.L. 1375, as amended, 32 P.S. §693.1 et seq. Issuance of this permit shall not relieve the permittee of any responsibility under any other law.

| | |
|---|---|
| PERMIT ISSUED: _____ JAN 1 7 2006 _____ | BY: _Ricardo F. Gilson_<br><br>Ricardo F. Gilson<br><br>TITLE: Regional Manager - Water Management<br><br>Northwest Regional Office |

3800-PM-WSWM0015a  Rev. 6/2004                                         Permit No. _____ 2595402 -- Amendment 1 _____
Conditions Sewerage



**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
**BUREAU OF WATER SUPPLY AND WASTEWATER MANAGEMENT**

# PERMIT CONDITIONS RELATING TO SEWERAGE
For use in Water Quality Management Permits

(Place an X in the box that applies)

| General |
|---|

☒ 1. Consistent with the Department of Environmental Protection's (DEP) technical guidance document *Conducting Technical Reviews of Water Quality Management Permit Wastewater Treatment Facilities* (DEP ID: 362-2000-007) available on DEP's website at www.dep.state.pa.us. DEP considers the registered Professional Engineer whose seal is affixed to the design documents to be fully responsible for the adequacy of all aspects of the facility design.

☐ 2. The permittee shall adopt and enforce an ordinance requiring the abandonment of privies, cesspools or similar receptacles for human waste and onlot sewage disposal systems on the premises of occupied structures accessible to public sewers. All such structures must be connected to the public sewers.

☐ 3. The outfall sewer or drain shall be extended to the low water mark of the receiving body of water. Where necessary to ensure proper mixing and waste assimilation, an outfall sewer or drain may be extended with appurtenances below the low water mark and into the bed of a navigable stream provided that the permittee has secured an easement, right-of-way, license or lease from DEP in accordance with Section 15 of the Dam Safety and Encroachments Act, the Act of November 26, 1978, P.L. 1375, as amended.

☒ 4. The approval is specifically made contingent on the permittee acquiring all necessary property rights, by easement or otherwise, providing for the satisfactory construction, operation, maintenance and replacement of all sewers or sewerage structures in, along or across private property with full rights of ingress, egress and regress.

☐ 5. When construction of the approved sewerage facilities is completed and before they are placed in operation, the permittee shall notify DEP in writing so that a DEP representative may inspect the facilities.

☒ 6. If, at any time, the sewerage facilities covered by this permit create a public nuisance, including but not limited to, causing malodors or causing environmental harm to waters of the Commonwealth, DEP may require the permittee to adopt appropriate remedial measures to abate the nuisance or harm.

☐ 7. This permit authorizes the construction and operation of the proposed sewerage facilities until such time as facilities for conveyance and treatment at a more suitable location are installed and capable of receiving and treating the permittee's sewage. Such facilities must be in accordance with the applicable municipal official plan adopted pursuant to Section 5 of the Pennsylvania Sewage Facilities Act, the Act of January 24, 1966, P.L. 1535 as amended. When such municipal sewerage facilities become available, the permittee shall provide for the conveyance of the sewage to these sewerage facilities, abandon the use of these approved facilities and notify DEP accordingly. This permit shall then, upon notice from DEP, terminate and become null and void and shall be relinquished to DEP.

☒ 8. This permit does not relieve the permittee of its obligations to comply with all federal, interstate, state or local laws, ordinances and regulations applicable to the sewerage facilities.

☒ 9. This permit does not give any real or personal property rights or grant any exclusive privileges, nor shall it be construed to grant or confirm any right, easement or interest in, on, to or over any lands which belong to the Commonwealth.

☐ 10. The authority granted by this permit is subject to all effluent requirements, monitoring requirements and other conditions as set forth in NPDES Permit No. PA_____ and all subsequent amendments and renewals. No discharge is authorized from these facilities unless approved by an NPDES Permit.

| Construction |
|---|

☐ 11. An Erosion and Sedimentation (E&S) Plan must be developed prior to construction of the permitted facility, pursuant to Title 25 Pa. Code Chapter 102, and implemented during and after the earth disturbance activity.

If the activity involves 5 or more acres of earth disturbance, or from 1 to 5 acres of earth disturbance with a point source discharge to surface waters of the Commonwealth, an NPDES permit for the Discharge of Stormwater Associated with Construction Activity is required.

In addition to the state NPDES permitting requirements, some municipalities, through local ordinances, require the E&S Control Plan to be reviewed and approved by the local County Conservation District office prior to

- 1 -

**App. 423**

3800-PM-WSWM0015a  Rev. 6/2004
Conditions Sewerage

Permit No. _____ 2595402 – Amendment 1

construction.  For specific information regarding E&S control planning approval and NPDES permitting requirements, please contact your local County Conservation District office.

☒  12.  The facilities shall be constructed under the supervision of a Pennsylvania registered Professional Engineer in accordance with the approved reports, plans and specifications.

☐  13.  A Pennsylvania registered Professional Engineer shall certify that construction of the permitted facilities was completed in accordance with the application and design plans submitted to DEP, using "Post Construction Certification" (3800-PM-WSWM0179a).  It is the permittee's responsibility to ensure that a Professional Engineer is on-site to provide the necessary oversight and/or inspections to certify the facilities.  The certification must be submitted to DEP before the facility is placed in operation.  If requested, "as-built" drawings, photographs (if available) and a description of any DEP-approved deviations from the application and design plans must be submitted to DEP within 30 days of certification.

☒  14.  Manhole inverts shall be formed to facilitate the flow of the sewage and to prevent the stranding of sewage solids. The manhole structure shall be built to prevent undue infiltration, entrance of street wash or grit and provide safe access to facilitate manhole maintenance activities.

☐  15.  The local Waterways Conservation Officer of the Pennsylvania Fish and Boat Commission (PFBC) shall be notified when the construction of any stream crossing and/or outfall is started and completed.  A written permit must be secured from the PFBC if the use of explosives in any waterways is required and the permittee shall notify the local Waterways Conservation Officer when explosives are to be used.

### Operation and Maintenance

☒  16.  The permittee shall maintain records of "as-built" plans showing all the treatment facilities as actually constructed together with facility operation and maintenance (O&M) manuals and any other relevant information that may be required.  Upon request, the "as-built" plans and O&M manuals shall be filed with DEP.

☒  17.  The sewers shall have adequate foundation support as soil conditions require.  Trenches shall be back-filled to ensure that sewers will have proper structural stability, with minimum settling and adequate protection against breakage.  Concrete used in connection with these sewers shall be protected from damage by water, freezing, drying or other harmful conditions until cured.

☒  18.  Stormwater from roofs, foundation drains, basement drains or other sources shall not be admitted directly to the sanitary sewers.

☒  19.  The approved sewers shall be maintained in good condition, kept free of deposits by flushing or other cleaning methods and repaired when necessary.

☒  20.  The sewerage facilities shall be properly operated and maintained to perform as designed.

☐  21.  The attention of the permittee is called to the highly explosive nature of certain gases generated by the digestion of sewage solids when these gases are mixed in proper proportions with air and to the highly toxic character of certain gases arising from such digestion or from sewage in poorly ventilated compartments or sewers.  Therefore, at all places throughout the sewerage facilities where hazard of fire, explosion or danger from toxic gases may occur, the permittee shall post conspicuous permanent and legible warnings.  The permittee shall instruct all employees concerning the aforesaid hazards, first aid and emergency methods of meeting such hazards and shall make all necessary equipment and material accessible.

☐  22.  An operator certified in accordance with the Water and Wastewater Systems Operator Certification Act of February 21, 2002, 63 P.S. §§1001, et seq. shall operate the sewage treatment plant.

☐  23.  The permittee shall properly control any industrial waste discharged into its sewerage system by regulating the rate and quality of such discharge, requiring necessary pretreatment and excluding industrial waste, if necessary, to protect the integrity or operation of the permittee's sewerage system.

☒  24.  There shall be no physical connection between a public water supply system and a sewer or appurtenance to it which would permit the passage of any sewage or polluted water into the potable water supply.  No water pipe shall pass through or come in contact with any part of a sewer manhole.

☐  25.  All connections to the approved sanitary sewers must be in accordance with the corrective action plan as contained in the approved Title 25 Pa. Code Chapter 94 Municipal Wasteload Management Annual Report.

☐  26.  Collected screenings, slurries, sludge and other solids shall be handled and disposed of in compliance with Title 25 Pa. Code Chapters 271, 273, 275, 283 and 285 (related to permits and requirements for land filling, land application, incineration and storage of sewage sludge), Federal Regulations 40 CFR 257 and the Federal Clean Water Act and its amendments.

App. 424

50

Upon motion by ___Joseph S. Kujawa___ , seconded by ___Suzanne R. Weber___ ,

the following Ordinance was duly enacted, __3__ voting in favor of enactment, __0__ voting

against enactment.

### ORDINANCE _2002-23_

An Ordinance to amend and restate Ordinance No. 89-29, commonly known as the Sewer Use Ordinance, regulating use of public sanitary sewers in Millcreek Township; defining terms; prohibiting certain practices with respect to disposal of sewage; providing for the connection of properties to available public sewers; authorizing the Board of Supervisors to make such connections and recover costs thereof in the event of neglect or refusal of owners to do so; requiring applications for and issuance of permits to make connections, including execution of bonds and payment of fees in connection therewith; imposing duties on owners of property which discharge industrial waste and potentially harmful substances into said sewers; regulating substances that may be introduced into sewers; prohibiting discharge of certain kinds of liquids or wastes, including those not in conformity with the Millcreek Township Industrial Waste Ordinance (No. 94-7 as amended); imposing penalties and establishing enforcement measures in the event of violation; and including severability and repealor clauses.

WHEREAS, the public sanitary sewer system within Millcreek Township is owned by the Millcreek Township Sewer Authority, the Authority having entered into a Lease Agreement with Millcreek Township pursuant to which Millcreek Township holds, maintains and operates the public sanitary sewer system; and

WHEREAS, Millcreek Township by Ordinance No. 89-29 enacted on December 18, 1989 has established definitions and regulations governing the public sanitary sewer system; and

WHEREAS, Millcreek Township has also enacted an Industrial Waste Ordinance, Ordinance No. 94-7 as amended by Ordinance Nos. 96-14 and 2000-4, establishing regulations governing discharge of industrial waste; and

WHEREAS, the Board of Supervisors finds that it is in the best interest of the general health, safety and welfare that the Sewer Use Ordinance be amended to assure proper application for and issuance of permits to connect, bonds sufficient to protect against damage to the system and appropriate regulation of applications for and issuance of permits to connect to the system.

**IT IS HEREBY ENACTED AND ORDAINED** by the Board of Supervisors of Millcreek Township, Erie County, Pennsylvania as follows:

1.01.    Definitions

Words used in this Ordinance for which definitions are not established shall be given their usual and customary meaning. Terms defined in the Industrial Waste Ordinance shall be defined in accordance with said definitions. Unless the context specifically indicates otherwise, the meaning of the following terms when used in this Ordinance shall be as set forth below:

> **Applicant** shall mean the owner of the property or, where applicable, the lessee of the property accorded authority under a lease to apply for a permit which pertains to the sanitary sewer system.

> **Authority** shall mean the Millcreek Township Sewer Authority.

> **Authorized Representative**

> 1. Of a corporation, the president, secretary, treasurer or vice president or other person submitting written confirmation of authority to perform the act for and on behalf of the corporation.

> 2. Of a partnership or limited partnership, a general partner.

> 3. Of an individual, the individual or other person submitting a written confirmation of authority to perform the act for and on behalf of said individual, so long as the owner remains ultimately liable for performance.

> 4. Of a Federal, State or Local governmental entity, a director or highest official appointed or designated to oversee the operation and performance of the activities of the entity, or their designee.

> **Biochemical Oxygen Demand (BOD)** shall mean the quantity of oxygen utilized in the biochemical oxidation of organic matter under standard laboratory procedures for five (5) days at $20°$ centigrade, usually expressed as a concentration (e.g., milligrams per liter).

> **Connection** shall mean and extend to a connection to the sanitary sewer system, and to the alteration, modification or termination/disconnection of an existing connection to the sanitary sewer system, unless expressly provided otherwise in this Ordinance.

> **Garbage** shall mean solid waste from the preparation of cooking, dispensing of food and/or from the handling, storage and sale of produce.

**App. 426**

2

**MSA-MT 5089**

52

**Industrial Waste** shall be construed to mean any liquid, gaseous, radioactive, solid or other substance, not ordinary waste or sewage, but including discharges from pretreatment facilities, resulting from any manufacturer or industry or from any establishment including those recovering or processing natural resources, and shall include all such substances, whether or not generally characterized as "waste."

**Natural Outlet** shall mean any outlet into a watercourse, ditch, pond, lake or other body of surface or ground water.

**Person** shall mean any individual, partnership, firm, company, corporation, association, joint stock company, trust, limited liability company, estate, governmental entity or other legal entity, or their legal representatives, agents or assigns.

**Private Well** means any well owned by any person for his, her or its private use in providing water for any purpose whatsoever.

**Properly Shredded Garbage** means garbage which has been shredded to such a degree that all particles will be carried freely under the flow conditions normally prevailing in public sewers, with no particle greater than one-half inch in any dimension.

**Records** means and includes books, documents, papers, apparatus, data, readings, records of analysis, graphs, plans, investigative reports and ledgers.

**Sanitary Sewer** shall mean a sewer which carries sewage and/or industrial wastes and to which storm, surface and ground waters are not intentionally admitted

**Sewer System** shall mean the sanitary sewer system owned by the Millcreek Township Sewer Authority and operated by Millcreek Township.

**Sewage** shall mean any combination of water-carried wastes from residences, buildings, industrial establishments, commercial establishments, institutions, manufacturing plants, processing plants or other places in which such wastes are produced, together with such ground, surface, storm or other water as may be present. This includes but is not limited to human waste and gray water (dish washing operations, household showers, basement, floor and garage drains, swimming pools, etc.).

**Sewage Treatment Plant** shall mean and include all devices, facilities and/or structures used for treatment of sewage and/or industrial wastes.

**Sewage Works** shall mean all facilities for collecting, pumping, transporting, treating and disposal of sewage and industrial wastes.

**Sewer** shall mean a pipe or conduit for carrying sewage.

**Shall**, when used in this Ordinance, means a mandatory obligation.

607900

**MSA-MT 5090**

**App. 427**

**Standard Laboratory Procedure** shall mean the procedure prescribed in the latest edition of *Standard Methods for the Examination of Water and Wastewater*.

**Storm Sewer or Storm Drain** shall mean and include any sewer or conveyance which carries storm water, surface water, drainage and some industrial water discharges (such as cooling and air conditioning waters), but excludes sewage and polluted industrial waters.

**Storm Water** shall mean and include any flow occurring during or following any form of natural precipitation and resulting from such precipitation, including snowmelt. The term shall include but not be limited to flows from sump discharges, detention or retention facilities, downspouts, roof and other drains and other conveyance facilities.

**Suspended Solids** mean solids which either float on the surface of or are in suspension in water, sewage or other liquids and which are removable by laboratory filtering in accordance with standard laboratory procedure.

**Township** shall mean Millcreek Township.

**Township Engineer** shall mean the professional engineer employed by the Township, his or her assistant or designee, or any consulting engineer retained by the Township.

1.02    Use of Public Sewers Required

1.02.1  The owner of each and every house, building or other property located in Millcreek Township which is used for human occupancy, employment, recreation or other purpose and abuts on any street, highway, easement or right of way in which there has been constructed a sanitary sewer shall, at the owner's sole expense, install suitable sanitary sewer facilities therein and connect such facilities (including floor, basement and garage drains and swimming pools) and industrial waste outlets directly with the public sanitary sewer system in accordance with the provisions of this Ordinance and with the rules and regulations governing use and operation of the sanitary sewer system within sixty (60) days after the date of official notice to do so given in the manner provided by law.

1.02.2  The owner of any property within Millcreek upon which a new, altered or reconstructed building is constructed on or after enactment of this Ordinance shall not occupy or cause or allow to be occupied such building until such time as the building's sanitary facilities and any industrial waste outlets are properly connected to the public sanitary sewer system in accordance with the requirements of this Ordinance.

**MSA-MT 5091**                    **App. 428**

54

1.03.  Alternative to Use of Public Sanitary Sewer

In lieu of introducing untreated or partially treated industrial wastes and polluted waters into the public sanitary sewer system, the owner of premises producing such wastes (including floor, basement and garage drains and swimming pools), upon receiving and complying with all applicable permits and regulations of the Township, the Pennsylvania Department of Environmental Protection, the United States Environmental Protection Agency and/or the Erie County Department of Health, may at the owner's sole cost and expense construct and operate private waste treatment facilities, with the effluent discharged to a natural outlet. Where such private waste treatment facilities are provided, they shall be maintained and operated at all times in a satisfactory and effective manner and in accordance with all applicable regulations.

1.04.  Application for and Issuance of Permits

> 1.04.1  Permits Required.  No connection to the public sanitary sewer system shall be effected, altered, modified or disconnected unless the owner of the subject premises shall first apply for and obtain a permit.  "Connection" and "disconnection" as used in this Section shall include all connections and discharges to the sanitary sewer system, including but not limited to sewer drains and lateral connections.

> 1.04.2  Application for Permit.  Each owner of any premises as set forth in Sections 1.02 and 1.04.1, above, shall make application in writing to the Township and the Authority for a permit to make, alter or terminate a connection to the public sanitary sewer.  Such application shall be made to the Authority on such forms as are adopted by rules and regulations approved by the Board of Supervisors.

> 1.04.3  Application to be Signed.  Such application shall be signed by the owner(s), unless the owner(s) shall provide to the Authority a writing giving authorization to another person to make application and acknowledging that responsibility for compliance with this Ordinance and any permit issued rests with owner(s).

> 1.04.4  Content of Application.  In addition to other requirements as established by rules and regulations governing the sewer system, such application shall set forth:

>> 1.    The name and mailing address of the property owner(s);

>> 2.    The address of the property subject to the permit application;

>> 3.    A description of the lot subject to the application, including the subdivision, if any, and the lot's assigned number in said subdivision;

>> 4.    The Erie County or Millcreek Township index number assigned to the property;

**MSA-MT 5092**          **App. 429**

5.    The street where connection is to be made, altered or disconnected to or from the sewer system;

6.    The name and address of the contractor who shall perform the sewer work;

7.    A plan of the subject premises showing the proposed connection, alteration or disconnection and the sewer facilities;

8.    The intended use of the property upon connection (i.e., one-family, two-family or multi-family residential, commercial, industrial).

1.04.5 <u>Financial Security Required</u>. No permit shall be issued without the applicant(s)'s first executing and tendering financial security in favor of Millcreek Township in an amount fixed and on forms approved and adopted by rules and regulations approved by resolution of the Board of Supervisors. Said financial security shall serve as security for the proper performance of work subject to the requested permit in full compliance with this Ordinance and rules and regulations governing the sewer system and for repairs to streets and/or sanitary sewer facilities deemed by the Township or Authority to be necessary or appropriate as a consequence of said work.

1.04.6 <u>Permit, Tapping and Other Fees</u>.    Each applicant for a permit shall, upon submission of a permit application, pay in full all filing, review, inspection, tapping and other fees as are established therefor by rules and regulations governing the sanitary sewer system as approved by the Board of Supervisors. Any developer's agreement or private service agreements required or administered by the Authority in connection with such application must be concluded prior to issuance of a permit. Any sums due as tapping fees or as reimbursements to a developer who constructed mains to which connection is requested shall be paid in full prior to issuance of a permit.

1.04.7 <u>Issuance or Denial of Permit</u>.

1.04.7.1    No permit to connect to the sanitary sewer system shall be issued until and unless there has been constructed within the adjacent street, highway, easement or right of way public sanitary sewer facilities to which such connection can be effected, unless the Board of Supervisors should otherwise determine, and subject to such conditions as the Board shall then impose.

1.04.7.2    No permit to connect to the sanitary sewer system (this including alteration or disconnection of existing connections) shall be issued unless all requirements of this Ordinance and of rules and regulations governing the sanitary sewer system have been fully complied with.

**App. 430**

6

**56**

1.04.7.3    If an application for permit is denied, the Authority shall in writing state the reason(s) for denial.

1.04.8  Legal Effect of Permit.  A permit issued to authorize a connection shall authorize work as applied for and approved, and shall be valid for one (1) year from the date the permit is issued.  Permits shall expire one (1) year after the date of their issuance, unless the applicant, prior to the expiration date, shall have requested an extension and the Authority, for good cause shown, shall in writing have approved an extension.

1.05.  Connections to Comply With Regulations

1.05.1  All connections made to any public sanitary sewer of Millcreek Township shall be constructed in compliance with this Ordinance, standard rules and regulations governing the making of connections and the permit as issued.

1.05.2  Grease, oil and sand interceptors shall be provided for outlets connected with the public sanitary sewers when, in the opinion of the Township Engineer or the Authority, they are necessary for the proper handling of liquid wastes containing grease in excessive amounts, subject to the following regulations:

1.    Interceptors are not required for private living quarters or dwelling units.

2.    Grease and oil interceptors shall be constructed of impervious materials capable of withstanding abrupt and extreme changes in temperature, and shall be of substantial construction, watertight and equipped with easily-removable covers which, when secured, shall be gastight and watertight.

3.    All interceptors shall be of a type and capacity approved by the Township Engineer, and shall be located so as to be readily and easily accessible for cleaning and inspection.

4.    All grease, oil and sand interceptors, where required, shall be installed and maintained at the owner's sole cost and expense.  Such units shall be operated and maintained so that they shall be continuously efficient and shall be cleaned and repaired as required to maintain such efficient system.

1.06.  Remedies in Event of Failure to Connect

1.06.1  In the event the owner of any property required to connect to the public sanitary sewer system shall fail, refuse or neglect to connect with the sewer system prior to occupancy or within the sixty (60)-day period specified in Section 1.02.1, the Township, by its authorized employees, agents, contractors or designees, may enter upon such property and construct such connection.

7

**MSA-MT 5094**

**App. 431**

1.06.2 Such connection may be effected by the Township at its election at any time following expiration of the sixty (60)-day period or unlawful commencement of occupancy, without further notice to the owner being required.

1.06.3 Should the Township effect and construct a connection pursuant to this Section, it shall, upon completion of the work, send an itemized invoice for the cost of construction of such connection to the owner of the property upon which such connection has been made, which invoice shall be payable forthwith. Such invoice shall constitute a claim and assessment as defined in the general municipal law, 53 P.S. § 7106, et seq., as the same may be amended, and shall constitute a municipal claim from the date of the invoice.

1.06.4 Interest shall accrue on sums not paid within thirty (30) days after the date of the invoice at the rate of ten percent (10%) per year from the invoice date.

1.06.5 In case of failure, neglect or refusal by the owner of the property to pay such invoice in full, the Board of Supervisors shall cause to be filed a municipal lien for the costs of said construction, together with interest and costs, within six (6) months after the date of completion of the connection, such lien to be subject in all respects to the general law provided for the filing and recovery of municipal liens and claims.

1.07. Work to be Done by Licensed Contractors

1.07.1 No contractor not properly licensed by the Township and the Authority shall perform work related to or involving connection to the public sewer system.

1.07.2 Requirements for determining eligibility of and issuing licenses to persons to conduct work involving connections to the sanitary sewer system shall be as established by rules and regulations governing the sanitary sewer system.

1.07.3 All persons wishing to engage in work involving connections to the sanitary sewer system shall, prior to performing any such work, submit to the Authority an application for license on a form adopted by rules and regulations governing the sewer system and pay such fee for a license as is established under such rules and regulations.

1.07.4 The Authority, for good cause shown and pursuant to rules and regulations governing the sewer system, shall have authority to refuse to issue a license to a person not meeting requirements for a license or to suspend or revoke a previously issued license.

**App. 432**

**MSA-MT 5095**

58

1.08.  Industrial Wastes

1.08.1  This Ordinance is not intended to amend or repeal the Industrial Waste Ordinance, Ordinance No. 94-7 as amended by Ordinance Nos. 96-14 and 2000-4.

1.08.2  The admission into the public sewer system of any polluted waters or industrial wastes containing any quantity of substances having the characteristics described in Section 1.12.6 of this Ordinance or those described in the Industrial Waste Ordinance as being subject thereto shall be subject to the provisions of the Industrial Waste Ordinance.

1.08.3  When required by the Township Engineer or the Authority, the owner of any property served by a building sewer carrying industrial wastes discharging into the sewer system shall install a suitable control manhole in the building sewer to facilitate observation, sampling and measurement of the wastes.  Such manhole, when required, shall be accessibly and safely located, and shall be constructed at the owner's sole expense in accordance with plans approved by the Township Engineer, and shall be maintained by the owner so as to be safe and accessible at all times.

1.08.4  Every person and establishment other than residences which discharge industrial and sanitary wastes into the public sewer system or into any sewer connected therewith shall file forthwith a report in accordance with the Millcreek Township Industrial Waste Ordinance.

1.08.5  Every person discharging industrial waste mixture into the public sewer system or into sewers connected thereto shall keep and maintain records of the data required to be furnished in the questionnaire as defined above and in the Industrial Waste Ordinance, and such records shall be available for inspection during regular business hours by authorized employees or representatives of the Township or the Authority upon their presentation of written credentials of their authority, and such employees or representatives shall be permitted to make and retain copies of such records.

1.08.6  Discharge or introduction of non-domestic pollutants from any source into the public sewer system shall be in accordance with the Industrial Waste Ordinance.

1.09.  Preliminary Treatment Facilities

Where preliminary treatment facilities are provided for any waters or wastes, such preliminary facilities shall be maintained continuously in satisfactory and effective operation by the owner at the owner's sole expense.

**MSA-MT 5096**

**App. 433**

1.10. Authority to Test and Supplement Regulations

1.10.1 The Township or the Authority may conduct such investigations and tests as are necessary to enforce this Ordinance, and employees of the Township or Authority, or their agents, may enter upon any property for the purpose of taking samples, obtaining information or conducting surveys or investigations relating to such enforcement. Inspections are authorized for any purpose related to proper enforcement and administration of this Ordinance, including but not limited to ensuring proper connections and identifying and disconnecting unauthorized or unlawful connections. Policies and procedures pertaining to investigations, tests and surveys shall be as established in rules and regulations governing the sewer system.

1.10.2 Enforcement of provisions of this Ordinance regarding wastes which will interfere with operation of the Erie waste water treatment plant shall be by the Township or its designated agents, which shall include the Authority.

1.10.3 Limitations on wastewater strength in this Ordinance may be supplemented with more stringent limitations if:

1.   The Township determines that those limitations may not be sufficient to protect the operation of the treatment works; or

2.   The Township determines that the limitations are not sufficient to enable the treatment works to comply with water quality standards or effluent limitations specified in permits of the National Pollutant Discharge Elimination System (NPDES) or the Pennsylvania Department of Environmental Protection.

1.11  Administration and Enforcement Authority

1.11.1 The Authority and the Board of Supervisors are authorized to establish rules and regulations governing the sanitary sewer system and to adopt regulations and forms for use in implementing and administering this Ordinance. Such rules, regulations and forms shall be as approved by the Board of Supervisors and may be amended from time to time as is deemed appropriate.

1.11.2 The Board of Supervisors and Authority are authorized to establish and amend fees and other charges for permits, licenses, tapping privileges, reviews, inspections, certifications and other matters subject to this Ordinance and amounts of bonds required by this Ordinance and/or related to proper operation of the sewer system.

1.11.3 Permits, licenses and certifications authorized in this Ordinance shall be received, reviewed, issued, suspended or revoked by the Manager of the Authority or his or her designee.

10

**MSA-MT 5097**

60

1.11.4 The Township Engineer, Manager of the Authority and other employees or agents authorized by the Township or Authority, bearing proper credentials and identification, shall be permitted to enter upon all properties in Millcreek Township for the purpose of inspection, observation, measurement, sampling, testing and/or review, inspection and copying of records, in accordance with the provisions of this Ordinance and rules and regulations governing the sewer system.

1.11.5 Upon written request by the property owner, prospective purchaser or agent or contractor of either, the Authority shall have authority to inspect a property for the purpose of determining whether its connection(s) to the sanitary sewer system is or are in accordance with this Ordinance and rules and regulations governing the sewer system. Such request shall be accompanied by a written authorization by the property owner allowing the Township or Authority to inspect the property for the purpose of addressing such request. Fees for such requests and certifications, and forms to be used therefor shall be as established by rules and regulations governing the sewer system.

1.11.6 The Manager of the Authority and the Township Engineer are vested with authority to issue enforcement notices and commence actions for enforcement of this Ordinance.

1.12. <u>Unlawful Acts</u>. It shall be unlawful and a violation of this Ordinance for any person, directly or indirectly, to do or cause or allow to be done any of the following:

1.12.1 The placement or deposit of sewage, municipal waste or other objectionable wastes upon any public or private property within Millcreek Township or in any area under the jurisdiction of Millcreek Township.

1.12.2 The discharge of sewage into any natural outlet within Millcreek Township.

1.12.3 The discharge of industrial wastes or other polluted water into any natural outlet within Millcreek Township, unless the person doing so is operating with the prior approval of or under a permit issued by the U.S. Environmental Protection Agency or the Pennsylvania Department of Environmental Protection.

1.12.4 The construction or maintenance of any privy, privy vault or cesspool, other than an on-lot sewage system approved by the Township and constructed in accordance with current regulations of the Erie County Department of Health and/or the Pennsylvania Department of Environmental Protection.

1.12.5 The discharge of any storm water, surface drainage, ground drainage, roof runoff, subsurface drainage or unpolluted industrial process waters into any public sanitary sewer:

**MSA-MT 5098**                                    **App. 435**

1.     Storm water and all other unpolluted drainage shall be discharged into such sewers as are specifically designated as storm sewers, if available, or to a natural outlet approved by the Board of Supervisors.

2.     Unpolluted process waters shall be discharged into a storm sewer approved by the Board of Supervisors or, with prior approval of the Township, into a natural outlet if such storm sewer or outlet is not available.

1.12.6 Discharge of any of the following described waters or wastes into any public sanitary sewer:

1.     Any liquid or vapor having a temperature higher than 150° Fahrenheit; or

2.     Any gasoline, benzene, naptha, fuel oil or other flammable or explosive liquid, solid or gas; or

3.     Any garbage that has not been properly shredded; or

4.     Any ashes, sand, cinders, mud, straw, shavings, metal, glass, rags, feathers, tar, plastics, wood, paunch manure or any other solid or viscous substance not meeting the definition of properly shredded garbage and/or which is capable of obstruction to the flow in sewers or other interference with the proper operation of the sewage works; or

5.     Any waters or wastes having a ph lower than 5.5 or higher than 9.0, or having any other corrosive property capable of causing damage or hazard to structure, equipment processes and/or personnel of the sewage works or the sewage treatment plant; or

6.     Any waters or wastes containing a toxic or poisonous substance in sufficient quantity to injure or interfere with any sewage treatment process, constitute a hazard to humans or animals or create any hazard in the receiving waters of the sewage treatment plant; or

7.     Any waters or wastes containing suspended solids of such character and quantity that unusual attention or expense is required to handle such materials at the sewage treatment plant; or

8.     Any noxious or malodorous gas or substance capable of creating a public nuisance; or

9.     Water or wastes containing substances which are not in conformance with the provisions and pollutant limitations of the Millcreek Township Industrial Waste Ordinance, Ordinance No. 94-7 as amended.

**App. 436**

12

**MSA-MT 5099**

62

1.12.7 Construction or effectuation by any owner(s), themselves or by or through their contractors, agents or assigns, of a connection, alteration to or termination of a connection to the sanitary sewer system in a manner contrary to or not in strict compliance with the terms of an approved permit.

1.12.8 Construction or effectuation by any owner(s), themselves or by or through their contractors, agents or assigns, of a connection, alteration to or termination of a connection to the sanitary sewer system in any manner contrary to or not in strict compliance with the regulations of this Ordinance or rules and regulations governing the sewer system.

1.12.9 Performance of any work involving connections to the Millcreek Township sewer system by a person not licensed by the Township to perform such work.

1.12.10 Failure or refusal to connect to the public sewer system within the time authorized by an issued permit or any extension of time allowed after good cause shown.

1.12.11 Failure or refusal to connect to the public sewer system prior to commencement of occupancy of a building constructed, altered or reconstructed under a building permit issued on or after the effective date of this Ordinance.

1.12.12 Failure or refusal to connect to the public sewer system within sixty (60) days after the date of the Township's notice to connect, or within any extension of time allowed after good cause shown.

1.12.13 Failure or refusal to effect repairs or take other prescribed remedial action to a connection effected to the sewer system within the time period specified in writing by a directive from the Township or the Authority.

1.12.14 Failure or refusal to disconnect an unlawful or improper connection to the sanitary sewer system within the time period specified in writing by a directive from the Township or the Authority.

1.12.15 The negligent, willful, malicious or reckless breaking, damage, destruction, uncovering, defacement or tampering of or with any structure, appurtenance or equipment which is a part of the public sanitary sewer system or sewage works.

1.12.16 Violation of any provision of this Ordinance concerning regulation of discharge of industrial wastes.

1.12.17 Failure or refusal to allow the Township or the Authority access to a premises or to records required under this Ordinance or by rules and regulations governing the sewer system.

607900

**MSA-MT 5100**

**App. 437**

1.13.  Separate and Continuing Violations

    1.13.1 Each separate violation of this Ordinance, or of any portion hereof, shall constitute a separate offense.

    1.13.2 Each day a violation occurs shall constitute a separate offense and subject the violator to the prescribed fines for each violation and for each day of violation.

1.14.  Penalties for Violation

    1.14.1 Any person who violates any provision of this Ordinance or any rule or regulation governing the sewer system shall be subject to civil enforcement proceedings in accordance with Ordinance No. 96-8 as may have been amended.

    1.14.2 In the event a person does not comply in timely fashion with an enforcement notice directing cessation of a violation or remedial action to comply with this Ordinance or with rules and regulations governing the sanitary sewer system, civil fines are prescribed in the sum of Six Hundred Dollars ($600.00) for each individual violation of this Ordinance and for each day a violation continues, effective on the date following that established in the enforcement notice for completion of action to remedy the violation.  As to prohibited discharges:

        1.  Each day of a prohibited discharge shall constitute a separate violation and shall subject the violator to the administrative or civil fine prescribed in this section for each day of a continuous prohibited discharge.

        2.  If a prohibited discharge is intermittent, each occurrence shall be considered a separate violation.

    1.14.3 In the event a person does not comply in timely fashion with an enforcement notice by the date therein established for payment, Millcreek Township shall institute a civil action for enforcement and, upon conviction, the defendant shall pay fines for each separate violation and each day a violation occurs in the sum prescribed in Section 1.14.2.

    1.14.4 Millcreek Township shall be entitled to recover, in any administrative or civil action for enforcement of this Ordinance and/or action to collect fines for violation, all expenses, losses and damage occasioned by the violation(s), together with filing and other litigation costs and all attorneys' fees incurred by the Township in enforcement and collection proceedings, in accordance with Ordinance No. 96-9, as amended.

**App. 438**

**MSA-MT 5101**

`64

1.15.  Underline: Enforcement Actions

1.15.1 When the Township determines that a violation of this Ordinance, rules and regulations governing the sewer system or of any permit or any damage to the public sanitary sewer system is threatened or has occurred, the Township may take one or more of the following actions, at its election:

1.    Issue an order to cease and desist any such violation and direct the violator(s) to comply with the Ordinance and/or notice forthwith or in a time schedule established by the Township or to take appropriate remedial preventive action in the event of a threatened violation.

2.    Require the person to submit a detailed time schedule setting forth the specific proposed actions to prevent or correct a violation, in which event the Township may issue an implementation schedule to the person containing or modifying such specific actions and time schedule or requiring other actions by such date as the Township deems appropriate.

3.    Issue an administrative enforcement notice directing the person to cease or correct a violation by a date established in such notice.

4.    Report to any governmental entity or agency having issued a permit a violation thereof and request enforcement by such entity or agency.

5.    Revoke the financial security and/or revoke the license of any licensed contractor for up to one (1) year.

6.    Prohibit an unlicensed contractor from performing work affecting the public sewer system or being eligible for a license for up to one (1) year.

7.    Proceed on the financial security tendered by the recipient of a permit to connect in order to collect all damages sustained by a violation.

8.    Disconnect from the public sewer system and/or sewage works the building or property of any person there violating the discharge provisions of this Ordinance, and/or effect a connection to the public sewer system and/or effect correction of an existing connection to the public sewer system if the owner fails to do the same within the time specified in an enforcement notice, all costs incurred in effecting such disconnection, connection and/or correction of a connection to be collected from the owner as a municipal claim (at the discretion of the Board of Supervisors, by assessment of said costs as sewer rental or as a separate municipal claim) or in a civil action in the manner provided in Section 1.06 and the general municipal law.

607900

15

**MSA-MT 5102**

**App. 439**

9.    Issue enforcement notices citing violation of this Ordinance or of rules and regulations governing the sewer system.

10.    Commence and prosecute actions for enforcement of this Ordinance and/or collection of fines, costs, damages and attorneys' fees.

11.    Institute and maintain one or more actions at law to enforce this Ordinance and rules and regulations governing the sewer system and/or actions in equity to compel compliance with this Ordinance and/or rules and regulations, these including but not limited to injunctions and orders compelling connection to and/or disconnection from the sewer system.

1.15.2 In the event a person fails or refuses to effect disconnection of an unlawful connection to the sanitary sewer system by the date required in an enforcement notice and the Township has been assessed surcharges or fines by the City of Erie Sewer System because of sewage flows in excess of the Township's allocation, the Township, in addition to other enforcement remedies, shall be authorized to maintain an action at law against the owner of the property, seeking recovery of such surcharges and fines from the owner, together with attorneys' fees and expenses in accordance with Ordinance 96-9, as amended.

1.15.3 The Board of Supervisors is authorized by resolution to establish such specific procedures for enforcement as it shall deem appropriate.

## 1.16.    Severability

If any section, subsection, sentence, clause, phrase or portion of this Ordinance or its application to any person, property or circumstances is for any reason held invalid or unconstitutional by any court, such holding shall not be construed to affect the validity of any of the remaining provisions of this Ordinance or its application, for such portion shall be deemed as a separate, distinct and independent provision from the remaining provisions which shall be and remain in full force and effect. It is hereby declared the legislative intent that this Ordinance would have been adopted had such valid or unconstitutional provision of its application not been included herein.

## 1.17.    Repealor

All Ordinances or parts of any Ordinances inconsistent herewith are hereby repealed. This Ordinance shall not be construed to amend or repeal the Industrial Waste Ordinance, as amended.

BE IT ENACTED this 17th day of December, 2002.

Joseph S. Kujawa, Secretary

SWRUSORD/MLK

**App. 440**

16        **MSA-MT 5103**

214

Upon motion by ___Lawrence G. Curtis___ , seconded by ___Brian P. McGrath___ ,

the following Ordinance was duly enacted, __3__ voting in favor of enactment, __0__ voting

against enactment.

## ORDINANCE __2004-4__

**An Ordinance to amend and restate Ordinance No. 2002-23, commonly known as the Sewer Use Ordinance, regulating use and establishing responsibility for maintenance and replacements of sanitary sewers in Millcreek Township; defining terms; prohibiting certain practices with respect to disposal of sewage; providing for the connection of properties to available public sewers; authorizing the Board of Supervisors to make such connections and recover costs thereof in the event of neglect or refusal of owners to do so; requiring applications for and issuance of permits to make connections, including execution of bonds and payment of fees in connection therewith; providing for regulation of connections to the public system; imposing duties on owners of property which discharge industrial waste and potentially harmful substances into said sewers; regulating substances that may be introduced into sewers; prohibiting discharge of certain kinds of liquids or wastes, including those not in conformity with the Millcreek Township Industrial Waste Ordinance (No. 94-7 as amended); imposing penalties and establishing enforcement measures in the event of violation; and including severability and repealor clauses.**

607609

**WHEREAS,** the public sanitary sewer system within Millcreek Township is owned by the Millcreek Township Sewer Authority, the Authority having entered into a Lease Agreement with Millcreek Township pursuant to which Millcreek Township holds, maintains and operates the public sanitary sewer system; and

**WHEREAS,** Millcreek Township by Ordinance No. 2002-23 enacted on December 17, 2002 has established definitions and regulations governing the public sanitary sewer system; and

**WHEREAS,** Millcreek Township has also enacted an Industrial Waste Ordinance, Ordinance No. 94-7 as amended by Ordinance Nos. 96-14 and 2000-4, establishing regulations governing discharge of industrial waste; and

**WHEREAS,** the Board of Supervisors finds that it is in the best interest of the general health, safety and welfare that the Sewer Use Ordinance be amended to more fully define responsibilities for components of the system, clarify regulations pertaining to connections to the public system and enable regulations to ensure proper operation of the public sewer system.

**IT IS HEREBY ENACTED AND ORDAINED** by the Board of Supervisors of Millcreek Township, Erie County, Pennsylvania as follows:

1.01.  Definitions

Words used in this Ordinance for which definitions are not established shall be given their usual and customary meaning.  Terms defined in other ordinances of the Township shall be defined in accordance with said definitions.  Unless the context specifically indicates otherwise, the meaning of the following terms when used in this Ordinance shall be as set forth below:

>   **Applicant** shall mean the owner of the property or, where applicable, the lessee of the property accorded authority under a lease to apply for a permit which pertains to the sanitary sewer system.

>   **Authority** shall mean the Millcreek Township Sewer Authority.

>   **Authorized Representative**

>     1.    Of a corporation, the president, secretary, treasurer or vice president or other person submitting written confirmation of authority to perform the act for and on behalf of the corporation.

>     2.    Of a partnership or limited partnership, a general partner.

>     3.    Of an individual, the individual or other person submitting a written confirmation of authority to perform the act for and on behalf of said individual, so long as the owner remains ultimately liable for performance.

>     4.    Of a Federal, State or Local governmental entity, a director or highest official appointed or designated to oversee the operation and performance of the activities of the entity, or their designee.

>   **Biochemical Oxygen Demand (BOD)** shall mean the quantity of oxygen utilized in the biochemical oxidation of organic matter under standard laboratory procedures for five (5) days at $20°$ centigrade, usually expressed as a concentration (e.g., milligrams per liter).

>   **Building Sewer** shall mean that collection of pipes, clean-outs, small diameter pressure sewers, curb boxes and related appurtenances which transport sewage from a premises on private property to the public sanitary sewer main.  The term includes building laterals and building drains and the term "service connection."

>   **Connection** shall mean and extend to the installation, alteration, modification or termination/disconnection of an existing service connection to the sanitary sewer system, unless expressly provided otherwise in this Ordinance.  This term refers to the act of effecting or altering a service connection to the sanitary sewer system.

**MSA-MT 5105**

**App. 442**

216

**Garbage** shall mean solid waste from the preparation of cooking, dispensing of food and/or from the handling, storage and sale of produce.

**Grinder Pump** shall mean a mechanism that shreds and pressurizes sewage, consisting of motor, pump and shredder as well as housing, wiring and alarms, and usually considered a part of the Building Sewer. The Authority and/or the Township shall maintain the motor, pump and shredder portions of a grinder pump only if either has provided it as part of a public project. In all other cases, the Owner shall own and maintain the grinder pump and all appurtenances. Electric service to all grinder pumps shall be paid by the Owner.

**Industrial Waste** shall be construed to mean any liquid, gaseous, radioactive, solid or other substance, not ordinary waste or sewage, but including discharges from pretreatment facilities, resulting from any manufacturer or industry or from any establishment including those recovering or processing natural resources, and shall include all such substances, whether or not generally characterized as "waste."

**Natural Outlet** shall mean any outlet into a watercourse, ditch, pond, lake or other body of surface or ground water.

**Owner** shall mean the person, firm, corporation, partnership, association or other entity having an interest as owner, whether legal or equitable, sole or partial, in any premises which is or may be furnished public sanitary sewerage service.

**Person** shall mean any individual, partnership, firm, company, corporation, association, joint stock company, trust, limited liability company, estate, governmental entity or other legal entity, or their legal representatives, agents or assigns.

**Private Sewer System** shall mean all or any portion of a sewerage system not owned by the Authority and/or the Township.

**Private Well** means any well owned by any person for his, her or its private use in providing water for any purpose whatsoever.

**Properly Shredded Garbage** means garbage which has been shredded to such a degree that all particles will be carried freely under the flow conditions normally prevailing in public sewers, with no particle greater than one-half inch in any dimension.

**Public Sanitary Sewer System** (also **Public System**) shall mean all sanitary sewers, pumping stations, sewerage treatment works, pressure systems and other facilities owned by the Authority and operated by the Township for the collection, conveyance and treatment of sanitary sewage and industrial waste with their appurtenances and any additions, extensions or improvements that may be made by the Authority, the Township and/or their agents or representatives.

**Records** means and includes books, documents, papers, apparatus, data, readings, records of analysis, graphs, plans, investigative reports and ledgers.

3

**MSA-MT 5106**

**App. 443**

**Sanitary Sewer** shall mean a sewer which carries sewage and/or industrial wastes and to which storm, surface and ground waters are not intentionally or lawfully admitted

**Service Connection** (also **Service Lateral**) shall mean and include the pipe, clean-out, small diameter pressure sewer and related appurtenances that transport sewage, normally from a single premises, from the edge of the public right-of-way and/or easement to and including the attaching connection at the sanitary sewer main.

**Sewage** shall mean any combination of water-carried wastes from residences, buildings, industrial establishments, commercial establishments, institutions, manufacturing plants, processing plants or other places in which such wastes are produced, together with such ground, surface, storm or other water as may be present. This includes but is not limited to human waste and gray water (dish washing operations, household showers, basement, floor and garage drains, swimming pools, etc.).

**Sewage Treatment Plant** shall mean and include all devices, facilities and/or structures used for treatment of sewage and/or industrial wastes.

**Sewage Works** shall mean all facilities for collecting, pumping, transporting, treating and disposal of sewage and industrial wastes.

**Sewer** shall mean a pipe or conduit for carrying sewage.

**Shall**, when used in this Ordinance, means a mandatory obligation.

**Standard Laboratory Procedure** shall mean the procedure prescribed in the latest edition of *Standard Methods for the Examination of Water and Wastewater*.

**Storm Sewer or Storm Drain** shall mean and include any sewer or conveyance which carries storm water, surface water, drainage and some industrial water discharges (such as cooling and air conditioning waters), but excludes sewage and polluted industrial waters.

**Storm Water** shall mean and include any flow occurring during or following any form of natural precipitation and resulting from such precipitation, including snowmelt. The term shall include but not be limited to flows from sump discharges, detention or retention facilities, downspouts, roof and other drains and other conveyance facilities.

**Suspended Solids** mean solids which either float on the surface of or are in suspension in water, sewage or other liquids and which are removable by laboratory filtering in accordance with standard laboratory procedure.

**Township** shall mean Millcreek Township.

**Township Engineer** shall mean the professional engineer employed by the Township, his or her assistant or designee, or any consulting engineer retained by the Township.

218

1.02    Use of Public Sewers Required

    1.02.1 The owner of each and every house, building or other property located in Millcreek Township which is used for human occupancy, employment, recreation or other purpose and abuts on any street, highway, easement or right of way in which there has been constructed a sanitary sewer shall, at the owner's sole expense, install suitable sanitary sewer facilities therein and connect such facilities (including floor, basement and garage drains and swimming pools) and industrial waste outlets directly with the public sanitary sewer system in accordance with the provisions of this Ordinance and with the rules and regulations governing use and operation of the sanitary sewer system within sixty (60) days after the date of official notice to do so given in the manner provided by law.

    1.02.2 The owner of any property upon which a new, altered or reconstructed building is constructed on or after enactment of this Ordinance shall not occupy or cause or allow to be occupied such building until such time as the building's sanitary facilities and any industrial waste outlets are properly connected to the public sanitary sewer system in accordance with the requirements of this Ordinance.

1.03.    Alternative to Use of Public Sanitary Sewer

In lieu of introducing untreated or partially treated industrial wastes and polluted waters into the public sanitary sewer system, the owner of premises producing such wastes (including floor, basement and garage drains and swimming pools), upon receiving and complying with all applicable permits and regulations of the Township, the Pennsylvania Department of Environmental Protection, the United States Environmental Protection Agency and/or the Erie County Health Department, may at the owner's sole cost and expense, construct and operate private waste treatment facilities, with the effluent discharged to a natural outlet. The Township and/or the Authority may refuse to allow an on-lot system where it does not meet the Rules and Regulations. Authorized private waste treatment facilities shall be maintained and operated at all times in a satisfactory and effective manner and in accordance with all regulations.

1.04.    Application for and Issuance of Permits

    1.04.1 Permits Required.  No connection or other work to the public or private sanitary sewer system shall be effected, repaired, altered, modified or disconnected unless the owner of the subject premises shall first apply for and obtain a permit. "Connection" and "disconnection" as used in this Section shall include all connections and discharges to the sanitary sewer system, including but not limited to sewer drains and lateral connections.

    1.04.2 Application for Permit.  Each owner of any premises as set forth in Sections 1.02 and 1.04.1 shall make application in writing to the Township and the Authority for a permit to make, alter, repair or terminate a connection to the public or private sanitary sewer.  Such application shall be made to the Authority on such forms as are adopted by rules and regulations approved by the Board of Supervisors.

5

607900

1.04.3 <u>Application to be Signed</u>. Such application shall be signed by the owner(s), unless the owner(s) shall provide to the Authority a writing giving authorization to another person to make application and acknowledging that responsibility for compliance with this Ordinance and any permit issued rests with owner(s).

1.04.4 <u>Content of Application</u>. In addition to other requirements as established by rules and regulations governing the sewer system, such application shall set forth:

1.   The name and mailing address of the property owner(s);

2.   The address of the property subject to the permit application;

3.   A description of the lot subject to the application, including the subdivision, if any, and the lot's assigned number in said subdivision;

4.   The Erie County or Millcreek Township index number assigned to the property;

5.   The street where connection is to be made, altered or disconnected to or from the sewer system;

6.   The name and address of the contractor who shall perform the sewer work;

7.   A plan of the subject premises showing the proposed connection, alteration or disconnection and the sewer facilities;

8.   The intended use of the property upon connection (i.e., one-family, two-family or multi-family residential, commercial, industrial).

1.04.5 <u>Financial Security Required</u>. No permit shall be issued without the applicant(s)'s first executing and tendering financial security in favor of Millcreek Township in an amount fixed and on forms approved and adopted by rules and regulations approved by resolution of the Board of Supervisors. Said financial security shall serve as security for the proper performance of work subject to the requested permit in full compliance with this Ordinance and rules and regulations governing the sewer system and for repairs to streets and/or sanitary sewer facilities deemed by the Township or Authority to be necessary or appropriate as a consequence of said work.

**App. 446**

**MSA-MT 5109**

220

1.04.6 <u>Permit, Tapping and Other Fees</u>.    Each applicant for a permit shall, upon submission of a permit application, pay in full all filing, review, inspection, tapping and other fees as are established therefor by rules and regulations governing the sanitary sewer system as approved by the Board of Supervisors. Any developer's agreement or private service agreements required or administered by the Authority in connection with such application must be concluded prior to issuance of a permit. Any sums due as tapping fees or as reimbursements to a developer who constructed mains to which connection is requested shall be paid in full prior to issuance of a permit.

1.04.7 <u>Issuance or Denial of Permit</u>.

    1.04.7.1    No permit to connect to the sanitary sewer system shall be issued until and unless there has been constructed within the adjacent street, highway, easement or right of way public sanitary sewer facilities to which such connection can be effected, unless the Board of Supervisors should otherwise determine, and subject to such conditions as the Board shall then impose.

    1.04.7.2    No permit to connect to the sanitary sewer system (this including alteration or disconnection of existing connections) shall be issued unless all requirements of this Ordinance and of rules and regulations governing the sanitary sewer system have been fully complied with.

    1.04.7.3    If an application for permit is denied, the Authority shall in writing state the reason(s) for denial.

1.04.8 <u>Legal Effect of Permit</u>.  A permit issued to authorize a connection shall authorize work as applied for and approved, and shall be valid for one (1) year from the date the permit is issued.  Permits shall expire one (1) year after the date of their issuance, unless the applicant, prior to the expiration date, shall have requested an extension and the Authority, for good cause shown, shall in writing have approved an extension.

1.05. <u>Connections to Comply With Regulations</u>

1.05.1 All connections made to any public sanitary sewer of Millcreek Township shall be constructed in compliance with this Ordinance, standard rules and regulations governing the making of connections and the permit as issued.

1.05.2 No work may be done to a building sewer, service connection, public sewer main or a private sewer system without a permit therefor first being issued.  All such work shall be done in conformity with regulations governing the public sewer system and shall be available for inspection prior to completion of the work.

7

**MSA-MT 5110**

**App. 447**

1.05.3 The Board of Supervisors and/or the Authority are authorized to establish regulations governing connections to the public sewer system, including those in municipalities which are tributary to the system, as deemed necessary or appropriate to comply with the adopted Sewage Facilities Plan, any order or agreement and/or any law or regulation then in force which imposes limitations or other requirements on connections to the public sewer system or upon allowed capacity of flows.

1.05.4 Grease, oil and sand interceptors shall be provided for outlets connected with the public sanitary sewers when, in the opinion of the Township Engineer or the Authority, they are necessary for the proper handling of liquid wastes containing grease in excessive amounts, subject to the following regulations:

1.    Interceptors are not required for private living quarters or dwelling units.

2.    Grease and oil interceptors shall be constructed of impervious materials capable of withstanding abrupt and extreme changes in temperature, and shall be of substantial construction, watertight and equipped with easily-removable covers which, when secured, shall be gastight and watertight.

3.    All interceptors shall be of a type and capacity approved by the Township Engineer, and shall be located so as to be readily and easily accessible for cleaning and inspection.

4.    All grease, oil and sand interceptors, where required, shall be installed and maintained at the owner's sole cost and expense. Such units shall be operated and maintained so that they shall be continuously efficient and shall be cleaned and repaired as required to maintain such efficient system.

1.06.  Remedies in Event of Failure to Connect

1.06.1 In the event the owner of any property required to connect to the public sanitary sewer system shall fail, refuse or neglect to connect with the sewer system prior to occupancy or within the sixty (60)-day period specified in Section 1.02.1, the Township, by its authorized employees, agents, contractors or designees, may enter upon such property and construct such connection.

1.06.2 Such connection may be effected by the Township at its election at any time following expiration of the sixty (60)-day period or unlawful commencement of occupancy, without further notice to the owner being required.

222

1.06.3 Should the Township effect and construct a connection pursuant to this Section, it shall, upon completion of the work, send an itemized invoice for the cost of construction of such connection to the owner of the property upon which such connection has been made, which invoice shall be payable forthwith. Such invoice shall constitute a claim and assessment as defined in the general municipal law, 53 P.S. § 7106, et seq., as the same may be amended, and shall constitute a municipal claim from the date of the invoice.

1.06.4 Interest shall accrue on sums not paid within thirty (30) days after the date of the invoice at the rate of ten percent (10%) per year from the invoice date.

1.06.5 In case of failure, neglect or refusal by the owner of the property to pay such invoice in full, the Board of Supervisors shall cause to be filed a municipal lien for the costs of said construction, together with interest and costs, within six (6) months after the date of completion of the connection, such lien to be subject in all respects to the general law provided for the filing and recovery of municipal liens and claims.

1.07.  Work to be Done by Licensed Contractors

1.07.1 No contractor not properly licensed by the Township and the Authority shall perform work related to or involving connection to the public sewer system.

1.07.2 Requirements for determining eligibility of and issuing licenses to persons to conduct work involving connections to the sanitary sewer system shall be as established by rules and regulations governing the sanitary sewer system.

1.07.3 All persons wishing to engage in work involving connections to the sanitary sewer system shall, prior to performing any such work, submit to the Authority an application for license on a form adopted by rules and regulations governing the sewer system and pay such fee for a license as is established under such rules and regulations.

1.07.4 The Authority, for good cause shown and pursuant to rules and regulations governing the sewer system, shall have authority to refuse to issue a license to a person not meeting requirements for a license or to suspend or revoke a previously issued license.

**App. 449**

**MSA-MT 5112**

1.08    Sewage Planning Modules; New Connections to Public System

1.08.1 Approval by the Authority and/or the Township of a sewage planning module under Act 537 of the Commonwealth of Pennsylvania shall generally constitute only approval and acknowledgment that the public sanitary sewer system as to be improved and/or extended under such application can accommodate the proposed development and use. Approval of an Act 537 planning module application shall not constitute a contract authorizing new connections.

1.08.2 All new connections pursuant to an approved Act 537 planning module shall be subject to regulation by the Authority and/or the Township, which may impose limitations on timing of new connections if determined to be necessary to comply with existing agreements or orders, or to ensure proper operation of the system.

1.08.3 If the Authority and/or the Township are obligated under order or agreement to limit the number of new connections to or capacity of flows of the public sewer system, or if it is determined that new connections must be limited to ensure proper operation of the system, the Township and/or Authority shall enact such regulations as are then required.

1.09.   Industrial Wastes

1.09.1 This Ordinance is not intended to amend or repeal the Industrial Waste Ordinance, Ordinance No. 94-7 as amended by Ordinance Nos. 96-14 and 2000-4.

1.09.2 The admission into the public sewer system of any polluted waters or industrial wastes containing any quantity of substances having the characteristics described in Section 1.142.6 of this Ordinance or those described in the Industrial Waste Ordinance as being subject thereto shall be subject to the provisions of the Industrial Waste Ordinance.

1.09.3 When required by the Township Engineer or the Authority, the owner of any property served by a building sewer carrying industrial wastes discharging into the sewer system shall install a suitable control manhole in the building sewer to facilitate observation, sampling and measurement of the wastes. Such manhole, when required, shall be accessibly and safely located, and shall be constructed at the owner's sole expense in accordance with plans approved by the Township Engineer, and shall be maintained by the owner so as to be safe and accessible at all times.

1.09.4 Every person and establishment other than residences which discharge industrial and sanitary wastes into the public sewer system or into any sewer connected therewith shall file forthwith a report in accordance with the Millcreek Township Industrial Waste Ordinance.

**App. 450**

**MSA-MT 5113**