**COMMONWEALTH OF PENNSYLVANIA**
**Department of Environmental Protection**
**Northwest Regional Office**
July 7, 2005
Tel: 814-332-6942
Fax: 814-332-6121

**SUBJECT:**   Kearsarge Pump Station Act 537 Special Study Addendum
Millcreek Township, Erie County

**TO:**        Ricardo F. Gilson
Regional Manager
Water Management

**FROM:**      Eric C. Kicher
Sewage Planning Specialist
Water Management

**THROUGH:**   William T. Crawford
Sewage Planning Specialist Supervisor
Water Management

Michael K. Zimmerman
Planning and Finance Chief
Water Management

Attached for your consideration is the "Act 537 Special Study Addendum" for the Kearsarge Pump Station. The Addendum was submitted to document the proposed changes to the June 2004 Special Study that was approved by the Department on September 30, 2004. The 2004 Special Study proposed to eliminate overflow events at the pump station by increasing the station's forward pumping capacity, constructing a storage tank with capacity between .5 and 1 MGD, and relieving tributary interceptor sewers.

During the Department's review of the 2004 Special Study, the Pump Station experienced two storm events that would have required storage greater than 1 MGD. As a result of the storms, Millcreek wanted to increase the storage capacity of the proposed tank to a volume greater than 1,000,000 gallons. In a letter dated February 10, 2005, the Department requested that Millcreek submit an amendment to the June 2004 Special Study to document the proposed changes.

**App. 601**

-2-

On June 29, 2005, the Department received the finalized "Act 537 Special Study Addendum" for the Kearsarge Pump Station. The changes outlined in the Addendum consist of an increase in storage capacity from the range of .5-1 MGD to 2.3 MGD. It also proposes an increase in the storage pumping capacity from 2340 gpm to 4500 gpm. There are no changes with regards to cost estimates, funding, user rates, implementation schedules or environmental consistency.

The dimensions of the tank will be 112 ft. in diameter by 33 ft. high versus the original proposed size of 80 ft. x 25. Although the new proposed tank will be larger, there is no anticipated increase in costs since the tank will not have a cover. Provisions to install odor control will be included in the tank's design but will not be installed unless necessary.

The Addendum was adopted by Millcreek Township, Millcreek Township Sewer Authority, Summit Township and the Summit Township Sewer Authority. There were no comments received in response to the public advertisement. The Addendum is consistent with Chapter 71. I recommend its approval.

cc:    E. Kicher
       K. Hoesch


ECK:lsc

**App. 602**

**DEP 00 556**

CTE | AECOM

CTE
155 West 8th Street, Erie, PA 16501-1086
T 814.453.4394  F 814.455.6596  www.cte.aecom.com

June 28, 2005


Ms Jennifer Hill, Compliance Specialist
PA Department of Environmental Protection
230 Chestnut Street
Meadville, PA 16335

Re:    Kearsarge Pump Station Upgrade

Dear Ms Hill:

Attached please find the Water Quality Management Part 2 Permit application for the Kearsarge Pump Station Upgrade to include a 2.3 million gallon overflow retention facility. The submittal includes check #110927 for $500 payable to the Commonwealth of Pennsylvania attached to this letter, three (3) copies of the application (all with original signatures), three (3) copies of the specifications, and three (3) copies of the plans.

If any items are missing from the submittal, please advise us immediately. If complete, please distribute to the appropriate persons for review.

Thank you.

Very truly yours,

Gerald C. Allender, P.E.
Senior Associate

GCA:lb

Enclosures

cc:    Millcreek Township Sewer Authority


**App. 603**

 Pennsylvania Department of Environmental Protection

**230 Chestnut Street**
**Meadville, PA 16335-3481**

SEP 26 2005

**Northwest Regional Office**

814-332-6942
Fax: 814-332-6121

Mr. George W. Riedesel, Manager
Millcreek Township Sewer Authority
3608 West 26th Street
Erie, PA 16506

Re:    Sewage
Kearsarge Pump Station
WQM Permit No. 2583409-Amendment No. 1
APS ID No. 558205
Authorization No. 599194
Millcreek Township, Erie County

Dear Mr. Riedesel:

Your permit is enclosed.

You must comply with all Standard and Special Conditions attached to this Permit. Construction must be done in accordance to the permit application and all supporting documentation. Please review the permit conditions and the supporting documentation submitted with your application before starting construction.

Please take the time to complete the enclosed questionnaire and return it in the enclosed postage-paid return envelope.

Any person aggrieved by this action may appeal, pursuant to Section 4 of the Environmental Hearing Board Act, 35 P.S. Section 7514, and the Administrative Agency Law, 2 Pa. C.S. Chapter 5A, to the Environmental Hearing Board, Second Floor, Rachel Carson State Office Building, 400 Market Street, P.O. Box 8457, Harrisburg, PA 17105-8457, 717-787-3483. TDD users may contact the Board through the Pennsylvania Relay Service, 800-654-5984. Appeals must be filed with the Environmental Hearing Board within 30 days of receipt of written notice of this action unless the appropriate statute provides a different time period. Copies of the appeal form and the Board's rules of practice and procedure may be obtained from the Board. The appeal form and the Board's rules of practice and procedure are also available in braille or on audiotape from the Secretary to the Board at 717-787-3483. This paragraph does not, in and of itself, create any right of appeal beyond that permitted by applicable statutes and decisional law.

**DEP 00 543**

**App. 604**

Mr. George W. Riedesel                    - 2 -

IF YOU WANT TO CHALLENGE THIS ACTION, YOUR APPEAL MUST REACH THE BOARD WITHIN 30 DAYS. YOU DO NOT NEED A LAWYER TO FILE AN APPEAL WITH THE BOARD.

IMPORTANT LEGAL RIGHTS ARE AT STAKE, HOWEVER, SO YOU SHOULD SHOW THIS DOCUMENT TO A LAWYER AT ONCE. IF YOU CANNOT AFFORD A LAWYER, YOU MAY QUALIFY FOR FREE PRO BONO REPRESENTATION. CALL THE SECRETARY TO THE BOARD 717-787-3483 FOR MORE INFORMATION.

If you have any questions, please call Peter J. Link, Erie County Department of Health, 606 West Second Street, Erie, Pennsylvania 16507; telephone: 814-451-6773.

Sincerely,

Ricardo F. Gilson
Regional Program Manager
Water Management

Enclosures

cc    CTE/AECOM
      Summit Township Sewer Authority
      Erie County Dept. of Health
      Wastewater Management
      Monitoring & Compliance Section
      File

RFG:PJL:cas:ll

DEP 00 544

App. 605

Permit

DEPARTMENT OF ENVIRONMENTAL PROTECTION
BUREAU OF WATER SUPPLY AND WASTEWATER MANAGEMENT

AMENDMENT NO. 1

# WATER QUALITY MANAGEMENT PERMIT

APS ID. 558205

AUTH. ID. 599194

| A. PERMITTEE (Name and Address): | CLIENT ID#: 80837 | B. PROJECT/FACILITY (Name): |
|---|---|---|
| Millcreek Township Sewer Authority<br>3608 West 26th Street<br>Erie, PA 16506 | | Kearsarge Pump Station |

| C. LOCATION (Municipality, County): | SITE ID#: 261499 |
|---|---|
| Kearsarge Pump Station<br>Zimmerly Road<br>Erie, PA 16509<br>Millcreek Township, Erie County | |

D. This permit approves the construction/operation of sewerage facilities consisting of:

Replace existing three Kearsarge pump station pumps with new 4500-gpm units; install 2.3 MG, 112-ft. diameter x 33-ft. depth, overflow storage tank with associated 4500-gpm capacity storage pump station, consisting of three 4500-gpm submersible pumps

| Pump Stations: Kearsarge (Forward) Pump Station | | Sewage Treatment Facility: | | |
|---|---|---|---|---|
| Design Capacity: **4500** GPM | | Annual Average Flow: | **N/A** | MGD |
| **Storage Pump Station** | | Design Hydraulic Capacity: | **N/A** | MGD |
| Design Capacity: **4500** GPM | | Design Organic Capacity: | **N/A** | lb/day |

E.   APPROVAL GRANTED BY THIS PERMIT IS SUBJECT TO THE FOLLOWING:

1.   **Amendments:** All construction, operations, and procedures shall be in accordance with the Water Quality Management Permit Amendment application dated 6/29/05 and its supporting documentation, and addendums dated N/A, which are hereby made a part of this amendment.

Except for any herein approved modifications, all terms, conditions, supporting documentation and addendums approved under Water Quality Management Permit No. 2583409 dated 6/6/84 shall remain in effect.

2.   Permit conditions relating to **Sewerage** are attached and made part of this permit.

F.   THE AUTHORITY GRANTED BY THIS PERMIT IS SUBJECT TO THE FOLLOWING FURTHER QUALIFICATIONS:

1.   If there is a conflict between the application or its supporting documents and amendments and the attached conditions, the attached conditions shall apply.

2.   Failure to comply with the rules and regulations of DEP or with the terms or conditions of this permit shall void the authority given to the permittee by the issuance of this permit.

3.   This permit is issued pursuant to the Clean Streams Law Act of June 22, 1937, P.L. 1987, as amended 35 P.S. §691.1 et seq. Issuance of this permit shall not relieve the permittee of any responsibility under any other law.

PERMIT ISSUED:   SEP 26 2005

BY: _Ricardo F. Gilson_

Ricardo F. Gilson

TITLE: Regional Manager – Water Management

PERMIT AMENDED: _____

Northwest Regional Office

**DEP 00 545**

**App. 606**



COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION
BUREAU OF WATER SUPPLY AND WASTEWATER MANAGEMENT

# PERMIT CONDITIONS RELATING TO SEWERAGE
For use in Water Quality Management Permits

(Place an X in the box that applies)

## General

☒ 1.  Consistent with the Department of Environmental Protection's (DEP) technical guidance document *Conducting Technical Reviews of Water Quality Management Permit Wastewater Treatment Facilities* (DEP ID: 362-2000-007) available on DEP's website at www.dep.state.pa.us. DEP considers the registered Professional Engineer whose seal is affixed to the design documents to be fully responsible for the adequacy of all aspects of the facility design.

☒ 2.  The permittee shall adopt and enforce an ordinance requiring the abandonment of privies, cesspools or similar receptacles for human waste and onlot sewage disposal systems on the premises of occupied structures accessible to public sewers. All such structures must be connected to the public sewers.

☐ 3.  The outfall sewer or drain shall be extended to the low water mark of the receiving body of water. Where necessary to ensure proper mixing and waste assimilation, an outfall sewer or drain may be extended with appurtenances below the low water mark and into the bed of a navigable stream provided that the permittee has secured an easement, right-of-way, license or lease from DEP in accordance with Section 15 of the Dam Safety and Encroachments Act, the Act of November 26, 1978, P.L. 1375, as amended.

☒ 4.  The approval is specifically made contingent on the permittee acquiring all necessary property rights, by easement or otherwise, providing for the satisfactory construction, operation, maintenance and replacement of all sewers and sewerage structures in, along or across private property with full rights of ingress, egress and regress.

☐ 5.  When construction of the approved sewerage facilities is completed and before they are placed in operation, the permittee shall notify DEP in writing so that a DEP representative may inspect the facilities.

☒ 6.  If, at any time, the sewerage facilities covered by this permit create a public nuisance, including but not limited to, causing malodors or causing environmental harm to waters of the Commonwealth, DEP may require the permittee to adopt appropriate remedial measures to abate the nuisance or harm.

☐ 7.  This permit authorizes the construction and operation of the proposed sewerage facilities until such time as facilities for conveyance and treatment at a more suitable location are installed and capable of receiving and treating the permittee's sewage. Such facilities must be in accordance with the applicable municipal official plan adopted pursuant to Section 5 of the Pennsylvania Sewage Facilities Act, the Act of January 24, 1966, P.L. 1535 as amended. When such municipal sewerage facilities become available, the permittee shall provide for the conveyance of the sewage to these sewerage facilities, abandon the use of these approved facilities and notify DEP accordingly. This permit shall then, upon notice from DEP, terminate and become null and void and shall be relinquished to DEP.

☒ 8.  This permit does not relieve the permittee of its obligations to comply with all federal, interstate, state or local laws, ordinances and regulations applicable to the sewerage facilities.

☒ 9.  This permit does not give any real or personal property rights or grant any exclusive privileges, nor shall it be construed to grant or confirm any right, easement or interest in, on, to or over any lands which belong to the Commonwealth.

☐ 10.  The authority granted by this permit is subject to all effluent requirements, monitoring requirements and other conditions as set forth in NPDES Permit No. **PA____** and all subsequent amendments and renewals. No discharge is authorized from these facilities unless approved by an NPDES Permit.

## Construction

☐ 11.  An Erosion and Sedimentation (E&S) Plan must be developed prior to construction of the permitted facility, pursuant to Title 25 Pa. Code Chapter 102, and implemented during and after the earth disturbance activity.

If the activity involves 5 or more acres of earth disturbance, or from 1 to 5 acres of earth disturbance with a point source discharge to surface waters of the Commonwealth, an NPDES permit for the Discharge of Stormwater Associated with Construction Activity is required.

In addition to the state NPDES permitting requirements, some municipalities, through local ordinances, require the E&S Control Plan to be reviewed and approved by the local County Conservation District office prior to

- 1 -

**DEP 00 546**

**App. 607**

construction.   For specific information regarding E&S control planning approval and NPDES permitting requirements, please contact your local County Conservation District office.

☒ 12. The facilities shall be constructed under the supervision of a Pennsylvania registered Professional Engineer in accordance with the approved reports, plans and specifications.

☐ 13. A Pennsylvania registered Professional Engineer shall certify that construction of the permitted facilities was completed in accordance with the application and design plans submitted to DEP, using "Post Construction Certification" (3800-PM-WSWM0179a).  It is the permittee's responsibility to ensure that a Professional Engineer is on-site to provide the necessary oversight and/or inspections to certify the facilities.  The certification must be submitted to DEP before the facility is placed in operation.  If requested, "as-built" drawings, photographs (if available) and a description of any DEP-approved deviations from the application and design plans must be submitted to DEP within 30 days of certification.

☐ 14. Manhole inverts shall be formed to facilitate the flow of the sewage and to prevent the stranding of sewage solids. The manhole structure shall be built to prevent undue infiltration, entrance of street wash or grit and provide safe access to facilitate manhole maintenance activities.

☐ 15. The local Waterways Conservation Officer of the Pennsylvania Fish and Boat Commission (PFBC) shall be notified when the construction of any stream crossing and/or outfall is started and completed.  A written permit must be secured from the PFBC if the use of explosives in any waterways is required and the permittee shall notify the local Waterways Conservation Officer when explosives are to be used.

## Operation and Maintenance

☒ 16. The permittee shall maintain records of "as-built" plans showing all the treatment facilities as actually constructed together with facility operation and maintenance (O&M) manuals and any other relevant information that may be required.  Upon request, the "as-built" plans and O&M manuals shall be filed with DEP.

☒ 17. The sewers shall have adequate foundation support as soil conditions require.  Trenches shall be back-filled to ensure that sewers will have proper structural stability, with minimum settling and adequate protection against breakage.  Concrete used in connection with these sewers shall be protected from damage by water, freezing, drying or other harmful conditions until cured.

☒ 18. Stormwater from roofs, foundation drains, basement drains or other sources shall not be admitted directly to the sanitary sewers.

☒ 19. The approved sewers shall be maintained in good condition, kept free of deposits by flushing or other cleaning methods and repaired when necessary.

☒ 20. The sewerage facilities shall be properly operated and maintained to perform as designed.

☒ 21. The attention of the permittee is called to the highly explosive nature of certain gases generated by the digestion of sewage solids when these gases are mixed in proper proportions with air and to the highly toxic character of certain gases arising from such digestion or from sewage in poorly ventilated compartments or sewers.  Therefore, at all places throughout the sewerage facilities where hazard of fire, explosion or danger from toxic gases may occur, the permittee shall post conspicuous permanent and legible warnings.  The permittee shall instruct all employees concerning the aforesaid hazards, first aid and emergency methods of meeting such hazards and shall make all necessary equipment and material accessible.

☒ 22. An operator certified in accordance with the Water and Wastewater Systems Operator Certification Act of February 21, 2002, 63 P.S. §§1001, et seq. shall operate the sewage treatment plant.

☐ 23. The permittee shall properly control any industrial waste discharged into its sewerage system by regulating the rate and quality of such discharge, requiring necessary pretreatment and excluding industrial waste, if necessary, to protect the integrity or operation of the permittee's sewerage system.

☒ 24. There shall be no physical connection between a public water supply system and a sewer or appurtenance to it which would permit the passage of any sewage or polluted water into the potable water supply.  No water pipe shall pass through or come in contact with any part of a sewer manhole.

☒ 25. All connections to the approved sanitary sewers must be in accordance with the corrective action plan as contained in the approved Title 25 Pa. Code Chapter 94 Municipal Wasteload Management Annual Report.

☒ 26. Collected screenings, slurries, sludge and other solids shall be handled and disposed of in compliance with Title 25 Pa. Code Chapters 271, 273, 275, 283 and 285 (related to permits and requirements for land filling, land application, incineration and storage of sewage sludge), Federal Regulations 40 CFR 257 and the Federal Clean Water Act and its amendments.

**DEP 00 547**

**App. 608**

| For Department Use Only | |
|---|---|
| APS ID No: | 558205 |
| Auth. ID: | 599194 |
| Site ID: | 261499 |
| Client ID: | 80837 |

## INTERNAL REVIEW AND RECOMMENDATION

| NAME OF APPLICANT | Millcreek Township Sewer Authority Kearsarge Pump Station | PROJECT LOCATION | Millcreek Township Erie County | APPLICATION NUMBER | 2583409 - Amendment 1 |
|---|---|---|---|---|---|

The applicant requests WQM permit #2583409 - Amendment 1 for upgrades to the Kearsarge pump station and a new 2.3-million gallon overflow storage tank with new storage pump station.

Act 537 planning approval was received from the DEP on September 30, 2004.

The name and mailing address are:

    Millcreek Township Sewer Authority
    3608 West 26th Street
    Erie, PA 16506

The site address is:

    Kearsarge Pump Station
    Zimmerly Road, 0.5 mile west of Peach Street
    Erie, PA 16509
    Millcreek Township, Erie County

The responsible official is: George W. Riedesel, Manager

Telephone No.: 814/835-6721, ext. 328

## RECOMMENDATION AND ACTION

Pump Stations:
  Description Kearsarge (forward) pump station
  Design capacity 4500 gpm

  Description: Storage pump station
  Design Capacity: 4500 gpm

STP:
  Annual Average Flow N/A mgd
  Design hydraulic capacity N/A mgd
  Design organic capacity N/A lb/$BOD_5$/day

### RECOMMENDATION AND ACTION

| Approve-Issue by Region | Refuse | Signature | Date |
|---|---|---|---|
| X | | REVIEWING ENGINEER<br><br>PETER J. LINK, PERMIT REVIEWER | 9/23/05 |
| X ✓ | | PERMITS SECTION CHIEF | 9/26/05 |
| X | | REGIONAL PROGRAM MANAGER | 9/26/05 |

**PERMIT CONDITIONS:**

1. STANDARD – 6/04 Sewerage: 1, 2, 4, 6, 8, 9, 12, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, and 26..

2. EROSION/SEDIMENTATION: N/A

3. SPECIAL (Use additional sheets if necessary) – N/A

**DEP 00 548**

**App. 609**

Internal Review and Recommendations
Millcreek Township Sewer Authority
Kearsarge Pump Station
Millcreek Township, Erie County
Application #2583409 – Amendment No. 1
Page 2

## Proposed Work

The existing Kearsarge forward pump station (FPS) will be modified to allow forward flows of no greater than the permitted 4500 gpm at normal wet well levels to the City of Erie sanitary sewer system. Flows exceeding that volume will be diverted to a new 2.3-MG storage tank via a new, minimum peak capacity 4500-gpm storage pump station (SPS) with valve vault. A new generator and automatic transfer switch is included.

## Kearsarge (FPS) Upgrades

The existing three pumps will be replaced with three new 4500-gpm units with variable frequency drives at 1200 rpm. Crane Deming pumps are specified. Flows above 4500 gpm will be automatically diverted to the new storage pump station (SPS).

Additional work to the FPS include: replacement of 100-hp motors with 150-hp units; electrical upgrades to accommodate new motors and SPS controls; and structural and ventilation improvements to meet SPS and existing code requirements.

## New Storage Pump Station (SPS)

The new SPS will be sited just east of the upgraded FPS and will consist of a new, 18-in., ductile iron, feed pipe to a new 12-ft. diameter, 17.5-ft. deep, wet well constructed of circular reinforced concrete rings. The cover will be 2-ft. thick, reinforced concrete with three each single-leaf 2.6-ft. x 3.5-ft. access hatches. Three, rail-mounted, submersible pumps will be installed in the wet well -- one rated at 2160 gpm @ 74.5 TDH, and two rated at 5160 gpm @ 76.0 TDH. All three will have 8-in. discharge lines increased to 12-in. ductile iron pipe to vertical and elbowed to the adjacent valve vault.

The 12-ft. x 18-ft. valve vault will be constructed of reinforced concrete with a 1-ft. reinforced concrete cover and a single 3-ft. x 3.5-ft. access hatch. Valve vault components consist of the three incoming 12-in. ductile iron feeder lines, each with a 12-in. check valve and eccentric plug valve. All three will converge to a 12-in. x 12-in. ductile iron cross and exit the valve vault via a 12-in. ductile iron line to the proposed storage tank. The metered, 8-in. ductile iron drain line from the storage tank also passes through the valve vault. An injection point will be installed for future tank odor control.

## Wastewater Storage Tank

The new storage tank will provide up to 2.3 MG of flow equalization during rainfall events. Its filling and draining will be automatically controlled via the FPS and SPS.

The new 112-ft. wide by 33-ft. tall storage tank will be sited on a 10-in. reinforced concrete slab with a 2-ft. perimeter foundation wall, approximately 50 ft. east of the new SPS. The flow slab will slope at a 4.1% grade toward the center gravity drain. The tank will be constructed from bolted steel sheets meeting AWWA D103.

The 16-in. ductile iron tank fill pipe will enter the tank through the bottom, transition to steel, and be extended above the top of the tank, where it will be elbowed 90° twice and extended down to discharge inside the tank.

A roof will be added at a later data and will be dome-shaped. It will be constructed of non-corrugated triangular panels, clamped to a self-supporting aluminum truss, and include a vent with insect screen.

Both the inside and outside of the steel tank will have a factory-applied, glass-fused-to-steel coating that meets Section 10.4 of ANSI/AWWA D103.

Internal Review and Recommendations
Millcreek Township Sewer Authority
Kearsarge Pump Station
Millcreek Township, Erie County
Application #2583409 – Amendment No. 1
Page 3

Tank components include three water cannons for tank wash-down, riser pipes and quick disconnects to a proposed water metering station.  Two aluminum access ladders and one aluminum stairway will be provided.

The 8-in. gravity drain will be activated by the control valve in the valve vault.  A cleanout drain with insect screen will be extended to the top of the tank.

## Other Comments/Recommendations

A new, 750-KW generator will be sited just south of the SPS and will be automatically activated during power outages.  It will augment the existing 50-KW unit and together are of sufficient size to operate all pumps.

The existing, 8-ft., three-strand, barbed wire fence around the FPS will be modified and extended around all new construction.  The existing gravel drive will be extended 140 LF to access the new tank.

The existing 16-in. Bypass to Walnut Creek will be removed upon completion of the SPS.

New controls, to include CPU, radio and antennae, will be connected to the existing Millcreek Township SCADA system.

A soil erosion and sediment pollution control plan was approved by the Erie County Conservation District on June 27, 2005.

Approval is recommended.  The proposed work will provide flow equalization during heavy storm water events, eliminate a bypass, and reduce the potential of sewage contamination of Walnut Creek.

# MILLCREEK TOWNSHIP SEWER AUTHORITY

MILLCREEK MUNICIPAL BUILDING
3608 WEST 26TH STREET
ERIE, PENNSYLVANIA 16506

Phone (814) 835-6721

Fax (814) 835-6615

December 8, 2005

Mr. Ricardo F. Gilson
Regional Manager -- Water Management
PA Dept. of Environmental Protection
230 Chestnut Street
Meadville PA  16335-3481

RE:    Sewage
Kearsarge Pump Station
WQM Permit No. 2583409 – Amendment No. 1
APS ID No. 558205
Authorization No. 599194
Millcreek Township, Erie County

Dear Mr. Gilson:

Due to a property dispute that is currently moving through the Court System, we have been forced to prepare an alternate bid for the above referenced project. The alternate bid would use two tanks of smaller diameter but greater height to equal the capacity of the single tank base bid. A conceptual plan of the two tank alternate bid has been superimposed over the single tank plan and is enclosed for your use. Please note that the two-tank alternate does **not** encroach into the 100-year flood plain.

As soon as the two tank alternate plan is available, we will transmit an engineer stamped set of documents to your office. At the time of award, the Authority will make the decision of whether to go with the single or dual tank alternate, if the property dispute has been resolved. If not, the Authority will be required to go with the dual tank plan.

At this time we believe that we can still live within the 18-month construction time period agreed upon in the Consent Order and Agreement.

Please advise if there is anything else that you might need on this matter.

Very truly yours,
Millcreek Township Sewer Authority


By: _____
George W. Riedesel, P.E.
Executive Director

Cc:    Jennifer Hill
Dave Balog
Jerry Allender
Bill Steff

**MSA-MT 5228**          **App. 612**

App. 613

 Pennsylvania Department of Environmental Protection

**230 Chestnut Street**
**Meadville, PA 16335-3481**

MAR 3 1 2006

**Northwest Regional Office**

814-332-6942
Fax: 814-332-6121

Millcreek Township Supervisors
3608 West 26th Street
Erie, PA 16506

Re:    Act 537 Special Study (2nd Addendum)
Kearsarge Pump Station Upgrade & Expansion
Millcreek Township, Erie County

Dear Supervisors:

The Department hereby approves the document entitled "Millcreek Township Sewer Authority Kearsarge Pump Station Upgrade & Expansion," dated January 14, 2006. This revision amends the Act 537 Special Study for the Kearsarge Pump Station approved by the Department on September 30, 2004, and the Act 537 Special Study Addendum approved by the Department on July 12, 2005. Metcalf & Eddy, Inc. on behalf of Millcreek Township and the Millcreek Township Sewer Authority prepared the document.

The major changes outlined in the revised study consist of the construction of two overflow retention tanks to be built at a slightly different location on the same site to address impacts that would have resulted in the loss of large trees. The total volume of the storage tanks will remain at 2.3 million gallons, which is consistent with the total volume recommended in the previous studies for a single tank.

The Department will hold Millcreek Township and the Millcreek Township Sewer Authority responsible for the implementation of the proposed changes.

If you have any questions regarding this letter, please contact Eric Kicher of my staff.

Sincerely,

Ricardo F. Gilson
Regional Manager
Water Management

cc:    George Riedesel, Manager
William Steff, Manager
Gerald Allender, P.E.
Erie County Department of Health
D. Balog
J. Hill
E. Kicher
K. Hoesch
M. Zimmerman
W. Crawford
File- Planning/Act 537

 Pennsylvania Department of Environmental Protection

**230 Chestnut Street**
**Meadville, PA 16335-3481**

MAR 0 1 2006

**Northwest Regional Office**

814-332-6942
Fax: 814-332-6121

Mr. George W. Riedesel
Millcreek Township Sewer Authority
3608 West 26th Street
Erie, PA 16506

> Re:    Sewage
> Kearsarge Pump Station
> WQM Part II Permit No. 2583409
> -Amendment No. 2
> APS ID No. 558205
> Authorization No. 617199
> Millcreek Township, Erie County

Dear Mr. Riedesel:

Your permit amendment is enclosed.

You must comply with all Standard and Special Conditions attached to this Permit. Construction must be done in accordance to the permit application and all supporting documentation. Please review the permit conditions and the supporting documentation submitted with your application before starting construction.

Please take the time to complete the enclosed questionnaire and return it in the pre-addressed envelope. Your response will be taken into account, as we consider ways of improving our service to the public and regulated community.

Any person aggrieved by this action may appeal, pursuant to Section 4 of the Environmental Hearing Board Act, 35 P.S. Section 7514, and the Administrative Agency Law, 2 Pa. C.S. Chapter 5A, to the Environmental Hearing Board, Second Floor, Rachel Carson State Office Building, 400 Market Street, P.O. Box 8457, Harrisburg, PA 17105-8457, 717-787-3483. TDD users may contact the Board through the Pennsylvania Relay Service, 800-654-5984. Appeals must be filed with the Environmental Hearing Board within 30 days of receipt of written notice of this action unless the appropriate statute provides a different time period. Copies of the appeal form and the Board's rules of practice and procedure may be obtained from the Board. The appeal form and the Board's rules of practice and procedure are also available in braille or on audiotape from the Secretary to the Board at 717-787-3483. This paragraph does not, in and of itself, create any right of appeal beyond that permitted by applicable statutes and decisional law.

Mr. George Riedesel                                        - 2 -

IF YOU WANT TO CHALLENGE THIS ACTION, YOUR APPEAL MUST REACH THE BOARD WITHIN 30 DAYS. YOU DO NOT NEED A LAWYER TO FILE AN APPEAL WITH THE BOARD.

IMPORTANT LEGAL RIGHTS ARE AT STAKE, HOWEVER, SO YOU SHOULD SHOW THIS DOCUMENT TO A LAWYER AT ONCE. IF YOU CANNOT AFFORD A LAWYER, YOU MAY QUALIFY FOR FREE PRO BONO REPRESENTATION. CALL THE SECRETARY TO THE BOARD 717-787-3483 FOR MORE INFORMATION.

If you have any questions, please call Peter J. Link, Erie County Department of Health, 606 West Second Street, Erie, Pennsylvania 16507; telephone: 814-451-6773.

Sincerely,

Ricardo F. Gilson
Regional Program Manager
Water Management

Enclosures

cc    CTE/AECOM
      Erie County Dept. of Health
      Wastewater Management
      Jennifer Hill, Monitoring & Compliance Section
      File

RFG:PJL:cas:ll

3800-PM-WSWM0015  Rev. 6/2004
Permit

**DEP**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION
BUREAU OF WATER SUPPLY AND WASTEWATER MANAGEMENT

# WATER QUALITY MANAGEMENT PERMIT

PERMIT NO. 2583409

AMENDMENT NO. 2

APS ID. SS8205

AUTH. ID. 617199

---

| | |
|---|---|
| **A.  PERMITTEE (Name and Address):**  CLIENT ID#: 60837<br>**Millcreek Township Sewer Authority**<br>**3608 West 26th Street**<br>**Erie, PA 16506** | **B.  PROJECT/FACILITY (Name):**<br>**Kearsarge Pump Station** |

**C.  LOCATION (Municipality, County):**  SITE ID#: 261499
**Kearsarge Pump Station**
**Zimmerly Road**
**Erie, PA 16509**
**Millcreek Township, Erie County**

**D.  This permit approves the construction of sewerage facilities consisting of:**

1)  **Include a two-tank alternative, to store excess storm induced flows from the Kearsarge Pump Station consisting of dual, 1.15 MG, 56-ft. diameter, 65-ft. tall overflow storage tanks**

2)  **Modifications to the control of the pump station to allow filling/draining of the tanks.**

---

Pump Stations:  **Kearsarge (Forward) Pump Station**

Design Capacity:  **4500 GPM**
Pump station, storage pump station
design capacity, 4500 gpm

---

**E.  APPROVAL GRANTED BY THIS PERMIT IS SUBJECT TO THE FOLLOWING:**

1.  **Amendments:**  All construction, operations and procedures shall be in accordance with the Water Quality Management Permit Amendment application dated **December 28, 2005** and its supporting documentation and addendums dated **N/A**, which are hereby made a part of this amendment.

Except for any herein approved modifications, all terms, conditions, supporting documentation and addendums approved under Water Quality Management Permit No. **2583409 – Amendment 1** dated **September 27, 2005** shall remain in effect.

2.  Permit Conditions Relating to Sewerage are attached and made part of this permit.

---

**F.  THE AUTHORITY GRANTED BY THIS PERMIT IS SUBJECT TO THE FOLLOWING FURTHER QUALIFICATIONS:**

1.  If there is a conflict between the application or its supporting documents and amendments and the attached conditions, the attached conditions shall apply.

2.  Failure to comply with the rules and regulations of DEP or with the terms or conditions of this permit shall void the authority given to the permittee by the issuance of this permit.

3.  This permit is issued pursuant to the Clean Streams Law Act of June 22, 1937, P.L. 1987, as amended 35 P.S. §691.1 *et seq.* Issuance of this permit shall not relieve the permittee of any responsibility under any other law.

---

PERMIT ISSUED: _____

BY: _____

Ricardo F. Glison

TITLE: Regional Manager – Water Management

PERMIT AMENDED:  MAR 0 1 2006  _____

Northwest Regional Office

App. 617

3800-PM-WSWM0015a  Rev. 6/2004
Conditions Sewerage

Permit No. _____2583409 – Amendment 2_____



**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
**BUREAU OF WATER SUPPLY AND WASTEWATER MANAGEMENT**

## PERMIT CONDITIONS RELATING TO SEWERAGE
For use in Water Quality Management Permits

(Place a √ in the box that applies)

### General

☒ 1. Consistent with the Department of Environmental Protection's (DEP) technical guidance document *Conducting Technical Reviews of Water Quality Management Permit Wastewater Treatment Facilities* (DEP ID:  362-2000-007) available on DEP's website at www.dep.state.pa.us.  DEP considers the registered Professional Engineer whose seal is affixed to the design documents to be fully responsible for the adequacy of all aspects of the facility design.

☐ 2. The permittee shall adopt and enforce an ordinance requiring the abandonment of privies, cesspools or similar receptacles for human waste and on/ot sewage disposal systems on the premises of occupied structures accessible to public sewers.  All such structures must be connected to the public sewers.

☐ 3. The outfall sewer or drain shall be extended to the low water mark of the receiving body of water.  Where necessary to ensure proper mixing and waste assimilation, an outfall sewer or drain may be extended with appurtenances below the low water mark and into the bed of a navigable stream provided that the permittee has secured an easement, right-of-way, license or lease from DEP in accordance with Section 15 of the Dam Safety and Encroachments Act, the Act of November 26, 1978, P.L. 1375, as amended.

☒ 4. The approval is specifically made contingent on the permittee acquiring all necessary property rights, by easement or otherwise, providing for the satisfactory construction, operation, maintenance and replacement of all sewers or sewerage structures in, along or across private property with full rights of ingress, egress and regress.

☒ 5. When construction of the approved sewerage facilities is completed and before they are placed in operation, the permittee shall notify DEP in writing so that a DEP representative may inspect the facilities.

☒ 6. If, at any time, the sewerage facilities covered by this permit create a public nuisance, including but not limited to, causing malodors or causing environmental harm to waters of the Commonwealth, DEP may require the permittee to adopt appropriate remedial measures to abate the nuisance or harm.

☐ 7. This permit authorizes the construction and operation of the proposed sewerage facilities until such time as facilities for conveyance and treatment at a more suitable location are installed and capable of receiving and treating the permittee's sewage.  Such facilities must be in accordance with the applicable municipal official plan adopted pursuant to Section 5 of the Pennsylvania Sewage Facilities Act, the Act of January 24, 1966, P.L. 1535 as amended.  When such municipal sewerage facilities become available, the permittee shall provide for the conveyance of the sewage to these sewerage facilities, abandon the use of these approved facilities and notify DEP accordingly.  This permit shall then, upon notice from DEP, terminate and become null and void and shall be relinquished to DEP.

☒ 8. This permit does not relieve the permittee of its obligations to comply with all federal, interstate, state or local laws, ordinances and regulations applicable to the sewerage facilities.

☒ 9. This permit does not give any real or personal property rights or grant any exclusive privileges, nor shall it be construed to grant or confirm any right, easement or interest in, on, to or over any lands which belong to the Commonwealth.

☐ 10. The authority granted by this permit is subject to all effluent requirements, monitoring requirements and other conditions as set forth in NPDES Permit No. **PA_____** and all subsequent amendments and renewals.  No discharge is authorized from these facilities unless approved by an NPDES Permit.

### Construction

☒ 11. An Erosion and Sedimentation (E&S) Plan must be developed prior to construction of the permitted facility, pursuant to Title 25 Pa. Code Chapter 102, and implemented during and after the earth disturbance activity.

If the activity involves 5 or more acres of earth disturbance, or from 1 to 5 acres of earth disturbance with a point source discharge to surface waters of the Commonwealth, an NPDES permit for the Discharge of Stormwater Associated with Construction Activity is required.

In addition to the state NPDES permitting requirements, some municipalities, through local ordinances, require the E&S Control Plan to be reviewed and approved by the local County Conservation District office prior to

**App. 618**

3800-PM-WSWM0015a   Rev. 6/2004
Conditions Sewerage
Permit No.    2583409 – Amendment 2

construction.    For specific information regarding E&S control planning approval and NPDES permitting requirements, please contact your local County Conservation District office.

☒   12.   The facilities shall be constructed under the supervision of a Pennsylvania registered Professional Engineer in accordance with the approved reports, plans and specifications.

☒   13.   A Pennsylvania registered Professional Engineer shall certify that construction of the permitted facilities was completed in accordance with the application and design plans submitted to DEP, using "Post Construction Certification" (3800-PM-WSWM0179a). It is the permittee's responsibility to ensure that a Professional Engineer is on-site to provide the necessary oversight and/or inspections to certify the facilities. The certification must be submitted to DEP before the facility is placed in operation. If requested, "as-built" drawings, photographs (if available) and a description of any DEP-approved deviations from the application and design plans must be submitted to DEP within 30 days of certification.

☐   14.   Manhole inverts shall be formed to facilitate the flow of the sewage and to prevent the stranding of sewage solids. The manhole structure shall be built to prevent undue infiltration, entrance of street wash or grit and provide safe access to facilitate manhole maintenance activities.

☐   15.   The local Waterways Conservation Officer of the Pennsylvania Fish and Boat Commission (PFBC) shall be notified when the construction of any stream crossing and/or outfall is started and completed. A written permit must be secured from the PFBC if the use of explosives in any waterways is required and the permittee shall notify the local Waterways Conservation Officer when explosives are to be used.

## Operation and Maintenance

☒   16.   The permittee shall maintain records of "as-built" plans showing all the treatment facilities as actually constructed together with facility operation and maintenance (O&M) manuals and any other relevant information that may be required. Upon request, the "as-built" plans and O&M manuals shall be filed with DEP.

☒   17.   The sewers shall have adequate foundation support as soil conditions require. Trenches shall be back-filled to ensure that sewers will have proper structural stability, with minimum settling and adequate protection against breakage. Concrete used in connection with these sewers shall be protected from damage by water, freezing, drying or other harmful conditions until cured.

☒   18.   Stormwater from roofs, foundation drains, basement drains or other sources shall not be admitted directly to the sanitary sewers.

☒   19.   The approved sewers shall be maintained in good condition, kept free of deposits by flushing or other cleaning methods and repaired when necessary.

☒   20.   The sewerage facilities shall be properly operated and maintained to perform as designed.

☒   21.   The attention of the permittee is called to the highly explosive nature of certain gases generated by the digestion of sewage solids when these gases are mixed in proper proportions with air and to the highly toxic character of certain gases arising from such digestion or from sewage in poorly ventilated compartments or sewers. Therefore, at all places throughout the sewerage facilities where hazard of fire, explosion or danger from toxic gases may occur, the permittee shall post conspicuous permanent and legible warnings. The permittee shall instruct all employees concerning the aforesaid hazards, first aid and emergency methods of meeting such hazards and shall make all necessary equipment and material accessible.

☐   22.   An operator certified in accordance with the Water and Wastewater Systems Operator Certification Act of February 21, 2002, 63 P.S. §§1001, et seq. shall operate the sewage treatment plant.

☐   23.   The permittee shall properly control any industrial waste discharged into its sewerage system by regulating the rate and quality of such discharge, requiring necessary pretreatment and excluding industrial waste, if necessary, to protect the integrity or operation of the permittee's sewerage system.

☒   24.   There shall be no physical connection between a public water supply system and a sewer or appurtenance to it which would permit the passage of any sewage or polluted water into the potable water supply. No water pipe shall pass through or come in contact with any part of a sewer manhole.

☒   25.   All connections to the approved sanitary sewers must be in accordance with the corrective action plan as contained in the approved Title 25 Pa. Code Chapter 94 Municipal Wasteload Management Annual Report.

☒   26.   Collected screenings, slurries, sludge and other solids shall be handled and disposed of in compliance with Title 25 Pa. Code Chapters 271, 273, 275, 283 and 285 (related to permits and requirements for land filling, land application, incineration and storage of sewage sludge), Federal Regulations 40 CFR 257 and the Federal Clean Water Act and its amendments.

App. 619

1

```
 1          IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF PENNSYLVANIA
 2                  - - - - -
    ERIE COUNTY                 )
 3  ENVIRONMENTAL COALITION,)
    ET AL.,                     )
 4                              )
              Plaintiffs,       )
 5                              )
            -v-                 )  Case No.
 6                              )   05-59ERIE
    MILLCREEK TOWNSHIP SEWER)  Judge Cohill
 7  AUTHORITY, ET AL.,         )
                                )
 8              Defendants.     )

 9                  - - - - -
         DEPOSITION OF CATHERINE L. PEDLER
10           Tuesday February 28, 2006
                    - - - - -
11
    Deposition of CATHERINE L. PEDLER, called by
12
    the Defendants for examination under the
13
    Federal Rules of Civil Procedure, taken
14
    before me, Carla A. Virgili, a Stenographer-
15
    Commissioner appointed in the State of
16
    Pennsylvania at the offices of MacDonald
17
    Illig Jones & Britton, LLP, 100 State Street,
18
    Suite 700, Erie, Pennsylvania 16507,
19
    commencing at 1:35 p.m., the day and date
20
    above set forth.
21

22                      ---
           COMPUTER-AIDED TRANSCRIPTION BY
23
          MORSE, GANTVERG & HODGE, INC.
24
            PITTSBURGH, PENNSYLVANIA
25
                        ---
```

**ORIGINAL**

1   happened.

2   Q      You indicate you did not know the

3   specifics until you began your file

4   searches.

5          What prompted you to search the files?

6   And I assume when you said -- let me back

7   up.

8          When you said "file searches," did you

9   mean DEP's files?

10  A      DEP and the Erie County Health

11  Department.

12  Q      What led you to or prompted you to go

13  search for those files?

14  A      I imagine it would have been

15  discussions in our coalition meetings.

16  Q      Do you know when you first reviewed the

17  Erie County Health Department files?

18  A      That was in June of '04.

19  Q      When did you first review DEP files?

20  A      In the same month -- later the same

21  month.

22                      - - - - -

23              (Defendant's Exhibit 1 was

24              marked for identification.)

25                      - - - - -

1  Q      I'm going to show you a document marked

2  as Exhibit 1.   Take a moment to look through

3  that.

4         Are you familiar with that document?

5  A      Yes.

6         What do you mean by "familiar"?

7  Q      I'm not going to ask a quiz on it, but

8  have you seen it before?

9  A      I have seen it.

10 Q      You generally know what the document

11 is?

12 A      This is the second consent order and

13 agreement with Millcreek Township Sewer

14 Authority.

15 Q      When was the first time that you saw

16 this document?

17 A      I believe the first time I saw this

18 document was in the Erie County Health

19 Department file search.

20 Q      That would have been in June of 2004?

21 A      Yes.

22 Q      Prior to June of 2004, were you aware

23 that there had been a consent order and

24 agreement entered into between Millcreek

25 Township, Millcreek Township Sewer Authority,

1  and DEP in October of 2003?

2  A     I'm sorry.

3        Could you repeat the question?

4  Q     Sure.

5        Prior to June of 2004 were you aware

6  that Millcreek Township and the Millcreek

7  Township Sewer Authority and the Pennsylvania

8  Department of Environmental Protection had

9  entered into this consent order and agreement

10 that's dated October 31, 2003?

11 A     I was aware that there had been --

12 there had been one consent order and

13 agreement that had expired and that another

14 consent order and agreement had been entered

15 into.  I was aware but I wasn't -- I hadn't

16 seen the document.  I didn't understand what

17 all of that meant until I began my file

18 searches.

19 Q     How did you become aware that this

20 consent order and agreement existed?

21 A     Again, with discussions with

22 individuals that would have most likely

23 occurred in coalition meetings.

24 Q     What individuals?

25 A     Marty Visnosky would be one of the

1  people who's been involved with the coalition

2  for some time.

3  Q      Anyone else?

4  A      Mark Kwiatowski has also been at

5  coalition meetings.

6  Q      Does he work for the Erie Sewer

7  Authority?

8  A      Yes.  Again, I'm not sure that Mark

9  mentioned the consent order and agreement.  I

10  know that I did have discussions about the

11  consent order and agreement with Marty.

12  Q      Do you know when -- generally when

13  those discussions were prior to June of 2004?

14  A      Just that they were prior to June of

15  2004.

16  Q      Do you receive the Erie Times-News?

17  A      Do I receive it?

18  Q      Yes.

19  A      No, I do not.

20  Q      Did you receive it back in 2003?

21  A      No.

22                      - - - - -

23             (Defendant's Exhibit 2 was

24             marked for identification.)

25                      - - - - -

1  Q     I'm going to show you a document marked

2  as Exhibit 2.  It's the same copy of the same

3  article, one showing the date of the article.

4        Have you seen this article before?

5  A     I don't believe I have.

6  Q     You had indicated earlier that you

7  thought the first time you had been at DEP's

8  offices was June of '04, correct?

9  A     Did I just say that?

10 Q     I think that's what you had said.

11       Was that --

12 A     I believe that is around the first --

13 Q     -- in or around that time period?

14 A     I believe that was the first time I was

15 around DEP to do a file search on this

16 situation in June of 2004.

17                  - - - - -

18            (Defendant's Exhibit 3 was

19            marked for identification.)

20                  - - - - -

21 Q     I'm going to show you a document marked

22 as Exhibit 3 and ask you whether that's your

23 handwriting.

24 A     Yes, it is.

25 Q     Do you know what this document is?

1  A      I do not know what this document is.

2  Q      Are these notes from a file review that

3  you conducted at DEP?

4  A      Yes.  I am assuming that they are

5  because that looks like a note I would have

6  written to myself maybe to remind me that I

7  need to go back and get something or look at

8  it or something that I had looked at.

9  Q      What is the date next to your name?

10  A      7/2/02.

11  Q      Does it refresh your recollection of

12  when the first time is that you reviewed the

13  DEP's files?

14  A      I don't believe I was there in '02.

15  Q      Okay.

16  A      Do you have a document that --

17  Q      This is just -- the document you have

18  in your hand says '02 --

19  A      No.  I think what this is referring to

20  is the date on the file or something that

21  refers to that specific whatever it was that

22  I was looking at.  I don't believe that

23  refers to the time that I was in DEP's -- in

24  the office.

25  Q      The note reflects the file you were

1  looking at related to the Kearsarge Pump

2  Station; is that correct?

3  A     Yes.  That would be the name of the

4  file that DEP had assigned to it.

5                    (Recess had.)

6               - - - - - -

7               (Defendant's Exhibit 4 was

8               marked for identification.)

9               - - - - - -

10 Q     Let me show you a document that's been

11 marked as Exhibit 4 and ask you if you are

12 familiar with that document.

13 A     Yes.

14 Q     What is Exhibit 4?

15 A     It is a letter that Linda Conaway

16 regularly sends out to people that have

17 requested file reviews from the DEP in the

18 northwest office.

19 Q     This indicates that you were going to

20 conduct a file review on July 2nd of 2004?

21 A     Yes.

22 Q     Did you in fact conduct that file

23 review?

24 A     I did.

25 Q     What files did you review at that time?

1  A      I reviewed what is listed here.   The

2  Kearsarge Pump Station.

3  Q      So those would be the files that relate

4  to the bypass at the Kearsarge Pump Station?

5  A      Could you say that again?   I'm sorry.

6  I wasn't paying attention.

7  Q      Those files would include the files

8  relating to the bypass at the Kearsarge Pump

9  Station?

10  A      Yes.   Whatever DEP had in their files

11  about the Kearsarge Pump Station.

12                    - - - - -

13                    (Defendant's Exhibit 5 was

14                    marked for identification.)

15                    - - - - -

16  Q      I'm showing you a document marked as

17  Exhibit 5 and I'm going to ask you if you're

18  familiar with this document.

19  A      Yes.

20  Q      What is this document?

21  A      This is the same type of document as

22  Exhibit 4 but is -- it's telling me that I am

23  scheduled to be there on August 11th.

24  Q      Of 2004?

25  A      Of 2004.

1  Q     Did you review the files that you
2  requested on August 11th of 2004?
3  A     Did I review -- are you asking me if I
4  reviewed the documents that are listed here?
5  Q     Let me strike that.  I'll rephrase the
6  question.
7  A     Okay.
8  Q     Did you go to DEP's offices on August
9  11th, 2004 to conduct a file review?
10 A     Yes.
11 Q     What files did you review on that date?
12 A     I reviewed the files that are listed in
13 Exhibit 5, the Kearsarge Pump Station, the
14 Millcreek Township Sewer Authority, and the
15 oil and gas plat maps.
16 Q     With respect to the gas and oil plat
17 maps, do they have anything to do with this
18 litigation?
19 A     No, they do not.
20 Q     At that time, in addition to the oil
21 and gas plat maps, you also reviewed the DEP
22 files relating to the Kearsarge Pump Station
23 and the Millcreek Township Sewer Authority?
24 A     Yes.
25 Q     That was on August 11th of 2004?

1   A      Yes.

2                    - - - - -

3             (Defendant's Exhibit 6 was

4             marked for identification.)

5                    - - - - -

6   Q      I'm going to show you a document that's

7   been marked as Exhibit 6 and ask you if

8   you're familiar with that document.

9   A      Yes, I am.

10  Q      What is Exhibit 6?

11  A      It is the same type of document as

12  Exhibits 4 and 5 and it is telling me I'm

13  scheduled for a file review on September 8th

14  at DEP's offices.

15  Q      2004?

16  A      2004.

17  Q      Did you attend a file review on

18  September 8th of 2004 at DEP's offices?

19  A      Yes.

20  Q      What files did you review during that

21  time period?

22  A      The files that were pulled for me to

23  review were as listed in the document.

24  Kearsarge Pump Station and the oil and gas

25  plat maps.

1  Q      With respect to Exhibit 6, I noticed

2  that in Exhibit 6 you did not ask to see the

3  Millcreek Township Sewer Authority files.

4        Do you recall why?

5  A      I believe it may -- this may just

6  reflect the way that Linda Conaway recorded

7  what was asked for --

8  Q      Do you think you -- I'm sorry.  Go

9  ahead.

10  A      I don't remember asking for anything

11  different.  I don't really know why it's on

12  one and not the other.

13  Q      Okay.

14        So for the file reviews that you

15  conducted that are reflected by Exhibits 4,

16  5, and 6, you believe you reviewed

17  essentially the same files?

18  A      I believe I did.  I am not certain but

19  I believe I did.

20  Q      Okay.

21        Any particular reason why you made

22  three visits to review the files in the span

23  of about two months?

24  A      Well, one of the reasons has to do with

25  the oil and gas plat maps because I needed to

1   review those more frequently, and while I was

2   there I thought I would try to keep on top of

3   Millcreek and the Kearsarge overflow

4   situation to see if there had been additional

5   overflows.

6                        - - - - -

7              (Defendant's Exhibit 7 was

8              marked for identification.)

9                        - - - - -

10  Q      I'm going to show you a document marked

11  as Exhibit 7 and ask you if you're familiar

12  with that document.

13  A      Yes.

14  Q      What is Exhibit 7?

15  A      It is the same document as 6, 5, and 4,

16  telling me that I have scheduled a review for

17  Tuesday, August 30th, 2005.

18  Q      That was a review of the files at DEP?

19  A      Yes.

20  Q      Did you in fact, on August 30, 2005,

21  review files at DEP's offices in Meadville?

22  A      Yes, I did.

23  Q      What files did you review?

24  A      According to this document, I reviewed

25  Kearsarge Pump Station, Millcreek Township

1 files -- I'm sorry.  Excuse me.  Kearsarge

2 Pump Station, Millcreek Township Sewer

3 Authority files, and oil and gas plat maps.

4 Q      There's some handwriting on this

5 letter; do you see that?

6 A      Yes.

7 Q      Whose handwriting is that?

8 A      That's mine.

9 Q      Does any of that have anything to do

10 with Kearsarge Pump Station?

11 A      No.

12 Q      Was it just on one of the files you

13 looked at while you were there?

14 A      I think so.  I think those were

15 additional ones that I called and asked her

16 to pull, and I believe she did, but I can't

17 be for sure.

18 Q      Was there any particular reason for

19 reviewing the files on August 30 of 2005?

20 A      I just wanted to make sure that my

21 files on the situation were as up-to-date as

22 possible.

23 Q      The last time you had reviewed the

24 files was approximately a year before,

25 correct?

1  A      According to these records that I

2  brought today, yes.

3  Q      But --

4  A      I don't believe I reviewed them in

5  between, but I may have.  I may have.  My

6  files aren't as organized as probably yours

7  are.

8  Q      Don't count on that.

9         But your belief is that these exhibits

10  reflect the times that you visited DEP's

11  offices for purposes of reviewing the

12  Kearsarge bypass files?

13  A      I believe so.

14                     - - - - -

15             (Defendant's Exhibit 8 was

16             marked for identification.)

17                     - - - - -

18  Q      I'm going to show you a document marked

19  as Exhibit 8 and ask if you're familiar with

20  this document.

21  A      Yes, I am.

22  Q      What is Exhibit 8?

23  A      It is the same document as 4, 5, and 6

24  and 7, telling me that I am scheduled for

25  review at DEP on February 13th, 2006.

1  Q      I noticed that there are a couple

2  things different about this letter.

3         First, it's addressed to Ms. Visnosky,

4  which I assume is a typo.

5  A      I married Marty in the meantime.  Yes,

6  that is a typo.

7  Q      We'll have to harass him about that.

8  A      I did.

9  Q      You already have.  Okay.

10        Is there a reason -- did he participate

11  in the file review?

12  A      Yes, he did.

13  Q      Let me back up and ask this question:

14  So am I correct then that on February 13th of

15  2006 you conducted a file review at DEP's

16  offices in Meadville?

17  A      Yes.

18  Q      Here the reference doesn't specify any

19  particular file, it just references "numerous

20  facilities"; do you see that?

21  A      Yes, I do.

22  Q      Was one of the files that you reviewed

23  during this file review the files relating to

24  the Kearsarge Pump Station?

25  A      Yes.

1  Q      Did you review that file or did

2  Mr. Visnosky review that file?

3  A      We both looked at the file.

4  Q      In these series of file reviews, when

5  you would ask for the file would they

6  essentially bring the whole file out each

7  time?

8  A      Basically -- I'm assuming that that was

9  the case.

10  Q     So you weren't just getting the, "Oh,

11  here's just the new stuff that came in," they

12  would just say, "Here's the file"?

13  A      Yes.

14  Q      You'd have to go through and figure out

15  what was new and what was the stuff you'd

16  already seen?

17  A      Correct.

18  Q      Had you conducted any file reviews

19  between August 30th of 2005 and February 13

20  of 2006 relating to the Kearsarge Pump

21  Station?

22  A      No.  I am fairly certain of that, being

23  that it's only a year ago.

24  Q      Okay.

25  A      That's about as far back as my memory

1  goes.

2  Q     Subsequent to the 2003 consent order

3  and agreement which was, I believe, Exhibit

4  1, have you or any member of the GAIA Defense

5  League, Erie County Environmental Coalition,

6  or Penn Environment submitted any formal

7  written comments to the Pennsylvania

8  Department of Environmental Protection

9  regarding the work that Millcreek Township

10  and the Millcreek Township Sewer Authority

11  are doing pursuant to the consent order and

12  agreement?

13  A     Subsequent to the 31st day of October,

14  2003?

15  Q     Yes.

16  A     There was a DEP Citizens Advisory

17  Council meeting in Erie and I testified about

18  the situation at that meeting and I'm not

19  remembering the exact date.  I can't remember

20  if it was -- I believe it was after this.

21  I'm not -- I'm pretty sure of that.

22  Q     Let me take a break for a minute

23  because I might have something to refresh

24  your recollection.

25                    (Recess had.)

1  Q     Do you know whether any -- I'm sorry.

2  Go ahead.

3  A     I'm not absolutely certain.

4  Q     Do you know whether any of the

5  Plaintiff organizations have submitted any

6  written comments?

7  A     I do not know.

8  Q     Would you expect to know if they had?

9  A     I would expect that I would have known

10 at some point but I don't know that I would

11 remember.  I would not have -- no.  That's

12 just -- let's just leave it at that.

13 Q     I'm showing you a document marked as

14 Exhibit 10.

15                  - - - - -

16             (Defendant's Exhibit 10 was

17             marked for identification.)

18                  - - - - -

19 Q     If you can take a moment and look

20 through Exhibit 10.

21        Is this your handwriting in Exhibit 10?

22 A     Yes, it is.

23 Q     I've taken this from the documents that

24 the Plaintiffs have produced in discovery

25 here and it's identified as Bates number 1042

1  through 1048.

2       Did I grab the right pages?  Does that

3  appear to be complete, from your perspective?

4  A     I believe so.  I wouldn't know for

5  certain until unless I compared it to the

6  original.

7  Q     But as best as you can tell, as you sit

8  here, it looks to be complete from that

9  perspective?

10  A     Yes.

11  Q     What is Exhibit 10?

12  A     These are notes that I took at the Erie

13  County Health Department during my file

14  review in June of '04.

15  Q     Up in the upper right-hand corner

16  there's a date of 6/10/04; do you see that?

17  A     Yes.

18  Q     Was that the date that you took these

19  notes?

20  A     When I looked back at these notes, that

21  is how I interpreted that date.

22  Q     If you turn to page PL1044, the third

23  page of the exhibit, just a few abbreviations

24  I want to make sure I understand.

25       "KO"?

1  A      Kearsarge overflow.

2  Q      Stumped me on that one.

3  A      I almost stumped myself.

4  Q      The "UK," I assume, is "unknown"?  That

5  one I was able to figure out, I think.

6  A      I believe so.  We would be able to tell

7  if we looked at Exhibit A in the consent

8  order and agreement.

9  Q      On the last page of the document

10  there's a reference of, "Quinn firm filed PO

11  on behalf of Summit Township"; do you see

12  that?

13  A      Yes.

14  Q      Prior to reviewing the file at the Erie

15  County Health Department, were you aware that

16  Summit Township had appealed the 2003 consent

17  order and agreement?

18  A      I don't remember.  I don't believe I

19  was.  This was my initial review, as I

20  recall, so this is the first time I was

21  really learning about much of this.

22  Q      Back in June of 2004, did you know Paul

23  Burroughs?

24  A      Yes.

25  Q      How long have you known Paul Burroughs?

1  Q      Obviously after your June of 2004 file

2  review?

3  A      Yes.

4  Q      Do you have any other sense in terms of

5  between June of 2004 and December of 2005

6  when you contacted them?

7  A      No.

8                      MS. MURPHY:  December 2004.

9  Q      December 2004.  I'm sorry.

10                     MS. MURPHY:  That's okay.

11            Time flies.

12  A      No.  Not specifically.

13                     MR. SHAW:  All right.

14                     MS. MURPHY:  She'll waive.

15              (Deposition concluded.)

16

17

18

19

20

21

22

23

24

25

```
 1                         CERTIFICATE

 2   COMMONWEALTH OF PENNSYLVANIA, )
                                   )   SS:
 3   COUNTY OF ALLEGHENY.          )

 4

 5        I, Carla Virgili, do hereby certify that
     before me, a Stenographer-Commissioner in and
 6   for the Commonwealth aforesaid, personally
     appeared CATHERINE PEDLER, who then was by me
 7   first duly cautioned and sworn to testify the
     truth, the whole truth, and nothing but the
 8   truth in the taking of his oral deposition in
     the cause aforesaid; that the testimony then
 9   given by her as above set forth was by me
     reduced to stenotypy in the presence of said
10   witness, and afterwards transcribed by means
     of computer-aided transcription.
11
          I do further certify that this deposition
12   was taken at the time and place in the
     foregoing caption specified, and was
13   completed without adjournment.

14   I do further certify that I am not a
     relative, counsel or attorney of either
15   party, or otherwise interested in the event
     of this action.
16

17   IN WITNESS WHEREOF, I have hereunto set my
     hand and affixed my seal of office at
18   Pittsburgh, Pennsylvania on this _16Th____
     day of _march____, 2006.
19

20            _Carla Virgili_____
              Carla Virgili
21            Stenographer-Commissione

22
                       _ _ _
23

24

25
```

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION

In the Matter of:

| | | |
|---|---|---|
| MILLCREEK TOWNSHIP | : | |
| and | : | Clean Streams Law |
| MILLCREEK TOWNSHIP SEWER | : | Sewage Facilities Act |
| AUTHORITY | : | |

### CONSENT ORDER AND AGREEMENT

This Consent Order and Agreement is entered into this _31st_ day of _October_,

2003, by and between the Commonwealth of Pennsylvania, Department of Environmental Protection

("Department"), Millcreek Township ("Township"), and the Millcreek Township Sewer Authority

("Authority").

### Findings

The Department has found and determined the following:

A.     The Department is the agency with the duty and authority to administer and enforce

The Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§691.1-691.1001

("Clean Streams Law"); the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. 1535, *as*

*amended*, 35 P.S. §§750.1-750.20a ("Sewage Facilities Act"); Section 1917-A of the Administrative

Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §510-17 ("Administrative Code"); and

the rules and regulations promulgated thereunder ("Regulations").

B.     The Township is a municipal corporation organized and existing under the laws of the

Commonwealth of Pennsylvania, maintaining and operating a sewage collection system in Millcreek

Township, Erie County, Pennsylvania. The mailing address of the Township is 3608 West 26th Street,

Erie, Pennsylvania 16506.

DEFENDANT'S EXHIBIT
21z8/06  CV

C.      The Authority is a municipal authority incorporated under the Municipal Authorities Act of 1945, Act of May 2, 1945, P.L. 382 53 P.S. §§301-322, and maintains a mailing address of 3608 West 26th Street, Erie, Pennsylvania 16506. The Authority owns the sewage collection system maintained and operated by the Township in Millcreek Township, Erie County, Pennsylvania. The Authority leases the sewage collection system to the Township.

D.      The City of Erie owns a sewage treatment plant which treats sewage from various townships and municipalities in Erie County, including the Township and Summit Township. Summit Township's sewage is conveyed through the Township's sewage collection system to the City of Erie sewage treatment plant. A portion of the sewage from the Township and Summit Township must pass through the Kearsarge pump station to ultimately reach the City of Erie sewage treatment plant. The City of Erie sewage treatment plant discharges treated sewage effluent into Lake Erie, a "water of the Commonwealth" as defined in Section 1 of the Clean Streams Law, 35 P.S. §691.1.

E.      On January 6, 1984, Water Quality Management Permit No. 2583409 was issued to the Authority for modifications to the Kearsarge pump station and the construction of a new force main and sanitary sewer.

F.      On June 24, 1991, the Authority notified the Department that an unauthorized manual relief valve and overflow line had been installed on a force main immediately down line of the Kearsarge pump station ("Kearsarge Overflow"). Since the time of installation of the Kearsarge Overflow, untreated sewage has been discharged on occasion via the Kearsarge Overflow from a force main exiting the Kearsarge pump station to Walnut Creek, "a water of the Commonwealth," as defined in Section 1 of the Clean Streams Law. The Township and Authority caused the periodic discharges to occur in order to prevent line surcharging and basement backups during heavy precipitation events.

App. 644

G.    On January 7, 1992, the Department, Township, and Authority entered into a Consent Order and Agreement ("1992 COA") to, among other things, remove the Kearsarge Overflow.

H.    Paragraph 2.e. of the 1992 COA required the Township and Authority to, among other things, submit a schedule of corrective measures designed to increase capacity of sewage facilities tributary to the Kearsarge pump station and to provide a date when the Kearsarge Overflow would be removed.

I.    On March 29, 1993, in a document entitled "Summary, Alternative Selection & Implementation Schedule Sewage Facilities Plan" ("1993 Plan and Schedule"), the Township and Authority provided the information required by Paragraph 2.e. of the 1992 COA to the Department.

J.    Pursuant to Paragraph 3 of the 1992 COA, the 1993 Plan and Schedule was incorporated into the 1992 COA as an enforceable obligation of the 1992 COA.

K.    The 1993 Plan and Schedule indicates that removal of the Kearsarge Overflow was conditioned upon the Township having full access to the City of Erie's proposed West Side Interceptor. The 1993 Plan and Schedule states that the Kearsarge Overflow would be removed one month after completion of the West Side Interceptor.

L.    On or about July 1, 1999, the West Side Interceptor was completed. However, the Authority and Township did not have complete access to the West Side Interceptor until October 2000. Pursuant to the terms of the 1992 COA, the Kearsarge Overflow was to have been removed by November 2000.

M.    The 1993 Plan and Schedule included, among other things, the completion of an infiltration and inflow study of the Kearsarge tributary area, a review of the capacity of the Kearsarge pump station and a determination of the appropriate remedy for removal of the Kearsarge overflow.

3

**App. 645**

Completion of these tasks required coordination and cooperation among the Township, the Authority and the City of Erie.

N.    The Township and Authority, in their November 13, 1992, letter, represented that capacities of the Kearsarge pump station and any necessary modifications to the pump station and force main would not be available until the extent of inflow and infiltration in the Kearsarge pump station tributary area and work necessary to abate it was known. The Township and Authority completed several studies, which indicated that the extent of inflow and infiltration in the tributary area was materially greater than had been assumed.

O.    The Township and Authority have expanded their regulations regarding inspections and termination of unlawful connections to address inflow and infiltration in the Kearsarge pump station tributary area. Actions by the Township and the Authority have reduced sewage conveyance problems and increased available system capacity in the Kearsarge pump station, resulting in fewer occurrences of residential basement flooding in the tributary area.

P.    Substantial inflow and infiltration remains in the areas tributary to the Kearsarge pump station, and the Township and the Authority continue to expand their program of inspections and termination of unlawful connections in the tributary area. The program includes, but is not limited to, inspecting properties and, where warranted, directing termination of unlawful connections to the sanitary sewer system and implementing regulations regarding permits or approvals so as to require identification and/or abatement of inflow and infiltration in tributary areas.

Q.    Despite the system improvements described in Paragraph O, above, the Township and Authority continue to allow untreated sewage to be periodically discharged to Walnut Creek via the Kearsarge Overflow and from other areas tributary to the Kearsarge pump station. The Township and the Authority have reported the overflow events detailed on Exhibit A, which is attached and incorporated

**App. 646**

herein, and have paid penalties for the reported overflows at the Kearsarge pump station in accordance with the 1992 COA.

R.    As of the execution date of this Consent Order and Agreement, the Kearsarge Overflow has not been removed. The Township and Authority have fulfilled all other tasks detailed in the 1993 Plan and Schedule.

S.    The discharge of untreated sewage into Walnut Creek from the Kearsarge Overflow and other areas tributary to the Kearsarge pump station violates Sections 201, 202, and 401 of the Clean Streams Law, 35 P.S. §§691.201, 691.202 and 691.401.

T.    On February 25, 2003, the Township and Authority provided an updated schedule of activities to assure that the Kearsarge Overflow will be removed and overflow events from areas tributary to the Kearsarge pump station will be eliminated.

U.    The Township's and Authority's failure to remove the Kearsarge Overflow pursuant to the 1993 Plan and Schedule as set forth in Paragraph R, above, is a violation of the 1992 COA and subjects the Township and Authority to stipulated penalties pursuant to Paragraph 9 of the 1992 COA.

V.    The violations described in Paragraphs Q and S, above, constitute unlawful conduct pursuant to Section 611 of the Clean Streams Law, 35 P.S. §691.611; are statutory nuisances pursuant to Section 601 of the Clean Streams Law, 35 P.S. §691.601; and subject the Township and the Authority to civil penalty liability pursuant to Section 605 of the Clean Streams Law, 35 P.S. §691.605.

W.    The Township and Authority have identified 16 homes along the Rinderle Drive and Moraine Drive reporting malfunctions of on-lot sewage disposal systems. A map depicting the location of the 16 homes is attached and incorporated herein as Exhibit B. The Township is seeking the agreement of a developer to construct public water and sewer lines serving the 16 homes as part of the

5

construction of an adjacent subdivision. The public sewer lines constructed by the developer will be tributary to the Kearsarge pump station.

## Order

After full and complete negotiation of all matters set forth in this Consent Order and Agreement, and upon mutual exchange of the covenants contained herein, the Parties desiring to avoid litigation and intending to be legally bound, it is hereby ORDERED by the Department and AGREED to by the Township and the Authority as follows:

1.    *Authority.* This Consent Order and Agreement is an Order of the Department authorized and issued pursuant to Sections 5 and 610 of the Clean Streams Law, 35 P.S. §§691.5 and 691.610; Section 10 of the Sewage Facilities Act, 35 P.S. §750.10 ; and Section 1917-A of the Administrative Code.

2.    *Findings.*

a.    The Township and the Authority agree that the Findings in Paragraphs A through W are true and correct and, in any matter or proceeding involving the Township, and/or the Authority, and the Department, neither the Township nor the Authority shall challenge the accuracy or validity of these Findings.

b.    The Parties do not authorize any other persons to use the Findings in this Consent Order and Agreement in any matter or proceeding.

3.    *Corrective Action.* The Township and Authority shall complete the following tasks no later than the dates specified herein to remove the Kearsarge Overflow and eliminate overflow events in areas tributary to the Kearsarge pump station:

a.    On or before July 1, 2004, the Township and Authority shall jointly submit a complete and final Special Study as defined in 25 Pa. Code §71.1 to the Department which includes all

App. 648

documentation requirements pursuant to 25 Pa. Code §71.31 of the Regulations ("Special Study"). The Special Study shall, at a minimum, include:

        i.      An evaluation of the following three alternatives to address the removal of the Kearsarge Overflow and elimination of overflow events tributary to the Kearsarge pump station: 1) the construction of a retention facility at the Kearsarge pump station; 2) the installation of an in-line booster on the Kearsarge force main; 3) the replacement of the Kearsarge pump station. Additional alternatives may be addressed in the Special Study.

        ii.     Selection of the most feasible alternative of those identified in the Special Study pursuant to Paragraph 3.a.i, above, which will result in the timely removal of the Kearsarge Overflow and elimination of overflow events tributary to the Kearsarge pump station.

        iii.    An implementation schedule which includes a date when the Kearsarge Overflow will be removed and overflow events from other areas tributary to the Kearsarge pump station will be eliminated. Said date shall be within 30 days of complete installation of the alternative chosen pursuant to Paragraph 3.a.ii, above.

        b.      Within nine months of the Department's written approval of the Special Study the Township and Authority shall submit a Water Quality Management Part II Permit Application, as well as any other required applications or information, to the Department for consideration and authorization of all facilities necessary for implementation of the alternative chosen pursuant to Paragraph 3.a.ii, above.

        c.      Construction of all facilities necessary for implementation of the alternative chosen pursuant to Paragraph 3.a.ii, above, shall be completed within 18 months of the Department's issuance of the Water Quality Management Part II Permit.

App. 649

d.    Within 30 days of completion of facilities described in Paragraph 3.c, above, the Township and Authority shall remove the Kearsarge Overflow and eliminate overflow events tributary to the Kearsarge pump station.

e.    By December 31, 2006, the 16 homes along Rinderle Drive and Moraine Drive shall be served by a public sewerage system. The failure of the developer to construct the sewer lines and obtain the connection of the 16 homes along Rinderle Drive and Moraine Drive by December 31, 2006 shall not relieve the Township and Authority of its obligation to connect the 16 homes along Rinderle Drive and Moraine Drive to a public sewerage system. Subject to compliance with this subparagraph, connections for the 16 homes along Rinderle Drive and Moraine Drive shall be excepted from the annual connections limitations contained in Paragraph 4.a. and 4.b., below.

f.    In addition to the measures set forth above, the Township and Authority shall continue a program of implementing measures to reduce inflow and infiltration into the sanitary sewer system in areas tributary to the Kearsarge pump station. The program may include, but will not be limited to, measures described in Paragraph P, above.

4.    *New Connections Tributary to the Kearsarge Pump Station.* Upon execution of this Consent Order and Agreement, the Township and Authority will be limited in the number of connections tributary to the Kearsarge pump station as follows:

a.    Commencing with the execution of this Consent Order and Agreement through December 31, 2003, the total number of new connections tributary to the Kearsarge pump station shall not exceed 79 connections.

b.    Beginning January 1, 2004, and continuing until compliance is determined in accordance with Paragraph 22, below, the total number of new connections tributary to the Kearsarge pump station shall not exceed 133 connections in each calendar year.

8

**App. 650**