c.    For the purposes of Paragraph 4:

i.    "tributary to the Kearsarge pump station" shall mean any sewage collection system that discharges sewage through the Kearsarge pump station; and

ii.    one connection is defined as the connection of one individual residence or 400 gallons per day of sewage generated from any other connection.

iii.    The Township and the Authority shall regulate new connections tributary to the Kearsarge pump station to comply with its obligations under this Paragraph 4.

d.    If the Department determines that the Township and/or Authority are in violation of this Consent Order and Agreement, no connections tributary to the Kearsarge pump station shall be authorized until the Department determines, in writing, that the Township and Authority are in compliance with all terms and conditions of this Consent Order and Agreement.

e.    The Township and Authority may request, in writing, that the Department consider exceptions to the annual connection limitation as specified in Paragraph 4.a. herein.  Only those connections strictly meeting the criteria set forth in 25 Pa. Code §§94.54 – 94.57 will be considered and no exception shall be considered granted until the applicant is so advised in writing by the Department.

i.    Requests for exceptions under 25 Pa. Code §94.54 must include the results of a comprehensive on-lot sewage disposal needs identification survey for the specific study area showing a confirmed malfunction rate to be equal to or greater than 25%.  An acceptable comprehensive on-lot sewage disposal needs identification survey shall, at a minimum:

1)    Be conducted by a person(s) knowledgeable of on-lot disposal systems who is able to recognize and confirm on-lot system malfunctions and illegal discharges through visual observation.  Sampling and laboratory testing is not required;

9

App. 651

2)    include a map showing the results of the survey accompanied by a tabulation of survey results keyed to the map;

3)    must be comprehensive; representative or questionnaire type surveys will not be considered; and,

4)    include in the results only those systems identified as confirmed malfunctions through direct evidence of sewage.  On-lot systems classified as suspect or potential malfunctions should not be included.

ii.    Should the Township and Authority request exceptions to the annual connection limitation in order to eliminate a public health hazard by providing sanitary sewer service to a specific subdivision or area, the Township and Authority, in addition to meeting the criteria set forth at Paragraphs 4.e. and 4.e.i, above, shall provide an implementation schedule to the Department.  Said schedule shall include, but may not be limited to, a final milestone date by when the area will be provided with sanitary sewer service and the public health hazard eliminated.  Upon the Department's approval, the final milestone date will be incorporated into this Consent Order and Agreement as if set forth herein. The Township and Authority will be responsible for assuring that sanitary sewer service is provided to the specified subdivision or area by the date indicated and shall be subject to stipulated penalties set forth at Paragraph 9.a.

iii.    Requests for exceptions pursuant to 25 Pa. Code §§94.55-94.57 must include documentation supporting the request including specific reasons why such a request should be granted.

f.    The Township and the Authority may request to carry over unused connections from one calendar year to the next calendar year.  The request shall be accompanied with documentation of estimated gallons per day of inflow and infiltration removed over the previous year resulting from the

App. 652

removal of illegal connections and other completed inflow and infiltration removal work. The Department will consider such requests provided that no overflow events have occurred at the Kearsarge pump station or as the result of pumping from manholes in areas tributary to the Kearsarge pump station during the previous calendar year. No request to carry over unused connections will be considered should the Department find that the Township and the Authority are in violation of any term or condition of this Consent Order and Agreement.

5.    *Quarterly Progress Reporting.* The Township and Authority shall jointly submit written quarterly reports to the Department to detail their efforts to comply with the requirements of this Consent Order and Agreement. At a minimum, the reports shall include the location, duration, cause, and amount of untreated sewage overflow events via the Kearsarge Overflow, and from areas tributary to the Kearsarge pump station, the number of new connections to areas tributary to the Kearsarge pump station over the reporting quarter, and a summary of progress to comply with the implementation schedule contained in the Special Study pursuant to Paragraph 3.a.iii, above. Quarterly reports shall be due on or before the 30th day after the end of each calendar quarter (*i.e.*, Apr. 30, Jul. 31, Oct. 31, and Jan. 31).

6.    *Termination of the 1992 Consent Order and Agreement.* Upon execution of this Consent Order and Agreement by all Parties, obligations of the Township and Authority pursuant to the 1992 COA shall terminate. The facts pursuant to the 1992 COA shall remain binding on the Parties.

7.    *Submission of Documents.* With regard to any document that the Township and Authority are required to submit pursuant to this Consent Order and Agreement, the Department will review the Township and Authority document and will approve, modify, or disapprove the document, or portion thereof, in writing. If the document, or any portion of the document, is disapproved by the Department, the Township's and Authority shall submit a revised document to the Department that addresses the Department's concerns within a reasonable time, as specified by the Department. The

11

Department will approve, or modify and approve, the revised document in writing. Upon approval by the Department, the document shall become a part of this Consent Order and Agreement for all purposes and shall be enforceable as such.

8. *Civil Penalty Settlement.* Upon signing this Consent Order and Agreement, the Township and Authority shall pay a civil penalty in the amount of $25,000. This payment is in settlement of the Department's claim for civil penalties for the violations set forth in Paragraphs U and V, above, covering the dates set forth herein. The payment shall be made by corporate check or the like made payable to "Commonwealth of Pennsylvania Clean Water Fund" and sent to the individual and address set forth in Paragraph 14 (Correspondence with Department), below.

9. *Stipulated Civil Penalties.* If the Township and/or the Authority fails to comply in a timely manner with any term or provision of this Consent Order and Agreement, the Township and Authority shall be jointly and severably in violation of this Consent Order and Agreement and, in addition to other applicable remedies, shall pay a civil penalty in accordance with the following:

a. For any violation of Paragraphs 3 through 5, herein, $200 per day for each violation.

b. For any sanitary sewer overflows via the Kearsarge Overflow or from any areas tributary to the Kearsarge pump station, including overflows resulting from manual pumping, occurring prior to the date specified in 3.d. above. $2,500 for each event at each point of overflow.

c. For any sanitary sewer overflows via the Kearsarge Overflow or from any areas tributary to the Kearsarge pump station, including overflows resulting from manual pumping, occurring after the date specified in Paragraph 3.d, above, $5,000 for each event at each area of overflow.

d. For any calendar quarter prior to completion of the corrective measures required under this Order during which the Township and the Authority fail to continue their program of

**App. 654**

identifying and securing termination of unlawful connections to the sanitary sewer system, $1,250 per each calendar quarter. It is understood that the number of inspections during particular seasons may be less that those at other times of a year.

e.    Stipulated civil penalty payments shall be payable monthly on or before the 15th day of each succeeding month, and shall be forwarded as described in Paragraph 8 (Civil Penalty Settlement), above.

f.    Any payment under this Paragraph shall neither waive the Township's and the Authority's duty to meet their obligations under this Consent Order and Agreement nor preclude the Department from commencing an action to compel the Township's and the Authority's compliance with the terms and conditions of this Consent Order and Agreement. The payment resolves only the Township and the Authority's liability for civil penalties arising from the violation of this Consent Order and Agreement for which the payment is made.

g.    Stipulated penalties shall be due automatically and without notice.

10.    *Additional Remedies*.

a.    If the Township and/or the Authority fail to comply with any provision of this Consent Order and Agreement, the Department may, in addition to the remedies prescribed herein, pursue any remedy available for a violation of an order of the Department, including an action to enforce this Consent Order and Agreement.

b.    The remedies provided by this Paragraph and Paragraph 9 (Stipulated Civil Penalties), above, are cumulative and the exercise of one does not preclude the exercise of any other. The failure of the Department to pursue any remedy shall not be deemed to be a waiver of that remedy. The payment of a stipulated civil penalty, however, shall preclude any further assessment of civil penalties for the violation for which the stipulated civil penalty is paid.

App. 655

11.    *Reservation of Rights*.  The Department reserves the right to require additional measures to achieve compliance with applicable law.  The Township and the Authority reserve the right to challenge any action which the Department may take to require those measures.

12.    *Liability of Township and the Authority*.  The Township and the Authority shall be liable for any violations of the Consent Order and Agreement, including those caused by, contributed to, or allowed by their members, supervisors, directors, officers, directors, agents, employees, contractors, successors, and assigns.

13.    *Transfer of Site*.

a.    The Township's and the Authority's duties and obligations under this Consent Order and Agreement shall not be modified, diminished, terminated, or otherwise altered by the transfer of any legal or equitable interest in the sewage collection system or any part thereof.

b.    If the Township and the Authority intends to transfer any legal or equitable interest in the sewage collection system, or any part thereof, which is affected by this Consent Order and Agreement, the Township and the Authority shall serve a copy of this Consent Order and Agreement upon the prospective transferee of the legal and equitable interest at least 30 days prior to the contemplated transfer, and shall simultaneously inform the Department of such intent pursuant to Paragraph 14 (Correspondence with Department), below.

14.    *Correspondence with the Department*.  All correspondence with the Department concerning this Consent Order and Agreement shall be addressed to:

> Mr. Anthony C. Oprendek, Compliance Specialist
> Water Management
> Department of Environmental Protection
> 230 Chestnut Street
> Meadville, PA  16335-3481
> Telephone:  814-332-6942
> Fax:  814-332-6121

**App. 656**

15.    *Correspondence with the Township.* All correspondence with the Township concerning this Consent Order and Agreement shall be addressed to:

> Mr. Brian P. McGrath, Supervisor
> Millcreek Township
> Millcreek Municipal Building
> 3608 West 26th Street
> Erie, PA 16506
> Telephone:
> Fax: 814-833-6615

The Township shall notify the Department whenever there is a change in the contact person's name, title, or address. Service of any notice or any legal process for any purpose under this Consent Order and Agreement, including its enforcement, may be made by mailing a copy by first class mail to the above address.

16.    *Correspondence with the Authority.* All correspondence with the Authority concerning this Consent Order and Agreement shall be addressed to:

> Mr. George W. Riedesel, Manager
> Millcreek Township Sewer Authority
> Millcreek Municipal Building
> 3608 West 26th Street
> Erie, PA 16506
> Telephone: 814-835-6721
> Fax: 814-835-6615

The Authority shall notify the Department whenever there is a change in the contact person's name, title, or address. Service of any notice or any legal process for any purpose under this Consent Order and Agreement, including its enforcement, may be made by mailing a copy by first class mail to the above address.

17.    *Severability.* The Paragraphs of this Consent Order and Agreement shall be severable and should any part hereof be declared invalid or unenforceable, the remainder shall continue in full force and effect between the Parties.

**App. 657**

18.    *Entire Agreement.* This Consent Order and Agreement shall constitute the entire integrated agreement of the Parties. No prior or contemporaneous communications or prior drafts shall be relevant or admissible for purposes of determining the meaning or intent of any provisions herein in any litigation or any other proceeding.

19.    *Attorney Fees.* The Parties shall bear their respective attorney fees, expenses, and other costs in the prosecution or defense of this matter or any related matters, arising prior to execution of this Consent Order and Agreement.

20.    *Modifications.* No changes, additions, modifications, or amendments of this Consent Order and Agreement shall be effective unless they are set out in writing and signed by the Parties.

21.    *Titles.* A title used at the beginning of any Paragraph of this Consent Order and Agreement may be used to aid in the construction of that Paragraph, but shall not be treated as controlling.

22.    *Termination of Consent Order and Agreement.* The Township's and the Authority's obligations, but not the Findings, under this Consent Order and Agreement shall terminate when the Township and Authority have: 1) completed all of the tasks set forth in this Consent Order and Agreement; 2) achieved compliance with the Clean Steams Law and Regulations by having no overflow events from any areas tributary to the Kearsarge pump station, including those resulting from manual pumping, for a period of 24 months after the date that the Kearsarge Overflow has been removed; and, 3) paid any outstanding penalties due under Paragraph 8 and 9 of this Consent Order and Agreement. The Township's and Authority's compliance with this Consent Order and Agreement shall be determined by the Department and shall not be appealable by the Township or the Authority.

**App. 658**

23.    *Resolution for the Township.* Exhibit C, which is attached and incorporated herein, is a resolution of the Millcreek Township Board of Supervisors authorizing its signatories below to enter into this Consent Order and Agreement on their behalf is.

24.    *Resolution for the Authority.* Attached as Exhibit C and incorporated herein is a resolution of the Millcreek Township Sewer Authority members authorizing its signatories below to enter into this Consent Order and Agreement on its behalf.

IN WITNESS WHEREOF, the Parties have caused this Consent Order and Agreement to be executed by their duly authorized representative. The undersigned representatives of the Township and the Authority certify under penalty of law, as provided by 18 Pa.C.S. §4904, that they are authorized to execute this Consent Order and Agreement on behalf of the Township and the Authority, that the Township and the Authority consent to the entry of this Consent Order and Agreement as a final ORDER of the Department; and that the Township and the Authority hereby knowingly waives their rights to appeal this Consent Order and Agreement and to challenge its content or validity, which rights may be available under Section 4 of the Environmental Hearing Board Act, the Act of July 13, 1988, P.L. 530, No. 1988-94, 35 P.S. §7514; the Administrative Agency Law, 2 Pa.C.S. §103(a) and Chapters 5A and 7A; or any other provision of law. Signature by the Township's and the Authority's attorneys certifies only that the agreement has been signed after consulting with counsel.

**App. 659**

FOR MILLCREEK TOWNSHIP:

FOR THE COMMONWEALTH OF
PENNSYLVANIA, DEPARTMENT OF
ENVIRONMENTAL PROTECTION:

_____
Sue Weber
Supervisor for Millcreek Township

_____
Ricardo F. Gilson
Regional Manager
Water Management
Northwest Region

_____
Evan Adair, Esq.
Attorney for Millcreek Township

_____
Douglas G. Moorhead
Assistant Counsel

**FOR MILLCREEK TOWNSHIP SEWER
AUTHORITY:**

_____
George W. Riedesel, Manager
For Millcreek Township Sewer Authority

_____
Timothy M. Sennett, Esq.
Attorney for Millcreek Township Sewer Authority

COA-Final Template:5/17/02:COA:CN:ACO:jb:9/25/03:Millcreek1 :yef 10/17/03

**App. 660**

# Exhibit A

### Reported Overflows Tributary to Kearsarge Pump Station

| Date of Occurrence | Location of Overflow | Volume Discharged |
|---|---|---|
| December 30, 1992 | Kearsarge Overflow | 400,000 gallons |
| September 17, 1996 | Kearsarge Overflow | unknown volume (12 hour duration) |
| February 27, 1997 | Kearsarge Overflow | 275,000 gallons |
|  | 51st and Zimmerly | unknown volume |
| January 8, 1998 | Kearsarge Overflow | 300,000 gallons |
|  | 51st and Zimmerly | unknown volume |
|  | Larchmont and Spring Valley | unknown volume |
|  | Pershing and Patton | unknown volume |
| December 14, 1999 | Kearsarge Overflow | $> 300,000 \leq 1,000,000$ gallons |
| August, 2000 | Kearsarge Overflow | $> 25,000 \leq 74,999$ gallons |
|  | 51st and Zimmerly | unknown volume |
| November 7, 2000 | Kearsarge Overflow | unknown volume |
| February 1, 2002 | Kearsarge Overflow | 108,000 gallons |
|  | 51st and Zimmerly | unknown volume |
|  | Larchmont and Beaver | unknown volume |
| April 14, 2002 | Kearsarge Overflow | 24, 999 gallons |
|  | 51st and Zimmerly | unknown volume |
|  | Church and Patton | unknown volume |
| September 29, 2003 | Kearsarge Overflow | 1,019,780 gallons |
|  | 51st and Zimmerly | 108,000 gallons |

# RINDERLE ACRES

PART OF TRACT NO. 347, MILLCREEK TWP.
ERIE COUNTY, PENN.

SCALE : 1" = 200'          APRIL 11, 1925.

HILL & HILL
CIVIL ENGINEERS

App. 662



MILLCREEK TOWNSHIP SEWER AUTHORITY

RESOLUTION  2003-08

It is hereby RESOLVED by the Millcreek Township Sewer Authority that it has

reviewed the Consent Order and Agreement between the Department of Environmental

Protection, Millcreek Township and Millcreek Township Sewer Authority and upon

recommendation of the Manager of the Millcreek Township Sewer Authority and Solicitor, does

hereby approve the Consent Order and Agreement and authorizes the Manager and Solicitor to

execute the Consent Order and Agreement.

This Resolution was adopted at a duly advertised special meeting of the Millcreek

Township Sewer Authority at 3:30 p.m. on Thursday, October 23, 2003.

_George H. Riedesel_
Secretary

RESOLUTION 2003-R-27

**A Resolution to approve and authorize execution of a Consent Order and Agreement with the Pennsylvania Department of Environmental Protection with respect to compliance with the Clean Streams Law and the Sewage Facilities Act.**

**WHEREAS**, Millcreek Township and the Millcreek Township Sewer Authority entered into a Consent Order and Agreement dated January 7, 1992 with the former Pennsylvania Department of Environmental Resources, with respect to effecting measures to protect against violations of the Clean Streams Law and the Sewage Facilities Act; and

**WHEREAS**, said January 7, 1992 Consent Order and Agreement, as supplemented by a March 29, 1993 Plan and Schedule, called for certain measures to increase capacity of the sanitary and storm sewer systems to reduce or eliminate discharges during storm events which constitute violations of State laws; and

**WHEREAS**, the January 7, 1992 Consent Order and Agreement deferred until after completion of measures therein called for studies and action to address capacity of the Kearsarge pump station and eliminate the Kearsarge bypass; and

**WHEREAS**, the Township and the Authority have completed all of the actions required of them under the 1992 Consent Order and Agreement; and

**WHEREAS**, said measures have substantially reduced, but not eliminated, discharges from the Kearsarge bypass; and

**WHEREAS**, the Pennsylvania Department of Environmental Protection (PaDEP) has advised the Township and the Millcreek Township Sewer Authority that actions are required to address capacity of the Kearsarge pump station and finally eliminate the Kearsarge bypass; and

**WHEREAS**, the Township and the Millcreek Township Sewer Authority have, together, negotiated with PaDEP specific terms relating to prior actions and a future course of action to address the defined objectives; and

**WHEREAS**, the Millcreek Township Sewer Authority has approved the negotiated Consent Order and Agreement in the form attached hereto; and

**WHEREAS**, the Board of Supervisors has determined that the Consent Order and Agreement addresses identified concerns of the Township and the Authority and meets requirements of PaDEP in a manner as reasonable and appropriate as can be negotiated.

NOW, **THEREFORE, IT IS HEREBY RESOLVED** by the Board of Supervisors of Millcreek Township as follows:

1.    The proposed Consent Order and Agreement in the form attached hereto is hereby approved.

2.    The Chair of the Board and the solicitor are authorized and directed to sign requisite signature copies of the Consent Order and Agreement on behalf of Millcreek Township.

3.    The solicitor shall submit the signed documents to PaDEP and, upon receipt of a fully-executed copy, said document shall be maintained in a master Township file.

4.    The manager, staff and members of the Millcreek Township Sewer Authority are commended for their assistance and close cooperation in negotiating this COA.

**ADOPTED** this 28th day of October, 2003.

**MILLCREEK TOWNSHIP SUPERVISORS**

_____

_____

_____

2



would receive claims exceeding $5 million when the primary defendant and less than one-third of the plaintiffs are from the same state.

A yes vote was to advance the bill.

**Voting yes:** Specter, Santorum.

## Spam crackdown

Voting 97 for and none against, the Senate on Oct. 22 passed a bill (S 877) that would begin federal regulation of the unwanted deluge of commercial e-mail known as spam. The bill, now awaiting House action, sets penalties of up to $3 million in fines and one year in prison. It authorizes a Federal Trade Commission "do-not-e-mail" list similar to the FTC's do-not-call list for telemarketers.

The bill gives the benefit of doubt to spammers by requiring consumers to "opt out" of unwanted messaging. Critics favored an "opt in" approach requiring spammers to obtain permission before sending mail.

Under the bill, spam messages would be required to state the sender's identity, physical address and return Internet address. They would have to include an accurate label of the subject matter and means for the recipient to opt out of future messages from the same sender.

A yes vote was to pass the bill.

**Voting yes:** Specter, Santorum.

---

## spray use

The city's policy on the use of force required officers to exhaust options for physical force before resorting to chemical spray.

Williams testified Willie Sanders Jr. butted him before he was arrested. Williams said he tried to physically restrain Willie Sanders Sr. before he sprayed him. Neither detail was in the report he wrote at the time.

Hertel, who never wrote a report about the incident nor testified in the prior criminal proceedings, said he saw Willie Sanders Sr. pulling his son away from police. He said he, Carmen and Williams struggled to pull Willie Sanders Sr. away and handcuff him. He said he did not remember Willie Sanders Sr. Gaines being sprayed.

Hertel said he saw Gaines strike Williams repeatedly.

Triana, who also did not write a report, said he also saw Gaines hit Williams.

ISA THOMPSON can be reached at 870-1802 or by e-mail.

---

## project bid

consult, said when contacted later.

Rob Hunden, senior project director for C.H. Johnson Consulting, called the turnout "very

---

Church in North East.

She was preceded in death by her husband, Anthony N. Taccone, in 1990; a brother, Charles Sciazzie; and two sisters, Carmella Trisina and Mary Sciazzie.

Survivors include two sons, Russell Taccone and his wife, Shirley, of Youngsville, and Charles Taccone and his wife, Geralene, of North East; a sister, Connie Bille of Carlstadt, N.J.; eight grandchildren; and seven great-grandchildren.

Friends may call Thursday from 2 to 4 and 7 to 9 p.m. at W. Tad Bowers Funeral Home, 92 S. Lake St., North East. A service will be held there Friday at 10 a.m., followed by a Mass of Christian Burial at 10:30 a.m. at St. Gregory Catholic Church, South Pearl Street, North East.

Burial will be at St. Gregory Cemetery.

Memorials may be made to the charity of the donor's choice.

---

# Millcreek Township to pay pollution fine

**By JOHN GUERRIERO**
john.guerriero@timesnews.com

Millcreek Township will pay a $25,000 civil penalty for allowing raw sewage to flow into Walnut Creek in the past when the only alternative wasn't pretty either — allowing sewage backups into home basements.

The penalty is one part of a new consent order and agreement among the township, the township's Sewer Authority and the state Department of Environmental Protection.

Millcreek supervisors Brian McGrath and Joseph Kujawa approved the new agreement at their meeting Tuesday night in Belle Valley. Supervisor Sue Weber was absent after taking a partial vacation day.

The agreement will take effect after the DEP signs it, said township Solicitor Evan Adair. The authority has approved it.

The township and the authority had to approve the agreement because the authority owns the sewer system, but the township maintains and runs it.

McGrath said the $25,000 penalty, although high, could have been greater if the parties had not reached a settlement of all potential liability for past discharges into the creek. The potential penalty could have been more than $100,000 since 1992, when the parties entered into a first consent order and agreement, said George Riedesel, manager of Millcreek Sewer Authority.

The most recent intentional discharges into Walnut Creek came on Sept. 29, twice in 2002 and once in 2001, Riedesel said.

The Kearsarge sewage pump station's inability to handle capacity during heavy bursts of rain has forced the occasional dumping of raw sewage into the creek, which empties into Lake Erie.

The penalty will be paid from the township's sewer revenue fund, and the Summit Sewer Authority will pay a share, Riedesel said. The pump station collects sewage from about 1,000 homes and businesses in Millcreek, as well as from businesses on upper Peach Street in Summit.

Millcreek and its Sewer Authority have spent more than $10 million since 1992 to upgrade the sewer system throughout the township, including improvements that greatly reduce intentional or accidental sewage discharges from the Kearsarge area into Walnut Creek.

The new agreement seeks to totally eliminate discharges into the creek by taking more steps that ultimately would eliminate a bypass valve at the Kearsarge sewage pump station that is opened to avoid basement sewage backups.

"This is the endgame, one way or another," Adair said.

The township said the authority will have no more than three years to make the final improvements, McGrath said.

Among other provisions, the agreement requires the township and the authority to submit a study with recommended actions to eliminate future discharges and terminate the bypass. The agreement also calls for the township to continue its program of investigating and ending unlawful connections that take storm water into sanitary sewer lines, overloading sewer pipes and the pump station.

The agreement would impose penalties of $2,500 for each future discharge from the sewer system.

JOHN GUERRIERO can be reached at 870-1690 or by e-mail.

---

## Lake Erie botulism study

Researchers from the State University of New York will

The

---

and was wounded in action at National Forge Co. years.

He graduated from Youngsville in 1964.

He served in the U.S. Air Force, signed duty in Vietnam and T discharged in 1968 after three

He helped organize the Vor and was a member of St. Church in Youngsville, where he assisted with the barbecue and Mother's Day breakfast. He also v American Legion Post 658 in Youngsville. Lakew Gun Club and Veterans of Foreign Wars Post in Y

He enjoyed outdoor activities, especially travel walks, and watching the Outdoor Channel.

Survivors include his wife, Mary Ann Yucha D married Nov. 29, 1969; a son, Scott Anson DeVore of ter, Pamela Anne DeVore of Youngsville; four brot Harry DeVore of Bear Lake, Dennis DeVore of Pitt DeVore of Youngsville; his twin sister, Sharon Ste Ohio; three other sisters, Linda Sturges of Columb of Youngsville and Susan Burleigh of Grand V children, and several aunts, uncles, nieces, neph

Friends may call Thursday from 2 to 4 and 7 to a prayer service at 3:45 p.m. at McKinney Youngsville. A Mass of Christian Burial will be c at 10:30 a.m. at St. Luke Catholic Church, Youngsv the Rev. William Miller.

Burial, with full military honors, will be at Warr rial Park.

Memorials may be made to Hospice of Warren 68, Warren, PA 16365; St. Luke Catholic Church I 420 N. Main St., Youngsville, PA 16371; or Young Club/Alumni in care of McKinney Funeral Hom Youngsville, PA 16371.

## Chester Kaminski
### Served in U.S. Army during World Wa

Chester Kaminski, 82, Cottage Avenue, died Mo Oct. 27, 2003, at his daughter's home in McKean.

He was born March 9, 1921, in Erie, son of the Anthony and Wladyslawa Dy
Retiring in 1978, he worke vania Department of Transp

He served in the U.S. Army II and was assigned duty w Regulation. He received va cluding the Purple Heart.

He was a member of the sociation of Retired State E ish National Alliance a Catholic Church.

He was a Cleveland Indiar gardening.

He was preceded in de Genevieve Aleksandrowicz Kaminski, a sister, Ma three brothers, Joseph, Walter and Frank Kami

Survivors include two daughters, Annmarie Pr band, Gregg, of Millcreek Township and Barbar husband, Mark, of McKean; two sisters, E Lawrence Park Township and Mary Maxine of children; a great-grandson, and many nieces an

Friends may call Thursday from 2 to 5 and 7 to Martin Funeral Home, 4216 Sterrettania Road, held there Friday at 10:15 a.m., followed by a Ma lal at 11 a.m. at St. Francis Xavier Catholic Chu St. McKean.

Burial, with full military honors, will be at Er ial Gardens.

Memorials may be made to Great Lakes Hosp Suite 244, Erie, PA 16501.

## Frank Edward Downor
### Was self-employed dairy farmer

UNION CITY — Frank Edward Downor, 80, 17 City, died Tuesday, Oct. 28, 2003, at his home.

He was born July 2, 1923, in Union City, son of the Sr. and Marcella Witek Dow
-employed as a dair d as a truck driver for Auction.

was a member of S dic Church in Union C enjoyed outdoor activ was preceded in death or Jr.

rvivors include his

**App. 666**



DEFENDANT'S EXHIBIT

2

2/28/06 CV

# NEWS

Case 1:05-cv-00059-MBC    Document 38-15    Filed 03/31/2006

# OBITUARIES

# se approves Iraq funding

**Washington**

*Roll Call*

## Senate

### Senate pay raise

Senators on Thursday voted, 30 for and 34 against, to approve an approximately $3,300 pay raise in 2004.

The House previously accepted the increase without conducting a record vote on it. Rank-and-file members will see their pay rise on Jan. 1 from $154,700 to about $158,000. Congressional leaders, Vice President Richard Cheney and Supreme Court justices, who have higher salaries, also will receive the increase as a result of this vote. The vote occurred during debate on a fiscal 2004 appropriations bill (HR 2989) that was sent to a House-Senate conference committee.

A yes vote backed a congressional pay raise.

**Voting yes:** Rick Santorum, R. **Voting no:** Arlen Specter, R.

### Cuba travel

Voting 36 for and 59 against, the Senate on Thursday failed to uphold the U.S. government's 42-year-old ban on travel by Americans to Cuba. The vote during debate on HR 2989 failed to table (kill) a bid to lift a 42-year prohibition that keeps U.S. citizens from visiting Cuba without special permission from Washington. Both the House and Senate have now added language to HR 2989 to remove the ban.

A yes vote was to retain the Cuba travel ban.

**Voting yes:** Santorum. **Voting no:** Specter.

### Abortion crime

Voting 64 for and 34 against, the House on Oct. 21 sent the White House the conference report on a bill (S 3) making it a federal crime for doctors to perform a type of second- or third-trimester abortion in which they partly extract the fetus, terminate it by piercing its skull and removing it. Critics call it "partial-birth abortion," while defenders say that however gruesome, it is sometimes necessary to protect the mother's health. The bill allows an exception to save the life of the mother but contains no health exception.

**Voting yes:** Specter, Santorum.

### Class actions

Voting 59 for and 39 against, the Senate on Oct. 22 failed to get 60 votes for advancing a bill (S 1751) that would shift most large class-action lawsuits from state courts, where juries tend to side with plaintiffs, to federal courts, where corporate defendants have a better chance of winning. The bill is backed by groups such as the National Association of Manufacturers and U.S. Chamber of Commerce and opposed by groups such as the American Trial Lawyers Association and the Consumer Federation of America.

At present, class actions are assigned to federal court only in the rare instance when all plaintiffs are from different states than all defendants. Under this bill, federal courts would resolve claims exceeding $5 million when the primary defendant and less than one-third of the plaintiffs are from the same state.

A yes vote was to advance the bill.

**Voting yes:** Specter, Santorum.

### Spam crackdown

Voting 97 for and none against, the Senate on Oct. 22 passed a bill (S 877) that would begin federal regulation of the unwanted deluge of commercial e-mail known as spam. The bill, now awaiting House action, sets penalties of up to $6 million in fines and one year in prison. It authorizes a Federal Trade Commission "do-not-e-mail" list similar to the FTC's do-not-call list for telemarketers.

The bill gives the benefit of doubt to spammers by requiring consumers to "opt out" of unwanted messaging. Critics favored an "opt in" approach requiring spammers to obtain permission before sending mail.

Under the bill, spam messages would be required to state the sender's identity, physical address and return Internet address. They would have to include an accurate label of the subject matter and means for the recipient to opt out of future messages from the same sender.

A yes vote was to pass the bill. **Voting yes:** Specter, Santorum.

---

## Josephine Scozzie Taccone
### Owned, operated J's Florist Shop

NORTH EAST — Josephine Taccone, 95, a resident of Twinbrook Medical Center, Lawrence Park Township, died Monday, Oct. 27, 2003.

She was born May 16, 1908, in North East, daughter of the late Charles and Frances Shortino Scozzie.

As owner and operator of J's Florist Shop in North East, she also taught floral design classes for many years.

She was a member of St. Gregory Catholic Church in North East.

She was preceded in death by her husband, Anthony N. Taccone, in 1960, a brother, Charles Scozzie; and two sisters, Carmella Trimans and Mary Scaneo.

Survivors include two sons, Russell Taccone and his wife, Shirley, of Harborcreek Township, and Charles Taccone and his wife, Géraline, of North East; a sister, Connie Bille of Carlstadt, N.J.; eight grandchildren; and seven great-grandchildren.

Friends may call Thursday from 2 to 4 and 7 to 9 p.m. at W. Todd Bowers Funeral Home, 92 S. Lake St., North East. A service will be held there Friday at 10 a.m., followed by a Mass of Christian Burial at 10:30 a.m. at St. Gregory Catholic Church, South Pearl Street, North East.

Burial will be at St. Gregory Cemetery.

Memorials may be made to the charity of the donor's choice.

---

## REGION

# Millcreek Township to pay pollution fine

**By JOHN GUERRIERO**
john.guerriero@timesnews.com

Millcreek Township will pay a $25,000 civil penalty for allowing raw sewage to flow into Walnut Creek in the past when the alternative wasn't pretty either — allowing sewage backups into home basements.

The penalty is one part of a new consent order and agreement among the township, the township's Sewer Authority and the state Department of Environmental Protection.

Millcreek supervisors Brian McGrath and Joseph Kujawa approved the new agreement at their meeting Tuesday night in Belle Valley. Supervisor Sue Weber was absent after taking a partial vacation day.

The agreement will take effect after the DEP signs it, said township Solicitor Evan Adair. The authority has approved it.

The township and the authority had to approve the agreement because the authority owns the sewer system, but the township maintains and runs it.

Hertel, who never wrote a report about the incident nor testified in the prior criminal proceedings, said he saw Willie Sanders Sr. pulling his son away from police. He said he, Carmen and Williams struggled to pull Willie Sanders Sr. away and handcuff him. He said he did not remember Willie Sanders Sr. or Gaines being sprayed.

Hertel said he saw Gaines

The penalty will be paid from the township's sewer revenue fund and the Summit Sewer Authority will pay a share, Riedesel said. The pump station collects sewage from about 1,000 homes and businesses in Millcreek, as well as from businesses on upper Peach Street in Summit.

Millcreek and its Sewer Authority have spent more than $10 million since 1992 to upgrade the sewer system throughout the township, including improvements that greatly reduce intentional or accidental sewage discharges from the Kearsarge area into Walnut Creek.

The new agreement seeks to totally eliminate discharges into the creek by taking more steps that ultimately would eliminate a bypass valve at the Kearsarge sewage pump station that is operated to avoid basement sewage backups.

"This is the endgame, one way or another," Adair said.

The township and the authority will have no more than three years to make the final improvements, McGrath said.

Among other provisions, the agreement requires the township and the authority to submit a study with recommended actions to eliminate future discharges and terminate the bypass. The agreement also calls for the township to continue its program of investigating and ending unlawful connections that take storm water into sanitary sewer lines, overloading sewer pipes and the pump station.

The agreement would im

---

# cers defend pepper spray use

oversight policies were responsible for those violations.

The defendants are former Erie police Chief Paul DeDionisio, Sgt. Dennis Angelotti, Sgt. Thomas Covatto and officers Williams, Michael Carmen, Gerald Herrmann and Michael Hertel. Defendants Rick Lorah and Jason Trianna were dropped from the suit Tuesday.

The plaintiffs, represented by Arthur Martinucci and Garrett Taylor, say the two ministers want to 727 E. 10th St. to resolve an argument between Gaines and her sister, Rose Sanders.

But police got there first.

The plaintiffs say police could not let Willie Sanders Jr. into his relatives' home. When he tried to force his way in, three officers pinned him to the porch and forcibly arrested him.

Willie Sanders Sr. arrived to see his son being taken away in handcuffs.

He said he held his hands up

swore at him to get back and sprayed him in the face with pepper spray.

Williams and two other officers then slammed him against a car and handcuffed him, he testified. His body left a dent in the car, he said.

Gaines said she came out of the house and saw police arresting her brother. When no one would tell her what was going on, she said, she raised her hands in the air and said, "Lord have mercy, Jesus, this is a nightmare." Williams then sprayed her in the face with pepper spray, she said.

Police officers and emergency medical workers who were at the scene told a different story Tuesday when questioned by the city's lawyer, Robert Brabender.

Some of the testimony that corroborated the city's position that the arrests were lawful are made without undue force w

The city's policy on the use of force required officers to exhaust options for physical force before resorting to chemical spray.

Williams testified Willie Sanders Jr. butted him before he was arrested. Williams said he tried to physically restrain Willie Sanders Sr. before he sprayed him. Neither Hertel was in the report however at the time.

C Pedler 7/2/02
ER ~~#A~~ KEA
Kersarge Pump STA        # 85389
Sewage    Corres      25



DEFENDANT'S
EXHIBIT
3
2/28/06 CV

 **Pennsylvania** Department of Environmental Protection

**230 Chestnut Street**
**Meadville, PA 16335-3481**
June 29, 2004

**Northwest Regional Office**
814-332-6340
Fax: 814-332-6344

Ms. Kathy Peddler
Mercyhurst College
501 East 38th Street
Erie, PA 16546

Re:   FileReview
      Kearsarge Pump Station
      Erie County

Dear Ms. Peddler:

This letter is to confirm your file review appointment scheduled for Friday, July 2, 2004, at 10:00 a.m. Your review has been scheduled verbally and outside the remedies of the Pennsylvania Right to Know Law (65 P.S. §§66.1 *et seq.*, as amended).

A map with directions to our office has been enclosed for your convenience. Also, enclosed is DEP's policy on copying of file material and general information.

Upon arrival, you should report to the receptionist and sign in. Please adhere to the agreed upon time as there may be someone scheduled immediately following your appointment.

If you need to cancel or reschedule your appointment, or if you need any further assistance before your review, please feel free to contact me at the above letterhead telephone number.

Sincerely,

*Linda S. Conaway*

Linda S. Conaway
Records Management

Enclosures

| Post-it® Fax Note | 7671 | Date 6/29/04 | # of pages ▶ 6 |
|---|---|---|---|
| To Kathy Peddler | | From Linda Conaway | |
| Co./Dept. Mercyhurst College | | Co. DEP | |
| Phone # 814-824-2407 | | Phone # 814-332-6340 | |
| Fax # 814-824-2594 | | Fax # 814-332-6344 | |

DEFENDANT'S
EXHIBIT
4
2/28/06   CW



Pennsylvania Department of Environmental Protection

**230 Chestnut Street**
**Meadville, PA 16335-3481**
August 10, 2004

**Northwest Regional Office**

814-332-6340
Fax: 814-332-6344

| Post-it® Fax Note | 7671 | Date 8/10/04 | # of pages ▶ 3 |
|---|---|---|---|
| To Cathy Pedler | | From Linda Conaway | |
| Co./Dept. Mercyhurst College | | Co. DEP | |
| Phone # 814-824-2407 | | Phone # 814-332-6390 | |
| Fax # 814-824-2594 | | Fax # 814-332-6344 | |

Ms. Cathy Pedler
Erie County Environmental Coalition
Mercyhurst College
501 East 38th Street
Erie, PA 16546

Re:    File Review
Kearsarge Pump Station
Millcreek Township Sewer Authority
Oil and Gas Plat Maps

Dear Ms. Pedler:

This letter is to confirm your file review appointment scheduled for Wednesday, August 11, 2004, at 1:00 p.m. Your review has been scheduled verbally and outside the remedies of the Pennsylvania Right to Know Law (65 P.S. §§66.1 et seq., as amended).

Enclosed is DEP's policy on copying of file material and general information.

Upon arrival, you should report to the receptionist and sign in. Please adhere to the agreed upon time as there may be someone scheduled immediately following your appointment.

If you need to cancel or reschedule your appointment, or if you need any further assistance before your review, please feel free to contact me at the above letterhead telephone number.

Sincerely,

Linda S. Conaway

Linda S. Conaway
Records Management

Enclosure

DEFENDANT'S
EXHIBIT
5
2/28/06    CV
PENGAD 800-631-6989

An Equal Opportunity Employer         **www.dep.state.pa.us**         Printed on Recycled Paper 

 Pennsylvania Department of Environmental Protection

**230 Chestnut Street**
**Meadville, PA 16335-3481**
August 31, 2004

**Northwest Regional Office**

814-332-6340
Fax: 814-332-6344

Ms. Cathy Pedler
Erie County Environmental Coalition
Mercyhurst College
501 East 38th Street
Erie, PA 16546

                            Re:    File Review
                                   Kearsarge Pump Station
                                   Erie County
                                   Oil and Gas Plat Maps

Dear Ms. Pedler:

   This letter is to confirm your file review appointment scheduled for Wednesday, September 8, 2004, at 1:00 p.m. Your review has been scheduled verbally and outside the remedies of the Pennsylvania Right to Know Law (65 P.S. §§66.1 *et seq.*, as amended).

   Enclosed is DEP's policy on copying of file material and general information.

   Upon arrival, you should report to the receptionist and sign in. Please adhere to the agreed upon time as there may be someone scheduled immediately following your appointment.

   If you need to cancel or reschedule your appointment, or if you need any further assistance before your review, please feel free to contact me at the above letterhead telephone number.

                            Sincerely,

                            *Linda S. Conaway*

                            Linda S. Conaway
                            Records Management

Enclosure

DEFENDANT'S
EXHIBIT
6
2/28/06  CV
PENGAD 800-631-6989

 Pennsylvania Department of Environmental Protection

**230 Chestnut Street**
**Meadville, PA 16335-3481**
August 11, 2005

**Northwest Regional Office**

814-332-6340
Fax: 814-332-6344

Ms. Cathy Pedler
Erie County Environmental Coalition
Mercyhurst College
501 East 38th Street
Erie, PA 16546

Re:    File Review
       Kearsarge Pump Station, Millcreek Township
       Sewer Authority and Oil and Gas Plat Maps

Dear Ms. Pedler:

This letter is to confirm your file review appointment scheduled for Tuesday, August 30, 2005, at 9:00 a.m. Your review has been scheduled verbally and outside the remedies of the Pennsylvania Right to Know Law (65 P.S. §§66.1 *et seq.*, as amended).

Enclosed is the Department's policy on copying of file material and general information.

Upon arrival, you should report to the receptionist and sign in. Please adhere to the agreed upon time as there may be someone scheduled immediately following your appointment.

If you need any further assistance before your review, please feel free to contact me at the above letterhead telephone number. If you need to cancel or reschedule your appointment, please contact me a day in advance in order that other reviews may be scheduled for this time.

Sincerely,

*Linda S. Conaway*

Linda S. Conaway
Records Management

Enclosure

DEFENDANT'S
EXHIBIT
7
2/28/06  CV

Pennsylvania Department of Environmental Protection

**230 Chestnut Street**
**Meadville, PA 16335-3481**
January 19, 2006

**Northwest Regional Office**

814-332-6340
Fax: 814-332-6344

Mr. Marty Visnosky
% Ms. Cathy Pedler
Erie County Environmental Coalition
Mercyhurst College
501 East 38th Street
Erie, PA 16546

Re:    File Review
       Numerous Facilities in Erie County

Dear Ms. Visnosky

This letter is to confirm your file review appointment scheduled for Monday, February 13, 2006, at 9:00 a.m. Your review has been scheduled verbally and outside the remedies of the Pennsylvania Right to Know Law (65 P.S. §§66.1 *et seq.*, as amended).

Enclosed is the Department's policy on copying of file material and general information.

Upon arrival, you should report to the receptionist and sign in. Please adhere to the agreed upon time as there may be someone scheduled immediately following your appointment.

If you need any further assistance before your review, please feel free to contact me at the above letterhead telephone number. If you need to cancel or reschedule your appointment, please contact me a day in advance in order that other reviews may be scheduled for this time.

Sincerely,

*Linda S. Conaway*

Linda S. Conaway
Records Management

Enclosure

DEFENDANT'S
EXHIBIT
_____
2/28/06  CV
PENGAD 800-631-6989

Overflow installed when pumping station built
(though is overflow never approved) Because sewage would
back up into peoples basements

received
on ECHD    ECHD                                    6/10/04
         8/5/03   Mill creek Twnshp + MT Sewer Authority
                  Clean Streams Law- Sewage Facilities Act

         CCA - 10/31/03  - DEP + ↗

pL   Mill Creek Twnsh Sewer Authority  3608 W 26th 16506
     (Authority leases Sewage collection system to MC Twnshp)
     Pumping station  pumps sewage (a portion of
     sewage from  MC Twnsh + Summit Twnshp  to
     the City of Erie Plant

     History  1/6/84 Water Quality Management Permit
     No. 2583409 issued to  the Authority for
     modifications to pump station  + the
     Construction of  a new Force Main  and
     Sanitary Sewer

installed/88
12/1/2
p 2           6/24/91  DEP notified by Authority
     that  an unauthorized manual relief valve
     + Overflow line  had been installed on  a
     force main  immediately  down line of the
     Kearsarge pump station ("Kearsarge Overflow")
     Since the time of installation  untreated sewage
     has been  discharged  via the Kearsarge Overflow
     from  a force main  exiting the pump station

PL1042

App. 674

p 3    1/7/92  DEP  MC Tunsh + MC Tunsha Authorly
entered into a COA (1992 COA) to
remove overflow — This required
(Paragraph 2.c.) to submit schedule of
corrective measures + provide a date
when the Kearsarge Overflow would be removed

3/29/93 — Document Provided to DEP
This Plan + Schedule incorporated into
1992 COA as enforceable obligation
of 1992 COA

Removal of Overflow contingent on Tunsh
having full access to West Side Interceptor
1993 Plan states that overflow would be
removed 1 month after WSI complete.

10/2000 — West Side Interceptor — complete access
available — 11/2000 Overflow should
have been removed

p.5  As of 10/31/03 — all tasks except removal
of KO have been fulfilled from 1993 Plan
, Schedule

PL1043

6/27/99

1/1/91

Tim's notes
news
1/10/98
John Electric

# Exhibit A

Overtime
9/28/94

12/30/92     K C        400,000

9/17/96     K O        12 hours   UK

4/23/96

2/27/97     K O        275,000

51st + Zimmeln     UK   5,000 - 10,000     Glenwood - 18,000
Colonial Pkwy - 5,00 - 10,00

6/13/94
432,000
K O

1/8/98     K O        300,000

51st + 2     UK → 50,000

Larchmont + Spruce     UK   4,000

Pershing + Patton     UK   5,000

6/13/94
120,000
6th + word

12/14/99     K O        between 300,000 and 1,000,000

5/2000     K O        between 25,000 + 74,999

51st + 2     UK

3/28,29/98     1/7/2000     K O        UK

2/1/2002     K O        108,000

51st + 2     UK

7/17/92
14,000

Larchmont + Beaver     UK

4/14/2002     K O        24,999

51st + 2     UK

Church + Patton     UK

9/24/03     K O        1,019,780

51st + 2     108,000

11/28/03     K O        2,500

[ at last 2 events 2004 already ]

11/28/03     14,000

(S.)

p5  Discharge into Walnut creek violates
Section 201, 202, 401 of Clean Streams Law,
35 P.S. §§691.201, 691.202 + 691.401

(T) 2/25/03  MC Twnshp + McAuth provided
updated schedule of Activities to assure
elimination of overflow events

(U) failure to remove KO (as set forth in
1993 Plan + Schedule
paragraph 12) violation of 1992 COA +
subjects the Township + Authority to penalties
outlined in Paragraph 9 of 1992 COA
[COA 1/7/91 paragraph 9 → $100/day for each violation

→ continued overflows are unlawful conduct Section 611 of
Clean Streams Law 35 P.S. §691.611
statutory nuisances 601 CSL 35 P.S. 691.601
+ subject MC Twnshp + Authority to civil penalty
Section 605 CSL 35 P.S. §691.605.

Exhibit 16 homes on Rindell Drive + Morann Drive
B    on-lot sewage disposal problems

p.6 <u>Corrective Action</u> - <u>July 1, 2004</u>

① MC Twnshp + MC Twnshp Authority shall jointly submit a complete + final Special Study as defined in → 25 Pa. Code § 71.1 to Department

p.7 ② evaluation of 3 alternatives to address the removal of KO + elimination of overflow
→ events   1) retention facility 2) install in-line booster on force main 3) replace K pump station

③ implementation schedule for removal of KO + overflows eliminated → set a date w/in 30 days of complete installation of <u>alternative</u>

④ w/in 9 months of Dep written approval of Special Study Twnshp + Authority will submit a Water Quality Management Part II Permit Application

⑤ Construction of chosen ~~attached~~ alternative complete w/in 18 months of DEP issuance of WQMP II permit

⑥ w/in 30 days of completion of alternative KO will be removed

⑦ 12/31/06  16 homes on public sewer

⑧ Continue measures to reduce inflow / infiltration

⁂ ⑨ limited New connections 10/31/03 - 12/31/03

Millcreek ⋅ 79 new , 1/1/04 until compliance  new
entry of
summit too  connections limited to 133 each calendar year

⑨. "one connection" = individual residence or
        400 gallons / day

p.11  May carry over unused connections to next calendar
year if No overflows occured during
previous calendar year

⁂ ⑩ Twnshp + Authority will ~~be~~ submit quarterly
progress reports - w/ overflows before 30th of each m.

⑪ 1992 COA Terminated

p.12  Civil Penalty → $25,000 must be paid
        by McTwnshp + Authority (lump sum)

+ Violations of para 3-5  $200/day
For any overflow  $2,500 for each event, each point
+  "  $5,000 each event

+ For failure to continue measures $1,250 each calendar quarter
Civil penalty, payable on or before 15th each month

App. 679

12/1/05 Quinn Firm filed appeal on behalf of Summit
Twnshp (Dropped)

Problem Fixed by 7/07

# se approves Iraq funding

## Washington
## Roll Call

### Senate
### Senate pay raise

Senators on Thursday voted, 60 for and 34 against, to approve an approximately $3,300 pay raise in 2004.

The House previously accepted the increase without conducting a record vote on it. Rank-and-file members will see their pay rise on Jan. 1 from $154,700 to about $158,000. Congressional leaders, Vice President Richard Cheney and Supreme Court justices, who have higher salaries, also will receive the increase as a result of this vote. The vote occurred during debate on a fiscal 2004 appropriations bill (HR 2989) that was sent to a House-Senate conference committee.

A yes vote backed a congressional pay raise.

**Voting yes:** Rick Santorum, R.
**Voting no:** of Arlen Specter, R

### Cuba travel

Voting 36 for and 59 against, the Senate on Thursday failed to uphold the U.S. government's 42-year-old ban on travel by Americans to Cuba. The vote during debate on HR 2989 failed to table (kill) a bid to lift a 42-year prohibition that keeps U.S. citizens from visiting Cuba without special permission from Washington. Both the House and Senate

have now added language to HR 2989 to remove the ban.

A yes vote was to retain the Cuba travel ban.
**Voting yes:** Santorum.
**Voting no:** Specter.

### Abortion crime

Voting 64 for and 34 against, the House on Oct. 21 sent the White House the conference report on a bill (S 3) making it a federal crime for doctors to perform a type of second- or third-trimester abortion in which they partly extract the fetus, terminate it by piercing its skull and removing it. Critics call it "partial-birth abortion," while defenders say that however gruesome, it is sometimes necessary to protect the mother's health. The bill allows an exception to save the life of the mother but contains no health exception.

**Voting yes:** Specter, Santorum.

### Class actions

Voting 59 for and 39 against, the Senate on Oct. 22 failed to get 60 votes for advancing a bill (S 1751) that would shift most large class-action lawsuits from state courts, where juries tend to side with plaintiffs, to federal courts, where corporate defendants have a better chance of winning. The bill is backed by groups such as the National Association of Manufacturers and U.S. Chamber of Commerce and opposed by groups such as the American Trial Lawyers Association and the Consumer Federation of America.

At present, class actions are

assigned to federal court only in the rare instance when all plaintiffs are from different states than all defendants. Under this bill, federal courts would resolve claims exceeding $5 million when the primary defendant and less than one-third of the plaintiffs are from the same state.

A yes vote was to advance the bill.
**Voting yes:** Specter, Santorum.

### Spam crackdown

Voting 97 for and none against, the Senate on Oct. 22 passed a bill (S 877) that would begin federal regulation of the unwanted deluge of commercial e-mail known as spam. The bill, now awaiting House action, sets penalties of up to $3 million in fines and one year in prison. It authorizes a Federal Trade Commission "do-not-e-mail" list similar to the FTC's do-not-call list for telemarketers.

The bill gives the benefit of doubt to spammers by requiring consumers to "opt out" of unwanted messaging. Critics favored an "opt in" approach requiring spammers to obtain permission before sending mail.

Under the bill, spam messages would be required to state the sender's identity, physical address and return Internet address. They would have to include an accurate label of the subject matter and means for the recipient to opt out of future messages from the same sender.

A yes vote was to pass the bill.
**Voting yes:** Specter, Santorum.

---

## Josephine Scozzie Taccone
*Owned, operated Js Florist Shop*

NORTH EAST — Josephine Taccone, 95, a resident of Twinbrook Medical Center, Lawrence Park Township, died Monday, Oct. 27, 2003. She was born May 16, 1908, in North East, daughter of the late Charles and Frances Shortino Scozzie.

As owner and operator of J's Florist Shop in North East, she also taught floral design classes for many years.

She was a member of St. Gregory Catholic Church in North East.

She was preceded in death by her husband, Anthony N. Taccone, in 1960; a brother, Charles Scozzie; and two sisters, Carmella Trana and Mary Scaneo.

Survivors include two sons, Russell Taccone and his wife, Shirley, of Harborcreek Township; and Charles Taccone and his wife, Geralene, of North East; a sister, Connie Bitte of Carlstadt, N.J.; eight grandchildren; and seven great-grandchildren.

Friends may call Thursday from 2 to 4 and 7 to 9 p.m. at W. Tad Bowers Funeral Home, 92 S. Lake St., North East. A service will be held there Friday at 10 a.m., followed by a Mass of Christian Burial at 10:30 a.m. at St. Gregory Catholic Church, South Pearl Street, North East.

Burial will be at St. Gregory Cemetery.

Memorials may be made to the charity of the donor's choice.

---

# Millcreek Township to pay pollution fine

**By JOHN GUERRIERO**
john.guerriero@timesnews.com

Millcreek Township will pay a $25,000 civil penalty for allowing raw sewage to flow into Walnut Creek in the past when the alternative wasn't pretty either — allowing sewage backups into home basements.

The penalty is one part of a new consent order and agreement among the township, the township's Sewer Authority and the state Department of Environmental Protection.

Millcreek supervisors Brian McGrath and Joseph Kujawa approved the new agreement at their meeting Tuesday night in Belle Valley. Supervisor Sue Weber was absent after taking a partial vacation day.

The agreement will take effect after the DEP signs it, said township Solicitor Evan Adair. The authority has approved it.

The township and the authority had to approve the agreement because the authority owns the sewer system, but the township maintains and runs it.

McGrath said the $25,000 civil penalty, although high, could have been greater if the parties had not reached a settlement of all potential liability for past discharges into the creek. The potential penalty could have been more than $100,000 since 1992, when the parties entered into a final consent order and agreement, said George Riedesel, manager of Millcreek Sewer Authority.

The most recent intentional discharges into Walnut Creek came on Sept. 29, twice in 2002

The penalty will be paid from the township's sewer revenue funds and the Summit Sewer Authority will pay a share. Riedesel said. The pump station collects sewage from about 1,000 homes and businesses in Millcreek, as well as from businesses on upper Peach Street in Summit.

Millcreek and its Sewer Authority have spent more than $16 million since 1992 to upgrade the sewer system throughout the township, including improvements that greatly reduce intentional or accidental sewage discharges from the Kearsarge area into Walnut Creek.

The new agreement seeks to totally eliminate discharges into the creek by taking more steps that ultimately would eliminate a bypass valve at the Kearsarge sewage pump station that is operated to avoid basement sewage backups.

"The Q-life endgame, one way or another," Adair said.

The township and the authority will have no more than three years to make the final improvements, McGrath said.

Among other provisions, the agreement requires the township and the authority to submit a study with recommended actions to eliminate future discharges and terminate the bypass. The agreement also calls for the township to continue its program of investigating and ending unlawful connections that take storm water into sanitary sewer lines, overloading sewer pipes and the pump station.

The agreement would im

---

# ers defend pepper spray use

oversight policies were responsible for those violations.

The defendants are former Erie police Chief Paul DeDionisio, Sgt. Dennis Angelotti, Sgt. Thomas Covatto and officers Williams, Michael Carmen, Gerald Herrmann and Michael Hertel. Defendants Rick Lorah and Jason Triana were dropped from the suit Tuesday.

The plaintiffs, represented by Arthur Martinucci and Geoff Taylor, say the two ministers went to 727 E. 10th St. to resolve an argument between Gaines and her sister, Rose Sanders.

But police got there first.

The plaintiffs say police could not let Willie Sanders Jr. into his relatives' home. When he tried to force his way in, three officers pinned him to the porch floor and forcibly arrested him. Willie Sanders Sr. arrived to see his son being taken away in handcuffs.

swore at him to get back and sprayed him in the face with pepper spray.

Williams and two other officers then slammed him against a car and handcuffed him, he testified. His body left a dent in the car, he said.

Gaines said she came out of the house and saw police arresting her brother. When no one would tell her what was going on, she said, she raised her hands in the air and said, "Lord have mercy, Jesus, this is a nightmare." Williams then sprayed her in the face with pepper spray, she said.

Police officers and emergency medical workers who were at the scene told a different story Tuesday when questioned by the city's lawyer, Robert Brabender.

Some of the testimony that corroborated the city's position that the arrests were lawful and made without undue force wa

The city's policy on the use of force required officers to exhaust options for physical force before resorting to chemical spray.

Williams testified Willie Sanders Jr. butted him before he was arrested. Williams said he tried to physically restrain Willie Sanders Sr. before he sprayed him. Neither recall was in the report however at the time.

Hertel, who never wrote a report about the incident, nor testified to the prior criminal proceedings, said he saw Willie Sanders Sr. pulling his son away from police. He said he, Carmen and Williams struggled to pull Willie Sanders Sr. away and handcuff him. He said he did not remember Willie Sanders Sr. or Gaines being sprayed.

Hertel said he saw Gaines

App. 681





would receive claims exceeding $5 million when the primary defendant and less than one-third of the plaintiffs are from the same state.

A yes vote was to advance the bill.

**Voting yes:** Specter, Santorum.

## Spam crackdown

Voting 97 for and none against, the Senate on Oct. 22 passed a bill (S 877) that would begin federal regulation of the unwanted deluge of commercial e-mail known as spam. The bill, now awaiting House action, sets penalties of up to $3 million in fines and one year in prison. It authorizes a Federal Trade Commission do-not-e-mail list similar to the FTC's do-not-call list for telemarketers.

The bill gives the benefit of doubt to spammers by requiring consumers to "opt out" of unwanted messaging. Critics favored an "opt in" approach requiring spammers to obtain permission before sending mail.

Under the bill, spam messages would be required to state the sender's identity, physical address and return Internet address. They would have to include an accurate label of the subject matter and means for the recipient to opt out of future messages from the same sender.

A yes vote was to pass the bill.

**Voting yes:** Specter, Santorum.

## spray use

The city's policy on the use of force required officers to exhaust options for physical force before resorting to chemical spray.

Williams testified Willie Sanders Jr. butted him before he was arrested. Williams said he tried to physically restrain Willie Sanders Sr. before he sprayed him. Neither detail was in the report he wrote at the time.

Hertel, who never wrote a report about the incident nor testified in the prior criminal proceedings, said he saw Willie Sanders Sr. pulling his son away from police. He said he, Carmen and Williams struggled to pull Willie Sanders Sr. and handcuff him. He said he did not remember Willie Sanders Sr. or Gaines being sprayed.

Hertel said he saw Gaines strike Williams repeatedly.

Triana, who also did not write a report, said he also saw Gaines hit Williams.

LISA THOMPSON can be reached at 870-1802 or by e-mail.

## project bid

Arneault said when contacted later.

Rob Hunden, senior project director for C.H. Johnson Consulting, called the turnout "very

---

es for many years.

She was a member of St. Gregory Catholic Church in North East.

She was preceded in death by her husband, Anthony N. Taccone, in 1960; a brother, Charles Scozzie; and two sisters, Carmella Triana and Mary Scheco.

Survivors include two sons, Russell Taccone and his wife, Shirley, of Harborcreek Township and Charles Taccone of Millcreek Township; a daughter, Geraldene of North East; a sister, Connie Bille of Carlstadt, N.J.; eight grandchildren; and seven great-grandchildren.

Friends may call Thursday from 2 to 4 and 7 to 9 p.m. at W. Tad Bowers Funeral Home, 92 S. Lake St., North East. A service will be held there Friday at 10 a.m., followed by a Mass of Christian Burial at 10:30 a.m. at St. Gregory Catholic Church, South Pearl Street, North East.

Burial will be at St. Gregory Cemetery.

Memorials may be made to the charity of the donor's choice.

### RELIGION

# Millcreek Township to pay pollution fine

**By JOHN GUERRIERO**
john.guerriero@timesnews.com

Millcreek Township will pay a $25,000 civil penalty for allowing raw sewage to flow into Walnut Creek in the past when the alternative wasn't pretty either — allowing sewage backups into home basements.

The penalty is one part of a new consent order and agreement among the township, the township's Sewer Authority and the state Department of Environmental Protection.

Millcreek supervisors Brian McGrath and Joseph Kujawa approved the new agreement at their meeting Tuesday night in Belle Valley. Supervisor Sue Weber was absent after taking a partial vacation day.

The agreement will take effect after the DEP signs it, said township Solicitor Evan Adair. The authority has approved it.

The township and the authority had to approve the agreement because the authority owns the sewer system, but the township maintains and runs it.

McGrath said the $25,000 civil penalty, although high, could have been greater if the parties had not reached a settlement of all potential liability for past discharges into the creek. The potential penalty could have been more than $100,000 since 1992, when the parties entered into a first consent order and agreement, said George Riedesel, manager of Millcreek Sewer Authority.

The most recent intentional discharges into Walnut Creek came on Sept. 29, twice in 2002 and once in 2001, Riedesel said.

The Kearsarge sewage pump station's inability to handle capacity during heavy bursts of rain has forced the occasional dumping of raw sewage into the creek, which empties into Lake Erie.

The penalty will be paid from the township's sewer revenue fund, and the Summit Sewer Authority will pay a share, Riedesel said. The pump station collects sewage from about 1,000 homes and businesses in Millcreek, as well as from businesses on upper Peach Street in Summit.

Millcreek and its Sewer Authority have spent more than $10 million since 1992 to upgrade the sewer system throughout the township, including improvements that greatly reduce intentional or accidental sewage discharges from the Kearsarge area into Walnut Creek.

The new agreement seeks to totally eliminate discharges into the creek by taking more steps that ultimately would eliminate a bypass valve at the Kearsarge sewage pump station that is opened to avoid basement sewage backups.

"This is the endgame, one way or another," Adair said.

The township told the authority it will have no more than three years to make the final improvements, McGrath said.

Among other provisions, the agreement requires the township and the authority to submit a study with recommended actions to eliminate future discharges and terminate the bypass. The agreement also calls for the township to continue its program of investigating and ending unlawful connections that take storm water into sanitary sewer lines, overloading sewer pipes and the pump station.

The agreement would impose penalties of $2,500 for each future discharge from the sewer system.

JOHN GUERRIERO can be reached at 870-1690 or by e-mail.

---

## Lake Erie botulism study to be presented

Researchers from the State University of New York will

The professors collected samples along the Chadwick Bay

---



1966. He also had worked in the parts department at National Forge Co. in 1950.

He graduated from Youngsville... in 1964.

He served in the U.S. Air Force and signed duty in Vietnam and Thailand discharged in 1968 after three...

He helped organize the You... and was a member of St. ... Church in Youngsville, where he assisted with the ... barbecue and Mother's Day breakfast. He also volunteered with the American Legion Post 658 in Youngsville, Lakewood ... Gun Club and Veterans of Foreign Wars Post in Y...

He enjoyed outdoor activities, especially traveling in his ... walks, and watching the Outdoor Channel.

Survivors include his wife, Mary Ann Yucha DeVore, whom he married Nov. 29, 1969; a son, Scott Anson DeVore of ... ter, Pamela Anne DeVore of Youngsville; four brothers, Harry DeVore of Bear Lake, Dennis DeVore of Pitt... DeVore of Youngsville; his twin sister, Sharon St... Ohio; three other sisters, Linda Sturges of Colum... of Youngsville and Susan Burleigh of Grand V... children; and several aunts, uncles, nieces, neph...

Friends may call Thursday from 2 to 4 and 7 to... a prayer service at 3:45 p.m., at McKinney ... Youngsville. A Mass of Christian Burial will be c... at 10:30 a.m. at St. Luke Catholic Church, Youngs... the Rev. William Miller.

Burial, with full military honors, will be at Warr... rial Park.

Memorials may be made to Hospice of Warren... 68, Warren, PA 16365, St. Luke Catholic Church, 1... 420 N. Main St., Youngsville, PA 16371; or Young... Club/Alumni in care of McKinney Funeral Hom... Youngsville, PA 16371.

## Chester Kaminski
*Served in U.S. Army during World War...*

Chester Kaminski, 82, Cottage Avenue, died Mon... Oct. 27, 2003, at his daughter's home in McKean.

He was born March 9, 1921, in Erie, son of the ... Anthony and Wladyslawa Dy... Retiring in 1978, he worke... vania Department of Transp...

He served in the U.S. Army ... II and was assigned duty wi... Regulation. He received va... cluding the Purple Heart.

He was a member of the ... sociation of Retired State E... ish National Alliance ... Catholic Church.

He was a Cleveland Indian... scoring.

He was preceded in d... Genevieve Aleksandrowicz Kaminski; a sister, Ma... three brothers, Joseph, Walter and Frank Kami...

Survivors include two daughters, Annmarie Ph... band, Greg, of Millcreek Township and Barbara ... husband, Mark, of McKean; two sisters, I... Lawrence Park Township and Mary Maxine of ... children; a great-grandson, and many nieces an...

Friends may call Thursday from 2 to 5 and 7 to ... Martin Funeral Home, 4216 Sterrettania Road. ... held there Friday at 10:15 a.m., followed by a Ma... lal at 11 a.m., at St. Francis Xavier Catholic Chu... St. McKean.

Burial, with full military honors, will be at Er... ial Gardens.

Memorials may be made to Great Lakes Hospi... Suite 244, Erie, PA 16501.

## Frank Edward Downor
*Was self-employed dairy farmer*

UNION CITY — Frank Edward Downor, 80, 17... City, died Tuesday, Oct. 28, 2003, at his home.

He was born July 2, 1923, in Union City, son of the... Sr. and Marcella Witek Dow...
Self-employed as a dair... worked as a truck driver for ... stock Auction.

He was a member of S... Catholic Church in Union C... He enjoyed outdoor activi...

**App. 682**

# QUINN·BUSECK·LEEMHUIS·TOOHEY & KROTO·INC.

Attorneys At Law

2222 West Grandview Boulevard, Erie, PA 16506-4508   Phone: 814-833-2222   FAX: 814-833-6753

George Joseph
gjoseph@quinnfirm.com

*FYI*
*RICK G*
*JON L*
*BILL C*
*ERIC L*
*CC TO Tony O*

December 1, 2003

William T. Phillipy, IV, Secretary
Pennsylvania Environmental Hearing Board
Second Floor – Rachel Carson State Office Building
400 Market Street
P.O. Box 8457
Harrisburg, PA  17105-8457

VIA FACSIMILE  717-783-4738
And Regular Mail

**RE:    Notice of Appeal filed on behalf of Summit Township SewerAuthority
          To Consent Order and Agreement dated October 31, 2003**

Dear Mr. Phillipy:

Enclosed please find a Notice of Appeal which I am filing on behalf of the Summit Township Sewer Authority to a Consent Order and Agreement between the Department of Environmental Protection and Millcreek Township and Millcreek Township Sewer Authority, dated October 31, 2003.  By copy of this letter, I am serving copies of this Notice of Appeal upon the Office of Chief Counsel, Bureau of Litigation, Anthony C. Oprendek of the Northwest Region Office of the Department, and representatives of Millcreek Township and Millcreek Township Sewer Authority, as noted below.

If you have any questions regarding this matter, please let me know.

Very truly yours,

QUINN, BUSECK, LEEMHUIS, TOOHEY &
KROTO, INC.

By _____
          George Joseph

Gj
Enclosure as noted

**RECEIVED**

DEC 0 2 2003

ENVIRONMENTAL PROTECTION
NORTHWEST REGIONAL OFFICE



**DEP 0009**

**App. 683**

William T. Phillipy, IV, Secretary
December 1, 2003
Page 2


CC:    The Office of Chief Counsel
       Bureau of Litigation
       16th Floor
       Market Street State Office Building
       P.O. Box 2063
       Harrisburg, PA 17105-2063
       VIA FACSIMILE 717-772-2400

       Anthony C. Oprendek, Compliance Specialist
       Department of Environmental Protection
       230 Chestnut Street
       Meadville, PA 16335-3481

       Brian P. McGrath, Supervisor
       Millcreek Township
       3608 West 26th Street
       Erie, PA 16506

       George W. Riedesel, Manager
       Millcreek Township Sewer Authority
       3608 West 26th Street
       Erie, PA 16506

       William C. Steff, Manager
       Summit Township Sewer Authority
       8890 Old French Road
       Erie, PA 16509

Document #171903

**App. 684**

**DEP 00 10**

COMMONWEALTH OF PENNSYLVANIA
ENVIRONMENTAL HEARING BOARD
SECOND FLOOR - RACHEL CARSON STATE OFFICE BUILDING
400 MARKET STREET
P.O. BOX 8457
HARRISBURG, PA 17105-8457
717-787-3483
TELECOPIER: 717-783-4738

SUMMIT TOWNSHIP SEWER AUTHORITY, Appellant
8890 Old French Road
Erie, PA  16509
(814) 868-4495

    v.

Commonwealth of Pennsylvania,
Department of Environmental Protection, Appellee

## NOTICE OF APPEAL

1.    **Name, address and telephone number of Appellant:**

    Summit Township Sewer Authority

    8890 Old French Road

    Erie, PA  16509

    (814) 868-4495

2.    **Subject of your appeal:**

    a.    **Action of the Department of Environmental Protection for which review is sought *(a copy must be attached).***

        Consent Order and Agreement, dated October 31, 2003 in the matter of Millcreek Township and Millcreek Township Sewer Authority, a copy of which is attached.

    b.    **The Department's official who took the action:**

        Ricardo F. Gilson, Regional Manager
        Water Management, Northwest Region

c.  **The location of the operation or activity that is the subject of the Department's action (municipality, county):**

Millcreek Township Sewer Authority, Kearsarge Pump Station, West 54th Street, Millcreek Township, Erie County, Pennsylvania

d.  **On what date and how you received notice of the Department's action:**

Summit Township Sewer Authority received notice of the Department's action by regular mail on November 13, 2003, as evidenced by copy of the Consent Order and Agreement attached.

3.  ***Objections to the Department of Environmental Resources' action in separate, numbered paragraphs.*** **The objections may be factual or legal and must be specific. If you fail to state an objection here, you may be barred from raising it later in your appeal. Attach additional sheets, if necessary.**

See attached sheet.

4.  **Specify any related appeal(s) now pending before the Board. If you are aware of any such appeal(s) provide that information.**

At the present time, Summit Township Sewer Authority is not aware of any related appeal now pending before the Board.

**The information submitted is true and correct to the best of my information and belief.**

_____
Signature of Appellant or Appellant's Counsel

**If you have authorized counsel to represent you, please supply the following information (<u>CORPORATIONS MUST BE REPRESENTED BY COUNSEL</u>):**

George Joseph, Esquire
Name (Type or Print)

2222 West Grandview Blvd.
Address

Erie, PA  16506

(814) 833-2222
(Area Code)  Telephone Number

**App. 686**  **DEP 00 12**

THIS FORM AND THE PROOF OF SERVICE MUST BE RECEIVED BY THE
ENVIRONMENTAL HEARING BOARD WITHIN 30 DAYS AFTER YOUR RECEIPT
OF NOTICE OF THE ACTION OF THE DPEARTMENT THAT YOU ARE
APPEALING.  MAIL OR HAND DELIVER YOUR APPEAL AND PROOF OF SERVICE
TO:

**ENVIRONMENTAL HEARING BOARD**
Second Floor, Rachel Carson State Office Building
400 Market Street, P.O. Box 8457
Harrisburg, PA  17105-8457

You may wish to send your appeal to the Environmental Hearing Board by
certified mail, return receipt, so that you know your appeal was received by it
within the required time.

TDD users please contact the Pennsylvania Relay Service at 1-800-654-5984.  If
you require an accommodation or this information in an alternative form, please
contact the Secretary to the Board at 717-787-3483.

**DEP 00 13**

3

**App.  687**

**Appeal of Summit Township Sewer Authority to**
**Consent Order and Agreement, dated October 31, 2003**

*Objections to the Department of Environmental Resources' action in separate, numbered*
*paragraphs.*

1.     Paragraph 4.a. of the Consent Order and Agreement provides that the total number of new connections tributary to the Kearsarge pump station through December 31, 2003 shall not exceed 79 connections.

2.     Paragraph 4.b. of the Consent Order and Agreement provides that the total number of new connections tributary to the Kearsarge pump station beginning January 1, 2004 shall not exceed 133 connections in each calendar year.

3.     Summit Township Sewer Authority operates a sewage collection system, a portion of which is tributary to the Kearsarge pump station and will be affected by the connection limitations provided for in the Consent Order and Agreement.

4.     The Department entered into the Consent Order and Agreement, which affects the interests of Summit Township Sewer Authority, without considering the interests of Summit Township Sewer Authority, in the following respects:

    a.     The Consent Order and Agreement fails to specify those connections to which Summit Township Sewer Authority may be entitled of the total connections provided for in the Agreement;

    b.     The total number of connections allowed in the Agreement is based upon a five-year historical study of the annual connections made tributary to the Kearsarge pump station, including Summit Township connections. In fact, Summit Township's five-year historical connection numbers are approximately two-thirds of the total of the 133 connections;

    c.     Neither the Department, Millcreek Township nor Millcreek Township Sewer Authority have not specified, in any way, the manner in which the connections tributary to the Kearsarge pump station may be allocated to Summit Township. The manner of the allocation of the total connections will severely and adversely impact economic development in Summit Township;

    d.     Agreement also fails to specify the triggering event which causes a connection to be counted against the annual limitation. The triggering event could be a number of different dates, including, but not limited to, the date of the filing of the planning module application, the permit approval date, or the actual sewer connection date;

    e.     Specification of the triggering event will allow Summit Township Sewer Authority to engage in appropriate development planning activities, which it is unable to do under the terms of the current Agreement;

    f.     Summit Township Sewer Authority has already purchased sewer capacity from the Millcreek Township Sewer Authority and Erie City Sewer Authority. Summit Township will be unable to utilize its purchased capacity under the connection limitations established under the Consent Order and Agreement, causing an economic loss to the Summit Township Sewer Authority.

5.     The Department entered into the Consent Order and Agreement, which affects the interests of Summit Township Sewer Authority, without affording Summit Township Sewer Authority due process as provided by law in the following respects:

    a.     The Agreement places a limitation on connections tributary to the Kearsarge pump station, including connections in Summit Township;

    b.     There is no claim or evidence that Summit Township Sewer Authority was aware of, authorized, agreed to, or participated in the construction of the Kearsarge Overflow;

    c.     There is no claim or evidence that Summit Township Sewer Authority was informed, consulted, or participated in any decision to utilize the Kearsarge Overflow, discharging untreated sewage into Walnut Creek;

    d.     Summit Township Sewer Authority already participates in fines imposed by the Department against Millcreek Township and Millcreek Township Sewer Authority for unauthorized use of the Kearsarge Overflow according to its percentage of flow tributary to the Kearsarge pump station;

    e.     Summit Township Sewer Authority should not be limited or penalized for actions and conduct of Millcreek Township and Millcreek Township Sewer Authority over which it has no control;

    f.     The Department failed to consider Summit Township's lack of involvement or complicity in placing limitations on connections and in failing to specify either that the limitations are not imposed upon Summit connections, the number of connections to be allocated to Summit connections, or the manner of allocating connections to Summit Township tributary to Kearsarge pump station.

Document #171882

Wednesday, May 26, 2004 | Erie Times-News | www.GoErie.com | 1D



# Erie Times News

# Classified

SECTION

**D**

www.goerie.com

CLASSIFIED ADS 456-7021

CALL FOR DETAILS • 814-456-7021

App. 690



PUBLIC
ADVERTISEMENT

The Millcreek Township Sewer Authority, Millcreek, Erie County, Pennsylvania is providing a thirty (30) day period for public comment on an Update of the Act 537 Special Study for the Kearsarge Pump Station Upgrade and Expansion.

The purpose of this update is to advise the public of changes in the facilities necessary to provide capacity to eliminate existing and future station overloads. The update does not include changes in cost estimates, proposed funding, user charges, implementation schedule and environmental review documentation.

The original study called for continued review of facility sizing during the design and review processes. Overflow events observed during that period revealed that facility sizing was not sufficient to protect against extreme future events. The update describes the increase in storage sizing and forward flow capabilities determined to be necessary to protect against those events.

The comment period shall extend from May 23, 2005, to June 22, 2005. The document is an office copy and will be on display for public review at the Millcreek Township Sewer Authority at the Municipal Building at 3608 West 26th Street, Erie, PA 16506.

Please direct comments and questions pertaining to said document in writing to the Millcreek Township Sewer Authority, 3608 West 26th Street, Erie, PA 16506 or CTE Engineers, 155 West 8th Street, Suite 418, Erie, PA 16501 on or before June 22, 2005.

George Riedesel, P.E.
Executive Director
Millcreek Township Sewer Authority

(5-613721-NT-23)

Erie Times-News Classified

GoErie.com

ID I Erie Times-News I www.GoErie.com I Monday, May 23, 2005

Included in the cost of your in-column ad is a listing on GoErie.com
CHECK IT OUT!

email us: classify@timesnews.com


App. 691

## STORMWATER MANAGEMENT

**Action on plans submitted under the Storm Water Management Act (32 P. S. §§ 680.1—680.17)**

*Bureau of Watershed Management, P. O. Box 8555, Harrisburg, PA 17105-8555.*

**Plan No. 336:60, West Branch Susquehanna River Stormwater Management Plan,** as submitted by Union County, was approved on October 14, 2004.

**Plan No. 151:11, Little Conemaugh River (Update) Stormwater Management Plan,** as submitted by Cambria County, was approved on October 13, 2004.

## SEWAGE FACILITIES ACT PLAN APPROVAL

**Plan Approvals Granted under the Pennsylvania Sewage Facilities Act (35 P. S. §§ 750.1—750.20a)**

*Northwest Region: Water Management Program Manager, 230 Chestnut Street, Meadville, PA 16335-3481.*

Plan Location:

| Borough or Township | Borough or Township Address | County |
|---|---|---|
| Millcreek Township | 3608 West 26th Street Erie, PA 16506-2037 | Erie |

Plan Description: The approved plan provides for the elimination of all overflow events at the Kearsarge Pump Station through pump station upgrades, construction of an overflow retention facility and sanitary sewer diversions within sewers tributary to the Kearsarge Pump Station. Any required NPDES permits or WQM permits must be obtained in the name of the municipality or authority as appropriate.

## SEWAGE FACILITIES ACT PLAN DISAPPROVAL

**Plan Disapprovals Granted under the Pennsylvania Sewage Facilities Act**

*Northcentral Region: Water Management Program Manager, 208 West Third Street, Williamsport, PA 17701.*

Plan Location:

| Borough or Township | Borough or Township Address | County |
|---|---|---|
| Berwick Area Joint Sewer Authority | 1108 Freas Ave. Berwick, PA 18603 | Columbia |

Plan Description: This plan was for sewer extensions in Briar Creek Borough and Briar Creek Township, Columbia County. The plan was disapproved because several items were missing from the plan that precluded the Department from determining the Authority's ability to secure funding and implement the proposed project.

## HAZARDOUS SITES CLEANUP UNDER THE ACT OF OCTOBER 18, 1988

### Proposed Consent Order and Agreement Interlectric Mercury Site, Clarendon Borough, Warren County

Under section 1113 of the Hazardous Sites Cleanup Act (HSCA) (35 P. S. § 6020.1113), the Department of Environmental Protection (Department) has entered into an Agreement with Interlectric Corporation (Interlectric) to remediate the Interlectric Mercury Site (Site), Clarendon Borough, Warren County (41° 47.0252′ N latitude and 79° 59.566′ W longitude on the USGS Clarendon, PA, 7.5 minute topographic quadrangle map). The Site is a small portion of a former industrial facility that began historically as a petroleum refinery. The facility was owned and operated historically by Tiona Refining Company, Bradford-Penn Oil Company and Bond Electric from the 1920s through the 1960s.

In the past, elemental mercury was released at the site and this mercury contaminated the environment at the site. Under the terms of the settlement, Interlectric will conduct a cleanup of the site by removing mercury and mercury contaminated soils and other materials from the Site for proper off-Site disposal.

The specific terms of this settlement are set forth in the Consent Order and Agreement (Agreement) with Interlectric. The Department will receive and consider comments regarding the Agreement for 60 days from the date of this public notice. The Department has the right to withdraw its consent to the Agreement if the comments concerning the Agreement disclose facts or considerations that indicate that the Agreement is inappropriate, improper or not in the public interest.

After the public comment period, the Department's settlement with Interlectric shall be effective upon the date that the Department notifies Interlectric, in writing, that this Agreement is final and effective in its present form and that the Department has filed a response to significant written comments to the Agreement or that no comments were received.

The Agreement is available for inspection and copying at the Department's office at 230 Chestnut Street, Meadville, PA. Comments may be submitted in writing to James W. Weaver, Project Manager, Department of Environmental Protection, Hazardous Sites Cleanup, 230 Chestnut Street, Meadville, PA 16335. Further information may be obtained by contacting James W. Weaver, (814) 332-6648. TDD users should contact the Department through the Pennsylvania Relay Service at (800) 645-5984.

## LAND RECYCLING AND ENVIRONMENTAL REMEDIATION

### UNDER ACT 2, 1995

### PREAMBLE 2

**The following plans and reports were submitted under the Land Recycling and Environmental Remediation Standards Act (35 P. S. §§ 6026.101—6026.908).**

Provisions of Chapter 3 of the Land Recycling and Environmental Remediation Standards Act (act) require the Department of Environmental Protection (Department) to publish in the *Pennsylvania Bulletin* a notice of submission of plans and reports. A final report is submitted to document cleanup of a release of a regulated substance at a site to one of the act's remediation standards. A final report provides a description of the site investigation to characterize the nature and extent of contaminants in environmental media, the basis for selecting the environmental media of concern, documentation supporting the selection of residential or nonresidential exposure factors, a description of the remediation performed and summaries of sampling analytical results which demonstrate that remediation has attained the cleanup standard selected. Submission of plans and reports, other than the final report, shall also be published

**Berks County** on 7/13/2005 for the operation of facilities approved under Construction Permit No. 0605501 MA.

*Northcentral Region: Water Supply Management Program Manager, 208 West Third Street, Williamsport, PA 17701.*

**Permit No. Minor Amendment—Construction** Public Water Supply.

| | |
|---|---|
| Applicant | **Renovo Borough** |
| Township or Borough | Renovo Borough |
| County | **Clinton** |
| Responsible Official | Judith Kelley<br>Renovo Borough<br>128 Fifth Street<br>Renovo, PA 17764 |
| Type of Facility | Public Water<br>Supply—Construction |
| Consulting Engineer | Eric Lundy, P. E.<br>Nittany Engineering and<br>Associates, LLC<br>P. O. Box 700<br>Millheim, PA 16854-0700 |
| Permit Issued Date | 7/15/05 |
| Description of Action | Construction of a 4-inch turbo meter. |

**Temporary Permit No. 1400502—Standard Operation** Public Water Supply.

| | |
|---|---|
| Applicant | **Aaronsburg Water Pipes, Inc.** |
| Township or Borough | Haines Township |
| County | **Centre** |
| Responsible Official | Paul Grassel<br>Aaronsburg Water Pipes, Inc.<br>P. O. Box 254<br>Aaronsburg, PA 16820 |
| Type of Facility | Public Water Supply—Operation |
| Consulting Engineer | Jason Wert, P. E.<br>Herbert, Rowland and Grubic, Inc.<br>474 Windmere Drive, Suite 100<br>State College, PA 16801 |
| Permit Issued Date | 7/18/05 |
| Description of Action | Standard operation of the ClorTec on-site sodium hypochlorite generation system. |

**Permit No. Minor Amendment—Construction** Public Water Supply.

| | |
|---|---|
| Applicant | **Muncy Borough Authority** |
| Township or Borough | Muncy Creek Township |
| County | **Lycoming** |
| Responsible Official | Edward A. Coup<br>Muncy Borough Authority<br>14 North Washington Street<br>Muncy, PA 17756-1111 |
| Type of Facility | Public Water<br>Supply—Construction |
| Consulting Engineer | Daniel Guss, P. E.<br>Uni-Tec Consulting Engineers, Inc.<br>2007 Cato Avenue<br>State College, PA 16801 |

| | |
|---|---|
| Permit Issued Date | 7/18/05 |
| Description of Action | Construction of the finished cover for the reservoir. |

**Permit No. Minor Amendment—Construction** Public Water Supply.

| | |
|---|---|
| Applicant | **Pike Township Municipal Authority** |
| Township or Borough | Pike Township |
| County | **Clearfield** |
| Responsible Official | Michael F. Smeal, Manager<br>Pike Township Municipal Authority<br>P. O. Box 27, Hixon Road<br>Curwensville, PA 16833 |
| Type of Facility | Public Water<br>Supply—Construction |
| Consulting Engineer | David Peck, P. E.<br>Uni-Tec Consulting Engineers, Inc.<br>2007 Cato Avenue<br>State College, PA 16801 |
| Permit Issued Date | 7/18/05 |
| Description of Action | Construction of a 122,000 gallon finished water storage tank for the residents of Olanta area. |

*Southwest Region: Water Supply Management Program Manager, 400 Waterfront Drive, Pittsburgh, PA 15222-4745.*

**Operations Permit** issued to: **Jackson Township Water Authority**, 2949 William Penn Avenue, Johnstown, PA 15909, (PWSID #4110021) Jackson Township, **Cambria County** on July 11, 2005, for the operation of facilities approved under Construction Permit No. 1104504.

**Operations Permit** issued to: **Bruderhof Communities in Pa.**, 101 New Meadow Run Drive, Farmington, PA 15437, (PWSID #5260042) Wharton Township, **Fayette County** on July 13, 2005, for the operation of facilities approved under Construction Permit No. 2604501.

## SEWAGE FACILITIES ACT PLAN APPROVAL

**Plan Approvals Granted under the Pennsylvania Sewage Facilities Act (35 P. S. §§ 750.1—750.20a)**

*Northwest Region: Water Management Program Manager, 230 Chestnut Street, Meadville, PA 16335-3481.*

*Plan Location:*

| Borough or Township | Borough or Township Address | County |
|---|---|---|
| Millcreek Township | 3608 West 26th Street Erie, PA 16506 | Erie |

*Plan Description:* The approved Special Study provides for an increase in the size of the proposed storage tank at the Kearsarge Pump Station from .5 to 2.3 million gallons. The storage pumping capacity will also increase from 2,340 gpm to 4,500 gpm. Any required WQM Permits must be obtained in the name of the municipality or authority as appropriate.

*Southcentral Region: Water Management Program Manager, 909 Elmerton Avenue, Harrisburg, PA 17110, (717) 705-4707.*

**App. 693**

# Millcreek Township Sewer Authority

3608 WEST 26TH STREET
P.O. BOX 8158
ERIE, PENNSYLVANIA  16505

PHONE (814) 835-6721

FAX (814) 835-6615

December 5, 2000

Ms. Christine Nagy
Penna. Dept. of Environmental Protection
230 Chestnut Street
Meadville PA  16335

RE:    Kearsarge Pump Station Bypass

Dear Ms. Nagy:

This is to notify your Department that on November 7, 2000 there was a mechanical seal failure on the piping system of the Kearsarge Pump Station Bypass. Please see attached notification and details provided to the Erie County Health Dept.

Based on the fact that the accidental discharge was very minor, we have enclosed a penalty payment of $750.00 in accordance with our Consent order and Agreement.

Please advise this writer if there are any questions.  There were no other sewage discharges for the month of November 2000.

Very truly yours,
Millcreek Township Sewer Authority

By: _____
George W. Riedesel, P.E., Manager

CC:    Millcreek Supervisors
R. Bridger
Doug Ebert, ECHD

**App. 694**

*conv September*
*File: 00.01 Sew,*
*Corres*

# MILLCREEK TOWNSHIP SEWER AUTHORITY

*Erie County*

MILLCREEK MUNICIPAL BUILDING
3608 WEST 26TH STREET
ERIE, PENNSYLVANIA 16506

Phone (814) 835-6721

Fax (814) 835-6615

August 27, 2001

RECEIVED

AUG 28 2001

ENVIRONMENTAL PROTECTION
NORTHWEST REGIONAL OFFICE

Mr. Doug Ebert
Erie County Health Department
606 West 2nd Street
Erie, PA 16507

> Re: Raw Sewage Overflow
> Shorehaven Pumping Station

Dear Mr. Ebert:

This letter is a follow up to the telephone report and fax to your office concerning the above referenced incident of August 16, 2001. Attached is a copy of the fax and a map showing the location of the pumping station.

At this time we believe an electrical power variation caused the pumps to shut down and for some unknown reason they did not restart. The station has auxiliary power, but since it is believed the power fluctuation was only of short duration, the automatic transfer switch was not activated. GPU recorded no outages in this time period nor did they receive any complaint calls from this area.

With respect to the probable discharge volume, we have been able to take metered flow records for similar dry days during this time period to better estimate the volume of sewage that may have been discharged. A more accurate estimate is approximately 10,000 gallons.

On Friday morning the Millcreek staff policed the area of discharge.

Some time ago, we had experienced problems with the motor control center portion of the electrical system. Despite being only about 10 years old, the manufacturer of the panel no longer is in this business resulting in difficulties getting service and repairs.

**DEP 00 61**

**App. 695**

August 27, 2001
Page 2

We have asked our consulting engineers to advise us on possible replacements and to generally check the pumps' performance.

Please advise if there might be any additional information we could provide.

Very truly yours,

MILLCREEK TOWNSHIP SEWER AUTHORITY

By: *George H. Riedesel*

George W. Riedesel, P. E.
Manager

cc: Christina Nagy/ PA DEP
    Township Supervisors
    Authority Members
    Richard Bridger
    Consoer Townsend Envirodyne

# Millcreek Township Sewer and Water Authorities

3608 WEST 26TH STREET

ERIE, PENNSYLVANIA 16505

PHONE (814) 835-6721

FAX (814) 835-6615

RECEIVED

AUG 28 2001

ENVIRONMENTAL PROTECTION
NORTHWEST REGIONAL OFFICE

DATE: _8-17-01_

NO OF PAGES: _____/_____ (Including Cover Sheet)

TO: _Joe Vogel, Erie County Health Dept. @ 451-6775_

FROM: _George Riedesel_

SUBJECT: Raw sewage overflow into unnamed ravine between Shorehaven Dr. and Glenruadh Ave. to Lake Erie.

Station alarm in @ 8:18 pm
Alarm cleared @ 8:57 pm    } 39 minutes of overflow

Best estimate of sewage flow at this time would be between 15,000 to 20,000 gallons.

REPLY REQUIRED:        YES_____        NO_____

More complete report to be transmitted next week.

Please advise if anything else is necessary at this time.

**DEP 00 63**

**App. 697**

DEP 00 64



# FIGURE 4
## FLOW MONITOR LOCATIONS

### Legend

☐ Project Study Area
☆ Flow Monitor Location



**Kearsarge Area I/I Study**
**Millcreek Township, PA**

**URS**

MSA-MT 2618



**MILLCREEK TOWNSHIP SEWER AND WATER AUTHORITIES**
3608 WEST 26TH STREET
P O BOX 8158
ERIE    PA    16505

FAX:   814   835-6615

PHONE:   814 - 835-6721

DATE: _12 -14- 99_

NO OF PAGES: ____1____ (INCLUDING COVER SHEET)

Erie County Health Dept.
TO: _Doug Ebert c/o Doug Range    @ 451-6775_

FROM: _George W. Riedesel_

SUBJECT: Kearsarge Pump Station
Notification of Bypass Event

REPLY REQUIRED:   YES_____   NO_____

Please be advised that on 12-14-99 the bypass at the Kearsarge Pump Station was activated at approximately 2 pm by Garry Snyder the Assistant Operations Superintendent.

It is our understanding that your office will be notifying the appropriate PA DEP personnel.

**ECHD 0002**

**App. 700**