IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIE COUNTY ENVIRONMENTAL | ) | |
| COALITION, PENNENVIRONMENT, | ) | |
| INC. and THE GAIA DEFENSE LEAGUE, | ) | |
|     Plaintiffs | ) | |
| | ) | |
|         v. | ) | CIVIL ACTION NO. 05-59 ERIE |
| | ) | ELECTRONICALLY FILED |
| MILLCREEK TOWNSHIP SEWER | ) | |
| AUTHORITY AND MILLCREEK | ) | JUDGE COHILL |
| TOWNSHIP, | ) | |
|     Defendants | ) | |

**BRIEF IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS**

     Defendants MILLCREEK TOWNSHIP SEWER AUTHORITY and MILLCREEK TOWNSHIP, by and through their attorneys, MacDonald, Illig, Jones & Britton LLP, file this Brief in Opposition to Plaintiffs' Motion for Summary Judgment on All Claims, pursuant to Rule 56 of the Federal Rules of Civil Procedure and LR 56.1 of the Local Civil Rules of the United States District Court for the Western District of Pennsylvania, and states the following in support thereof.

Introduction

     On March 31, 2006, Plaintiffs Erie County Environmental Coalition, PennEnvironment, Inc. and the Gaia Defense League (collectively referred to as the "Plaintiffs") filed a Motion for

Summary Judgment on All Claims, together with a Brief in Support of Plaintiffs' Motion for Summary Judgment.  Contrary to the Local Rule 56.1(B)(1) of the Local Rules of the United States District Court for the Western District of Pennsylvania and the Court's Case Management Order, Plaintiffs failed to file a Concise Statement of Material Facts.  Also in violation of W.D.Pa.L.R. 56.1 and the Case Management Order, Plaintiffs failed to file an Appendix, but instead filed Exhibits of unverified copies of documents with their Brief.  Lastly, the actual Motion filed by Plaintiffs violates W.D.Pa.L.R. 56.1 and the Case Management Order by failing to set forth the specific grounds upon which judgment is sought.  Rather, the Motion simply states it is seeking summary judgment on all claims in the Complaint for the reasons set forth in the Brief.

In their Brief, Plaintiffs seek summary judgment on three issues.  First, Plaintiffs seek summary judgment on the issue of whether the Millcreek Township Sewer Authority ("MTSA") and Millcreek Township ("Millcreek") (collectively "Defendants") violated the Clean Water Act ("CWA") by discharging into Walnut Creek without a permit.  Second, Plaintiffs seek summary judgment on the issue of whether MTSA and Millcreek violated Section 1342(q)(1) of the CWA by failing to implement the Combined Sewer Overflow Policy ("CSO Policy") promulgated by the United States Environmental Protection Agency ("USEPA").  Lastly, Plaintiffs seek summary judgment on the relief that they seek, namely civil penalties, injunctive relief, a supplemental environmental project and attorneys' fees.[1]

---

[1]    Although not entirely clear from their Motion, Brief and Proposed Order, Plaintiffs appear to seek summary judgment on the issue of standing.  On February 1, 2006, the Court granted Plaintiffs' Motion for Protective Order precluding Defendants from conducting any depositions of Plaintiffs' standing witnesses.  This Order effectively precluded Defendants from conducting any discovery into Plaintiffs' standing allegations.  Without the discovery that was sought, Defendants have no ability to challenge the statements made by Plaintiffs.

Also on March 31, 2006, MTSA and Millcreek filed a Motion for Summary Judgment, together with a Brief, Appendix, Affidavits and a Concise Statement of Material Facts. In their Motion for Summary Judgment, MTSA and Millcreek raise several issues. First, MTSA and Millcreek seek summary judgment on all of Plaintiffs' claims based on Plaintiffs' action being barred by Sections 1365(a), 1319(g)(6)(A)(ii) and 1319(g)(6)(A)(iii) of the CWA. Second, MTSA and Millcreek seek partial summary judgment on a number of Plaintiffs' claims based on those claims being wholly past, moot and/or barred by the statute of limitations. Lastly, MTSA and Millcreek seek summary judgment denying the mandatory injunctive relief sought by Plaintiffs in their Complaint.

For the reasons set forth below, Plaintiffs' Motion for Summary Judgment on All Claims must be denied.

---

Defendants continue to object to standing and wish to preserve their right to appeal the Court's discovery order if that becomes necessary. In addition, standing must be established at every stage of the litigation, even on appeal. Public Interest Research Group of New Jersey, Inc. v. Magnesium Electron, Inc., 123 F.3d 111, 116-119 (3d Cir. 1997). In fact, MTSA and Millcreek believe that the expert opinion of August E. Maas that there has been no measurable harm to Walnut Creek is sufficient to defeat Plaintiffs' standing claim. Id. at 119-123 (evidence of no harm to the river undermined plaintiff's claim of reduced recreation and plaintiffs failed to meet injury prong of standing).

II.     Argument

      A.     PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT MUST BE DENIED WHERE PLAINTIFFS DO NOT SPECIFY THE GROUNDS FOR THE MOTION, FAIL TO ARTICULATE OR DELINEATE UNDISPUTED FACTS, AND OMIT BOTH CITATION TO AND PRODUCTION OF ANY SUPPORTING DOCUMENTS, IN FLAGRANT DISREGARD FOR BOTH THE PROCEDURAL RULES AND AN ORDER OF THIS HONORABLE COURT.

Procedural rules carry great weight because they facilitate the court's acquisition of the materials necessary for the efficient processing of matters on its docket. Hewlitt v. Davis, 844 F.2d 109, 114 (3d Cir. 1988). The rules also promote the efficient administration of the court by imposing uniformity of practice for interactions with the court. Smith v. Oelenschlager, 845 F.2d 1182 (3d Cir. 1988). As a result, egregious procedural defects in a party's court filings provide sufficient basis for denial of the relief sought. Kushner v. Winterthur Swiss Insurance Co., 620 F.2d 404 (3d Cir. 1980). As succinctly stated by federal district courts in Pennsylvania: "if the court is not supplied with the proper tools to rule on the motions, the motions need to be dismissed." Delcon (S.C.), Inc. v. Giant Cement Company, 1988 WL 111987, *2 (E.D.Pa., October 21, 1988); Johnson v. Golden Nugget Hotel Casino, 1987 WL 8549, *1 (E.D.Pa., March 25, 1987).

In Kushner, the court dismissed the appeal of a party who omitted required documents from the appendix. Kushner, 620 F.2d at 407. The court noted that counsel's failure to abide by the rules of the court was "a tremendous disservice" to litigants who diligently follow the rules. Kushner, 620 F.2d at 407. Noting the extraordinary effort required by the court to deal with

deficiencies in filings and appendices, the court stated "[h]enceforth, our displeasure with counsel's refusal, failure, or unwillingness to master our procedures will necessarily result in the imposition of appropriate sanctions." Kushner, 620 F.2d at 407.

The Third Circuit is not unique in its disdain for blatant procedural violations. The Fourth Circuit upheld the denial of a post-trial motion by the federal government, referencing the fact that the government had appended its brief with scant documentation. U. S. v. Seaboard Coast Line R.R., 517 F.2d 881 (4th Cir. 1975), see also Reyes-Garcia v. Rodriguez & Del Valle, Inc., 82 F.3d 11, 15 (1st Cir. 1996) (Argument which is unsupported by any citation either to legal authority or to record evidence must be treated as forfeited.). The Seventh Circuit similarly ruled against a plaintiff in a personal injury suit, noting that the appendix was so inadequate that it precluded a ruling that there was sufficient evidence to send to a jury. Sparrow v. Yellow Cab Co., 273 F.2d 1 (7th Cir. 1959). Furthermore, the Ninth Circuit dismissed a Title VII action for a party's failure to provide citations to the record to support numerous conclusory assertions. Mitchell v. General Electric Co., 689 F.2d 877 (9th Cir. 1982); see also Moore v. Subaru of America, 891 F.2d 1445 (10th Cir. 1989).[2]

The federal district court of the Western District of Pennsylvania requires that a motion for summary judgment must set forth "the specific grounds upon which the judgment is sought."(emphasis added) (L.R. 56.1.A.1). Further the motion must be accompanied by a separately filed concise statement "setting forth the facts essential for the court to decide the motion for summary judgment, which the moving party contends are undisputed and material."

---

[2]   Such holdings are also supported by over a century of decisional law. For example, the Sixth Circuit dismissed an appeal for failure to make a clear statement of the points of law or fact to be discussed, and a failure to cite to the record. Mitchell  Transp. Co. v. Green, 120 F. 49 (6th Cir. 1903).

(emphasis added) (L.R. 56.1.A.2).    Further, the Case Management Order for this case specifies "[a]ll motions for summary judgment and responses <u>shall</u> include a concise statement of material facts as provided in L.R. 56.1." (Emphasis added).  The mandatory language of these rules and Order bear great significance. <u>Osei-Afriyie by Osei-Afriyie v. Medical College of Pennsylvania</u>, 937 F.2d 876, 885 (3d Cir. 1991).  Finally, documents referenced in the concise statement are to be included in an appendix. (L.R. 56.1.3).

In the present case, Plaintiffs' motion merely states "for the reasons set forth in the brief accompanying this motion, Plaintiffs hereby move for summary judgment . . . ."  Plaintiffs utterly fail to state <u>any</u> grounds for relief sought in the motion.  Further, the docket reveals that Plaintiffs did not even file a concise statement of material fact. (Appendix to Responsive Concise Statement at p. 4) (hereinafter "Resp. App.").  In both cases, the language of the applicable rule mandates compliance, leading to the conclusion that Plaintiffs' deficiencies are in clear violation of the rules and an Order of this Honorable Court.

Further, Plaintiffs merely provide a footnote reference to a collection of affidavits submitted with an earlier discovery motion, in lieu of an appendix.  Plaintiffs did not file these affidavits with the brief and motion.  More importantly, Plaintiffs did not include an appendix. Instead, Plaintiffs attached 13 Exhibits to their Brief that consist of unverified copies of various documents.  This violates L.R. 56.1.A.3, which requires an appendix of documents upon which the Plaintiffs rely to make factual assertions.

Finally, beyond a few references to their Complaint and defendants' answer in the one-page "factual background" section (Plaintiffs' Brief, p. 3), and some references to affidavits that are not included in an appendix (Plaintiffs' Brief, pp. 9-11), Plaintiffs fail to attribute <u>any</u> averment in their brief to a particular source document.  The result is that this Honorable Court

will be forced to expend great effort deliberating upon an argument that is little more than a collection of unfounded contentions. This is the precise problem that the Third Circuit confronted in Kushner.

These procedural deficiencies are intimately tied to significant substantive dilemmas with Plaintiffs' Motion for Summary Judgment. For example, Plaintiffs aver in their Brief: "There are no disputed issues of material fact regarding defendants' violation of the [Clean Water Act], therefore, summary judgment should be granted for Plaintiffs along with the declaratory and injunctive relief sought." (Plaintiffs' Brief, p. 1). Later, in their "factual background," Plaintiffs blithely state, "Millcreek continues to discharge and violate the CWA on a constant and/or intermittent basis." (Plaintiffs' Brief, p. 3). At the end of their brief, Plaintiffs then list the relief they seek, which includes both civil penalties and injunctive relief. (Plaintiffs' Brief, p. 13). The problem is that, in the pages between their broad statement of the issue and the requested relief, Plaintiffs fail to raise or cite to any facts (undisputed or otherwise) that support the specific types of remedies they request. Plaintiffs fail to meet their burden to proffer undisputed facts that are material to the remedies that they seek.

The objective of the motion, the concise statement, the brief and the appendix is to convey a clear understanding of the party's legal arguments for summary judgment, as well as the facts in support thereof. Plaintiffs' submission fails to meet this objective.

The reason that the Third Circuit, along with a number of other federal district courts and appellate courts, have resorted to dismissing motions for failure to follow procedural rules is that a grossly non-compliant motion, such as this, imposes an undue burden upon the Court. Here, short of a denial of summary judgment on procedural grounds, this Honorable Court is going to be forced to expend great effort culling through Plaintiffs' collection of conclusory statements in

a futile search for an evidentiary basis for Plaintiffs' motion. In the context of Plaintiffs' Complaint, and the obtuse nature of Plaintiffs' responses to discovery,[3] the deficiencies of this motion for summary judgment go far beyond a concern with mere formality.

In failing to provide a properly formed motion, a concise statement of material fact, and a fully developed appendix of supporting materials, and by failing to cite to specific supporting evidence in the brief, Plaintiffs have cast the burden of making their case entirely upon the shoulders of the court. As stated by the District Court of the Eastern District of Pennsylvania, "if the court is not supplied with the proper tools to rule on the motions, the motions need to be dismissed." Delcon (S.C.), Inc. v. Giant Cement Company, 1988 WL 111987, *2 (E.D.Pa., October 21, 1988); Johnson v. Golden Nugget Hotel Casino, 1987 WL 8549, *1 (E.D.Pa., March 25, 1987). Such a finding is particularly apropos in this case, warranting a denial of Plaintiffs' Motion for Summary Judgment on All Claims.

> B.    FOR THE REASONS SET FORTH IN MTSA AND MILLCREEK'S MOTION FOR SUMMARY JUDGMENT, PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT MUST BE DENIED.

---

[3] For example, upon specific request, plaintiffs could not identify specific harms caused by the alleged discharges (App. at 706-07), and could not specify facts supporting the need for injunctive relief . (App. at 711-14). Further, they failed to indicate the specific action needed on the part of defendants to comply with the Clean Water Act. (App. at 715-16). Finally, plaintiffs could not identify standard operating procedures (App. at 638), or the environmental management system (App. at 639) they sought to implement. Even more disturbing, plaintiffs demonstrated a complete lack of understanding of the type of sewer system operated by Millcreek, by generally "encouraging" that defendants follow sewer overflow guidance published by USEPA for combined sewer overflows. (App. at 638) The problem is that defendants do not operate a combined sewer system and such guidance is wholly inapplicable.

MTSA and Millcreek incorporate by reference as if fully set forth herein their Motion for Summary Judgment, together with all filings made in support of that Motion, including their Brief, the Affidavits and Appendix.

For the reasons set forth in their Motion, MTSA and Millcreek respectfully request that this Court deny Plaintiffs' Motion for Summary Judgment on All Claims.

        C.      PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT BASED UPON SECTION 1342(q)(1) OF THE CWA MUST BE DENIED AS PLAINTIFFS FAILED TO INCLUDE THAT CLAIM IN THEIR 60-DAY NOTICE, SECTION 1365 DOES NOT GIVE PLAINTIFFS THE RIGHT TO ENFORCE 1342(q)(1) AGAINST MTSA AND MILLCREEK, AND FACTUALLY, THERE IS NO BASIS TO SUPPORT PLAINTIFFS' CLAIM.

In their Brief, Plaintiffs assert that Defendants are in violation of Section 1342(q)(1) of the CWA. Without citation to any evidence of record, Plaintiffs assert that the Millcreek sewer system is a combined sewer system. Plaintiffs then claim that under Section 1342(q)(1) of the CWA, Defendants are required to comply with the CSO Policy and have failed to do so in violation of the CWA.

Plaintiffs' claim fails for three reasons. First, Plaintiffs failed to include their allegation that Defendants have violated Section 1342(q)(1) of the CWA in their December 9, 2004 60-day notice letter. As such, Plaintiffs' claim under Section 1342(q)(1) must be dismissed. Second, Section 1365 of the CWA does not give citizens the right to sue entities such as MTSA and Millcreek for violations of Section 1342(q)(1). Lastly, as an undisputed factual matter, the Millcreek sewer system is not a combined sewer system and, therefore, Section 1342(q)(1) does not even apply to MTSA and Millcreek.

Under Section 1365(b) of the CWA, no citizen suit may be commenced prior to 60 days after plaintiff has given notice of the alleged violation of the standard, limitation, or order to the USEPA, the state, and the alleged violator.  The notice requirement under the CWA is a mandatory condition precedent to commencing suit under the citizen suit provisions and any action that fails to satisfy that requirement is barred by the terms of the statute and must be dismissed.  Hallstrom v. Tillamook County, 493 U.S. 20, 31, 110 S.Ct. 304, 311 (1989); Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc., 50 F.3d 1239, 1240 (3d Cir. 1995).

The USEPA has promulgated regulations prescribing the procedures that govern the notice required under Section 1365(b).  40 C.F.R. § 135.1(b).  With respect to the contents of the notice, Section 135.3(a) states, in pertinent part,

> (a)  *Violation of standard, limitation or order.*  Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

The Third Circuit has interpreted this language as requiring a citizen suit plaintiff to provide enough information to enable the recipient of the notice to identify the specific effluent discharge limitation which has been violated.  Hercules, 50 F.3d at 1248.  Thus, the court examines the language as a whole to determine whether effective and timely notice has been given.  Hawksbill Sea Turtle v. FEMA, 126 F.3d 461, 472 (3d Cir. 1997); Brandywine Industrial Paper, Inc. v. Chemical Leaman Tank Lines, Inc., 1998 WL 855502 (E.D.Pa., December 10, 1998).  "Effective and timely notice exists if it provides the USEPA and the State with enough

information to enable them intelligently to decide whether to initiate an enforcement action and it provides the alleged violator 'with enough information to be able to bring itself into compliance.'" Id. at p. 3, quoting Hercules, 50 F.3d at 1249.

Plaintiffs' notice fails to meet the requirements of 40 C.F.R. 135.3(a) and Section 1365(b) of the CWA. Plaintiffs sent their 60-day notice under the CWA to Defendants on December 9, 2004. (Complaint, ¶ 3; Resp. App. at pp. 6-13). Nowhere in Plaintiffs' December 9, 2004 60-day notice do Plaintiffs assert that Defendants are in violation of Section 1342(q)(1) of the CWA. (Resp. App. at pp. 6-13). In fact, nowhere in the 60-day notice is there even the mention of a combined sewer, a combined sewer overflow or USEPA's CSO Policy that Plaintiffs now claim Defendants are violating. Id. Thus, there is no information contained in Plaintiffs' notice that would enable USEPA, the Pennsylvania Department of Environmental Protection ("PADEP"), MTSA or Millcreek to identify that Plaintiffs are claiming a violation of Section 1342(q)(1) of the CWA or claiming that the CSO Policy is being violated. The mere allegation of a discharge does not lead one to that conclusion.

Accordingly, Plaintiffs have failed to satisfy the 60-day notice requirement with respect to their claim that Section 1342(q)(1) of the CWA has been violated and, as such, the Court must deny Plaintiffs' summary judgment motion on that claim.[4]

Plaintiffs' claim under Section 1342(q)(1) also must fail because Section 1365(a) does not authorize Plaintiffs to bring suit under that section of the CWA. Section 1365(a) allows a citizen to commence an action under the CWA against any person "who is alleged to be in

---

[4]    In addition to the failure to satisfy the notice requirements, Plaintiffs have failed to include this violation in their Complaint. On this basis alone, Plaintiffs' summary judgment motion should be denied. Furthermore, any attempt to amend the Complaint should be denied as it will be futile. Anderson v. Ayling, 396 F.3d 265, 271 (3d Cir. 2005); Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988).

violation. . .of an effluent standard or limitation."    33 U.S.C. §§ 1365(a)(1).    Section 1365(f)

defines "effluent standard or limitation" as follows:

> (f)  **Effluent standard or limitation**
> For purposes of this section, the term "effluent standard or limitation
> under this chapter" means (1) effective July 1, 1973, an unlawful act
> under subsection (a) of section 1311 of this title; (2) an effluent
> limitation or other limitation under section 1311 or 1312 of this title;
> (3) standard of performance under section 1316 of this title;
> (4) prohibition, effluent standard or pretreatment standards under section
> 1317 of this title; (5) certification under section 1341 of this title; (6) a
> permit or condition thereof issued under section 1342 of this title, which
> is in effect under this chapter (including a requirement applicable by
> reason of section 1323 of this title); or (7) a regulation under section
> 1345(d) of this title.

Section 1342(q)(1) does not fall within this definition.    Section 1342(q)(1) provides,

"Each permit, order or decree issued pursuant to this Chapter after December 21, 2000 for a

discharge from a municipal combined storm and sanitary sewer shall conform to the Combined

Sewer Overflow Control Policy signed by the Administrator on April 11, 1994 (in this

subsection referred to as the CSO control policy)."    33 U.S.C. § 1342(q)(1).    Thus, on its own

face, Section 1342(q)(1) does not fall within the definition of "effluent standard or limitation."

In fact, neither MTSA nor Millcreek can violate Section 1342(q)(1) as it is a directive to others

(i.e., USEPA or the State), not to persons situated like MTSA and Millcreek.

Lastly, Plaintiffs' claim must fail because, as a factual matter, the Millcreek sewer system

is not a "municipal combined storm and sanitary sewer" under Section 1342(q)(1) or USEPA's

CSO Policy.    The Millcreek sewer system is designed and operated as a sanitary sewer system.

(Aff. of G. Riedesel, ¶ 7-8, attached to Defendants' Motion for Summary Judgment) (hereinafter

"Aff. of G. Riedesel").    To the extent any stormwater gets into the system, it is the result of either

illegal connections or some other unintended manner.    (Aff. of G. Riedesel, ¶ 9).    Without any

factual support, Plaintiffs simply assert that the Millcreek sewer system "is an old sewer system that combined both sewage and stormwater in the same pipes." This statement is not accurate. Millcreek does not use the sanitary system to convey stormwater. (Supplemental Aff. of G. Riedesel, ¶ 3, attached hereto) (hereinafter "Supp. Aff. of G. Riedesel"). Plaintiffs have submitted no evidence with their Motion to the contrary. Thus, there is no genuine issue regarding whether the Millcreek sewer system is not a combined sewer system.

In summary, from both a legal and factual perspective, Plaintiffs' summary judgment motion based on an alleged violation of Section 1342(q)(1) of the CWA must fail. Accordingly, the Court should deny Plaintiffs' Motion for Summary Judgment on that basis.

<blockquote>
D.    THE INJUNCTIVE RELIEF SOUGHT BY PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS MUST BE DENIED WHERE PLAINTIFFS HAVE SUBMITTED NO EVIDENCE TO SUPPORT THEIR CLAIMS FOR INJUNCTIVE RELIEF AND DEFENDANTS HAVE PRESENTED EVIDENCE SHOWING THAT THE REQUESTED INJUNCTIVE RELIEF WOULD NOT BE APPROPRIATE.
</blockquote>

As part of their Motion for Summary Judgment on All Claims, Plaintiffs ask this Court for a variety of injunctive relief. Plaintiffs have failed to present any evidence to support the injunctive relief that they seek.

Under the CWA, a court may order injunctive relief in a citizen suit. Natural Resources Defense Council v. Texaco Refining and Marketing, Inc., 906 F.2d 934 (3d Cir. 1990). This injunctive relief includes both the ability to forbid the continuance of a course of

conduct or to compel the party to perform a particular act.[5]  U.S. v. Malibu Beach, Inc., 711 F.Supp. 1301, 1310 (D.N.J. 1989).

Under the CWA, a court considering a request to issue an injunction must follow the traditional equitable standards for issuing injunctions.  Weinberger v. Romero-Barcelo, 456 U.S. 305, 311, 102 S.Ct. 1798, 1802 (1982).  "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it."  Weinberger, 456 U.S. at 312, *quoting* Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 592 (1944).  "In all cases, the question the court must decide is whether, considering all of the circumstances, it is appropriate to grant the specific relief requested."  U.S. v. Price, 688 F.2d 204, 213 (3d Cir. 1982).

A permanent injunction may be issued under the CWA "only after a showing of both irreparable injury and inadequacy of legal remedies, and a balancing of competing claims of injury and the public interest."  Texaco, 906 F.2d at 941; Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc., 830 F.Supp. 1525, 1543 (D.N.J. 1993), *rev'd in part on other grounds*, 50 F.3d 1239 (3d Cir. 1995).  The Court cannot presume irreparable injury from the mere fact that the CWA has been violated.  Texaco, 906 F.2d at 937.

This Court has succinctly described the standards followed in the Third Circuit for evaluating whether irreparable harm is established:

> "Irreparable injury is established by showing that the plaintiffs will suffer harm that 'cannot be redressed by a legal or equitable remedy following trial.'"  Instant Air Freight Co. v. C.F. Air

---

[5]     When the Court orders a party to perform a particular act, it is called a mandatory injunction. U.S. v. Price, 688 F.2d 204, 212 (3d Cir. 1982).  Mandatory injunctive relief is extraordinary relief that should be granted only in extraordinary circumstances.  Id. at 212-13; Malibu Beach, 711 F.Supp. at 1310.

> Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989) ("The preliminary
> injunction must be the only way of protecting the plaintiff from
> harm.").   The plaintiff bears this burden of making a "clear
> showing of immediate irreparable injury" Hohe v. Casey, 868 F.2d
> 69, 72 (3d Cir. 1989), cert. denied, 493 U.S. 848, 110 S.Ct. 144
> (citation omitted), which is more than merely serious or substantial
> harm.   ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir.
> 1987).   The case law provides some assistance in determining that
> injury which is irreparable under this standard:   "The word
> irreparable connotes 'that which cannot be repaired, retrieved, put
> down again, atoned for …'."   Acierno v. New Castle County,
> 40 F.3d 645, 653 (3d Cir. 1994) (citation omitted).   Additionally,
> "the claimed injury cannot merely be possible, speculative or
> remote."  Dice v. Clinicorp. Inc., 887 F.Supp. 803, 809 (W.D.Pa.
> 1995).   "Establishing a risk of irreparable harm is not enough."  Id.
> (citing ECRI, 809 F.2d at 226).

Lines v. Wargo, 271 F.Supp.2d 649, 665 (W.D.Pa. 2003).  Thus, it is Plaintiffs' burden to show

that they are entitled to the injunctive relief that they seek, and Plaintiffs have not met that

burden in their Motion for Summary Judgment on All Claims.

Plaintiffs first seek an order from the Court to cease all discharges into Walnut Creek and

eliminate bypasses from all pump stations within six months of the Court's Order.  Plaintiffs

submitted no evidence with their Motion for Summary Judgment on All Claims that supports

such an order.   Accordingly, Plaintiffs have not shown the required irreparable injury, the

inadequacy of a legal remedy, that their injury outweighs any injury to the Defendants or that the

public interest would be served.  On this basis alone, the Court should deny the injunctive relief

sought by Plaintiffs.

The facts of record also do not support Plaintiffs' claim for injunctive relief.  First, in

support of their Motion for Summary Judgment, MTSA and Millcreek have submitted the expert

opinion and affidavit of an expert witness, August E. Maas, who opines that there is no evidence

of any measurable harm caused by the discharge to Walnut Creek.  (Aff. of A. Maas, ¶ 6-7;

Appendix to Defendants' Motion for Summary Judgment at pp. 729-731) (hereinafter "App."). This evidence will be unrebutted as Plaintiffs have not submitted any expert report to the contrary. Thus, the evidence of record establishes that there will not irreparable harm without the injunction.

Second, as the Court knows, MTSA and Millcreek currently are under a Consent Order and Agreement with PADEP, which was entered on October 31, 2003 ("2003 COA"). (App. at 162-184). Under the 2003 COA, MTSA and Millcreek are required to remove the Kearsarge Pump Station Overflow on or before April 25, 2007. (Aff. of G. Riedesel, ¶ 36; App. at p. 168, ¶ 3(a)(iii). In order to accomplish this, MTSA and Millcreek are constructing two overflow retention tanks that will hold a total of 2.3 million gallons and are implementing upgrades to the Kearsarge pump station. (Aff. of G. Riedesel, ¶ 35). The contract for this work has been awarded and contracts have been signed. (Supp. Aff. of G. Riedesel, ¶ 4). Thus, MTSA and Millcreek are scheduled to meet the deadlines under the 2003 COA. (Supp. Aff. of G. Riedesel, ¶ 4).

If the Court were to order that the Kearsarge overflow be removed prior to the completion of the work under the 2003 COA, there would be significant impact to both the Defendants and the public interest. If the Kearsarge overflow is removed before the work performed under the 2003 COA is completed, MTSA would have no ability to manage the flows that would occur at the Kearsarge pump station if a significant storm event hit the Millcreek area. (Supp. Aff. of G. Riedesel, ¶ 5). As a result, the sewer lines feeding the pump station will begin to back up and the pump station wet well will begin to fill. (Supp. Aff. of G. Riedesel, ¶ 5).

The backup in the sewer lines will lead to sewage backing up into people's homes. (Supp. Aff. of G. Riedesel, ¶ 6). It is believed that dozens (or more) of homes could be impacted

under such a scenario.  (Supp. Aff. of G. Riedesel, ¶ 6).  This will cause property damage to these homes and present an increased health risk to the residents of those homes.  (Supp. Aff. of G. Riedesel, ¶ 6).

The backup in the sewer lines eventually will cause manhole covers to "pop off."  (Supp. Aff. of G. Riedesel, ¶ 7).  The manhole covers popping off create several problems.  (Supp. Aff. of G. Riedesel, ¶ 7).  First, the flows out of the manholes will run across Township streets and possibly private property before ending up in Walnut Creek.  (Supp. Aff. of G. Riedesel, ¶ 7).  Thus, flows will continue to enter Walnut Creek.  (Supp. Aff. of G. Riedesel, ¶ 7).  Second, those flows also have the potential to cause property damage and an increased health risk.  (Supp. Aff. of G. Riedesel, ¶ 7).  Third, the missing manhole covers present a safety risk to both vehicles and individuals.  (Supp. Aff. of G. Riedesel, ¶ 7).

The backup into the pump station wet well ultimately will overflow into the rest of the pump station and then outside of the pump station.  (Supp. Aff. of G. Riedesel, ¶ 8).  Once the flows reach outside the pump station, those flows will quickly reach Walnut Creek.  (Supp. Aff. of G. Riedesel, ¶ 8).  A backup at the pump station would create the risk of damaging both existing equipment at the pump station as well as the new construction required under the 2003 COA.  (Supp. Aff. of G. Riedesel, ¶ 8).  Under the worst-case scenario, the pump station is knocked out of service, which would impair its ability to operate under normal conditions. (Supp. Aff. of G. Riedesel, ¶ 8).

Based upon these facts, there is no basis to grant the injunctive relief requested by Plaintiffs.  Plaintiffs have submitted no evidence of irreparable injury.  To the contrary, the evidence supports that there would be no irreparable injury.  Plaintiffs have not proven that their alleged harm outweighs the harm potentially suffered by Defendants and the public.  To the

contrary, the evidence supports that the harm to Defendants and the public interest could be significant. Accordingly, MTSA and Millcreek respectfully request that this Court deny the Plaintiffs' requested injunctive relief ordering Defendants to remove the overflow prior to the 2003 COA deadlines.

Plaintiffs next seek an order requiring MTSA and Millcreek to comply with the USEPA's CSO Policy within 30 days of its order. Again, Plaintiffs have submitted no evidence to support the injunctive relief that they seek. On this basis alone, the Court should deny their requested injunctive relief. In addition, as pointed out earlier, the Millcreek sewer system is not a combined sewer system and does not have a CSO. (Aff. of G. Riedesel, ¶ 7-8). Therefore, the CSO Policy does not apply to the Millcreek sewer system. (Aff. of G. Riedesel, ¶ 7-8). Accordingly, Plaintiffs cannot establish that they will prevail on the merits of their claim, nor have they submitted any evidence to support the injunctive relief that has been sought. MTSA and Millcreek respectfully request that this Court deny the injunctive relief sought by Plaintiffs regarding the CSO Policy.

Lastly, Plaintiffs ask this Court to order MTSA and Millcreek to monitor any overflows and to submit monthly reports to them through electronic gauges. Again, Plaintiffs have submitted no evidence to support the injunctive relief that they seek and, on this basis alone, the injunctive relief sought by Plaintiffs should be denied. Thus, Plaintiffs have failed to identify any irreparable harm that they would suffer without this relief.

In contrast, the harm to MTSA and Millcreek would be substantial. First, such an order would be an exercise in futility. Once the Court would issue an order, it would take MTSA at least six to seven months to have an operating monitoring unit. (Supp. Aff. of G. Riedesel, ¶ 9). It would take engineers about two months to come up with a design document, since the cost of

an electronic gauge would trigger the requirement for public bidding. (Supp. Aff. of G. Riedesel, ¶ 9). The required public bidding, together with the bonding and insurance requirements, would add another two months. (Supp. Aff. of G. Riedesel, ¶ 9). The contractor would need about two months to order the equipment and complete the work. (Supp. Aff. of G. Riedesel, ¶ 9). Finally, it typically takes about a month to schedule the calibration of the unit. (Supp. Aff. of G. Riedesel, ¶ 9). An actual overflow also would be required to calibrate the equipment. (Supp. Aff. of G. Riedesel, ¶ 9). Thus, MTSA would either have to wait for the next overflow to naturally occur (which may be months or longer), or would have to purposely induce an overflow situation to properly calibrate the equipment. (Supp. Aff. of G. Riedesel, ¶ 9).

One potential problem with installing an electronic gauge is that it is believed that the existing overflow line was an old storm sewer line. (Supp. Aff. of G. Riedesel, ¶ 10). As such, it is suspected that the piping will not accommodate an electronic gauge. (Supp. Aff. of G. Riedesel, ¶ 10). Consequently, in order for the gauge to even work properly, the overflow piping would have to be replaced. (Supp. Aff. of G. Riedesel, ¶ 10). This could create permitting problems with PADEP, which would serve to further extend the schedule. (Supp. Aff. of G. Riedesel, ¶ 10). It is entirely likely that by the time the electronic gauge is up and running properly, it will be time to remove the overflow (and accordingly, the electronic gauge) under the 2003 COA. Thus, any order requiring the installation of an electronic gauge to monitor overflows would be futile.

In addition to being futile, such an order would impose a significant expense to MTSA and Millcreek. It is estimated that the electronic gauge alone would cost between $25,000.00 to $35,000.00, and that the pipe replacement could cost $40,000.00. (Supp. Aff. of G. Riedesel,

¶ 11).    Thus, the estimated combined cost of the futile project would be $65,000.00 to $75,000.00.  (Supp. Aff. of G. Riedesel, ¶ 11).

Given that Plaintiffs have failed to present any evidence supporting their requested relief, that the requested relief would be futile and that the requested relief would impose a significant cost upon MTSA and Millcreek, MTSA and Millcreek respectfully request that this Court deny the injunctive relief sought by Plaintiffs relating to the electronic gauge and related monthly reporting.

> E.    THE CIVIL PENALTIES SOUGHT BY PLAINTIFFS'
> MOTION FOR SUMMARY JUDGMENT ON ALL
> CLAIMS MUST BE DENIED WHERE PLAINTIFFS
> HAVE SUBMITTED NO EVIDENCE TO SUPPORT
> THEIR CLAIMS AND DEFENDANTS HAVE
> PRESENTED EVIDENCE SHOWING THAT CIVIL
> PENALTIES WOULD NOT BE APPROPRIATE.

Plaintiffs ask this Court to order MTSA and Millcreek to pay a civil penalty in the amount of $435,000.00.  In their Brief, Plaintiffs identify 29 occasions that they allege there were discharges to Walnut Creek.  Plaintiffs do not cite any evidence to support their allegation.  Further, many of the alleged discharges are disputed as provided in MTSA's and Millcreek's Motion for Summary Judgment.

Under 1365(a), the district court has jurisdiction "to apply any appropriate civil penalties under section 1319(d)" of the CWA.  Under Section 1319(d), the amount of a civil penalty is determined under the following standard:

> ". . .the court shall consider the seriousness of the violation or violations,
> the economic benefit (if any) resulting from the violation, any history of
> such violations, any good-faith efforts to comply with the applicable
> requirements, the economic impact of the penalty on the violator, and
> such other matters as justice may require."

33 U.S.C. § 1319(d).

The court's award of a civil penalty under the CWA is subject to wide discretion.  U.S. v. Municipal Authority of Union Tp., 150 F.3d 259, 263 (3d Cir. 1998).  In the Third Circuit, although the method used to determine a civil penalty is left to the discretion of the court, Id. at 265, most courts in the Third Circuit have chosen to follow the "bottom up" approach.  See, e.g., U.S. v. Municipal Authority of Union Tp., 929 F.Supp. 800, 807 (M.D.Pa. 1996), aff'd, 150 F.3d 259 (3d Cir. 1998).  Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc., 1995 WL 461252, *16 (D.N.J. March 9, 1995); Student Public Interest Research Group of New Jersey, Inc. v. Monsanto Co., 1988 WL 156691, *16 (D.N.J. March 24, 1988).  Under the "bottom up" approach, the Court determines the economic benefit a violator gained by noncompliance and then adjusts upward or downward using the remaining five factors in Section 1319(d).  Union Twp., 150 F.3d at 265.

Here, Plaintiffs have presented no evidence to support any of the factors the Court is to apply under Section 1319(d).  To the contrary, MTSA and Millcreek intend to present substantial evidence and take the position that under the circumstances of this case, an award of no additional civil penalty would be an appropriate exercise of the Court's discretion in this case.

First, with respect to economic benefit, MTSA and Millcreek have experienced no economic benefit out of this situation. (Supp. Aff. of G. Riedesel, ¶ 12).  Quite to the contrary, MTSA and Millcreek have spent millions of dollars attempting to resolve this situation, some of which have not produced successful results.   (Aff. of G. Riedesel, ¶ 14, 16).   MTSA and Millcreek are a municipal authority and a municipality, respectively; therefore, unlike a private enterprise, there is no profit motive impacting their decisions.  (Aff. of G. Riedesel, ¶ 5; Aff. of

B. McGrath, ¶ 1).  Neither MTSA nor Millcreek has refused to implement a project based on it costing too much.  (Supp. Aff. of G. Riedesel, ¶ 13).  MTSA and Millcreek have not delayed taking any action in an effort to save money.  (Supp. Aff. of G. Riedesel, ¶ 14).  Thus, Plaintiffs have failed to establish that there has been any economic benefit to MTSA and Millcreek.

Plaintiffs also have failed to present any evidence in support of any of the other factors under Section 1319(d).  With respect to the seriousness of the violations, MTSA and Millcreek have presented unrebutted evidence that the discharges have not caused any measurable harm to Walnut Creek.  (Aff. of A. Maas, ¶ 7-8).  With respect to the violation history and good faith efforts to comply, MTSA and Millcreek intend to present evidence outlining all of the projects undertaken by MTSA and Millcreek to address the problem, all of which will cost MTSA and Millcreek approximately $34 million.   (Aff. of G. Riedesel, ¶¶ 14, 16, 23-26, 28-33, 36-37).  With respect to economic impact of the penalty on MTSA and Millcreek, MTSA and Millcreek intend to present evidence that any such penalty will be borne by the users and taxpayers of Millcreek Township and that the cost of sewer usage in Millcreek Township has increased by 63% since 1999.  (Supp. Aff. of G. Riedesel, ¶ 15).  Lastly, MTSA and Millcreek intend to present evidence regarding the amount of civil penalties already paid by them for the conduct that is the subject of Plaintiffs' action.  To date, MTSA and Millcreek have paid $103,500.00 in penalties for the time period covered by Plaintiffs' Complaint to the present.  (Supp. Aff. of G. Riedesel, ¶ 16).  MTSA and Millcreek further intend to present evidence that the amount paid to date by MTSA and Millcreek exceed the amount that would be paid under the USEPA's municipal penalty policy for noncompliance.  (Resp. App. at pp. 30-33).[6]

---

[6]     Under the municipal penalty policy, USEPA uses two tables to determine the appropriate penalty range.  In Table A, USEPA looks at the economic benefit and the actual or potential

In summary, Plaintiffs have presented no evidence to support their claims that this Court impose a civil penalty of $435,000.00 upon MTSA and Millcreek.  To the contrary, MTSA and Millcreek have presented evidence that such an award of civil penalty would be wholly inappropriate.  Accordingly, since there are germane issues of material fact regarding the appropriate civil penalty, summary judgment is inappropriate.  Therefore, MTSA and Millcreek respectfully request that this Court deny Plaintiffs' Motion for Summary Judgment regarding the amount of civil penalties.

> F.    PLAINTIFFS ARE NOT ENTITLED TO A COURT ORDERED SUPPLEMENTAL ENVIRONMENTAL PROJECT IN THE AMOUNT OF $150,000.00 AS THE CWA DOES NOT GIVE THE COURT THE AUTHORITY TO ORDER SUCH RELIEF.

In their Motion for Summary Judgment on All Claims, Plaintiffs ask the Court to order MTSA and Millcreek to pay $150,000.00 for a Supplemental Environmental Project ("SEP") that will be agreed upon by the parties.  Under the CWA, the Court is not given the authority to issue such an order.

Section 1365(a) of the CWA gives the Court jurisdiction to do three things.  First, the Court has jurisdiction "to enforce such an effluent standard or order."  Second, the Court has

---

harm caused.  In Table B, USEPA looks at the service population of the municipality and the months of violation.  Under Table A, with no economic benefit and no actual or potential harm as presented by Defendants, the recommended range for Table A is $6,000.00 to $9,000.00.  Under Table B, MTSA and Millcreek have a service population just under 50,000 (Supp. Aff. of G. Riedesel, ¶ 3) and according to Plaintiffs' Brief, there have been 15 months of violation (which MTSA and Millcreek dispute) and, therefore, the recommended range under Table B based on these facts is $15,000.00 to $30,000.00.  Thus, under these facts, USEPA's municipal penalty policy produces a penalty range between $21,000.00 and $39,000.00.  MTSA and Millcreek have paid $103,500.00.

jurisdiction "to order the administrator to perform such act or duty."  Third, the Court has jurisdiction "to apply any appropriate civil penalties under Section 1319(d)" of the CWA.  The SEP sought by Plaintiffs does not fall within any of these three categories.  Accord, U.S. v. Atofina Chemicals, Inc., 2002 WL 1832825 (E.D.Pa. Aug. 5, 2002) (Court questioned authority to approve a consent decree with a SEP citing no clear Congressional authorization).  See also, 42 U.S.C. § 7604(g) (Clean Air Act specifically authorizes up to $100,000.00 for "beneficial mitigation projects;" CWA has no such provisions).

The concept of SEPs was initially introduced by the USEPA as an interim policy in 1995.  The interim policy was then superseded by the Final EPA Supplement Environmental Projects Policy in May of 1998.  63 F.R. 24796 (May 5, 1998).  USEPA uses a SEP to reduce civil penalties in the settlement context.  63 F.R. at 24797.  The Final Policy specifically states, "This is a settlement Policy and thus is not intended for use by EPA, defendants, respondents, courts or administrative law judges at a hearing or in a trial."  63 F.R. at 24797.  Thus, the SEP is a settlement mechanism for USEPA and it is not something that the Court can order parties to do under the CWA.

MTSA and Millcreek respectfully request that this Court deny Plaintiffs' Motion for Summary Judgment on All Claims with respect to the SEP that Plaintiffs ask this Court to order.[7]

---

[7]   Plaintiffs' request for attorneys' fees in their Motion for Summary Judgment on All Claims is premature under Rule 54(d)(2) of the Federal Rules of Civil Procedure.  Rule 54(d)(2) provides that claims for attorneys' fees be made by motion within 14 days after entry of judgment.  In any event, Defendants dispute that Plaintiffs are prevailing parties or that they are entitled to any attorneys' fees.  See, e.g., Sierra Club v. City of Little Rock, 351 F.3d 840 (8th Cir. 2003).

Conclusion

In conclusion, based upon the evidence presented, Defendants Millcreek Sewer Authority and Millcreek Township respectfully request that this Court deny Plaintiffs' Motion for Summary Judgment on All Claims.

Respectfully submitted,

s / Mark J. Shaw
Mark J. Shaw
PA50763
Robert E. Gandley
PA82524
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7607
(814) 454-4647 (Facsimile)
mshaw@mijb.com

Attorneys for Defendants
    Millcreek Township Sewer Authority
    and Millcreek Township

Dated:  April 20, 2006

948905