IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIE COUNTY ENVIRONMENTAL COALITION, et. al., <br>     Plaintiffs | ) <br> ) <br> ) <br> ) |
| v. | ) CIVIL ACTION NO. 05-59 ERIE <br> ) ELECTRONICALLY FILED |
| MILLCREEK TOWNSHIP SEWER AUTHORITY, et. al., <br>     Defendants | ) <br> ) <br> ) |

**CONCISE STATEMENT OF FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND
<u>IN RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT</u>**

    Plaintiffs, Erie County Environmental Coalition, PennEnvironment, and the Gaia Defense League (hereinafter collectively known as "Plaintiffs") submit the following as other material facts Plaintiffs find necessary for the Court to determine the motion for summary judgment, as permitted under LR 56.B.1 & LR 56.1.C.1.c of the Local Civil Rules of the Untied States District Court for the Western District of Pennsylvania:

1. Defendant Millcreek Township Sewer Authority owns the sewage conveyance system. (Comp. at 3-4, ¶ 16; Ans. at 4, ¶ 16.)

2. Defendant Millcreek Township manages and operates that same sewage conveyance system. (Comp. at 3-4, ¶ 16; Ans. at 4, ¶ 16.)

3. During or immediately following heavy rain events and other heavy run-off events, overflow from the Defendant's sewer system has been discharged into Walnut Creek. (Comp. at 3, ¶ 12; Ans. at 3, ¶ 12.)

4. The Kearsarge Pumping Station has a bypass that discharges directly into Walnut Creek. (Comp. at 4, ¶ 21; Ans. at 4, ¶ 21.)

5. Millcreek has not been issued a NPDES permit pursuant to the CWA. (Comp. at 3, ¶ 12; Ans. at 3, ¶ 12.)

6. Discharges into Millcreek occur without a NPDES permit. (Comp. at 5-7, ¶ 34; Ans. at 6, ¶ 34.)

7. In 1992, following discharges of raw and/or inadequately treated sewage into Walnut Creek, Millcreek Township and Millcreek Township Sewer Authority entered into a Consent Order and Agreement with the Commonwealth of Pennsylvania Department of Environmental Protection ("PADEP"), in accordance with the CWA and Pennsylvania Clean Streams Law. (Comp. at 5, ¶ 27; Ans. at 5, ¶ 27).

8. In 2003, a second consent order was entered into by Millcreek and the PADEP, pursuant to Pennsylvania's Clean Streams Law, 35 Pa. Stat. Ann. § 691.1 et. seq. (Comp. at 5, ¶ 28; Ans. at 5, ¶ 28).

9. Millcreek Township Sewer Authority ("MTSA") discharged pollutants into Walnut Creek from the Kearsarge pump station on September 17, 2004. (Ans. At 6, ¶ 34).

10. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on September 10, 2004. (Ans. At 6, ¶ 34).

11. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on September 9, 2004. (Ans. At 6, ¶ 34).

12. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on August 1, 2004. (Ans. At 6, ¶ 34).

13. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on July 31, 2004. (Ans. At 6, ¶ 34).

14. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on July 16, 2004. (Ans. At 6, ¶ 34).

15. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on May 21, 2004. (Ans. At 6, ¶ 34).

16. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on March 20, 2004. (Ans. At 6, ¶ 34).

17. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on November 28, 2003. (Ans. At 6, ¶ 34).

18. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on September 29, 2003. (Ans. At 6, ¶ 34).

19. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on May 12, 2002. (Ans. At 6, ¶ 34).

20. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on April 14, 2002. (Ans. At 6, ¶ 34).

21. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on February 1, 2002. (Ans. At 6, ¶ 34).

22. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on August 16, 2001. (Ans. At 6, ¶ 34).

23. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on November 7, 2000. (Ans. At 6, ¶ 34).

24.  MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on December 14, 1999. (Ans. At 6, ¶ 34).

25.  MTSA discharged pollutants into Walnut Creek from the 51st, 52nd, and Zimmerly Streets overflow outlet on September 9, 2004. (Ans. At 6, ¶ 34).

26.  MTSA discharged pollutants into Walnut Creek from the 51st, 52nd, and Zimmerly Streets overflow outlet on July 31, 2004. (Ans. At 6, ¶ 34).

27.  MTSA discharged pollutants into Walnut Creek from the 51st, 52nd, and Zimmerly Streets overflow outlet on September 29, 2003. (Ans. At 6, ¶ 34).

28.  MTSA discharged pollutants into Walnut Creek from the 51st, 52nd, and Zimmerly Streets overflow outlet on April 14, 2002. (Ans. At 6, ¶ 34).

29.  MTSA discharged pollutants into Walnut Creek from the 51st, 52nd, and Zimmerly Streets overflow outlet on February 1, 2002. (Ans. At 6, ¶ 34).

30.  MTSA discharged pollutants into Walnut Creek from the 51st, 52nd, and Zimmerly Streets overflow outlet on May 12, 200. (Ans. At 6, ¶ 34).

31.  MTSA discharged pollutants into Walnut Creek from the 51st, 52nd, and Zimmerly Streets overflow outlet on August 3, 2000. (Ans. At 6, ¶ 34).

32.  MTSA discharged pollutants into Walnut Creek from the Larchmont and Beaver Streets overflow outlet on September 9, 2004. (Ans. At 6, ¶ 34).

33.  MTSA discharged pollutants into Walnut Creek from the Larchmont and Beaver Streets overflow outlet on April 14, 2002. (Ans. At 6, ¶ 34).

34.  MTSA discharged pollutants into Walnut Creek from the Larchmont and Beaver Streets overflow outlet on February 1, 2002. (Ans. At 6, ¶ 34).

35. MTSA discharged pollutants into Walnut Creek from the Church and Patton and Pershing Streets overflow outlet on September 9, 2004. (Ans. At 6, ¶ 34).

36. MTSA discharged pollutants into Walnut Creek from the Church and Patton and Pershing Streets overflow outlet on September 9, 2004. (Ans. At 6, ¶ 34).

37. MTSA discharged pollutants into Walnut Creek from the Church and Patton and Pershing Streets overflow outlet on July 31, 2004. (Ans. At 6, ¶ 34).

38. MTSA discharged pollutants into Walnut Creek from the Church and Patton and Pershing Streets overflow outlet on April 14, 2002. (Ans. At 6, ¶ 34).

39. Stan Skrypzak is a member of The GAIA Defense League since February 2005, and a member of the Save Our Native Species of Lake Erie, a non-voting member of The Erie County Environmental Coalition since the 1980's. (Doc. 17, Ex. 1, Skrypzak Dec. at 1, ¶ 1.)

40. Mr. Skrypzak owns 120 acres of shoreline on Walnut Creek and is a Fisherman who enjoys recreational use of Walnut Creek approximately 40 times a year. (Skrypzak Dec. at 2, ¶ 6-8.)

41. Mr. Skrypzak's use and enjoyment of Walnut Creek has been adversely impacted by Millcreek discharges, which have diminished the quantity of steelhead in the Creek. (Skrypzak Dec.at 2, ¶ 8.)

42. Mr. Skrypzak believes his loss of enjoyment is a direct result of Millcreek's failure to implement water quality standards within the Township. (Skrypzak Dec. at 2, ¶ 9.)

43. Jimmy Dallas is a member of The GAIA Defense League since February 2005, and a member of the Save Our Native Species of Lake Erie, a non-voting member of The

Erie County Environmental Coalition since the 1980's. (Doc. 17, Ex. 2, Dallas Dec. at 1, ¶ 1.)

44. Mr. Dallas uses Walnut Creek for fishing and recreational use approximately 5 times a week. (Dallas Dec. at 2, ¶ 6, 7.)

45. Mr. Dallas' use and enjoyment of Walnut Creek has been adversely impacted by Millcreek discharges, which no longer allow Mr. Dallas to eat any fish he catches in Walnut Creek. (Dallas Dec. at 2, ¶ 8.)

46. Mr. Dallas believes his loss of enjoyment is a direct result of Millcreek's failure to implement water quality standards within the Township. (Dallas Declaration at 2, ¶ 9.)

47. James Gwinn is a member of The GAIA Defense League and The Erie County Environmental Coalition since February 2005 and a member of the Save Our Native Species of Lake Erie, a non-voting member of The Erie County Environmental Coalition since the early 1990's. (Doc. 17, Ex. 3, Gwinn Dec. at 1, ¶ 1.)

48. Mr. Gwinn uses Walnut Creek for fishing and conservation activities to monitor, measure and report causes of pollution, approximately 450 to 600 hours a year. (Gwinn Dec. at 2, ¶¶ 6, 7.)

49. Mr. Gwinn's use and enjoyment of Walnut Creek has been adversely impacted by Millcreek discharges, which no longer allow Mr. Gwinn to eat any fish taken in Walnut Creek. (Gwinn Dec. at 2, ¶ 8.)

50. Mr. Gwinn believes his loss of enjoyment is a direct result of Millcreek's failure to implement water quality standards within the Township. (Gwinn Dec. at 2, ¶ 10.)

51. Cathy Pedler is a member of The GAIA Defense League since November 2004 and a member of The Erie County Environmental Coalition since 2000. (Doc. 17, Ex. 4, Pedler Dec. at 1, ¶ 1.)

52. Ms. Pedler uses Lake Erie and its tributaries, including Walnut Creek, for swimming, scuba diving and for a project to create an underwater preserve. (Pedler Dec. at 2, ¶ 6.)

53. Ms. Pedler's use and enjoyment of Walnut Creek has been adversely impacted by Millcreek discharges, which no longer allow Ms. Pedler to swim in Lake Erie and have jeopardized project efforts and undermines conservation and restoration efforts of her member organizations. (Pedler Dec. at 2, ¶¶ 6, 7.)

54. Ms. Pedler believes her loss of enjoyment is a direct result of Millcreek's failure to implement water quality standards within the Township. (Pedler Dec. at 2, ¶ 8.)

55. Martin Visnosky is a member of The GAIA Defense League since November 2004 and a member of The Erie County Environmental Coalition since 1985. (Doc. 17, Ex. 5, Visnosky Dec. at 1, ¶ 1.)

56. Mr. Visnosky uses Walnut Creek for hiking, fishing, and bird watching activities, approximately 30 times a year. (Visnosky Dec. at 2, ¶¶ 6, 7.)

57. Mr. Visnosky's use and enjoyment of Walnut Creek has been adversely impacted by Millcreek discharges, which significantly alter the aquatic life and wildlife associated with Mr. Visnosky's recreational activities. (Visnosky Dec. at 2, ¶ 8.)

58. Mr. Visnosky believes his loss of enjoyment is a direct result of Millcreek's failure to implement water quality standards within the Township. (Visnosky Dec. at 2, ¶ 9.)

59. Jesse T. Davis III is a member of The GAIA Defense League since October 2005. (Davis Dec. at 1, ¶ 1.) Mr. Davis uses Walnut Creek to fish for steelhead and numerous species of bass and trout, approximately 12 times a month. (Doc. 17, Ex. 6, Davis Dec. at 2, ¶¶ 6, 7.)

60. Mr. Davis' use and enjoyment of Walnut Creek has been adversely impacted by Millcreek discharges, which limit his ability to fish and eat fish that have been caught in the Creek. (Davis Dec. at 2, ¶ 8.)

61. Mr. Davis believes his loss of enjoyment is a direct result of Millcreek's failure to implement water quality standards within the Township. (Davis Dec. at 2, ¶ 9.)

62. Paul F. Burroughs is a member of The GAIA Defense League since October 2005. (Burroughs Dec. at 1, ¶ 1.)

63. Mr. Burroughs Owns property on Walnut Creek and uses the creek for recreational enjoyment, including fishing. (Burroughs Dec. at 2, ¶ 5.)

64. Mr. Davis' use and enjoyment of Walnut Creek has been adversely impacted by Millcreek discharges, causing him to reduce his recreational use of the creek, and handle trespass as a landowner. (Burroughs Dec. at 2-3, ¶ 7-10.)

65. Mr. Burroughs believes his loss of enjoyment is a direct result of Millcreek's failure to implement water quality standards within the Township. (Burroughs Dec. at 4, ¶ 11.)

66. Millcreek was/is required a fine of $2,500 for any violation that occurs from the Kearsarge pumping station from October 31, 2003 to until 30 days after the completion of construction. (Def. App. at 173, ¶ 9; 169, ¶ 3).

67.     After such time, Millcreek is required to pay $5,000 for any violation that occurs from the Kearsarge pumping station (Def. App. at 173, ¶ 9).

Respectfully submitted,

s/ Jennifer A. Murphy
Jennifer A. Murphy, Esquire
PA90851
Mid-Atlantic Environmental Law Center
4601 Concord Pike, P.O. Box 7474
Wilmington, DE 19803-0474
(302) 477-2182
(302) 477-2032 (fax)
jennifer.a.murphy@law.widener.edu
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document by electronic means utilizing the Court's CM/ECF system that will serve notice of electronic filing to Mark J. Shaw, Esq., McDonald, Illig, Jones & Britton, LLP, Attorney for Defendants on this 20th day of April, 2006.

 /s/ Jennifer A. Murphy
Jennifer A. Murphy
PA90851
Mid-Atlantic Environmental Law Center
c/o Widener University School of Law
4601 Concord Pike
P.O. Box 7474
Wilmington, DE  19803