**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ERIE COUNTY ENVIRONMENTAL COALITION, et. al.,** | ) |
| **Plaintiffs** | ) |
| | ) |
| **v.** | )**CIVIL ACTION NO. 05-59 ERIE** |
| | )**ELECTRONICALLY FILED** |
| **MILLCREEK TOWNSHIP SEWER AUTHORITY, et. al.,** | ) |
| **Defendants** | ) |

**PLAINTIFFS RESPONSE TO DEFENDANTS'
CONCISE STATEMENT OF FACTS**

Plaintiffs, Erie County Environmental Coalition, PennEnvironment, and the Gaia Defense

League (hereinafter collectively known as "Plaintiffs") submit the following as their opposition

to Defendants' Concise Statement of Fact and assert additional facts in support of Plaintiffs

Motion for Summary Judgment.  Plaintiffs note that Defendants' submission is not a concise

statement of facts given the issues of this case and the arguments forwarded by both Plaintiffs

and Defendants. Pursuant to LR 56.1.C.1 of the Local Civil Rules of the Untied States District

Court for the Western District of Pennsylvania, Plaintiffs submit:

1.     Admitted.

2.     Admitted.

3.     Admitted.

4.     Admitted.

5.     Admitted.

6.     Admitted.

7.     Admitted.

8.      Admitted.

9.      Admitted.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Admitted.

14.     Admitted.

15.     Admitted.

16.     Admitted.

17.     Admitted.

18.     Admitted.

19.     Admitted.

20.     Admitted.

21.     Admitted.

22.     Admitted.

23.     Admitted.

24.     Admitted.

25.     Admitted.

26.     Admitted.

27.     Admitted.

28.     Admitted.

29.     Admitted.

30.     Admitted.

31.     Admitted.

32.     Admitted.

33.     Admitted.

34.     Admitted.

35.     Admitted.

36.     Admitted, but immaterial. The City of Erie is not at issue here and has no bearing on whether Millcreek is in violation of the Clean Water Act.

37.     Admitted, but immaterial. The City of Erie is not at issue here and has no bearing on whether Millcreek is in violation of the Clean Water Act.

38.     Admitted, but immaterial. The City of Erie is not at issue here and has no bearing on whether Millcreek is in violation of the Clean Water Act.

39.     Admitted, but immaterial. The City of Erie is not at issue here and has no bearing on whether Millcreek is in violation of the Clean Water Act.

40.     Admitted, but immaterial. The City of Erie is not at issue here and has no bearing on whether Millcreek is in violation of the Clean Water Act.

41.     Admitted, but immaterial. The City of Erie is not at issue here and has no bearing on whether Millcreek is in violation of the Clean Water Act.

42.     Admitted.

43.     Admitted.

44.     Admitted.

45.     Admitted.

46.     Admitted.

47.     Admitted.

48.     Admitted.

49.      Admitted.

50.      Admitted.

51.      Admitted.

52.      Admitted.

53.      Admitted.

54.      Admitted.

55.      Admitted.

56.      Admitted.

57.      Admitted.

58.      Admitted.

59.      Admitted.

60.      Admitted.

61.      Admitted.

62.      Admitted.

63.      Admitted.

64.      Admitted.

65.      Admitted.

66.      Admitted.

67.      Admitted.

68.      Admitted.

69.      Admitted.

70.      Admitted.

71.      Admitted.

72.     Admitted.

73.     Admitted.

74.     Admitted.

75.     Admitted.

76.     Admitted.

77.     Admitted.

78.     Admitted.

79.     Admitted.

80.     Admitted.

81.     Admitted.

82.     Admitted.

83.     Admitted.

84.     Admitted.

85.     Admitted.

86.     Admitted.

87.     Admitted.

88.     Admitted.

89.     Admitted.

90.     Admitted.

91.     Admitted.

92.     Admitted.

93.     Admitted.

94.     Admitted.

95.     Admitted.

96.     Admitted.

97.     Admitted.

98.     Admitted.

99.     Admitted.

100.    Admitted.

101.    Admitted.

102.    Admitted.

103.    Admitted.

104.    Admitted.

105.    Admitted.

106.    Admitted.

107.    Admitted.

108.    Admitted.

109.    Admitted.

110.    Admitted.

111.    Admitted.

112.    Admitted.

113.    Admitted.

114.    Admitted.

115.    Admitted.

116.    Admitted.

117.    Admitted.

118.    Admitted.

119.    Admitted.

120.    Admitted.

121.    Admitted.

122.    Admitted.

123.    Admitted.

124.    Admitted.

125.    Admitted.

126.    Admitted.

127.    Admitted.

128.    Admitted.

129.    Admitted.

130.    Admitted.

131.    Admitted.

132.    Admitted.

133.    Admitted.

134.    Admitted.

135.    Admitted.

136.    Admitted.

137.    Admitted.

138.    Admitted.

139.    Admitted.

140.    Admitted.

141.    Admitted.

142.    Admitted.

143.    Admitted.

144.    Admitted.

145.    Admitted.

146.    Admitted.

147.    Admitted.

148.    Admitted.

149.    Admitted.

150.    Admitted.

151.    Admitted.

152.    Admitted.

153.    Admitted.

154.    Admitted.

155.    Admitted.

156.    Admitted.

157.    Admitted.

158.    Admitted.

159.    Admitted.

160.    Admitted.

161.    Admitted.

162.    Admitted.

163.    Admitted.

164.    Admitted.

165.    Admitted.

166.    Admitted.

167.    Admitted.

168.    Admitted.

169.    Admitted.

170.    Admitted.

171.    Admitted.

172.    Admitted.

173.    Admitted.

174.    Admitted.

175.    Admitted.

176.    Admitted.

177.    Admitted.

178.    Admitted.

179.    Admitted.

180.    Admitted.

181.    Admitted.

182.    Admitted.

183.    Admitted.

184.    Admitted.

185.    Admitted.

186.    Admitted.

187.    Admitted.

188.    Admitted.

189.    Admitted.

190.    Admitted.

191.    Admitted.

192.    Admitted.

193.    Admitted.

194.    Admitted.

195.    Admitted.

196.    Admitted.

197.    Admitted.

198.    Admitted.

199.    Admitted.

200.    Admitted.

201.    Admitted.

202.    Admitted.

203.    Admitted.

204.    Admitted.

205.    Admitted.

206.    Admitted.

207.    Admitted.

208.    Admitted.

209.    Admitted.

210.    Admitted.

211.    Admitted.

212.    Admitted.

213.    Admitted.

214.    Admitted.

215.    Admitted as an opinion George Riedesel and Brian McGrath.

216.    Admitted as an opinion of George Riedesel.

217.    Admitted.

218.    Admitted.

219.    Admitted.

220.    Admitted.

221.    Admitted.

222.    Admitted.

223.    Admitted.

224.    Admitted.

225.    Admitted.

226.    Admitted.

227.    Admitted.

228.    Admitted.

229.    Admitted.

230.    Admitted.

231.    Admitted.

232.    Admitted.

233.    Admitted.

234.    Admitted.

235.    Admitted.

236.    Admitted.

237.    Admitted.

238.    Admitted.

239.    Admitted.

240.    Admitted.

241.    Admitted.

242.    Admitted.

243.    Admitted.

244.    Admitted.

245.    Admitted.

246.    Admitted.

247.    Admitted, but a legal conclusion as to the meaning of "significant."

248.    Admitted.

249.    Admitted.

250.    Admitted.

251.    Admitted.

252.    Admitted.

253.    Admitted.

254.    Admitted.

255.    Admitted.

256.    Admitted.

257.    Admitted.

258.    Admitted.

259.    Admitted, but a legal conclusion as to the meaning of "significant."

260.    Admitted as an opinion of G. Riedesel and G. Allender.

261.    Admitted.

262.    Admitted.

263.    Admitted.

264.    Admitted.

265.    Admitted.

266.    Admitted. However, there is a typographical and instead of stating 2006, it should state 2004.

267.    Admitted.

268.    Admitted.

269.    Admitted.

270.    Admitted.

271.    Admitted.

272.    Admitted.

273.    Admitted.

274.    Admitted.

275.    Admitted.

276.    Admitted.

277.    Admitted.

278.    Admitted.

279.   Admitted.

280.   Admitted.

281.   Admitted.

282.   Admitted.

283.   Admitted.

284.   Admitted.

285.   Admitted.

286.   Admitted.

287.   Admitted.

288.   Admitted.

289.   Admitted.

290.   Admitted.

291.   Admitted.

292.   Admitted.

293.   Admitted.

294.   Admitted.

295.   Admitted.

296.   Admitted.

297.   Admitted.

298.   Admitted.

299.   Admitted.

300.   Admitted.

301.   Admitted.

302.   Admitted.

303.   Admitted.

304.   Admitted.

305.   Admitted.

306.   Admitted.

307.   Admitted.

308.   Admitted.

309.   Admitted.

310.   Admitted.

311.   Admitted.

312.   Admitted.

313.   Admitted.

314.   Admitted.

315.   Admitted.

316.   Admitted.

317.   Admitted.

318.   Admitted.

319.   Admitted.

320.   Admitted.

321.   Admitted.

322.   Admitted.

323.   Admitted.

324.   Admitted.

325.    Admitted.

326.    Admitted.

327.    Denied as a conclusion of law as to whether the Consent Order and Agreement

constitutes a final order and whether the appeal period has long since passed.

328.    Admitted.

329.    Admitted in part. Denied as to the characterization of Ms. Pedler and other members
of the groups.

330.    Admitted.

331.    Admitted.

332.    Admitted but whether the overall problem is solved is conclusion of law.

333.    Admitted.

334.    Admitted.

335.    Admitted.

336.    Admitted.

337.    Admitted.

338.    Admitted.

339.    Cannot admit or deny; this statement is incomprehensible as to its meaning.

340.    Admitted.

341.    Admitted.

342.    Admitted.

343.    Admitted.

344.    Admitted.

345.    Repeat of Statement No. 39.

346.    Admitted.

347.    Admitted.

348.    Admitted.

349.    Admitted.

350.    Admitted.

351.    Admitted.

352.    Denied. Plaintiffs responded to Interrogatory No. 6 by stating, "No showing of adverse effects, environmental harm or degradation must be made by Plaintiffs to support a contention of discharge violations. It is a well-known principle and simple fact what the obvious negative impacts of raw sewage are on any waterbody." (Def. App. at 706).

353.    Admitted, however, Plaintiffs object to the characterization made.

354.    Denied. Please refer to the response provided for No. 352.

355.    Denied as a legal conclusion of law and failure to include all of Plainitffs response. Plaintiffs cite to Environmental Protection Agency guidance that states: The Environmental Protection Agency lists specific pollutants of concern found in CSOs and Sanitary Sewer Overflows (SSOs), which are likely to cause or contribute to water quality impairment. *See* EPA's Report to Congress on the Impacts and Control of CSOs and SSOs, August 2004, EPA Document 833-R-04-001. These pollutants are certain oxygen-demanding substances, sediment or total suspended solids, pathogens, toxics, nutrients and floatables. The adverse effects and environmental degradation these pollutants are likely to cause include impairment and degradation of aquatic life support, drinking water supplies, fish consumption, shellfish harvesting and recreational uses.  These pollutants and commensurate environmental harms are likely to result from the Defendants' numerous discharges of raw and inadequately treated sewage, which contain several of these pollutants" (Def. App. at 710) and list the specific discharges of pollutants (Def. App. at 707-708).

356.    Admitted.

357.    Denied. Plaintiffs responded to Interrogatory No. 9 by stating, Based on the number of past overflow violations, it is evident that the quality of the Walnut Creek and its surrounding tributaries will continue to be degraded by the defendant if injunctive relief is not issued and civil penalties assessed. See Charts for the names of pumping stations that discharged, when they discharged, the total hours and amount of gallons of sewage discharged. Complaint ¶ 34. Also, more recent violations are as follows:

| WHERE | WHEN | HOURS OF DISCHARGE | AMOUNT OF DISCHARGE |
|---|---|---|---|
| Kearsarge    Pumping | April 5, 2005 | 2 hours and  40 | 207,000 Gallons |

| Station | | minutes | |
|---|---|---|---|
| Kearsarge Pumping Station | January 12, 2005 | 6 Hours | 455,605 Gallons |
| Kearsarge Pumping Station | December 31, 2004 | 11 hours and 15 minutes | 2,156,100 Gallons |
| Kearsarge Pumping Station | December 23, 2004 | 4 hours and 15 minutes | 618,000 Gallons |

In addition to these documented violations, plaintiffs also refer to two separate consent order and agreements that were entered into by the defendants and the Pennsylvania Department of Environmental Protection. The first consent order agreement was entered into the Commonwealth of Pennsylvania, Department of Environmental Protection, Millcreek Township and the Millcreek Township Sewer Authority on January 7, 1992. The second consent order and agreement was entered into by the above parties on October 31, 2003.

In the consent order and agreement entered into in 2003, Paragraph Q states: "Despite the system improvements in Paragraph O, above [discussing the Township and Sewer Authorities' expanding their regulations regarding inspections and termination of unlawful connections in the Kearsarge pump station], the Township and Authority continue to allow untreated sewage to be periodically discharged to Walnut Creek via the Kearsarge Overflow and from other areas tributary to the Kearsarge pump station. The Township and the Authority have reported the overflow events…and have paid penalties for the reported overflows at the Kearsarge pump station in accordance with the 1992 COA." *See* Consent Order and Agreement, October 31, 2003.

This paragraph indicates that the finding of the DEP at the time the consent order and agreement were entered in to was that the Township and the Sewer Authority continued to allow discharges of sewage to occur in Walnut Creek. It also indicates that between the time of the signing and implementation of the 1992 COA and the 2003 COA, the Township and the Authority have reported violations and have paid fines for those violations. Therefore, the discharges that were to be stopped by the 1992 COA continued past the signing of the order and agreement, thus necessitating a subsequent COA in 2003.

In addition, it is indicated in Paragraph V of the 2003 COA that the violations described above were unlawful. Paragraph V states in part: "The violations described in Paragraphs Q and S, above, constitute unlawful conduct pursuant to Section 611 of the Clean Streams Law, 35 P.S. §691.611; are statutory nuisances pursuant to Section 601 of the Clean Streams Law, 35 P.S. §691.601; and subject the Township and the Authority to civil penalty liability pursuant to 605 of the Clean Streams Law, 35 P.S. §691.605." The Township and the Authority were made aware that this conduct was in violation of the law. The Township and the Authority continue to discharge sewage into the Walnut Creek despite the 2003 COA. Though they have paid fine for these discharge violations, the discharge of sewage into the Walnut Creek and its surrounding tributaries continued to occur.

The COAs and the minimal fines that the Township and the Sewer Authority have received thus far are not acting as a deterrent from discharging into the Walnut Creek. In order for the deterrent effect to be achieved the defendants will need to be placed in a

worse position than they would have been in had they complied in the first place. Environmental Protection Agency, "Policy on Civil Penalties," February 16, 1984. The Clean Water Act and its corresponding regulations set up a system of enforcement for noncompliance. One aspect of such enforcement is the imposition of civil penalties. Civil penalties are often imposed to deter a violator to continue to violate. In regard to injunctive relief, such relief would prohibit Millcreek from continuing to violate the Clean Water Act, i.e. prohibit the unpermitted discharge of pollutants into Walnut Creek. It is obvious that the elimination of illegal discharge will stop the continuous degradation and prevent further aesthetic and recreational injury to Plaintiffs. (Def. App. 712-714).

358.    Denied as a legal conclusion of law.

359.    Admitted.

360.    Admitted.

361.    Admitted.

362.    Admitted.

363.    Admitted.

364.    Admitted.

365.    Admitted.

366.    Denied as a legal conclusion as to the importance of Mr. Maas' expert report and whether Mr. Maas report is actually an "expert" report.

367.    Admitted.

368.    Admitted.

369.    Admitted.

370.    Admitted.

371.    Admitted.

372.    Admitted.

373.    Admitted.

374.    Admitted.

375.    Denied. Mr. Maas reviewed aquatic surveys. (Aff. of A. Maas, App. at 733). It is not clear as to what Defendant means by "participated."

376.    Admitted.

377.    Admitted.

378.    Admitted.

379.    Denied as a conclusion of law.

380.    Denied. It is not clear from the Affidavit whether that was the precise review Mr. Maas was making. (*See* Aff. of Maas, Def. App. at 722-731).

381.    Denied. Mr. Maas refers to any measurable "water quality degradation" and does not use the word "harm." (Aff. of Maas, Def. App. at 731).

382.    Admitted as an opinion of Mr. Maas.

383.    Admitted as an opinion of Mr. Maas.

384.    Admitted as an opinion of Mr. Maas.

385.    Admitted as an opinion of Mr. Maas.

386.    Admitted as an opinion of Mr. Maas.

387.    Admitted as an opinion of Mr. Maas.

388.    Admitted as an opinion of Mr. Maas.

389.    Admitted as an opinion of Mr. Maas.

390.    Admitted as an opinion of Mr. Maas.

391.    Admitted as an opinion of Mr. Maas.

392.    Admitted as an opinion of Mr. Maas.

393.    Admitted as an opinion of Mr. Maas.

394.    Admitted as an opinion of Mr. Maas.

395.    Admitted as an opinion of Mr. Maas.

396.    Denied. It is a legal conclusion as to whether Mr. Maas is an expert and can make such a "professional opinion."

397.    Denied. Plaintiffs, throughout their responses to Interrogatories discuss the requirement of National Pollution Discharge Permits and advocate compliance with it. (Def. App. at 705-719).

398.    Admitted.

399.    Denied. First, Plaintiffs' response appears on Def. App. 716. Second, Plaintiffs response states: "Under the Clean Water Act, a permit is required for the discharge of any pollutant into the navigable waters of the United States. 33 U.S.C. § 1342(a)(1). The discharge of any pollutant, by any person without a permit is unlawful. 33 U.S.C. § 1311(a). The terms "discharge of a pollutant" and "discharge of pollutants" mean "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). A "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).
Plaintiffs object to this interrogatory to the extent that it demands factual information to be provided when the definition of a "discharge" under Section 502(12) of the Clean Water Act, 33 U.S.C. § 1362(6), and the definition of "point source" under Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14) are in fact a legal arguments." (Def. App. 716).

400.    Denied, it is a legal conclusion as to whether Mr. Allender is an expert.

401.    Admitted.

402.    Admitted.

403.    Admitted.

404.    Admitted.

405.    Admitted.

406.    Admitted.

407.    Admitted.

408.    Admitted.

409.    Admitted.

410.   Admitted.

411.   Admitted.

412.   Admitted.

413.   Admitted.

414.   Admitted.

415.   Admitted.

416.   Admitted.

417.   Admitted as the opinion of Mr. Allender.

418.   Admitted.

419.   Admitted.

420.   Denied, it is a legal conclusion regarding whether Mr. Maas is an expert or not.

421.   Admitted as the opinion of Mr. Maas.

422.   Admitted.

423.   Admitted.

424.   Admitted as the opinion of Mr. Maas.

425.   Admitted as the opinion of Mr. Maas.

426.   Denied. First, Defendants have cited to the wrong page in the Appendix. Second,
       Plaintiffs responded as follows: "Plaintiffs object to this interrogatory subject to the
       general objections set forth above .
       Plaintiffs recognize that there are different strategies available to attain and maintain
       compliance.  Plaintiffs do not advocate any one strategy over another but do assert
       that Defendants must however implement some affirmative standard operating
       procedure. Such procedures are usually controlled by a NPDES permit.
       Primarily, Defendants must discontinue all discharges into Walnut Creek.
       Defendants must build facilities to accommodate the entire sewage system and
       expand their capacity to handle all overflows.  Defendants must have a proper plan
       and procedures in place to meet effluent limitations required by law.
       Also, Defendants are encouraged to implement the nine minimum controls
       established by the EPA, which are: proper operation and regular maintenance
       programs for the sewer system and the CSOs; maximum use of the collection system

for storage; review and modification of pretreatment requirements to assure CSO impacts are minimized; maximization of flow to the POTW for treatment; prohibition of CSOs during dry weather; control of solid and floatable materials in CSOs; pollution prevention; public notification to ensure that the public receives adequate notification of CSO occurrences and CSO impacts; and monitoring to effectively characterize CSO impacts and the efficacy of CSO controls.  Combined Sewer Overflows: Guidance for Monitoring and Modeling, EPA 832-B-99-002 (January 1999).

Additionally, CSO operators are responsible for developing and implementing long-term control plans that will eventually lead to compliance with the Clean Water Act. The major objectives of a long-term plan outlined by the EPA are: characterization, monitoring and modeling of the combined sewer system; public participation; consideration of sensitive areas; evaluation of alternatives; cost/performance consideration; operational plan; maximizing treatment at the existing POTW plant treatment plant; implementation schedule; and post-construction compliance monitoring program.  Combined Sewer Overflows: Guidance for Monitoring and Modeling, EPA 832-B-99-002 (January 1999).  (Def. App. at 717-718).

427.    Admitted.

428.    Admitted. Denied as to the citation, Response located at Def. App. at 717-718.

429.    Admitted. Denied as to the citation, Response located at Def. App. at 717-718.

430.    Admitted. Denied as to the citation, Response located at Def. App. at 717-718.

431.    Admitted. Denied as to the citation, Response located at Def. App. at 718-719.

432.    Admitted. Denied as to the citation, Response located at Def. App. at 717-718.

433.    Admitted. Denied as to the citation, Response located at Def. App. at 718.

434.    Admitted.

435.    Admitted.

436.    Admitted.

437.    Admitted.

438.    Admitted as a conclusion of Mr. Maas.

439.    Admitted.

440.    Admitted.

441.    Admitted.

442.    Admitted.
443.    Admitted.

444.    Admitted.

445.    Admitted.

446.    Admitted as the procedure that is set to take place. Denied as to the extent the statement means to assert that protocol will actually be followed on every occasion in the future.

447.    Denied as a legal conclusion.


Respectfully submitted,

s/ Jennifer A. Murphy
Jennifer A. Murphy, Esquire
PA90851
Mid-Atlantic Environmental Law Center
4601 Concord Pike, P.O. Box 7474
Wilmington, DE 19803-0474
(302) 477-2182
(302) 477-2032 (fax)
jennifer.a.murphy@law.widener.edu
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document by electronic means utilizing the

Court's CM/ECF system that will serve notice of electronic filing to Mark J. Shaw, Esq.,

McDonald, Illig, Jones & Britton, LLP, Attorney for Defendants on this 20th day of April, 2006.

<div style="margin-left:40%">

 /s/ Jennifer A. Murphy
Jennifer A. Murphy
PA90851
Mid-Atlantic Environmental Law Center
c/o Widener University School of Law
4601 Concord Pike
P.O. Box 7474
Wilmington, DE  19803

</div>