# MILLCREEK TOWNSHIP SEWER AUTHORITY

MILLCREEK MUNICIPAL BUILDING
3608 WEST 26TH STREET
ERIE, PENNSYLVANIA 16506

Phone (814) 835-6721

Fax (814) 835-6615

October 14, 2004

Mr. Anthony C. Oprendek, Compliance Specialist
Water Management
PA DEP
230 Chestnut Street
Meadville PA  16335-3481

RE:     Kearsarge Area Sanitary Sewer Overflows

Dear Mr. Oprendek:

On September 9th and again on September 17, 2004, this area was negatively impacted by residual storms as a result of hurricanes off our southeastern coastline. As a result, Millcreek was forced to bypass at the following locations on the dates noted:

| September 9, 2004 | September 17, 2004 |
|---|---|
| Kearsarge Pump Station | Kearsarge Pump Station |
| 51st & Zimmerly | |
| Patton & Church | |
| Larchmont | |

All calls for both events were made in a timely manner.

In accordance with the most recent COA, we have enclosed check # 110461 in the amount of $10,000 for the September 9th event and $2,500 for the September 17th event, for a total of $12,500 made payable to the "Commonwealth of PA Clean Water Fund".

Very truly yours,
Millcreek Township Sewer Authority

By: _____
George W. Riedesel, P.E., Manager

Cc:     Authority Board
        Twp. Supervisors
        Wm. Steff, S.T.S.A.
        Fish & Boat Commission

**MSA-MT 2979**

# CTE ENGINEERS

**CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.**

155 West 8th Street

October 14, 2004

Erie, Pennsylvania

Mr. George Riedesel, P.E.
Millcreek Township Sewer Authority
3608 West 26th Street
Erie, PA 16506

Phone: (814) 453 4394

Fax: (814) 455 6596

Dear Mr. Riedesel:

Enclosed please find a table in which we have tabulated the estimated volumes of water bypassed at the Kearsarge pump station at the September 9, 2004 overflow event. That event resulted from a major storm estimated at between a 30-year and a 70-year frequency event resulting from rainfall intensities recorded at four different stations at between 4-inches and 5-inches over twelve hours. The average or 4-1/2-inches over that time frame is given by NOAA to have a return frequency of 50 years.

The overflows summarized in the table included a volume of water between 4:00 a.m. and 8:00 a.m. which is attributed to the backup of Walnut Creek into some manholes which were open for construction purposes. The backup was caused by a fallen tree and a collapsed abandoned bridge abutment.

During the overflow event portable pumps were deployed to three different locations in the Millcreek system where they pumped from manholes into surface waters. Their estimated volumes are also included in the table, both as a total in the main table and as individual totals in the bottom.

The overflow at the station continued for approximately 23 hours beginning at 1:30 a.m. on the 9th. The overflow finally was completely closed at 12:10 a.m. on the 10th.

The stream backup and flooding to the fence of the pump station was first noted at about 4:30 a.m. and the stream was noted to be receding at about 6:00 a.m. The overflow pumps were deployed beginning at 3:00 a.m. and they are believed to have operated continually for the next eight hours until 11:00 a.m. They then operated intermittently on an off/on basis until 6:00 p.m. when they were collected and returned to the pump station. The pumps were deployed first to 52nd & Zimmerly and then to Church & Patton and then finally to Larchmont during the period 3:00 a.m. to 4:30 a.m.

MSA-MT 2980
PL APP

CTE ENGINEERS

**CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.**

Mr. George Riedesel, P.E.
October 14, 2004
Page 2

The volume of water estimated to have been bypassed at the Kearsarge pump station equaled 5.2 MG over the 23-hour period. The volume of water estimated to have been discharged from the system pumps equaled 813,000 which included 378,000 gallons at 52nd & Zimmerly; 129,000gallons at Church & Patton; and 306,000 gallons at Larchmont.

Very truly yours,

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Gerald C. Allender, P.E.
Senior Associate

GCA:lb

Enclosure

KEARSARGE PUMP STATION
SEPTEMBER 9, 2004 BYPASS FLOWS

| Date | Time | Metered Flows (GPM) | Corrected Flows (GPM) | Discharge Pressure (psi) | Forward Flows (GPM) | Bypass Flow | | Bypass Volume gallon x 10⁻³ | |
|------|------|------|------|------|------|------|------|------|------|
| | | | | | | GPM | Δt | PS | Manhole |
| 9/9/2004 | 1:30 a.m. | 4,000 | 5,300 | | | | | 0 | |
| | 2:30 a.m. | 5,400 | 7,200 | 40 | 3,400 | 3,800 | 1 hr. | | |
| | 3:30 a.m. | 5,400 | 7,200 | | 3,400 | | 1 hr. | 456 | 36 |
| | 4:30 a.m. | 6,700 | 8,900 | 32 | 2,000 | 6,900 | 1 hr. | 414 | 48 |
| | 7:30 a.m. | 6,500 | 8,800 | | 2,000 | 6,800 | 3 hr. | | |
| | 9:30 a.m. | 6,400 | 8,800 | | 2,000 | 6,800 | 2 hr. | 2,040 | |
| | 10:30 a.m. | 6,200 | 8,300 | | 2,000 | 6,300 | 1 hr. | 378 | 504 |
| | 11:00 a.m. | 4,500 | 6,000 | | 2,000 | 4,000 | 1/2 hr. | 120 | |
| | 3:00 p.m. | 4,500 | 6,000 | | 2,000 | 4,000 | 4 hr. | 960 | |
| | 4:00 p.m. | 4,000 | 5,400 | | 2,000 | 3,400 | 1 hr. | 204 | |
| | 4:30 p.m. | 3,500 | 4,700 | | 2,000 | 2,700 | 1/2 hr. | 81 | |
| | 6:00 p.m. | 3,500 | 4,700 | (36) + | 2,800 | 1,900 | 1-1/2 hr. | | 225 |
| | 8:00 p.m. | 3,500 | 4,700 | | | 1,900 | 2 hr. | 396 | |
| | 9:00 p.m. | 3,000 | 4,050 | (32) + | 3,400 | 650 | 1 hr. | | |
| | 12:00 a.m. | 3,000 | 4,050 | | 3,400 | 650 | 3 hr. | 156 | |
| | 12:10 a.m. | | | | 0 | | | | |
| TOTAL | | | | | | | | 5,208 | 813 |

+  Estimated based on past history with overflows (i.e.) 13 turns

| Manhole (MH) Bypass | Rate (gpm) | Hours Full-time | Hours Part-time | Gallon Total |
|------|------|------|------|------|
| 52nd & Zimmerly | 600 | 8 | 7.5 | 378,000 |
| Patton & Church | 200 | 7 | 7.5 | 129,000 |
| Larchmont | 600 | 6 | 7.5 | 306,000 |

# CTE ENGINEERS

**CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.**

155 West 8th Street

October 14, 2004

Erie, Pennsylvania

Mr. George Riedesel, P.E.
Millcreek Township Sewer Authority
3608 West 26th Street
Erie, PA 16506

Phone: (814) 453 4394

Dear Mr. Riedesel:

Fax: (814) 455 6596

On September 17, 2004, there was an overflow event at the Kearsarge pump
station as a result of rainfall beginning that morning.

Enclosed please find a table completed for that event in which pump flows
are given along with an estimated forward flow based upon force main
pressures. Forward flow goes to the Erie system and to the Erie Wastewater
Treatment Plant. The difference between forward flow and pump flow
equals those flows bypassed. Flows in gallons are given in the final two
columns. The gallons given for each time interval indicated is shown in the
first of those two columns. The summary of those volumes given at the
bottom of the page of 1,914,000 gallons is the volume of flow estimated to
have been discharged through the overflow to Walnut Creek.

Very truly yours,

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Gerald C. Allender, P.E.
Senior Associate

GCA:lb

Enclosure

KEARSARGE PUMP STATION
SEPTEMBER 17, 2004 OVERFLOW
BYPASS/PUMPING

| Time | Meter | 1.35 x Meter | Interval | Pressure | Forward Flow | Bypass gallon x $10^{-3}$ Δ | Σ |
|---|---|---|---|---|---|---|---|
| 10:00 a.m. | 3,700 | 5,000 | | | | | |
| 10:25 a.m. | 3,800 | 5,130 | 0.5 | 40 | 3,700 | 43 | |
| | 5,500 | 7,425 | | | | | |
| 11:00 a.m. | 4,800 | 6,480 | 0.5 | 41 | 3,700 | 99 | |
| 12:00 p.m. | 4,500 | 6,075 | 1.0 | 38 | 3,600 | 148 | |
| 1:00 p.m. | 4,000 | 5,400 | 1.0 | 38 | 3,600 | 108 | |
| 2:00 p.m. | 3,500 | 4,725 | 1.0 | | | | |
| 3:00 p.m. | 3,500 | 4,725 | 1.0 | | | | |
| 3.30 p.m. | 3,500 | 4,725 | 0.5 | 43 | 3,700 | 168 | |
| | 4,000 | 5,400 | 0.5 | | | | |
| 4:00 p.m. | 4,000 | 5,400 | | 30 | 2,000 | 102 | |
| 5:00 p.m. | 5,200 | 7,020 | 1.0 | 34 | 2,600 | 265 | |
| 6:00 p.m. | 5,200 | 7,020 | 1.0 | 30 | 2,000 | 301 | |
| 7:00 p.m. | 5,200 | 7,020 | 1.0 | 32 | 2,300 | | |
| 8:00 p.m. | 5,000 | 6,750 | 1.0 | 27 | 1,600 | 309 | |
| 8:30 p.m. | 4,500 | 6,075 | 0.5 | 33 | 2,600 | 142 | |
| 9:00 p.m. | 4,200 | 5,670 | 0.5 | 37 | 3,400 | 68 | |
| 10:00 p.m. | 3,800 | 5,130 | 1.0 | 41 | 3,700 | 86 | |
| 11:00 p.m. | 3,200 | 4,320 | 1.0 | 44 | 3,900 | 25 | |
| 11:30 p.m. | Bypass Off | | | | | | |
| **TOTAL** | | | | | | | 1,914 |

Bypass = 1,914,000 gallons

# MILLCREEK TOWNSHIP SEWER AUTHORITY

MILLCREEK MUNICIPAL BUILDING
3608 WEST 26TH STREET
ERIE, PENNSYLVANIA 16506

Phone (814) 835-6721                                                    Fax (814) 835-6615

August 13, 2004

Mr. Anthony C. Oprendek, Compliance Specialist
Water Management
PA Dept. of Environmental Protection
230 Chestnut Street
Meadville PA  16335-3481

RE:    Kearsarge Area Sanitary Sewer Overflows

Dear Mr. Oprendek:

On July 16 and July 31, 2004 the Millcreek Township Operations Superintendent used his best judgment to prevent the flooding of basements and opened the Kearsarge bypass. Engineering Reports have been attached for documentation. Please note that on the July 31 event, the system was pumped at two other locations, 51st and Zimmerly and the Patton/Pershing areas. All calls for both events were made in a timely fashion.

In accordance with the most recent COA, we have enclosed check # 110360 in the amount of $2,500 for the July 16th event and $7,500 for the July 31st event for a total of $10,000, made payable to the "Commonwealth of Pennsylvania Clean Water Fund".

Very truly yours,
Millcreek Township Sewer Authority

By: _____
George W. Riedesel, P.E., Manager

Cc:    Authority Board
Township Supervisors
William Steff, S.T.S.A.

MSA-MT 2985

PL APP
7

# CTE ENGINEERS

## CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

155 West 8th Street

Erie, Pennsylvania

Phone: (814) 453 4394

Fax: (814) 455 6596

August 12, 2004

Millcreek Township Sewer Authority
3608 West 26th Street
Erie, PA 16506

Re:    July 16, 2004 Overflow Event
       Kearsarge Pump Station

Ladies/Gentlemen:

Please be advised that an overflow event occurred at the Kearsarge pump station on July 16, 2004. The writer was advised of said overflow at approximately 5:20 a.m. When I arrived at the station an hour later the bypass had been turned off.

In conversations with Mr. Bridger he indicated that the bypass was opened for a total of seven minutes and had been opened seven turns. From the circular chart at 5:40 a.m., which would have been the period the bypass was opened, there was a discharge from the station of about 4,800 gpm. Based on previous and later events at 4,800 gpm, we anticipate approximately 1,500 gpm would have been discharging through the bypass with another 3,300 gpm passed forward to the Erie WWTP. Seven minutes at 1,500 gpm amounts to 10,500 gallons of wastewater bypass to Walnut Creek. Since we were not present for the actual event, the estimated flow forward is not dependent upon any knowledge of force main pressures and is based solely on past observations.

In interviewing Mr. Bridger, he indicated that the wet well level had risen approximately a foot above the lower landing prior to opening the bypass. That was confirmed by the water mark on the wall which was still quite evident at the time of our inspection.

There is little other information regarding this bypass at this time.

Very truly yours,

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Gerald C. Allender, P.E.
Senior Associate

GCA:lb

# CTE ENGINEERS

**CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.**

155 West 8th Street

Erie, Pennsylvania

Phone: (814) 453 4394

Fax: (814) 455 6596

August 12, 2004

Millcreek Township Sewer Authority
3608 West 26th Street
Erie, PA 16506

Attn:   George Riedesel, Manager

Ladies/Gentlemen:

On Saturday, July 31, 2004, there was an overflow at the Kearsarge pump station with a total duration of 15 hours and 37 minutes. The rainfall on July 31st was preceded by approximately .5-inch rain from 3:00 p.m. until 11:00 p.m. on July 30th. From 11:00 p.m. to 5:30 a.m. on July 31st another 2-inches of rainfall fell, most of it during two one-hour periods, the last period ending around 5:00 a.m. The first overflow began at 5:15 a.m. with the wet well level above the third landing up. It continued until about 1:22 p.m. at which time the bypass was shutoff until a third storm caused flows to again increase and the bypass was reopened at 7:00 p.m. on July 31st and was finally shut off at 2:30 a.m. on August 1st.

During the period of 5:30 a.m., July 31st until 3:00 p.m., approximately ½-inch rain had fallen, but between 3:00 p.m. and 6:00 p.m. there was another major rain event between 5:00 and 6:00 when another 1-1/4-inch fell (this storm was localized and radar showed it followed Interstate 90 and did not impact the lake plain). Intensities as high as 2-inches/hr. were indicated at some locations south of the Interstate. During the latter overflow event there was only an additional 1/8-inch of rainfall.

The pump flow was monitored throughout the period as was the pressure on the discharge side of the pipe which is used to estimate the amount of the flow going forward to the Erie WWTP. Flow going forward averaged between 3,400 gpm and 3,100 gpm. Flows pumped during the overflow periods ranged as high as 6,200 gpm after correction for the instrument error. The enclosed figure indicates the total flow pumped, the amount pumped forward, the amount overflowed, and the cumulative overflow amounts. The flow bypassed is equal to flow pumped minus flow sent forward to Erie. The cumulative total by the end of the bypass equaled 1.8 MG based on corrected observed flows. Although we are still assessing the accuracy of the

**CTE** *ENGINEERS*

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Millcreek Township Sewer Authority
August 12, 2004
Page 2

information, this value will not be any larger. It is conceivable that it could be somewhat less (150,000 gallons). We will not have that information for approximately one week.

During the later storm rainfall event, sewers tributary to the Kearsarge pump stations surcharged along Zimmerly Road and along Pershing Road. This caused the need to set up bypass pumping in two manholes in addition to the overflow at the pump station. The overflow at 56nd and Zimmerly operated between 7:45 p.m. and 9:55 p.m. at a rate of 450 gpm which equaled a total volume of 58,500 gallons. The bypass at Pershing was accomplished using a 150 gpm pump. It was in operation from 8:50 p.m. to 11:00 p.m. and the total volume pumped is estimated at 19,500 gallons.

This concludes our assessment of the overflow event. Once we have confirmed the actual pumping rate to the best of our ability, we will provide any corrections. We are faced with the problem that two influent meters found in the tributary sewers were out of operation for a good portion of the storm, particularly the later one. We are attempting to reconstruct that data.

Very truly yours,

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

*Gerald C Allender*

Gerald C. Allender, P.E.
Senior Associate

GCA:lb



Rain Event 7/31/2004
Fwd Pump Rate calculated using Discharge Pressure

MSA-MT 2989     PL APP
11

# CTE ENGINEERS

## CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

155 West 8th Street

Erie, Pennsylvania

Phone: (814) 453 4394

Fax: (814) 455 6596

August 12, 2004

Millcreek Township Sewer Authority
3608 West 26th Street
Erie, PA 16506

Attn:   George Riedesel, Manager

Ladies/Gentlemen:

On Saturday, July 31, 2004, there was an overflow at the Kearsarge pump station with a total duration of 15 hours and 37 minutes. The rainfall on July 31st was preceded by approximately .5-inch rain from 3:00 p.m. until 11:00 p.m. on July 30th. From 11:00 p.m. to 5:30 a.m. on July 31st another 2-inches of rainfall fell, most of it during two one-hour periods, the last period ending around 5:00 a.m. The first overflow began at 5:15 a.m. with the wet well level above the third landing up. It continued until about 1:22 p.m. at which time the bypass was shutoff until a third storm caused flows to again increase and the bypass was reopened at 7:00 p.m. on July 31st and was finally shut off at 2:30 a.m. on August 1st.

During the period of 5:30 a.m., July 31st until 3:00 p.m., approximately ½-inch rain had fallen, but between 3:00 p.m. and 6:00 p.m. there was another major rain event between 5:00 and 6:00 when another 1-1/4-inch fell (this storm was localized and radar showed it followed Interstate 90 and did not impact the lake plain). Intensities as high as 2-inches/hr. were indicated at some locations south of the Interstate. During the latter overflow event there was only an additional 1/8-inch of rainfall.

The pump flow was monitored throughout the period as was the pressure on the discharge side of the pipe which is used to estimate the amount of the flow going forward to the Erie WWTP. Flow going forward averaged between 3,400 gpm and 3,100 gpm. Flows pumped during the overflow periods ranged as high as 6,200 gpm after correction for the instrument error. The enclosed figure indicates the total flow pumped, the amount pumped forward, the amount overflowed, and the cumulative overflow amounts. The flow bypassed is equal to flow pumped minus flow sent forward to Erie. The cumulative total by the end of the bypass equaled 1.8 MG based on corrected observed flows. Although we are still assessing the accuracy of the

MSA-MT 2990   PL APP
12

CTE *ENGINEERS*

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Millcreek Township Sewer Authority
August 12, 2004
Page 2

information, this value will not be any larger. It is conceivable that it could be somewhat less (150,000 gallons). We will not have that information for approximately one week.

During the later storm rainfall event, sewers tributary to the Kearsarge pump stations surcharged along Zimmerly Road and along Pershing Road. This caused the need to set up bypass pumping in two manholes in addition to the overflow at the pump station. The overflow at 56nd and Zimmerly operated between 7:45 p.m. and 9:55 p.m. at a rate of 450 gpm which equaled a total volume of 58,500 gallons. The bypass at Pershing was accomplished using a 150 gpm pump. It was in operation from 8:50 p.m. to 11:00 p.m. and the total volume pumped is estimated at 19,500 gallons.

This concludes our assessment of the overflow event. Once we have confirmed the actual pumping rate to the best of our ability, we will provide any corrections. We are faced with the problem that two influent meters found in the tributary sewers were out of operation for a good portion of the storm, particularly the later one. We are attempting to reconstruct that data.

Very truly yours,

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Gerald C. Allender, P.E.
Senior Associate

GCA:lb



Rain Event 7/31/2004

Fwd Pump Rate calculated using Discharge Pressure

# MILLCREEK TOWNSHIP SEWER AUTHORITY

MILLCREEK MUNICIPAL BUILDING
3608 WEST 26TH STREET
ERIE, PENNSYLVANIA 16506

Phone (814) 835-6721

Fax (814) 835-6615

June 14, 2004

Mr. Anthony C. Oprendek, Compliance Specialist
Water Management
PA Dept. of Environmental Protection
230 Chestnut Street
Meadville PA  16335-3481

RE:    Kearsarge Area Sanitary Sewer Overflow

Dear Mr. Oprendek:

On May 21, 2004 the Millcreek Township Operations Superintendent used his best judgment to prevent the flooding of basements and opened the Kearsarge bypass for a period of 1 hour and 25 minutes, resulting in an estimated 75,000 gallons of sewage being discharged.  An engineering report and chart has been attached for documentation. No other discharges occurred.

In accordance with the most recent COA, we have enclosed a check for $2,500.00 made payable to the "Commonwealth of Pennsylvania Clean Water Fund".

Very truly yours,
Millcreek Township Sewer Authority

By: _____

Cc:    Authority Board
Township Supervisors
William Steff, S.T.S.A.

**MSA-MT 2996**    PL APP
15

# CTE ENGINEERS

## CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

155 West 8th Street

Erie, Pennsylvania 16501

Phone: (814) 453 4394

Fax: (814) 455 6596

June 14, 2004

Mr. George Riedesel, P.E.
Millcreek Township Sewer Authority
3608 West 26th Street
Erie, PA 16506

Dear Mr. Riedesel:

This letter is to report on the overflow event that occurred at the Kearsarge pump station on May 21, 2004, beginning at 8:00 p.m. and finishing at 9:25 p.m., a total period of 1 hour and 25 minutes. At 8:00 p.m. Mr. Gary Snyder of the township maintenance personnel opened the overflow six full turns and observed that the wet well had surcharged above the second landing. Later observations indicated that it had surcharged to 1'3" above the second landing. At the time three pumps were operating and pumping at 2,800 gpm recorded or 3,400 corrected. Mr. Snyder had recorded the pump discharge pressures at 44 psi and the suction pressures at 6 psi. Once the bypass was opened, the discharge increased to 4,400 gpm corrected. We estimate based on the discharge pressures that approximately 1,000 gpm of that volume was being bypassed. The flow continued fairly constant (as the wet well began to drop) for a period of approximately 70 minutes at which time the flows began to decrease reaching 3,600 gpm of which 600 gpm was believed to be being bypassed. This lasted for approximately 15 minutes at which time the pumps began to slow as the wet well surcharge reached the operating level of the pump station. The overflow valve was then closed.

Once the overflow valve was closed, pumps #1 and #2 began to increase in speed to reach 100% but never reached the level that required #3 pump to come on. Flows from the station equaled 3,250 gpm corrected but the discharge pressure increased to 47 psi. Pumps continued to operate at 100% losing and gaining wet well capacity for a period of about 35 minutes or until 10:00 p.m. when they once again began to reduce speed as the inflow began to drop.

AN AECOM COMPANY

**CTE** *ENGINEERS*

**CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.**

Mr. George Riedesel, P.E.
June 14, 2004
Page 2

The total length of time for the bypass was 1 hour 25 minutes. It is estimated during that period that 283,000 gallons of waste were pumped forward to the Erie Wastewater Treatment Plant but that another 75,000 gallons was discharged to Walnut Creek. Total flows pumped during that period were 362,000 gallons. Total overflow volume as stated above was estimated at 75,000 gallons.

For your information the conceptual increase in flow capacity of the station's pumps to 4,500 gpm would have moved this entire overflow event forward to the Erie Wastewater Treatment Plant without the need to utilize the conceptualized overflow tank. The storm event had a peak intensity of about 0.2 inches per hour. It did follow an extended period of rainfall saturating the soil. We conclude that this storm's intensity did not reach the base storm event of .35 inches per hour. We had previously concluded that the base storm induced flow rates would equal 4,900 gpm. This storm's influent flow rate was estimated at 3,925 gpm during the period 8:10 p.m. to 8:50 p.m. (forty minutes). A copy of the flow chart for the overflow event is enclosed.

Very truly yours,

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Gerald C. Allender, P.E.
Project Manager

GCA:lb

Enclosure

**MSA-MT 2998**



# MILLCREEK TOWNSHIP SEWER AUTHORITY

MILLCREEK MUNICIPAL BUILDING
3608 WEST 26TH STREET
ERIE, PENNSYLVANIA 16506

Phone (814) 835-6721

Fax (814) 835-6615

April 13, 2004

Mr. Anthony c. Oprendek, Compliance Specialist
Water Management
PA Dept. of Environmental Protection
230 Chestnut Street
Meadville PA  16335-3481

RE:    Kearsarge Area Sanitary Sewer Overflow

Dear Mr. Oprendek:

On March 20, 2004 the Millcreek Township Operations Superintendent used his best judgment to prevent the flooding of basements and opened the Kearsarge bypass for a period of 3 hours and 26 minutes, resulting in an estimated 231,000 gallons of sewage being discharged.  An engineering report and chart has been attached for documentation.  No other discharges occurred.

In accordance with the most recent COA, we have enclosed a check for $2,500.00 made payable to the "Commonwealth of Pennsylvania Clean Water Fund".

Very truly yours,
Millcreek Township Sewer Authority

By: _____
George W. Riedesel, P.E., Manager

Cc:    Authority Board
Township Supervisors
William Steff, S.T.S.A.

# CTE ENGINEERS

**CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.**

155 West 8th Street

March 24, 2004

Erie, Pennsylvania 16501

Phone: (814) 453 4394

Mr. George Riedesel, P.E.
Millcreek Township Sewer Authority
3608 West 26th Street
Erie, PA 16506

Dear Mr. Riedesel:

Fax: (814) 455 6596

We wish to outline the sequence of events that occurred at the Kearsarge
pump station on Saturday, March 20, 2004, which resulted in a bypass for a
period of 3.5 hours. There had been a substantial accumulation of snow
remaining on the ground when the rainfall started in the early morning hours.
The writer made two visits to the station, one before noon and one after 1:00
p.m. to observe the station operation. The light to moderate rain stopped
between 12:30 and 1:00 p.m. Flows at the station were observed to be
approximately 2,000 gpm on the meter at noon and 2,150 gpm at 1:00 p.m.
Pumps were running at 65% at noon and at 70% at 1:00 p.m. (both pumps #1
and #2 were running). At 2:45 p.m. heavier rain started with thunder. The
rain continued with similar intensity until approximately 3:30 p.m. when
moderated with just a light rain at 4:00 p.m. At that time the writer was
contacted by the Millcreek Township police who relayed a message from
Dick Bridger, your maintenance supervisor, that the pumps at the pump
station did not have sufficient capacity to keep up with the influent flows.
The writer went to the station arriving at 4:15 p.m. and along with Mr.
Bridger continued to monitor the operation.

The wet well level was at the second step above the lower landing when the
writer arrived and it continued to rise as the influent flows exceeded the
pumping capacities (pumps #1, #2, and #3 were operating). The wet well
level rose until 5:14 p.m. when the bypass was opened. At that time the
water level had passed the second landing and was approximately three steps
above that landing.

Pumping levels recorded on the station meter rose from approximately 3,200
gpm to 3,800 gpm (it should be noted that drawdown tests completed on
March 10th had shown this newer meter installed in February to be reading
low). The wet well began to lower and continued to slowly drawdown for the
next two hours. During that time the writer observed the wet well levels and

**MSA-MT 3004**

# CTE ENGINEERS

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Mr. George Riedesel, P.E.
March 24, 2004
Page 2

noted the times along with the flows with the intention of later judging how much the influent flows had exceeded the pumps' capacities. Once the wet well level had reached approximately 2-1/2 ft. above the normal station operating level, the writer departed. At that time three Millcreek employees including Mr. Gary Snyder were on site to monitor the station operation (Mr. Bridger had left). When the writer returned at approximately 9:40 p.m. five Millcreek employees were on site, two of which had been addressing problems elsewhere in the system. Mr. Snyder advised the writer that he closed the bypass at 8:40 p.m. and the station continued to run utilizing only pumps #1 and #2 except for approximately 25 minutes when pump #3 was required to maintain the wet well level immediately after closing the bypass.

The circular chart recording the flows interpreted by the meter had malfunctioned. For approximately two hours the chart moved slowly and as a result the data in that time frame was recorded within an approximate 20 minute interval on the chart. The chart did not begin moving again until levels dropped close to prestorm conditions. At that time the meter itself began to malfunction because the signal was lost most likely due to entrained air and it was not discovered that the meter had stopped moving until sometime after that at about the time the bypass was closed. At that time Mr. Snyder moved the chart to the proper time. Thus, on the enclosed chart, the time frame before and up to the beginning of the bypass is correct and the time following the closing of the bypass is likewise correct. We have enclosed a separate chart that we have constructed based first of all on the writer's observation and discussions with Mr. Snyder.

For approximately one hour after the flows first returned to normal and the bypass was closed, we do not have a good estimate of the volume of flows that went through the bypass. We have estimated those values at the same level as were calculated during the observed flow periods of the bypass to be conservative. Those flows averaged 3,650 by the meter reading.

It also must be understood that the flows recorded, those of the meter, were low as determined by the tests previously referenced. The flows found on the charts have been adjusted upward. Flows of 3,000 actually have an adjusted rate of 3,750, flows of 3,650 are adjusted to 4,550 gpm.

The amount of flow that continued to pass forward to the Erie WWTP after opening the bypass was calculated based upon the head observed on the system. First the bypass was only opened 2-1/2 turns to limit the amount of

**CTE** ENGINEERS

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Mr. George Riedesel, P.E.
March 24, 2004
Page 3

flow that would discharge. The system pressures were noted to drop from 50 lbs. to 45.5 psi. From previous operations 45.5 psi system is equivalent to an adjusted flow of 3,450 gpm being passed through the force main to the City sewers. At a pump station flow of 4,550 gpm during the time of bypass the difference of 1,100 gpm would equal the amount of bypass. If that volume of bypass was estimated to have continued for the entire 3-1/2 hours (which as stated before is conservative because of the lack of pressure information during the one-hour period when flows had returned to normal at this station) the resulting volume of bypass equals 231,000 gallons.

We hope this discussion provides sufficient information for you to report to the PA DEP.

Very truly yours,

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Gerald C. Allender, P.E.
Project Manager

GCA:lb





3/20/04  Reconstructed
Chart

**From the desk**
**of**
# Gary J. Snyder
**Assistant Operations Superintendent**

**March 20, 2004**


**To: Mr. George Riedesel**

**Re: Kearsarge bypass**

 As per your instructions, the following entities were contacted on the order of Dick Bridger in conjunction with the bypass at Kearsarge station:

1) DEP – 5:15 p.m. – call was returned at 5:25
2) Erie County Health Dept – 5:20 p.m. – no response
3) Millcreek Information Center – 5:22 p.m. – call was returned at 5:30 by Bob Mitchell, who was going to notify PEMA at that time

At 8:30 p.m. Mr. Mitchell called for an update in order to notify PEMA. The bypass was shut down at 8:40 p.m., and Mr. Mitchell was contacted to forward the information to PEMA. An engineer from CT&E will be in contact with your office regarding the rate and total amount of bypass.


Gary J. Snyder

**Cc: Dick Bridger**

**MSA-MT 3009**   PL APP
25

# MILLCREEK TOWNSHIP SEWER AUTHORITY

MILLCREEK MUNICIPAL BUILDING
3608 WEST 26TH STREET
ERIE, PENNSYLVANIA 16506

Phone (814) 835-6721

Fax (814) 835-6615

December 9, 2003

Mr. Anthony C. Oprendek, Compliance Specialist
Water Management
PA Dept. of Environmental Protection
230 Chestnut Street
Meadville PA  16335-3481

RE:     Kearsarge Area Sanitary Sewer Overflow

Dear Mr. Oprendek:

On November 28, 2003 the Millcreek Township Operations superintendent used his best judgment to prevent the flooding of basements and opened the Kearsarge bypass for a period of 7 minutes resulting in an estimated 14,000 gallons of sewage being discharged.  An engineering report and chart has been attached for documentation.  No other discharges occurred.

In accordance with the most recent COA, we have enclosed a check for $2,500.00 made payable to the "Commonwealth of Pennsylvania Clean Water Fund".

We note that the event occurred on the Friday after Thanksgiving and Township personnel had trouble making the proper call notification contacts.  It is probable that the PA DEP was not notified of this event, however, the Erie County Health Department was notified.  We will continue to work on improving the notification procedure.

Very truly yours,
Millcreek Township Sewer Authority

By: _____
George W. Riedesel, P.E., Manager

Cc:     Authority Board
Township Supervisors
William Steff, S.T.S.A.

**MSA-MT 3010**

# CTE ENGINEERS

## CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

155 West 8th Street

December 4, 2003

Erie, Pennsylvania

Mr. George W. Riedesel, P.E., Manager
Millcreek Township Sewer Authority
3608 W. 26th Street
Erie, PA 16506

Phone: (814) 453 4394

Re: **Kearsarge Sewage Pump Station**
    **November 28, 2003 Overflow**

Fax: (814) 455 6596

Dear Mr. Riedesel:

On Friday, November 28, 2003, a representative of Consoer Townsend Envirodyne Engineers, Inc. was called to the Millcreek Township Sewer Authority's Kearsarge Sewage Pump Station by the maintenance staff. As you may know, the rains were persistent throughout Thursday and Friday and the station was receiving heavy inflow. In addition, we were informed upon arrival that the overflow bypass was opened for a brief time period, approximated by the maintenance staff to be 3 minutes in duration at 10:45 p.m. However, based on the information illustrated on the enclosed flow chart for the station, the time frame appears to be closer to 7 minutes with an average incremental flow of 2,000 gpm which results in an estimated discharge of 14,000 gallons.

Once we have completed a surcharge map of the tributary sewer system, we will chart the wet well level that causes basement flooding. That information should prevent any premature overflows.

Please call our office if you have any questions.

Very truly yours,

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Craig H. Palmer, P.E.
Project Engineer

chp

Enclosure

**MSA-MT 3011**

cc:  Gerald C. Allender, P.E., CTE Project Manager

AN AECOM COMPANY

PL APP
27



**MSA-MT 3012**

# MILLCREEK TOWNSHIP SEWER AUTHORITY

MILLCREEK MUNICIPAL BUILDING
3608 WEST 26TH STREET
ERIE, PENNSYLVANIA 16506

Phone (814) 835-6721                                                              Fax (814) 835-6615

October 14, 2003

Mr. Anthony Oprendek
Pennsylvania DEP
230 Chestnut Street
Meadville PA 16335

RE:    Kearsarge Pump Station By-pass

Dear Mr. Oprendek:

This communication is the required follow-up to the bypassing of the Kearsarge sewage pump station which occurred on September 29, 2003 and which you had previously been notified by fax.

The by-pass was initiated under the direction of Richard Bridger, the Township Sewer and Water Superintendent. It was necessary to do this as well as pump from West 51st Street and Zimmerly to prevent basement flooding. The series of events that lead up to this included the rain events attributed to hurricane Isabel which saturated the ground and raised the water table and finally an intense localized storm which dumped a purported 1.85" of rain in a one hour period on Monday morning on Kearsarge and Summit Township.

Our Engineering Consultant, CTE Engineers, was present the entire time of the bypassing and authored the attached report, which will serve as the calculation of the amounts by-passed. The Report shows the following flows estimated to be by-passed:

| | | |
|---|---|---|
| From the Kearsarge P.S. | = | 1,019,780 gallons |
| From 51st & Zimmerly | = | 108,000 gallons |
| Estimated Total | = | 1,127,780 gallons |

In accordance with the current Consent Order and Agreement, we have enclosed a check for $5,000.

Please advise this writer if there are any questions. There were no other sewage discharges for the month of September 2003.

Very truly yours,
Millcreek Township Sewer Authority

By: _____
George W. Riedesel, P.E., Manager

Cc:    M.T.S.A.
       Mlk. Supervisors
       Evan Adair
       S.T.S.A.

**MSA-MT 3013**

# CTE ENGINEERS

**CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.**

155 West 8th Street

October 6, 2003

Erie, Pennsylvania

Mr. George Riedesel, P.E.
Millcreek Township Sewer Authority
3608 West 26th Street
Erie, PA 16506

Phone: (814) 453 4394

Dear Mr. Riedesel:

Fax: (814) 455 6596

In response to your request we have assessed the overflow that occurred from the Kearsarge pump station on Monday, September 29, 2003. That overflow began at approximately 8:20 a.m. and was finally discontinued at 3:15 p.m. The black graph on the attached figure is a representation of the volumes of flow discharged from the pump station during those periods. The total flow represented by that graph did not pass through the bypass. A good portion passed through the force main and entered the downstream sewers reaching the Erie Wastewater Treatment Plant.

We estimated the amount of flow going forward in the force main by measuring the discharge pressure of the pumps which are indicative of the amount of flow that passes through the full length of the force main. The nomograph used to make that estimate had been calculated previously to judge and determine the friction factor of the force main. It was adjusted following this incident since pumped flows over 4,000 gpm had not previously been observed being discharged through the pipeline because at those times the siphon was fully active. The estimated flows going forward are represented in green in the attached figure.

The discharge was opened to approximately thirteen turns at 8:20 a.m. and then throughout the day was closed and reopened at various intervals to determine if the discharge could be stopped (see nomenclature at the top of the attached). Toward the end of the overflow period the overflow valve turns were reduced until it was completely shut off. The graph presented demonstrates the times that the overflow was turned off to determine if it could be ceased. That determination was made by observing the wet well and noting whether the pumps were capable of keeping up with the influent flows (wet well levels are represented in red on the attached figure). Three such attempts were made until the bypass discharge was finally terminated at

CTE ENGINEERS

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Mr. George Riedesel, P.E.
October 6, 2003
Page 2

approximately 3:15 p.m. The unsuccessful attempts at stopping the bypass occurred at 12:00 noon, 1:45 p.m., and at 2:30 p.m.

From the discharge pressures noted at the pump station it is estimated that between 4,000 and 3,600 gpm of the flows pumped went forward to the wastewater treatment plant, depending upon the time of day and the number of turns made on the overflow valve. The total amount of the overflow is estimated to have averaged 2,600 gpm. We estimated approximately 2,439,780 gallons were pumped by the station during periods when the overflow was active. Of that amount between 1,440,000 and 1,420,000 gallons were discharged forward to the wastewater treatment plant and between 999,780 and 1,019,780 gallons were discharged through the overflow.

There was a second overflow. During the same approximate time wastes were pumped from the manhole at 52nd and Zimmerly, also into Walnut Creek. This operation began at 8:30 a.m. and was stopped at 12:30 p.m. The suction varied between 1 foot and 9.6 ft. and during the last hour the pump was sucking air periodically because the water level was at or slightly below the end of the suction pipe.

A 4-inch trash pump was utilized and upon checking with a contractor, it was determined that such a pump will discharge between 400 and 450 gpm with a negative suction of approximately 6 ft. Pumping at this rate for a period of four hours yields a total pumpage of 108,000 gallons.

We have been unable to determine for sure why the siphon did not initiate. The system differed only in the fact that a new vacuum air release valve had been installed at the high point in the force main. This device should have allowed the siphon to initiate much more dependably than in the past when the old unit had been plugged and nonfunctional. Once the flow decreased to below that necessary to maintain the siphon, it should allow air to enter. Once the flows had passed their peak and were beginning to fall off, we instructed the plant personnel to close the air/vacuum release valve so that it would function more in line of the way it had previously functioned. The siphon was still not initiated during any of the two times that the bypass was stopped to determine if it would. However, at the very end of the storm, it was noticed that the siphon did initiate. This is observable because flows will increase beyond that of what is the normal capacity of the pumps and the system pressure will drop indicating that there is a suction being applied to

CTE *ENGINEERS*

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Mr. George Riedesel, P.E.
October 6, 2003
Page 3

the effluent side of the pumps. At the same time it was noted that the pumps began to cycle up and down because of this increased flow (i.e. flows would reach the levels necessary to initiate the siphon and then decrease below the levels necessary to maintain it).

However, on Wednesday evening following a rainfall, it was again noted that the wet well was beginning to fill and an alarm had been sounded. Although no bypass was necessary, the wet well did fill to the first landing elevation 302.5 and the siphon did not initiate even though flows reached levels where the siphon had initiated previously.

We can only suggest at this time that the vacuum relief valve be replaced simply with an air release valve. This will allow any entrapped air to be released but conversely when the siphon is broken and the waters begin to recede, air will not be allowed back into the pipe. This then may allow the siphon to initiate itself more quickly when flows increase. That could very well be the situation that is occurring but we are by no means certain.

We hope this report provides the information that is necessary. We did find that your personnel made every attempt to minimize the amount of waste that was being bypassed with the purpose primarily being to prevent problems in households.

Very truly yours,

CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

Gerald C. Allender, P.E.
Project Manager

GCA:lb

Enclosure

**MSA-MT 3016**



**CTE ENGINEERS**
CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.

| PROJECT  MTSA | JOB NO. |
|---|---|
| SUBJECT  Kearsarge P.S. flows  9/29/03 | SHEET |
| DESIGNED | DATE | CHECKED | DATE |

# MILLCREEK TOWNSHIP SEWER AUTHORITY

### MILLCREEK MUNICIPAL BUILDING
### 3608 WEST 26TH STREET
### ERIE, PENNSYLVANIA 16506

Phone (814) 835-6721

Fax (814) 835-6615

June 13, 2002

Ms. Christina Nagy
Penna DEP
230 Chestnut St.
Meadville PA  16335

RE:    Kearsarge Pump Station and Area By-pass

Dear Ms. Nagy:

This is to notify you that on May 12, 2002 there was a rain event that caused the pumping capacity of the Kearsarge Sewage Pump Station to be exceeded.  This resulted in the necessity to bypass pump at the following locations and times:

> Kearsarge P.S.              10:30 AM to 3:30 PM
> 51st & Zimmerly             11:30 AM to 3:30 PM

The volume by-passed at the Kearsarge Station was at such a low rate that it did not register on the by-pass meter.  Pumps at the other location were run intermittently. All actions were supervised by Dick Bridger, Operations Superintendent, and were deemed necessary for the purpose of limiting the number of homes affected by sewage back-ups.

In accordance with the Order of Consent, we are estimating the total volume of the by-pass did **not** exceed 24,999 gallons, corresponding to a penalty of $750.00. Enclosed please find a check for said amount to the Commonwealth of Pennsylvania Clean Water Fund.

Please advise this writer if there are any questions.  There were no other sewage discharges for the month of May 2002.

Very truly yours,
Millcreek Township Sewer Authority

By: _____
George W. Riedesel, P.E., Manager

Cc:    Millcreek Supervisors
        R. Bridger
        Doug Ebert, ECHD
        Summit Twp Sewer Authority

# MILLCREEK TOWNSHIP SEWER AUTHORITY

### MILLCREEK MUNICIPAL BUILDING
### 3608 WEST 26TH STREET
### ERIE, PENNSYLVANIA 16506

Phone (814) 835-6721

Fax (814) 835-6615

May 15, 2002

Ms. Christina Nagy
Pa DEP
230 Chestnut St.
Meadville PA 16335

RE:    Kearsarge Pump Station and Area Bypass

Dear Ms. Nagy:

This is to notify you that on April 14, 2002 there was a rain event that caused the pumping capacity of the Kearsarge Sewage Pump Station to be exceeded.  This resulted in the necessity to bypass pump at the following locations and times:

> Kearsarge P.S.          1:30 PM to 5:00 PM
> 51st & Zimmerly     3:00 PM to 4:00 PM
> Larchmont              3:00 PM to 4:00 PM
> Church & Patton        2:00 PM to 4:00 PM

The volume by-passed at the Kearsarge Station was at such a low rate that it did not register on the bypass meter.  Pumps at the other locations were run intermittently.  All actions were supervised by Dick Bridger, Operations Superintendent, and were deemed necessary for the purpose of limiting the number of homes affected by sewage back-ups.

In accordance with the Order of Consent, we are estimating the total volume of the by-pass did **not** exceed 24,999 Gallons, corresponding to a penalty of $750.00.  Enclosed please find a check for said amount to the Commonwealth of Pennsylvania Clean Water fund.

Please advise this writer if there are any questions.  There were no other sewage discharges for the month of April 2002.

Very truly yours,
Millcreek Township Sewer Authority

By: _____
George W. Riedesel, P.E., Manager

Cc:    Millcreek Supervisors
       R. Bridger
       Doug Ebert, ECHD
       Summit Twp Sewer Authy

**MSA-MT 3018**  PL APP
35

# MILLCREEK TOWNSHIP SEWER AUTHORITY

**MILLCREEK MUNICIPAL BUILDING**
**3608 WEST 26TH STREET**
**ERIE, PENNSYLVANIA 16506**

Phone (814) 835-6721

Fax (814) 835-6615

March 11, 2002

Ms. Christina Nagy
PA DEP
230 Chestnut Street
Meadville PA 16335

RE:     Kearsarge Pump Station and Area Bypass

Dear Ms. Nagy:

This is to notify you that on February 1, 2002 there was a rain event that caused the pumping capacity of the Kearsarge Sewage Pump Station to be exceeded. This resulted in the necessity to bypass pump at the following locations in the Kearsarge system:

➢ Kearsarge Pump Station
➢ 51st & Zimmerly
➢ Larchmont & Beaver
➢ Patton & Pershing (stand-by only)

The bypass meter at the Kearsarge Pump Station recorded flows being bypassed from 7 AM to 7 PM at the rate of 150 gpm for a total of 108,000 gallons. The pumps at 51st & Zimmerly and Larchmont & Beaver were set up from 5:30 AM to 11:30 AM and were only run intermittently. Patton & Pershing was not run.

All actions were supervised by Dick Bridger, Operations Superintendent, and were deemed necessary for the purpose of preventing sewage back-ups into people's homes.

In accordance with the Order on Consent, we are estimating the volume of the Bypass did **not** exceed 149,999 gallons, corresponding to a penalty of $2,250.00. Enclosed please find a check for said amount to the Commonwealth of Pennsylvania Clean Water Fund.

Please advise this writer if there are any questions. There were no other sewage discharges for the month of February 2002.

Very truly yours,
Millcreek Township Sewer Authority

By: _____

Cc:    Millcreek Supervisors
       R. Bridger
       Doug Ebert, ECHD

**MSA-MT 3020**   PL APP
36

# Millcreek Township Sewer Authority

3608 WEST 26TH STREET
P.O. BOX 8158
ERIE, PENNSYLVANIA 16505

PHONE (814) 835-6721

FAX (814) 835-6615

December 5, 2000

Ms. Christine Nagy
Penna. Dept. of Environmental Protection
230 Chestnut Street
Meadville PA 16335

RE:    Kearsarge Pump Station Bypass

Dear Ms. Nagy:

This is to notify your Department that on November 7, 2000 there was a mechanical seal failure on the piping system of the Kearsarge Pump Station Bypass. Please see attached notification and details provided to the Erie County Health Dept.

Based on the fact that the accidental discharge was very minor, we have enclosed a penalty payment of $750.00 in accordance with our Consent order and Agreement.

Please advise this writer if there are any questions. There were no other sewage discharges for the month of November 2000.

Very truly yours,
Millcreek Township Sewer Authority

By: _____
George W. Riedesel, P.E., Manager

CC:    Millcreek Supervisors
R. Bridger
Doug Ebert, ECHD

# Millcreek Township Sewer Authority

3608 WEST 26TH STREET
P.O. BOX 8158
ERIE, PENNSYLVANIA 16505

PHONE (814) 835-6721

FAX (814) 835-6615

January 6, 2000

Ms. Christina Nagy
Pennsylvania Dept. of Environmental Protection
230 Chestnut Street
Meadville PA 16335

RE:    Kearsarge Pump Station Bypass

Dear Ms. Nagy:

This is to notify your department that on December 14, 1999 the bypass at the Kearsarge Pump Station was activated beginning at 2:00 PM and closed at approximately 9:00 PM on the same day. Due to an intense localized rain event, the pumps could not keep up with apparent infiltration/inflow and wet well levels rose to reference levels that Township operators recognized would cause flooded basements if the bypass were not activated.

We notified the Erie County Health Department by the attached fax.

It appears that the meter monitoring the bypass flows malfunctioned and did not adequately record total volumes bypassed. Based on the time the bypass was open, how open the operator estimated it to be, and other engineering factors, we believe the gallonage discharged to be greater than 300,000 but less than 1,000,000 gallons. In accordance with our Consent Order and Agreement, we have enclosed a penalty payment of $3,750.00.

Please advise this writer if there are any questions. There were no other sewage discharges for the month of December 1999.

Very truly yours,
MILLCREEK TOWNSHIP SEWER AUTHORITY

George W. Riedesel, P.E., Manager

Cc:    Authority Members
Millcreek Supervisors
R. Bridger
Doug Ebert, ECHD
T. Sennett

**MSA-MT 3023**

# Millcreek Township Sewer Authority
3608 WEST 26TH STREET
P.O. BOX 8158
ERIE, PENNSYLVANIA  16505

PHONE (814) 835-6721

FAX (814) 835-6615

August 4, 2000

Mr. Douglas Ebert
Erie County Health Department
606 West Second Street
Erie  PA  16507

RE:  Notification of Bypass Event

Dear Mr. Ebert:

Please be advised that on Thursday, August 3rd, due to extremely intense rain over a one-half hour period, it was necessary to pump sanitary sewage from the Millcreek Township Sewer System at the following locations between 3:00 AM and 6:30 AM.

1.)    51st Street & Zimmerly Road
2.)    Patton & Pershing Roads

This was performed under the supervision of Richard Bridger, Operations Superintendent, for the purpose of preventing sewage back-ups into people's homes.

It is our understanding that your office will notify the appropriate PA DEP personnel.

Very truly yours,
Millcreek Township Sewer Authority

BY: _____
George W. Riedesel, P.E., Manager

Cc:    Richard Bridger
M.T.S.A. Members

**MSA-MT 3022**
PL APP
39

## IN THE UNITED STATES DISTRICT COURT OF PENNSYLVANIA
## WESTERN DISTRICT, ERIE DIVISION

ERIE COUNTY ENVIRONMENTAL COALITION, et. al.)

Plaintiffs,

v.

MILLCREEK TOWNSHIP SEWER AUTHORITY, et. al. )

Defendants.

)
) **CIVIL ACTION NO: 05-59E**
)
)
)
)
) **FOR INJUNCTIVE AND**
) **DECLARATORY**
) **RELIEF AND FOR**
) **CIVIL PENALTIES**
)

## DECLARATION IN SUPPORT OF STANDING

I, **Stan Skrypzak**, do hereby affirm and state:

1. I am a member of The GAIA Defense League and have been a member since February 2005. I am a member of the Save Our Native Species (S.O.N.S.) of Lake Erie, a non-voting member of The Erie County Environmental Coalition. I have been a member since the 1980's . I have personal knowledge of the matters set forth herein, except where they are based upon information and belief.

2. The mission of the GAIA Defense League is to protect the natural resources available to citizens by utilizing the laws of the Commonwealth of Pennsylvania and the United States. The corporation intends to lawfully monitor the activities of the environmentally regulated community and when necessary, bring enforcement actions in the courts and administrative tribunals. Additionally, the corporation will undertake and promote the education of the citizenry in the protection of the natural resources. The corporation will also promote other civic interests such as assisting local governments on community building and sustainable development and conducting seminars and presentations to the public at large of a wide variety of related matters.

3. The mission of Erie County Environmental Coalition is:

   The Erie County Environmental Coalition (ECEC) is a network of regional conservation and environmental organizations that provides member organizations a united presence that will maintain and improve the quality of the environment and address related social justice concerns.

PL APP
40

4. My present address is 5031 Sir Hue Drive, Erie, PA 16506.

5. I understand that this declaration is to be used in connection with litigation over MillCreek Township and MillCreek Township Sewer Authority's failure to perform its duties under the Clean Water Act. I am supportive of this litigation.

6. I have used and continue to use Pennsylvania's waters, including Walnut Creek. My Wife and I own 120 feet of shoreline on Walnut Creek.

7. I enjoy participating in the aforementioned activities approximately 40 times a year.

8. My enjoyment of the Walnut Creek has been severly impacted by the continuous discharge of raw sewage and/or inadequately treated sewage by Mill Creek Township and Mill Creek Township Sewer Authority into Walnut Creek. These discharges also enter into the tributaries surrounding Walnut Creek as well. These discharges are being conducted without a NPDES permit. Additionally, The Township and the Sewer Authority do not have a Pennsylvania water quality management permit for these discharges. My enjoyment of the creek has been impacted due to the fact that I am a Fisherman and the discharges have diminished the quantity of steelhead in the creek.

9. I believe that my loss of enjoyment of Walnut Creek is a direct result of MillCreek Township and MillCreek Township Sewer Authority's failure to ensure that water quality standards are implemented within the township.

10. This court has the ability to ensure that Pennsylvania's waters are preserved for my use and enjoyment, as well as the use an enjoyment of future generations, by forcing MillCreek Township Sewer Authority and MillCreek Township to comply with the Clean Water Act.

I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON ___11 / 9 / 05___ (date).

_Stan Shuppzak_
NAME

2

**IN THE UNITED STATES DISTRICT COURT OF PENNSYLVANIA
WESTERN DISTRICT, ERIE DIVISION**

| | |
|---|---|
| ERIE COUNTY ENVIRONMENTAL COALITION, et. al. ) | |
| ) | |
| Plaintiffs, ) | **CIVIL ACTION NO: 05-59E** |
| ) | |
| v. ) | |
| ) | |
| MILLCREEK TOWNSHIP SEWER AUTHORITY, et. al. ) | |
| ) | **FOR INJUNCTIVE AND** |
| Defendants. ) | **DECLARATORY** |
| ) | **RELIEF AND FOR** |
| ) | **CIVIL PENALTIES** |
| ) | |

**DECLARATION IN SUPPORT OF STANDING**

I, **Jimmy Dallas**, do hereby affirm and state:

1.  I am a member of The GAIA Defense League and have been a member since February 2005. I am a member of Save Our Native Species (S.O.N.S.) of Lake Erie, a non-voting member of The Erie County Environmental Coalition. I have been a member since the early 1980s . I have personal knowledge of the matters set forth herein, except where they are based upon information and belief. I have personal knowledge of the matters set forth herein, except where they are based upon information and belief.

2.  The mission of The GAIA Defense League is:

    The mission of the GAIA Defense League is to protect the natural resources available to citizens by utilizing the laws of the Commonwealth of Pennsylvania and the United States. The corporation intends to lawfully monitor the activities of the environmentally regulated community and when necessary, bring enforcement actions in the courts and administrative tribunals. Additionally, the corporation will undertake and promote the education of the citizenry in the protection of the natural resources. The corporation will also promote other civic interests such as assisting local governments on community building and sustainable development and conduct seminars and presentations to the public at large of a wide variety of related matters.

3.  The mission of Erie County Environmental Coalition:

1

The Erie County Environmental Coalition (ECEC) is a network of regional conservation and environmental organizations that provides member organizations a united presence that will maintain and improve the quality of the environment and address related social justice concerns.

4. My present address is 5270 W 50th Street, Fairview, PA 16415.

5. I understand that this declaration is to be used in connection with litigation over MillCreek Township and MillCreek Township Sewer Authority's failure to perform its duties under the Clean Water Act. I am supportive of this litigation.

6. I have used and continue to use Pennsylvania's waters, including Walnut Creek. Particularly I like to fish and use the waters recreationally.

7. I enjoy participating in the aforementioned activities approximately 5 times a week.

8. My enjoyment of the Walnut Creek has been severely impacted by the continuous discharge of raw sewage and/or inadequately treated sewage by Mill Creek Township and Mill Creek Township Sewer Authority into Walnut Creek. These discharges also enter into the tributaries surrounding Walnut Creek as well. These discharges are being conducted without a NPDES permit. Additionally, The Township and the Sewer Authority do not have a Pennsylvania water quality management permit for these discharges. My enjoyment of Walnut Creek has been significantly impacted by MillCreek Township and MillCreek Township Sewer Authority's continuous discharge of significant amounts of raw sewage and/or inadequately treated sewage into Walnut Creek and its surrounding tributaries without a NPDES permit or a Pennsylvania water quality management permit in the following ways: When I was a boy of 17 in 1935 I became interested in fishing the tributaries of Lake Erie. Fishing once or twice a week, I managed to catch a variety of fish that I would bring home to share with my family. Since retiring in 1984, I have the pleasure of fishing as often as I wish, as much as four or five times a week, from early September until the creeks freeze. Since the late 80s and early 90s I no longer eat any of the fish I manage to catch from Walnut Creek. Eating Fish from a contaminated drainage is a health risk that I am no longer willing to take. I do not believe that the public is fully aware of the extent of the problem at Walnut Creek and I am deeply concerned for their health and well being. I urge the public's full support of efforts by environmental groups to correct this health hazard.

9. I believe that my loss of enjoyment of Walnut Creek is a direct result of MillCreek Township and MillCreek Township Sewer Authority's failure to ensure that water quality standards are implemented within the township.

10. This court has the ability to ensure that Pennsylvania's waters are preserved for my use and enjoyment, as well as future generations, by forcing MillCreek Township Sewer Authority and MillCreek Township to comply with the Clean Water Act.

I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE
AND CORRECT. EXECUTED ON ___11/9/05___ (date).

_Jimmy Dallas_
NAME

# IN THE UNITED STATES DISTRICT COURT OF PENNSYLVANIA
## WESTERN DISTRICT, ERIE DIVISION

ERIE COUNTY ENVIRONMENTAL COALITION, et. al.)
                                                               )

Plaintiffs,                          ) **CIVIL ACTION NO: 05-59E**

                                              )

v.                                                )

                                              )

MILLCREEK TOWNSHIP SEWER AUTHORITY, et. al. )

                                              ) **FOR INJUNCTIVE AND**

Defendants.                        ) **DECLARATORY**

                                              ) **RELIEF AND FOR**

                                              ) **CIVIL PENALTIES**

                                              )

## DECLARATION IN SUPPORT OF STANDING

I, **James Gwinn**, do hereby affirm and state:

1.  I am a member of the Save Our Native Species  (S.O.N.S.) of Lake Erie, a non-voting member of **The Erie County Environmental Coalition**. I have been a member since the early 1990's . In February of 2005 I joined the Erie County Environmental Coalition and the Gaia Defense League as an individual member. I have personal knowledge of the matters set forth herein, except where they are based upon information and belief.

2.  The mission of **The GAIA Defense League:**

    The purpose of the corporation is to, by utilizing the laws of the Commonwealth of Pennsylvania and the United States, protect the natural resources available to the citizens. The corporation intends to lawfully monitor the activities of the environmentally regulated community and when necessary, bring enforcement actions in the courts and administrative tribunals. Additionally, the corporation will undertake and promote the education of the citizenry in the protection of the natural resources. The corporation will also promote other civic interests such as assisting local governments on community building and sustainable development and conduct seminars and presentations to the public at large of a wide variety of related matters.

3.  The mission of **Erie County Environmental Coalition:**

    The Erie County Environmental Coalition (ECEC) is a network of regional conservation and environmental organizations that provides member organizations a

1

united presence that will maintain and improve the quality of the environment and address related social justice concerns.

4. My present address is 6119 Sterrettania Road, Fairview, PA 16415.

5. I understand that this declaration is to be used in connection with litigation over MillCreek Township and MillCreek Township Sewer Authority's failure to perform its duties under the Clean Water Act. I am supportive of this litigation.

6. I have used and continue to use Pennsylvania's waters, including Walnut Creek. Particularly I like to fish Walnut Creek, Elk Creek, and Lake Erie. I actively participate in conservation activity to monitor, measure and report causes of pollution to PA waters; causes of disturbance and destruction of PA lakes and waterways; and causes of disturbance and destruction of PA lands and surface ecosystems. I actively participate in restoring land surface ecosystems. Examples are 1) participation in fish hatching, rearing, and stocking with the S.O.N.S organization; 2) performing land steward work with the Western Pennsylvania Conservancy at Venango Riffles on French Creek at Utica Shoals on French Creek; at Lake Pleasant in Erie, PA; and at Erie Bluffs State Park in Erie, PA;  Hike along and monitor stream courses in NW PA and report findings to PA Fish and Boat Commission; Recent involvement in Thomas Run Watershed evaluations related to land surface development in Millcreek and McKean Townships

7. I enjoy participating in the aforementioned activities approximately 450 to 600 hours a year.

8. My enjoyment of the Walnut Creek has been severly impacted by the continuous discharge of raw sewage and/or inadequately treated sewage by Mill Creek Township and Mill Creek Township Sewer Authority into Walnut Creek. These discharges also enter into the tributaries surrounding Walnut Creek as well. These discharges are being conducted without a NPDES permit. Additionally, The Township and the Sewer Authority do not have a Pennsylvania water quality management permit for these discharges. My enjoyment of Walnut Creek has been significantly impacted by MillCreek Township and MillCreek Township Sewer Authority's continuous discharge of significant amounts of raw sewage and/or inadequately treated sewage into Walnut Creek and its surrounding tributaries in the following ways: I will no longer eat fish taken in Walnut Creek. The sewage overflow from heavy storm water runoff reported in the Erie News Media many years ago convinced me that eating fish from such contaminated water would be unhealthy for my family, friends, and self. Degradation of surface water flowing in Walnut Creek compels me to advise other fishermen to "catch and return."

9. Heavy silt laden flows in Walnut Creek from inadequate storm water runoff management is a sharply increasing occurrence in Walnut Creek, even during moderate rainfalls. Tons and tons of topsoil are being lost, deposited in the Walnut Creek streamflow path and into Lake Erie. The sediments to be dredged from the

Walnut Creek outflow into Lake Erie are more frequent and costly each year. And we are loosing more and more fresh water as the surface vegetation is being removed and replaced by impervious roofing, paving and roadways. High level, fast flowing silt laden waters cannot be productively fished, an increasing amount of the time. The water quality and water flow volumes of Walnut Creek are being degraded by unmanaged surface water management in municipal existing and developing watershed areas.

10. I believe that my loss of enjoyment of Walnut Creek is a direct result of MillCreek Township and MillCreek Township Sewer Authority's failure to ensure that water quality standards are implemented within the township.

11. This court has the ability to ensure that Pennsylvania's waters are preserved for my use and enjoyment, as well as future generations, by forcing MillCreek Township Sewer Authority and MillCreek Township to comply with the Clean Water Act.

I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON _11/9/05_ (date).

_James P. Gwinn_
**NAME**

3

**IN THE UNITED STATES DISTRICT COURT OF PENNSYLVANIA
WESTERN DISTRICT, ERIE DIVISION**

ERIE COUNTY ENVIRONMENTAL COALITION, et. al. )
                                               )

Plaintiffs,                                    ) **CIVIL ACTION NO: 05-59E**
                                               )

v.                                                    )
                                               )

MILLCREEK TOWNSHIP SEWER AUTHORITY, et. al. )
                                               ) **FOR INJUNCTIVE AND**

Defendants.                                 ) **DECLARATORY**
                                               ) **RELIEF AND FOR**
                                               ) **CIVIL PENALTIES**
                                               )

## DECLARATION IN SUPPORT OF STANDING

I, **Cathy Pedler**, do hereby affirm and state:

1. I am a member of The GAIA Defense League and have been a member since
November 2004. I am also a member of The Erie County Environmental Coalition. I
have been a member since 2000. I have personal knowledge of the matters set forth
herein, except where they are based upon information and belief.

2. The mission of **The GAIA Defense League:**

The purpose of the corporation is to, by utilizing the laws of the Commonwealth of
Pennsylvania and the United States, protect the natural resources available to the
citizens. The corporation intends to lawfully monitor the activities of the
environmentally regulated community and when necessary, bring enforcement
actions in the courts and administrative tribunals. Additionally, the corporation will
undertake and promote the education of the citizenry in the protection of the natural
resources. The corporation will also promote other civic interests such as assisting
local governments on community building and sustainable development and conduct
seminars and presentations to the public at large of a wide variety of related matters.

3. **The mission of** Erie County Environmental Coalition**:**

The Erie County Environmental Coalition (ECEC) is a network of regional
conservation and environmental organizations that provides member organizations a
united presence that will maintain and improve the quality of the environment and
address related social justice concerns.

1

4. My present address is 912 W 2nd Street Erie, PA 16507.

5. I understand that this declaration is to be used in connection with litigation over MillCreek Township and MillCreek Township Sewer Authority's failure to perform its duties under the Clean Water Act. I am supportive of this litigation.

6. Walnut Creek is one of the 19 sub-basin watersheds in the Pennsylvania Lake Erie Watershed Basin. As a member of ECEC, GDL, the Lake Erie Region Conservancy (LERC), the Lake Erie Group of the Sierra Club (LKE Sierra), the Pennsylvania Lake Erie Watershed Association (PLEWA), and as the environmental sustainability coordinator for Mercyhurst College, I am involved on a daily basis with efforts to protect and restore our regional environment. As an officer in most of the above mentioned groups I represent the interests of other individuals who are involved with environmental protection and restoration efforts. We are involved in these efforts because we understand and believe that we, as individuals and as a human population, are directly connected to our local environment. We believe that our health and wellbeing are directly affected by the quality of our surrounding environment. Some of us believe that the interconnection of living things (e.g., humans and the local ecosystem) is also spiritual in nature. Intentional, long-term abuse of our local natural systems causes emotional stress to those of us holding these convictions.

We also understand that tourism related to the enjoyment of our natural areas is a large component of our region's economic sustainability. Untreated or improperly treated waste dumped into our creek and lake destroys aquatic life and creates direct human health hazards for those fishing, boating, or swimming in the creek or lake. One of the projects LERC and Mercyhurst College are working on involves creating an underwater preserve in the Pennsylvania waters of Lake Erie (http://erieunderwater.org/). The project proposes to attract recreational scuba divers to the preserve to enjoy the natural and cultural resources of the lake. The actions of Millcreek Township, and Millcreek Township Sewer Authority have jeopardized this project by polluting the lake and the proposed preserve.

Personally, I have ceased to swim in the lake. I had enjoyed swimming in the lake frequently (ca. 15 times/year). I have also received scuba certification as part of the underwater preserve project, but have been reluctant to dive in the lake.

A number of our groups' members, although directly impacted by this irresponsible long-term action, have been unwilling to speak out publicly because they feared that any statements against PA Department of Environmental Protection, Millcreek Township, and Millcreek Township Sewer Authority would jeopardize their jobs and/or their funding. As a director in the abovementioned organizations, I represent these individuals whose employment and recreation takes them into Walnut creek and Lake Erie for education, research, and recreation purposes.

7. My use of Walnut Creek has been significantly impacted by MillCreek Township and MillCreek Township Sewer Authority's continuous discharge of significant amounts

of raw sewage and/or inadequately treated sewage into Walnut Creek and its surrounding tributaries without a NPDES permit or a Pennsylvania water quality management permit in the following ways:

I no longer swim in Lake Erie. I am reluctant to scuba dive in the Lake Erie. The Intentional, long-term abuse of our local natural systems by Millcreek Township, and Millcreek Township Sewer Authority has caused me emotional stress due to my spiritual convictions regarding the interconnection of living things. The actions of Millcreek Township, and Millcreek Township Sewer Authority have jeopardized the success of our Lake Erie Underwater Preserve project by polluting the lake and the proposed preserve. The pollution of Walnut Creek undermines watershed conservation and restoration efforts of the environmental organizations that I direct or of which I am a member.

8. I believe that my loss of enjoyment of Walnut Creek is a direct result of MillCreek Township and MillCreek Township Sewer Authority's failure to ensure that water quality standards are implemented within the township.

9. This court has the ability to ensure that Pennsylvania's waters are preserved for my use and enjoyment, as well as future generations, by forcing MillCreek Township Sewer Authority and MillCreek Township to comply with the Clean Water Act.

I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON ___11__ / _8_ / _05_ (date).

_Cathy Pedler_
**NAME**

3

**IN THE UNITED STATES DISTRICT COURT OF PENNSYLVANIA
WESTERN DISTRICT, ERIE DIVISION**

ERIE COUNTY ENVIRONMENTAL COALITION, et. al.)

                                         )

Plaintiffs,                             ) **CIVIL ACTION NO: 05-59E**

                                         )

v.                                          )

                                         )

MILLCREEK TOWNSHIP SEWER AUTHORITY, et. al. )

                                       ) **FOR INJUNCTIVE AND**

Defendants.                           ) **DECLARATORY**

                                       ) **RELIEF AND FOR**

                                       ) **CIVIL PENALTIES**

                                       )


## DECLARATION IN SUPPORT OF STANDING

I, **Martin E Visnosky**, do hereby affirm and state:

1. I am a member of The GAIA Defense League and have been a member since November 2004. I am also a member of The Erie County Environmental Coalition. I have been a member since 1985. I have personal knowledge of the matters set forth herein, except where they are based upon information and belief.

2. The mission of **The GAIA Defense League:**

   The purpose of the corporation is to, by utilizing the laws of the Commonwealth of Pennsylvania and the United States, protect the natural resources available to the citizens. The corporation intends to lawfully monitor the activities of the environmentally regulated community and when necessary, bring enforcement actions in the courts and administrative tribunals. Additionally, the corporation will undertake and promote the education of the citizenry in the protection of the natural resources. The corporation will also promote other civic interests such as assisting local governments on community building and sustainable development and conduct seminars and presentations to the public at large of a wide variety of related matters.

3. **The mission of** Erie County Environmental Coalition:

   The Erie County Environmental Coalition (ECEC) is a network of regional conservation and environmental organizations that provides member organizations a united presence that will maintain and improve the quality of the environment and address related social justice concerns.

4.  My present address is 402 Harvey Street Erie, PA 16511.

5.  I understand that this declaration is to be used in connection with litigation over MillCreek Township and MillCreek Township Sewer Authority's failure to perform its duties under the Clean Water Act. I am supportive of this litigation.

6.  Walnut Creek has been a favorite hiking and fishing spot of mine for decades. I enjoy Walnut Creek for its accessibility to walking its course for both nature and bird watching and seasonal fishing.

7.  I enjoy participating in the aforementioned activities approximately 30 times a year.

8.  My use of Walnut Creek has been significantly impacted by MillCreek Township and MillCreek Township Sewer Authority's continuous discharge of significant amounts of raw sewage and/or inadequately treated sewage into Walnut Creek and its surrounding tributaries without a NPDES permit or a Pennsylvania water quality management permit in the following ways: The natural resource is being significantly degraded by the discharges. My health when using the stream may be compromised. These discharges also have effects on the very reason I enjoy hiking and fishing the stream—the aquatic life in the stream and the associated wildlife that are part of its ecosystem.

9.  I believe that my loss of enjoyment of Walnut Creek is a direct result of MillCreek Township and MillCreek Township Sewer Authority's failure to ensure that water quality standards are implemented within the township.

10. This court has the ability to ensure that Pennsylvania's waters are preserved for my use and enjoyment, as well as future generations, by forcing MillCreek Township Sewer Authority and MillCreek Township to comply with the Clean Water Act.

I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON _11/18/05_ (date).

_Martin E. Dienrky_
**NAME**

**IN THE UNITED STATES DISTRICT COURT OF PENNSYLVANIA
WESTERN DISTRICT, ERIE DIVISION**

| | |
|---|---|
| ERIE COUNTY ENVIRONMENTAL COALITION, et. al.) | |
| ) | |
| Plaintiffs, | ) CIVIL ACTION NO: 05-59E |
| ) | |
| v. | ) |
| ) | |
| MILLCREEK TOWNSHIP SEWER AUTHORITY, et. al. ) | |
| ) FOR INJUNCTIVE AND | |
| Defendants. | ) DECLARATORY |
| ) RELIEF AND FOR | |
| ) CIVIL PENALTIES | |
| ) | |

**DECLARATION IN SUPPORT OF STANDING**

I, **Jesse T. Davis III (J.T.),** do hereby affirm and state:

1. I am a member of **The GAIA Defense League** and have been a member since October 2005. I have personal knowledge of the matters set forth herein, except where they are based upon information and belief.

2. **The mission of The GAIA Defense League is:**

   The purpose of the corporation is to, by utilizing the laws of the Commonwealth of Pennsylvania and the United States, protect the natural resources available to the citizens. The corporation intends to lawfully monitor the activities of the environmentally regulated community and when necessary, bring enforcement actions in the courts and administrative tribunals. Additionally, the corporation will undertake and promote the education of the citizenry in the protection of the natural resources. The corporation will also promote other civic interests such as assisting local governments on community building and sustainable development and conduct seminars and presentations to the public at large of a wide variety of related matters.

3. The mission of **Erie County Environmental Coalition** is:

   The Erie County Environmental Coalition (ECEC) is a network of regional conservation and environmental organizations that provides member organizations a united presence that will maintain and improve the quality of the environment and address related social justice concerns.

4. My present address is 627 Japan St. Erie, PA 16502

1

5. I understand that this declaration is to be used in connection with litigation over MillCreek Township and MillCreek Township Sewer Authority's failure to perform its duties under the Clean Water Act. I am supportive of this litigation.

6. I have used and continue to use Pennsylvania's waters, including Walnut Creek. Particularly I like to:

- Fish for steelhead primarily in Walnut Creek, Elk Creek, Lamson Run, Crooked Creek and Conneaut Creek on the west side of Erie County and occasionally on several on the "Mile" creeks on the east side of Erie County.
- Fish for large mouth bass, small mouth bass, white bass, perch and walleye in Lake Erie and along its shore line and in Presque Isle Bay and its numerous bays, inlets and lagoons.
- Fish for numerous species of trout in Oil Creek, French Creek, Brokenstraw Creek, Allegheny River and Clarion River and their numerous tributaries

7. I enjoy participating in the aforementioned activities approximately 12 times a month.

8. My enjoyment of Walnut Creek has been significantly impacted by MillCreek Township and MillCreek Township Sewer Authority's continuous discharge of significant amounts of raw sewage and/or inadequately treated sewage into Walnut Creek and its surrounding tributaries without a NPDES permit or a Pennsylvania water quality management permit in the following ways:

- In no case will I eat a steelhead taken from neither Walnut Creek nor any other fish taken from near its mouth at Lake Erie east along the shore line to the north east tip of Presque Isle.
- I do not fish Walnut Creek during high water flows nor do I fish the slow waters at the Access Area.
- I do not fish Walnut Creek at any time if I have sustained a cut or scratch on my hands that may be exposed to the high concentrations of bacteria resulting from the continuous discharge for untreated waste by Millcreek Sewer Authority.
- I am employed at Lake Erie Ultimate Angler, a locally owned shop that caters to fly fishermen, located at 2400 W 8th Street. And I am very concerned about the economic impact this pollution may have on the shop in particular and the sport fishing and travel industries in general.
- Our Lake Erie tributaries have gained a reputation as offering some of the best steelhead fishing in the Great Lakes and for a community that reaps the economic benefits of this tremendous natural asset to continue its premeditated dumping of untreated sewage is an abomination.
- As an aside – I relocated to Erie in June of 2003, so I have a relatively limited understanding of Millcreek's history and how this horrendous situation occurred. Over the past 2 years I learned from my fishing companions:
  1. Millcreek has been dumping raw and inadequately treated sewage into Walnut Creek since the early 1980's.

2

2. This didn't just occur when flood waters overwhelmed the processing plant but in fact occurred any time water levels were high, i.e. valves are intentionally opened to empty holding tanks.

3. They pay a $2500 fine for each occurrence, regardless of how many gallons they discharged.

4. Until now the local outdoors clubs, environmental organizations and government agencies have failed to rally the general population to force Millcreek Township to correct this situation.

I am appalled. This summer Presque Isle State Park closed the beaches due to high levels of ecoli bacteria. Why have people put their heads in the sand? It's time to force Millcreek to clean it up!!!!

9. I believe that my loss of enjoyment of Walnut Creek is a direct result of MillCreek Township and MillCreek Township Sewer Authority's failure to ensure that water quality standards are implemented within the township.

10. This court has the ability to ensure that Pennsylvania's waters are preserved for my use and enjoyment, as well as future generations, by forcing MillCreek Township Sewer Authority and MillCreek Township to comply with the Clean Water Act.

I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON __12/24/05__ (date).

_____
NAME

IN THE UNITED STATES DISTRICT COURT OF PENNSYLVANIA
WESTERN DISTRICT, ERIE DIVISION

ERIE COUNTY                          :       CIVIL ACTION NO: 05-59E
ENVIRONMENTAL COALITION,             :
et al.,                              :
                  Plaintiffs         :       FOR INJUNCTIVE AND
                                     :       DECLARATORY RELIEF AND
                                     :       FOR CIVIL PENALTIES
        v.                           :
                                     :
MILLCREEK TOWNSHIP SEWER             :
AUTHORITY, et al.,                   :
                  Defendants         :


## DECLARATION IN SUPPORT OF STANDING


I, Paul F. Burroughs, do hereby affirm and state:


1.      I am familiar with the GAIA Defense League, and have been a member

since October 2005. I have personal knowledge of the matters set forth herein,

except where they are based upon information and belief.

2.      The mission of the GAIA Defense League is:

The purpose of the corporation is to, by utilizing the laws of the
Commonwealth of Pennsylvania and the United States, protect the
natural resources available to the citizens. The corporation intends to
lawfully monitor the activities of the environmentally regulated
community and when necessary, bring enforcement actions in the
courts and administrative tribunals. Additionally, the corporation will
undertake and promote the education of the citizenry in the protection
of the natural resources. The corporation will also promote other civic

interests such as assisting local governments on community building and sustainable development and conduct seminars and presentations to the public at large of a wide variety of related matters.

3.    My present address is 6554 Jamelia Court, Fairview, Pennsylvania 16415. I purchased this property in 1987. Walnut Creek flows through a portion of the property at this address.

4.    I understand that this Declaration is to be used in connection with litigation over Millcreek Township's and Millcreek Township Sewer Authority's failure to perform its duties under the Clean Water Act. I am supportive of this litigation.

5.    I have used and continue to use Pennsylvania's waters, including Walnut Creek. Specifically I own property on and under Walnut Creek in Fairview Township downstream of the Kearsarge Pump Station. My self and my family utilize Walnut Creek for recreation by swimming and enjoying its fine qualities and in the past for fishing. I was an appellant in a challenge to the first Consent Order and Agreement among Millcreek Township, Millcreek Township Sewer Authority and the Department of Environmental Resources (Burroughs v. DER, 1992 EHB 1084).

6.    Rarely does a day goes by while I am at my home that I do not note the appearance of and enjoy Walnut Creek.

7.    My enjoyment of Walnut Creek has been significantly impacted by Millcreek Township and Millcreek Township Sewer Authority's continuous discharge

2

of significant amounts of raw sewage and/or inadequately treated sewage into Walnut Creek and its surrounding tributaries without a NPDES permit or a Pennsylvania water quality management permit in the following ways:

> Our Lake Erie tributaries have gained a reputation as offering some of the best steelhead fishing in the Great Lakes and for a community that reaps the economic benefits of this tremendous natural asset to continue its premeditated dumping of untreated sewage is an abomination.

8.    I am aware of the following:

     a.    Millcreek has been dumping raw and inadequately treated sewage into Walnut Creek since the early 1980s;

     b.    I have been informed that this didn't just occur when flood waters overwhelmed the a pumping station, but in fact occurred any time water levels were high, i.e., valves are intentionally opened to empty holding tanks; and

     c.    a $2,500 fine is paid for each occurrence, regardless of how many gallons are discharged.

9.    I am reluctant to enter Walnut Creek for recreational purposes at the time of and for some time after high water flows and/or after learning that the bypass was activated. I am angry and frustrated that so many years have passed without the elimination of the bypass.

10.    As a property owner I am offended by the trespass that occurs onto my property when sewage discharged from the bypass enters onto my property. During high flows I detect a sewage-like odor at my residence.

11.    I believe that my loss of enjoyment of Walnut Creek is a direct result of Millcreek Township's and Millcreek Township Sewer Authority's failure to comply with the law prohibiting unpermitted discharges into Walnut Creek.

12.    This Court has the ability to ensure that Pennsylvania's waters are preserved for my use and enjoyment, as well as future generations, by forcing the Millcreek Township Sewer Authority and Millcreek Township to comply with the laws of the United States and Pennsylvania.

I VERIFY, UNDER PENALTY OF PERJURY, THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON NOVEMBER ___29___, 2005.

_____
Paul F. Burroughs

#274903

## IN THE UNITED STATES DISTRICT COURT OF PENNSYLVANIA
### WESTERN DISTRICT, ERIE DIVISION

ERIE COUNTY ENVIRONMENTAL COALITION, et. al.)

Plaintiffs.                                    ) CIVIL ACTION NO: 05-59E

v.

MILLCREEK TOWNSHIP SEWER AUTHORITY, et. al. )

Defendants.                                    ) FOR INJUNCTIVE AND
                                               ) DECLARATORY
                                               ) RELIEF AND FOR
                                               ) CIVIL PENALTIES

### DECLARATION IN SUPPORT OF STANDING

I, H.P. Lim, do hereby affirm and state:

1. I am a member of **PennEnvironment, Inc.** and have been a member since May 18, 2004. I have personal knowledge of the matters set forth herein, except where they are based upon information and belief.

2. The mission of **PennEnvironment, Inc.** is: PennEnvironment is a citizen-based, non-profit and non-partisan environmental group that combines independent research, practical ideas and tough-minded advocacy to tackle our state's top environmental problems.

3. My present address is 6323 Meadowrue Lane, Erie, PA 16505.

4. I understand that this declaration is to be used in connection with litigation over MillCreek Township and MillCreek Township Sewer Authority's Failure to perform its duties under the Clean Water Act. I am supportive of this litigation.

5. I have used and continue to use Pennsylvania's Waters, including Walnut Creek. Particularly I like to fish in these waters.

6. I enjoy participating in the aforementioned activities approximately 6 times per month.

7. My enjoyment of Walnut Creek has been significantly impacted by MillCreek Township and MillCreek Township Sewer Authority's continuous discharge of significant amounts of raw sewage and/or inadequately treated sewage into Walnut Creek and its surrounding tributaries without a NPDES permit or Pennsylvania water quality management permit in the following ways: Excessive pollution affects the water quality which in turn affects fishing.

**RECEIVED**

**NOV 2 8 2005**

CLERK U.S. DISTRICT COURT
WEST DIST. OF PENNSYLVANIA PL APP

60

8. I believe that my loss of enjoyment of Walnut Creek is a direct result of MillCreek Township and MillCreek Township Sewer Authority's failure to ensure that water quality standards are implemented within the township.

9. This Court has the ability to ensure that Pennsylvania's waters are preserved for my use and enjoyment, as well as future generations, by forcing MillCreek Township Sewer Authority and MillCreek Township to comply with the Clean Water Act.

I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON _____ 11/26/05 _____ (Date).

**NAME**

**IN THE UNITED STATES DISTRICT COURT OF PENNSYLVANIA**
**WESTERN DISTRICT, ERIE DIVISION**

ERIE COUNTY ENVIRONMENTAL COALITION, et. al. )
                                                        )

Plaintiffs.                                  ) **CIVIL ACTION NO: 05-59E**
                                                        )

v.                                                            )
                                                        )

MILLCREEK TOWNSHIP SEWER AUTHORITY, et. al. )
                                                        ) **FOR INJUNCTIVE AND**

Defendants.                                  ) **DECLARATORY**
                                                        ) **RELIEF AND FOR**
                                                        ) **CIVIL PENALTIES**
                                                        )

**DECLARATION IN SUPPORT OF STANDING**

I, Audrey S. Weber, do hereby affirm and state:

1. I am a member of **PennEnvironment, Inc.** and have been a member since May 18, 2004.
   I have personal knowledge of the matters set forth herein, except where they are based
   upon information and belief.

2. The mission of **PennEnvironment, Inc.** is: PennEnvironment is a citizen-based, non-
   profit and non-partisan environmental group that combines independent research,
   practical ideas and tough-minded advocacy to tackle our state's top environmental
   problems.

3. My present address is 417 Oakmont Ave., Erie, PA 16505.

4. I understand that this declaration is to be used in connection with litigation over
   MillCreek Township and MillCreek Township Sewer Authority's Failure to perform its
   duties under the Clean Water Act. I am supportive of this litigation.

5. I have used and continue to use Pennsylvania's Waters, including Walnut Creek. My five
   children grew up on the beach at the bottom of Powel Avenue. We have lived here for 50
   years.

6. Since I am 84 years old, I do not participate much anymore, however, I have
   grandchildren that do.

7. My enjoyment of Walnut Creek has been significantly impacted by MillCreek Township
   and MillCreek Township Sewer Authority's continuous discharge of significant amounts
   of raw sewage and/or inadequately treated sewage into Walnut Creek and its surrounding
   tributaries without a NPDES permit or Pennsylvania water quality management permit in

the following ways: I have a son who had Polio and we assume he contracted the bacteria from the streams.

8.  I believe that my loss of enjoyment of Walnut Creek is a direct result of MillCreek Township and MillCreek Township Sewer Authority's failure to ensure that water quality standards are implemented within the township.

9.  This Court has the ability to ensure that Pennsylvania's waters are preserved for my use and enjoyment, as well as future generations, by forcing MillCreek Township Sewer Authority and MillCreek Township to comply with the Clean Water Act.

I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON _____ 1-10-06 _____ (Date).


_____ Audrey S. Weber _____
**NAME**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE COUNTY ENVIRONMENTAL          )
COALITION, PENNENVIRONMENT,        )
INC. and THE GAIA DEFENSE LEAGUE,  )
    Plaintiffs                    )
                                  )
          v.                 )    CIVIL ACTION NO. 05-59 ERIE
                                  )
MILLCREEK TOWNSHIP SEWER           )
AUTHORITY AND MILLCREEK            )
TOWNSHIP,                          )
    Defendants                     )

## ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANTS

Defendants MILLCREEK TOWNSHIP SEWER AUTHORITY AND MILLCREEK

TOWNSHIP, by their attorneys, MacDonald, Illig, Jones & Britton LLP, serve the following

Answers to Plaintiff's First Set of Interrogatories Directed to Defendants:

1.    State the name, title, and business address of all persons you expect to call as a

witness or expert witness.

    **ANSWER:**   Defendants have not yet decided on witnesses or expert witnesses.

Defendants will provide the identity of witnesses and experts in accordance with the Court's

Case Management Order and the Federal Rules of Civil Procedure.

**ANSWER:**   See Answer to Interrogatory Nos. 5 and 7. In addition, Defendants believe that the October 2003 Consent Order and Agreement, the significant civil penalties already paid by them to date and the civil penalties in the amount of $5,000 per event that will be paid for any future occurrences, and the millions of dollars spent on capital improvements provide sufficient encouragement and deterrence such that injunctive relief and additional civil penalties are not necessary. See Initial Disclosures and Supplement to Initial Disclosures. See also MSA-MT 2948 - 3034.

9.    State the basis for the Defendants' denial set forth in Paragraph 19 of the Answer. Set forth any and all documents and persons with knowledge of such documents that support the denial set forth in Paragraph 19 of the Answer.

**ANSWER:**   On December 7, 1994, the Millcreek Sewer Authority ("MSA") received a letter from David Milhouse of the Pennsylvania Department of Environmental Protection, approving MSA's use of manhole pumps to control system overflows during storm events in the Kearsarge area that discharged to Walnut Creek. See DEP 0511 - 0516. In addition, throughout the time period involved, MSA has received Pennsylvania Water Quality Management Permits from the Pennsylvania Department of Environmental Protection for numerous construction projects related to its sewer system. See Initial Disclosures and Supplement to Initial Disclosures. See also MSA-MT 0479 - 0563, 1197 - 1284, 1466 - 1467, 1507 - 1598, 1712 - 1756, 1761 - 1827, 2841 - 2242, 3107 - 3202, 3944 - 3955, 5062 - 5067; DEP 0096 - 0160, 0161 - 0351. See also files at the Pennsylvania Department of Environmental Protection.

Respectfully submitted,

Mark J. Shaw
PA Bar ID No. 50763
Robert E. Gandley
PA Bar ID No. 82524
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7603

Attorneys for Defendants
    Millcreek Township Sewer Authority
    and Millcreek Township

Dated:   January 13, 2006

- 10 -

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL RESOURCES

In the Matter of:

| | | |
|---|---|---|
| Millcreek Township | : | |
| and | : | Clean Streams Law |
| Millcreek Township | : | |
| Sewer Authority | : | |

## CONSENT ORDER AND AGREEMENT

This Consent Order and Agreement is entered into this ___7th___ day of

___January___, 1991, by and between the Commonwealth of Pennsylvania,

Department of Environmental Resources ("Department"), Millcreek Township

("Township"), and the Millcreek Township Sewer Authority ("Authority").

## Findings

The Department has found and determined the following findings which the

Township and the Authority agree are true and correct.

A.  The Department is the agency with the duty and authority to administer

and enforce the Clean Streams Law, Act of June 22, 1937, P.L. 1987, as amended,

35 P.S. §§691.1-691.1001 ("Clean Streams Law"); the Pennsylvania Sewage

Facilities Act, Act of January 24, 1966, P.L. 1535, as amended, 35 P.S.

§§750.1-750.20 ("Sewage Facilities Act"); Section 1917-A of the Administrative

Code of 1929, Act of April 9, 1929, P.L. 177, as amended, 71 P.S. §510-17

("Administrative Code"), and the rules and regulations promulgated thereunder.

B.  The Township, organized and existing under the laws of the Commnwealth

of Pennsylvania, maintains and operates the Millcreek Township sewage collection

system.  The mailing address of the Township is P. O. Box 8268, Erie, PA 16505.

**MSA-MT 6751**

-2-

C. The Authority, a municipal authority formed pursuant to the Municipal Authorities Act, the Act of May 2, 1945, P.L. 382, as amended, 53 P.S. §301 et seq., owns the Township's sewage collection system which is located in the Township of Millcreek and leased to the Township. The mailing address of the Authority is P. O. Box 8332, Erie, PA 16505.

D. Sewage generated in Millcreek Township, and Townships tributary to Millcreek Township, is conveyed to the City of Erie's sewerage system through various points, including points tributary to the Kearsarge Pump Station. The wastewater is ultimately directed to the City of Erie's Wastewater Treatment Plant before being discharged into Lake Erie, a water of the Commonwealth.

E. On January 6, 1984, the Department issued Water Quality Management Permit No. 2583409 ("Part II Permit") to the Authority pursuant to the Clean Streams Law, 35 P.S. §691.1 et seq., which, inter alia, authorized the Authority to increase the pumping capacity of the Kearsarge Pump Station. The Part II Permit did not authorize the Authority to construct or use a bypass around the City of Erie's sewage treatment plant nor authorize any new discharge point to waters of the Commonwealth identified in the City of Erie's National Pollutant Discharge Elimination System ("NPDES") Permit.

F. On June 24, 1991, the Authority notified the Department that a bypass line had been constructed on December 7, 1988 at the Kearsarge Pump Station ("Kearsarge Bypass"). The letter also stated that the bypass had been used by the Authority on at least two (2) occasions. The Kearsarge Bypass discharged to Walnut Creek, a water of the Commonwealth, on March 6, 1991 for two (2) hours and in the fall of 1990 for approximately six (6) hours.

-15-

Act, 35 P.S. §7514, the Administrative Agency Law, 2 Pa. C.S. 103(a), and Chapters 5A and 7A or any other provision of law.

FOR MILLCREEK TOWNSHIP:

_____ 01/07/92
Name                        Date
Title  Supervisor

_____ 01/07/92
Name                        Date
Title  Supervisor

_____ 01/07/92
Name                        Date
Title  Supervisor

_____ 01/07/92
Name
Attorney for the Township


FOR THE COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF ENVIRONMENTAL RESOURCES:

_____ _____
David E. Milhous, P.E.      Date
Regional Water Quality Manager
Northwest Region

_____ 1/10/92
Bruce M. Herschlag          Date
Assistant Counsel


FOR THE MILLCREEK TOWNSHIP SEWER
    AUTHORITY:

_____ 01/07/92
Name                        Date
Title  Chairman

_____ 01/07/92
Name                        Date
Title  Secretary

_____ 01/07/92
Name                        Date
Attorney for the Authority


**MSA-MT 6765**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION

In the Matter of:

| | | |
|---|---|---|
| **MILLCREEK TOWNSHIP** | : | |
| and | : | Clean Streams Law |
| **MILLCREEK TOWNSHIP SEWER** | : | Sewage Facilities Act |
| **AUTHORITY** | : | |

## CONSENT ORDER AND AGREEMENT

This Consent Order and Agreement is entered into this 31ˢᵗ day of October,

2003, by and between the Commonwealth of Pennsylvania, Department of Environmental Protection

("Department"), Millcreek Township ("Township"), and the Millcreek Township Sewer Authority

("Authority").

### Findings

The Department has found and determined the following:

A.    The Department is the agency with the duty and authority to administer and enforce

The Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§691.1-691.1001

("Clean Streams Law"); the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. 1535, *as*

*amended*, 35 P.S. §§750.1-750.20a ("Sewage Facilities Act"); Section 1917-A of the Administrative

Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §510-17 ("Administrative Code"); and

the rules and regulations promulgated thereunder ("Regulations").

B.    The Township is a municipal corporation organized and existing under the laws of the

Commonwealth of Pennsylvania, maintaining and operating a sewage collection system in Millcreek

Township, Erie County, Pennsylvania. The mailing address of the Township is 3608 West 26ᵗʰ Street,

Erie, Pennsylvania 16506.

**MSA-MT 6774**

C.    The Authority is a municipal authority incorporated under the Municipal Authorities Act of 1945, Act of May 2, 1945, P.L. 382 53 P.S. §§301-322, and maintains a mailing address of 3608 West 26th Street, Erie, Pennsylvania 16506. The Authority owns the sewage collection system maintained and operated by the Township in Millcreek Township, Erie County, Pennsylvania. The Authority leases the sewage collection system to the Township.

D.    The City of Erie owns a sewage treatment plant which treats sewage from various townships and municipalities in Erie County, including the Township and Summit Township. Summit Township's sewage is conveyed through the Township's sewage collection system to the City of Erie sewage treatment plant. A portion of the sewage from the Township and Summit Township must pass through the Kearsarge pump station to ultimately reach the City of Erie sewage treatment plant. The City of Erie sewage treatment plant discharges treated sewage effluent into Lake Erie, a "water of the Commonwealth" as defined in Section 1 of the Clean Streams Law, 35 P.S. §691.1.

E.    On January 6, 1984, Water Quality Management Permit No. 2583409 was issued to the Authority for modifications to the Kearsarge pump station and the construction of a new force main and sanitary sewer.

F.    On June 24, 1991, the Authority notified the Department that an unauthorized manual relief valve and overflow line had been installed on a force main immediately down line of the Kearsarge pump station ("Kearsarge Overflow"). Since the time of installation of the Kearsarge Overflow, untreated sewage has been discharged on occasion via the Kearsarge Overflow from a force main exiting the Kearsarge pump station to Walnut Creek, "a water of the Commonwealth," as defined in Section 1 of the Clean Streams Law. The Township and Authority caused the periodic discharges to occur in order to prevent line surcharging and basement backups during heavy precipitation events.

**MSA-MT 6775**
PL APP
71

G.    On January 7, 1992, the Department, Township, and Authority entered into a Consent Order and Agreement ("1992 COA") to, among other things, remove the Kearsarge Overflow.

H.    Paragraph 2.e. of the 1992 COA required the Township and Authority to, among other things, submit a schedule of corrective measures designed to increase capacity of sewage facilities tributary to the Kearsarge pump station and to provide a date when the Kearsarge Overflow would be removed.

I.    On March 29, 1993, in a document entitled "Summary, Alternative Selection & Implementation Schedule Sewage Facilities Plan" ("1993 Plan and Schedule"), the Township and Authority provided the information required by Paragraph 2.e. of the 1992 COA to the Department.

J.    Pursuant to Paragraph 3 of the 1992 COA, the 1993 Plan and Schedule was incorporated into the 1992 COA as an enforceable obligation of the 1992 COA.

K.    The 1993 Plan and Schedule indicates that removal of the Kearsarge Overflow was conditioned upon the Township having full access to the City of Erie's proposed West Side Interceptor. The 1993 Plan and Schedule states that the Kearsarge Overflow would be removed one month after completion of the West Side Interceptor.

L.    On or about July 1, 1999, the West Side Interceptor was completed. However, the Authority and Township did not have complete access to the West Side Interceptor until October 2000. Pursuant to the terms of the 1992 COA, the Kearsarge Overflow was to have been removed by November 2000.

M.    The 1993 Plan and Schedule included, among other things, the completion of an infiltration and inflow study of the Kearsarge tributary area, a review of the capacity of the Kearsarge pump station and a determination of the appropriate remedy for removal of the Kearsarge overflow.

**MSA-MT 6776**

Completion of these tasks required coordination and cooperation among the Township, the Authority and the City of Erie.

N.    The Township and Authority, in their November 13, 1992, letter, represented that capacities of the Kearsarge pump station and any necessary modifications to the pump station and force main would not be available until the extent of inflow and infiltration in the Kearsarge pump station tributary area and work necessary to abate it was known. The Township and Authority completed several studies, which indicated that the extent of inflow and infiltration in the tributary area was materially greater than had been assumed.

O.    The Township and Authority have expanded their regulations regarding inspections and termination of unlawful connections to address inflow and infiltration in the Kearsarge pump station tributary area. Actions by the Township and the Authority have reduced sewage conveyance problems and increased available system capacity in the Kearsarge pump station, resulting in fewer occurrences of residential basement flooding in the tributary area.

P.    Substantial inflow and infiltration remains in the areas tributary to the Kearsarge pump station, and the Township and the Authority continue to expand their program of inspections and termination of unlawful connections in the tributary area. The program includes, but is not limited to, inspecting properties and, where warranted, directing termination of unlawful connections to the sanitary sewer system and implementing regulations regarding permits or approvals so as to require identification and/or abatement of inflow and infiltration in tributary areas.

Q.    Despite the system improvements described in Paragraph O, above, the Township and Authority continue to allow untreated sewage to be periodically discharged to Walnut Creek via the Kearsarge Overflow and from other areas tributary to the Kearsarge pump station. The Township and the Authority have reported the overflow events detailed on Exhibit A, which is attached and incorporated

**MSA-MT 6777**

PL APP
73

herein, and have paid penalties for the reported overflows at the Kearsarge pump station in accordance with the 1992 COA.

R.    As of the execution date of this Consent Order and Agreement, the Kearsarge Overflow has not been removed. The Township and Authority have fulfilled all other tasks detailed in the 1993 Plan and Schedule.

S.    The discharge of untreated sewage into Walnut Creek from the Kearsarge Overflow and other areas tributary to the Kearsarge pump station violates Sections 201, 202, and 401 of the Clean Streams Law, 35 P.S. §§691.201, 691.202 and 691.401.

T.    On February 25, 2003, the Township and Authority provided an updated schedule of activities to assure that the Kearsarge Overflow will be removed and overflow events from areas tributary to the Kearsarge pump station will be eliminated.

U.    The Township's and Authority's failure to remove the Kearsarge Overflow pursuant to the 1993 Plan and Schedule as set forth in Paragraph R, above, is a violation of the 1992 COA and subjects the Township and Authority to stipulated penalties pursuant to Paragraph 9 of the 1992 COA.

V.    The violations described in Paragraphs Q and S, above, constitute unlawful conduct pursuant to Section 611 of the Clean Streams Law, 35 P.S. §691.611; are statutory nuisances pursuant to Section 601 of the Clean Streams Law, 35 P.S. §691.601; and subject the Township and the Authority to civil penalty liability pursuant to Section 605 of the Clean Streams Law, 35 P.S. §691.605.

W.    The Township and Authority have identified 16 homes along the Rinderle Drive and Moraine Drive reporting malfunctions of on-lot sewage disposal systems. A map depicting the location of the 16 homes is attached and incorporated herein as Exhibit B. The Township is seeking the agreement of a developer to construct public water and sewer lines serving the 16 homes as part of the

**MSA-MT 6778**

construction of an adjacent subdivision. The public sewer lines constructed by the developer will be tributary to the Kearsarge pump station.

<u>Order</u>

After full and complete negotiation of all matters set forth in this Consent Order and Agreement, and upon mutual exchange of the covenants contained herein, the Parties desiring to avoid litigation and intending to be legally bound, it is hereby ORDERED by the Department and AGREED to by the Township and the Authority as follows:

1.    *Authority.* This Consent Order and Agreement is an Order of the Department authorized and issued pursuant to Sections 5 and 610 of the Clean Streams Law, 35 P.S. §§691.5 and 691.610; Section 10 of the Sewage Facilities Act, 35 P.S. §750.10 ; and Section 1917-A of the Administrative Code.

2.    *Findings.*

   a.    The Township and the Authority agree that the Findings in Paragraphs A through W are true and correct and, in any matter or proceeding involving the Township, and/or the Authority, and the Department, neither the Township nor the Authority shall challenge the accuracy or validity of these Findings.

   b.    The Parties do not authorize any other persons to use the Findings in this Consent Order and Agreement in any matter or proceeding.

3.    *Corrective Action.* The Township and Authority shall complete the following tasks no later than the dates specified herein to remove the Kearsarge Overflow and eliminate overflow events in areas tributary to the Kearsarge pump station:

   a.    On or before July 1, 2004, the Township and Authority shall jointly submit a complete and final Special Study as defined in 25 Pa. Code §71.1 to the Department which includes all

**MSA-MT 6779**

**PENNSYLVANIA FISH AND BOAT COMMISSION**
**BUREAU OF LAW ENFORCEMENT**

**DATE:**      November 9, 2004

**SUBJECT:**   Settlement Agreement #7667

**TO:**   Mr. George Riedesel, P.E., Manager
          Millcreek TWP. Sewer Authority

**FROM:**   WCO Thomas Edwards
            Central Erie County

As per our previous discussion this offer of civil settlement is in regard to the illegal bypass discharge and subsequent pollution of Walnut Creek on 9-9-2004 and 9-17-2004.  Settlement offer for both events will be for a total of 5,000.00.  or more specifically 2,500.00 per event.

If you have any questions relating to this incident feel free to contact me at 814-572-0066. When completed with the attached settlement agreement please return to the address listed below.

Thank You.

WCO Edwards
P.O. Box 814
Erie, PA 16512

CC:  OCA 013-03-04
     NWRO

PFC-564-(4-88)
PART II                                                                                    REGION NO. 013-03-04

PENNSYLVANIA FISH COMMISSION

SETTLEMENT AGREEMENT--POLLUTION OR DISTURBANCE OF WATERWAYS AND WATERSHEDS

Responsible Party's Identity:

_Millcreek Twp. Sewer Authority And Millcreek Twp. Supervisors_
Responsible Party's Address:

_3608 West 26th St.     ERIE          ERIE          PA     16506_
Street                        City-Twp.-Boro          County          State     Zip

Nature of Pollution: or Disturbance of Waterways and Watersheds

_9-9, 9-17-2004          Kearsarge Pump Station , Millcreek Township_
Date            Time          Place (include City, TWP, Boro)
_Walnut Creek          Lake Erie_
Water Area                   Tributary to

Description of Pollution or Disturbance of Waterways and Watersheds

_Township Did Allow on 9-9-2004 And 9-17-2004, Sewage which is Deleterious,_
_Destructive or Poisonous To Fish, To Be Turned Into or Allowed To Run,_
_Flow, Wash or Be Emptied Into Commonwealth Water._
Remarks:

_Revises SA # 7664, 7665 OCA 013-03-04._

RESPONSIBLE PARTY--READ THIS BEFORE SIGNING

By signing this settlement you are giving up your rights to a trial before a court to determine your guilt and/or
civil liability. When you initial here ⊗ _GWR_ and sign, you FORFEIT these rights.
                              Responsible Party's Initials

_11/11/04_
DATE
                                        _[signature]_  (013)
                                        Waterways Conservation Officer
                                        or other prosecuting officer

                                        ⊗ _George H. Riedesel_
                                        Responsible Party

Form, Amount and No. of Remittance: _____
                                                                        PL APP

PART I                                    PENNSYLVANIA FISH COMMISSION                    REGION NO. 013-03-04

SETTLEMENT AGREEMENT – ☒ POLLUTION   OF WATERWAYS AND WATERSHEDS
☐ DISTURBANCE

THIS AGREEMENT, made and entered into this ___9th___ day of ___November___
~~19~~ 2004, by and between the Pennsylvania Fish Commission (hereinafter called
"COMMISSION") and Millcreek Twp. Sewer Authority AND Millcreek Twp. Supervsr (hereinafter called "RESPONSIBLE PARTY").
Name of Responsible Party

WITNESSETH:

WHEREAS, the COMMISSION alleges that the RESPONSIBLE PARTY has committed an act or acts of pollution or disturbance of waterways and watersheds (described on page 2) that subject responsible party to prosecution under Section 2504 and/or 2502 of the Fish and Boat Code, Act 1980-175, 30 Pa. C.S. 2504, 2502, and/or civil liability under Section 2506 of said Fish and Boat Code, 30 Pa. C.S. 2506, and,

WHEREAS, the RESPONSIBLE PARTY is willing (voluntarily and of free will) to waive his/her/its right to trial before a court of competent jurisdiction to determine guilt and/or civil liability and settle this case, and,

WHEREAS, the COMMISSION is willing to settle the charges against RESPONSIBLE PARTY in accordance with the terms of this agreement and RESPONSIBLE PARTY desires to enter such agreement.

NOW THEREFORE, the parties hereto, in consideration of the sum of __Five Thousand 5,000.00__ DOLLARS ($ _5,000.00_ ), paid by RESPONSIBLE PARTY TO COMMISSION, and the mutual benefits to be conferred hereby, agreeing to be legally bound, do hereby covenant and agree as follows:

1. RESPONSIBLE PARTY voluntarily agrees to pay COMMISSION the sum of __Five Thousand__ DOLLARS ($ _5,000.00_ ) in lieu of fine and civil liability in settlement of the pollution of disturbance of waterways and watersheds charge(s) for act(s) described on page 2.

2. COMMISSION agrees to accept payment as set forth above, and, upon deposit of settlement amount, not to institute or pursue further any criminal prosecution or civil action for damages resulting from the act(s) of pollution or disturbance of waterways and watersheds described on page 2.

3. It is understood that if for any reason the payment tendered by RESPONSIBLE PARTY is not effective (e.g. bad check), the COMMISSION will reinstitute or commence prosecution and/or civil action for the act(s) of pollution or disturbance of waterways and watersheds and for other violations resulting from payment by worthless means. The responsible party agrees that any such pollution or disturbance of waterways and watersheds prosecution or civil action shall be timely, regardless of the date filed or the delay resulting from responsible party's rendering of ineffective payment.

4. This agreement may be rejected by the Regional Supervisor of the region where the act(s) of pollution or disturbance of waterways and watersheds took place. In such event, the settlement payment will be returned to the responsible party and prosecution and/or civil action reinstated, continued or commenced.

5. This agreement does not abate and shall not otherwise affect any prosecutions or civil actions instituted or to be instituted under Clean Streams Law P.L. 1987, No. 394, as amended §35 P.S. 691.1 et. seq.

6. ADDITIONAL CONDITIONS: __N/A_____

_____
_____
_____

Approved/Disapproved:                    PENNSYLVANIA FISH COMMISSION

By _____ (013)
                                         Waterways Conservation Officer

(X) _George N. Goedesel_
_____                       RESPONSIBLE PARTY              PL APP
Regional Supervisor                                                          MSA-MT 2978 78

RESPONSIBLE PARTY

Commonwealth of Pennsylvania
Pennsylvania Fish and Boat Commission
Bureau of Law Enforcement

Date:        9-8-04

Subject:     Settlement Agreement #7665

To:          Mr. George Riedesel, P.E., Manager
             Millcreek Twp. Sewer Authority

From:        WCO Thomas Edwards
             Central Erie County

             As per our discussion via telecon this offer of civil settlement is in regard
             To the illegal bypass discharge and subsequent pollution of Walnut Creek
             On 5-21-2004, 7-16-2004 and finally on 7-31-2004. Event on 5-21-2004
             Will be in the amount of $500.00. Event on 7-16-2004 will be in the
             Amount of $1,000.00 and finally the event on 7-31-2004 will be in the
             Amount of $2,000.00 for a total of $3,500.00. Made payable to the
             Pennsylvania Fish and Boat Commission

             If you have any questions relating to this incident feel free to contact me at
             814-572-0066. When completed with the attached settlement agreement
             please return it to the address listed below.

             WCO Edwards
             P.O. Box 814
             Erie, PA 16512

CC: OCA 013-03-04
    NWRO

*Pd. 9/16/04*
*$ 3,500.00*
*ck # 110400*

PFC-564-(4-89)

PART I

COMMONWEALTH OF PENNSYLVANIA

PENNSYLVANIA FISH COMMISSION

No. 7665

REGION NO. 013-03-04

SETTLEMENT AGREEMENT – ☒ POLLUTION   OF WATERWAYS AND WATERSHEDS
                                    ☐ DISTURBANCE

THIS AGREEMENT, made and entered into this **10th** day of **September**
~~19 200'~~, by and between the Pennsylvania Fish Commission (hereinafter called
"COMMISSION") and **Millcreek Twp. Sewer Authority and Millcreek Twp. Supervisors**(hereinafter called "RESPONSIBLE PARTY").
                        Name of Responsible Party

### WITNESSETH:

WHEREAS, the COMMISSION alleges that the RESPONSIBLE PARTY has committed an act or acts of pollution or disturbance of waterways and watersheds (described on page 2) that subject responsible party to prosecution under Section 2504 and/or 2502 of the Fish and Boat Code, Act 1980-175, 30 Pa. C.S. 2504, 2502, and/or civil liability under Section 2506 of said Fish and Boat Code, 30 Pa. C.S. 2506, and,

WHEREAS, the RESPONSIBLE PARTY is willing (voluntarily and of free will) to waive his/her/its right to trial before a court of competent jurisdiction to determine guilt and/or civil liability and settle this case, and,

WHEREAS, the COMMISSION is willing to settle the charges against RESPONSIBLE PARTY in accordance with the terms of this agreement and RESPONSIBLE PARTY desires to enter such agreement.

NOW THEREFORE, the parties hereto, in consideration of the sum of _**Three Thousand Five Hundred** 3,500.00_ DOLLARS ($ _3,500.00_ ), paid by RESPONSIBLE PARTY TO COMMISSION, and the mutual benefits to be conferred hereby, agreeing to be legally bound, do hereby covenant and agree as follows:

1. RESPONSIBLE PARTY voluntarily agrees to pay COMMISSION the sum of _Three Thousand Five Hundred_ DOLLARS ($ _3,500.00_ ) in lieu of fine and civil liability in settlement of the pollution of disturbance of waterways and watersheds charge(s) for act(s) described on page 2.

2. COMMISSION agrees to accept payment as set forth above, and, upon deposit of settlement amount, not to institute or pursue further any criminal prosecution or civil action for damages resulting from the act(s) of pollution or disturbance of waterways and watersheds described on page 2.

3. It is understood that if for any reason the payment tendered by RESPONSIBLE PARTY is not effective (e.g. bad check), the COMMISSION will reinstitute or commence prosecution and/or action for the act(s) of pollution or disturbance of waterways and watersheds and for other violations resulting from payment by worthless means. The responsible party agrees that any such pollution or disturbance of waterways and watersheds prosecution or civil action shall be timely, regardless of the date filed or the delay resulting from responsible party's rendering of ineffective payment.

4. This agreement may be rejected by the Regional Supervisor of the region where the act(s) of pollution or disturbance of waterways and watersheds took place. In such event, the settlement payment will be returned to the responsible party and prosecution and/or civil action reinstated, continued or commenced.

5. This agreement does not abate and shall not otherwise affect any prosecutions or civil actions instituted or to be instituted under Clean Streams Law P.L. 1987, No. 394, as amended §35 P.S. 691.1 et. seq.

6. ADDITIONAL CONDITIONS: _N/A_

Approved/Disapproved:

PENNSYLVANIA FISH COMMISSION

By _Thomas H_ (013) _Edwards Jr._
        Waterways Conservation Officer

**MSA-MT 2994**

_____
Regional Supervisor

RESPONSIBLE PARTY

RESPONSIBLE PARTY

PL APP
80

PFC-564-(4-88)                                                                  No. 7665
PART II
                                                        REGION NO. 013-03-04

PENNSYLVANIA FISH COMMISSION

SETTLEMENT AGREEMENT--POLLUTION OR DISTURBANCE OF WATERWAYS AND WATERSHEDS

Responsible Party's Identity:

Millcreek Township Sewer Authority And Millcreek Township Supervisors

Responsible Party's Address:

| 3608 West 26th St. | ERIE | ERIE | PA | 16506 |
|---|---|---|---|---|
| Street | City-Twp.-Boro | County | State | Zip |

Nature of Pollution: or Disturbance of Waterways and Watersheds

| 5-21, 7-16 + 7-31-2004 | | Kearsarge Lift Station, Millcreek Township |
|---|---|---|
| Date | Time | Place (include City, TWP, Boro) |

| WALNUT CREEK | LAKE ERIE |
|---|---|
| Water Area | Tributary to |

Description of Pollution or Disturbance of Waterways and Watersheds

Township DID Allow on 5-21-2004, 7-16-2004 and 7-31-2004 Sewage which is deleterious, destructive or poisonous To FISH, To be Turned into or allowed To run, Flow, wash or be emptied into Commonwealth water.

Remarks:

Previous SA # 7664 OCA 013-01-04 for 3-20-04 Event.

RESPONSIBLE PARTY--READ THIS BEFORE SIGNING

By signing this settlement you are giving up your rights to a trial before a court to determine your guilt and/or civil liability. When you initial here _____ D 7 _____ and sign, you FORFEIT these rights.

Responsible Party's Initials

9/16/04
DATE

(013)                          Thomas H.
                               Edwards Jr.
Waterways Conservation Officer
or other prosecuting officer

Responsible Party

**MSA-MT 2995**

PL APP

81

Form, Amount and No. of Remittance: _____

RESPONSIBLE PARTY




**PA STATE AGENCIES**    **ONLINE SERVICES**

Commonwealth of Pennsylvania
DEP Home || About DEP

        

Department of
Environmental Protection
DEP Keywords    Air Topics ▼    Land Topics ▼    Water Topics ▼    Energy Topics ▼    Search

**Quick Access**

Calendar of Events

Economic Development
Assistance

DEP Programs (A-Z)

Environmental Complaints

Forms & Publications

Grants & Loans

Newsroom

Permits, Licensing &
Certification

Public Participation

Report an Environmental
Incident

Sign up for e-notice

**In Your Neighborhood**



Northeast | Northcentral
Northwest | Southeast
Southcentral | Southwest

**Links**

Education & History

Employment & Careers

## Grant Program Summary

**Go back to DEP Grant and Loan Program**

**Program Name**
Growing Greener Watershed Grants

**Program Type**
Water

**Program Purpose**
Restore watersheds and streams, reclaim mined lands, remediate AMD

**Program Eligibility**
County, Municipality, Authority, School District, NonProfit, Conservation District, Watershed Associations.

**Application Availability**
November 2005

**Application Deadline**
March 3, 2006

**Average Grant Amount**
$95,000.00

**Contact Phone Number**
(717)705-5400

**Contact Email**
GrowingGreener@state.pa.us

DEP Home || Privacy Policy || Site Plug-Ins/Viewers || Contact DEP

Commonwealth of Pennsylvania
Department of Environmental Protection

http://www.dep.state.pa.us/grantscenter/ProgramSummary.asp?ID=65          5/5/2006



PA STATE AGENCIES          ONLINE SERVICES

Commonwealth of Pennsylvania                                                      DEP Home || About DEP

     

Department of
Environmental Protection

DEP Keywords          Air Topics ▼      Land Topics ▼      Water Topics ▼      Energy Topics ▼          Search

**Quick Access**
Calendar of Events
Economic Development Assistance
DEP Programs (A-Z)
Environmental Complaints
Forms & Publications
Grants & Loans
Newsroom
Permits, Licensing & Certification
Public Participation
Report an Environmental Incident
Sign up for e-notice
**In Your Neighborhood**



To find DEP services in your area, click on a region below:

NW    NC    NE

SW    SC    SE

Northeast | Northcentral
Northwest | Southeast
Southcentral | Southwest

**Links**
Education & History
Employment & Careers
Mapping
Technical Guidance

## Grant Program Summary

**Go back to DEP Grant and Loan Program**

**Program Name**
Environmental Education Grants Program

**Program Type**
Combination

**Program Purpose**
The conservation of Commonwealth resources depends on the effectiveness of the environmental literacy of its citizens. The focus of this EE Grants Program is to suppor environmental education through schools, county conservation districts and other nonprofi conservation or educational organizations, including colleges and universities.

**Program Eligibility**
County, Municipality, Authority, School District, NonProfit, Conservation District, Non-Profit Conservation or Education Organizations.

**Application Availability**
10/03/05

**Application Deadline**
3/10/06

**Average Grant Amount**
$5,000.00

**Contact Phone Number**
n/a

**Contact Email**
n/a

DEP Home || Privacy Policy || Site Plug-Ins/Viewers || Contact DEP

Commonwealth of Pennsylvania
Department of Environmental Protection