IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIE COUNTY ENVIRONMENTAL COALITION, et. al., <br>     Plaintiffs <br><br>     v. <br><br> MILLCREEK TOWNSHIP SEWER AUTHORITY, et. al., <br>     Defendants | ) <br> ) <br> ) <br> ) <br> )CIVIL ACTION NO. 05-59 ERIE <br> )ELECTRONICALLY FILED <br> ) <br> ) <br> ) |

**RESPONSIVE CONCISE STATEMENT OF PLAINTIFFS**

Plaintiffs, Erie County Environmental Coalition, PennEnvironment, and the Gaia Defense League file this Responsive Concise Statement and submit the following:

I. **Response to Defendants' Concise Statement of Material Facts**

1. Admitted. On April 21, 2006, Plaintiffs filed a Motion to Amend its Motion for Summary Judgment to include a concise statement of material facts.

2. Admitted.

3. Admitted. Plaintiffs have withdrawn any claims and/or relief related to Section 1342(q) of the Clean Water Act based on Millcreek's status as Sanitary Sewer Overflow, not a Combined Sewer Overflow.

4. Admitted. Plaintiffs have withdrawn any claims and/or relief related to Section 1342(q) of the Clean Water Act based on Millcreek's status as Sanitary Sewer Overflow, not a Combined Sewer Overflow.

5. Admitted.

6. Admitted.

2

7. Admitted.

8. Admitted.

9. Admitted as an opinion of August E. Maas. Denied as to the characterization of Mr. Maas' expertise.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Admitted.

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. Admitted.

35. Admitted.

36. Admitted.

37. Admitted.

38. Admitted.

39. Admitted.

40. Denied. This is not a fact but something that is "suspected."

41. Admitted.

42. Denied. Plaintiffs are not clear as what Defendants are suggesting. Denied also as a legal conclusion.

43. Admitted.

44. Denied. It is not clear from the Affidavit of George Riedesel that the claim would be futile.

45. Denied as a legal conclusion.

46. Admitted in part and denied in part. Admitted as to the monies spent. Denied as to the characterization regarding economic benefit.

47. Admitted.

48. Denied in part. Millcreek seems to suggest in fact Nos. 43 and 44 that the electronic gauge would cost too much.

49. Denied. Millcreek did not notify the Commonwealth about the construction of the bypass until 1991, three years after it was constructed. (App. at 68, 71). Millcreek failed to remove the bypass in accordance with the 1992 Consent Order and Agreement. (App. at 72, ¶ L).

50. Denied. Plaintiffs have rebutted the evidence with information from both the Environmental Protection Agency and Pennsylvania's Fish and Boat Commission. App. 77, 81.

51. Denied as to the implication that this somehow cures any failure to comply with the Clean Water Act.

52. Denied as to the implication that there is not grants available to help with the sewage upgrade process.

53. Denied as a conclusion of law as to the extent it implicates that no further penalties are therefore allowed.

54. Denied. There are several considerations that go into the calculation.

55. Admitted.

## II. Statement of Material Facts in Reply to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment on All Claims

1. Defendant Millcreek Township Sewer Authority owns the sewage conveyance system. (Comp. at 3-4, ¶ 16; Ans. at 4, ¶ 16).

2. Defendant Millcreek Township manages and operates that same sewage conveyance system. (Comp. at 3-4, ¶ 16; Ans. at 4, ¶ 16).

3. During or immediately following heavy rain events and other heavy run-off events, overflow from the Defendant's sewer system has been discharged into Walnut Creek. (Comp. at 3, ¶ 12; Ans. at 3, ¶ 12).

4. The Kearsarge Pumping Station has a bypass that discharges directly into Walnut Creek. (Comp. at 4, ¶ 21; Ans. at 4, ¶ 21).

5. The Kearsarge area manholes/overflows flow into Walnut Creek (Def. Resp, Fact Nos. 23 & 24; Comp. ¶ 36; Ans. ¶ 36; App. at 65, 73).

6. Millcreek has not been issued a National Pollution Discharge Elimination System ("NPDES") permit pursuant to the CWA. (Comp. at 3, ¶ 12; Ans. at 3, ¶ 12).

7. Discharges into Walnut Creek by Millcreek occur without a NPDES permit. (Comp. at 5-7, ¶ 34; Ans. at 6, ¶ 34).

8. Millcreek has been illegally discharging into Walnut Creek since at least 1991. (App. at 68, 71).

9. Millcreek Township constructed the Kearsarge bypass without authorization from the Commonwealth. (App. at 68, 71).

10. In 1992, following discharges of raw and/or inadequately treated sewage into Walnut Creek, Millcreek Township and Millcreek Township Sewer Authority entered into a Consent Order and Agreement with the Commonwealth of Pennsylvania Department of Environmental Protection ("PADEP"), in accordance with the CWA and Pennsylvania Clean Streams Law. (Comp. at 5, ¶ 27; Ans. at 5, ¶ 27).

11. The 1992 Consent Order and Agreement did not result in the removal of the Kearsarge bypass. (App. at 72, ¶ L).

12. In 2003, a second consent order was entered into by Millcreek and the PADEP, pursuant to Pennsylvania's Clean Streams Law, 35 Pa. Stat. Ann. § 691.1 et. seq. (Comp. at 5, ¶ 28; Ans. at 5, ¶ 28).

13. Millcreek Township Sewer Authority ("MTSA") discharged pollutants into Walnut Creek from the Kearsarge pump station on September 17, 2004. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 1, 5-6 ).

14. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on September 10, 2004. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 1-4).

15. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on September 9, 2004. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 1-4).

16. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on August 1, 2004. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 7, 9-11).

17. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on July 31, 2004. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 7, 9-11).

18. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on July 16, 2004. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 7,8).

19. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on May 21, 2004. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 15-18).

20. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on March 20, 2004. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 19-25).

21. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on November 28, 2003. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 26-28).

22. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on September 29, 2003. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 29-33).

23. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on May 12, 2002. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 34).

24. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on April 14, 2002. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 35).

25. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on February 1, 2002. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 36).

26. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on November 7, 2000. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 37).

27. MTSA discharged pollutants into Walnut Creek from the Kearsarge pump station on December 14, 1999. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 38).

28. MTSA discharged pollutants into Walnut Creek from the 51st, 52nd, and Zimmerly Streets overflow outlet on September 9, 2004. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 1-4).

29. MTSA discharged pollutants into Walnut Creek from the 51st, 52nd, and Zimmerly Streets overflow outlet on July 31, 2004. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 7, 9-11).

30. MTSA discharged pollutants into Walnut Creek from the 51st, 52nd, and Zimmerly Streets overflow outlet on September 29, 2003. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 29-33).

31. MTSA discharged pollutants into Walnut Creek from the 51st, 52nd, and Zimmerly Streets overflow outlet on May 12, 2002. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 34).

32. MTSA discharged pollutants into Walnut Creek from the 51st, 52nd, and Zimmerly Streets overflow outlet on April 14, 2002. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 35).

33. MTSA discharged pollutants into Walnut Creek from the 51st, 52nd, and Zimmerly Streets overflow outlet on February 1, 2002. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 36).

34. MTSA discharged pollutants into Walnut Creek from the 51st, 52nd, and Zimmerly Streets overflow outlet on August 3, 2000. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 39).

35. MTSA discharged pollutants into Walnut Creek from the Larchmont and Beaver Streets overflow outlet on September 9, 2004. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 1-4).

36. MTSA discharged pollutants into Walnut Creek from the Larchmont and Beaver Streets overflow outlet on April 14, 2002. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 35).

37. MTSA discharged pollutants into Walnut Creek from the Larchmont and Beaver Streets overflow outlet on February 1, 2002. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 36).

38. MTSA discharged pollutants into Walnut Creek from the Church and Patton and Pershing Streets overflow outlet on September 9, 2004. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 1-4).

39. MTSA discharged pollutants into Walnut Creek from the Church and Patton and Pershing Streets overflow outlet on July 31, 2004. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 7, 9-11).

40. MTSA discharged pollutants into Walnut Creek from the Church and Patton and Pershing Streets overflow outlet on April 14, 2002. (Comp. at 5-7, ¶ 6; Ans. at 6, ¶ 34; App. at 35).

41. Therefore, since December 1999, Millcreek has discharged millions of gallons of pollutants into Walnut Creek. (App. 1-39).

42. Pennsylvania Fish & Boat Commission has characterized Millcreek's discharges as "deleterious, destructive, or poisonous to fish." (App. at 77, 81).

43. Pennsylvania Fish & Boat Commission has characterized Millcreek's discharges as "chronic." (App. at 77, 81).

44. Stan Skrypzak is a member of The GAIA Defense League since February 2005, and a member of the Save Our Native Species of Lake Erie, a non-voting member of The Erie County Environmental Coalition since the 1980's. (App. at 41, Skrypzak Dec. at 1, ¶ 1).

45. Mr. Skrypzak owns 120 acres of shoreline on Walnut Creek and is a Fisherman who enjoys recreational use of Walnut Creek approximately 40 times a year. (App. at 42, Skrypzak Dec. at 2, ¶ 6-8.)

46. Mr. Skrypzak's use and enjoyment of Walnut Creek has been adversely impacted by Millcreek discharges, which have diminished the quantity of steelhead in the Creek. (App. at 42, Skrypzak Dec.at 2, ¶ 8.)

47. Mr. Skrypzak believes his loss of enjoyment is a direct result of Millcreek's failure to implement water quality standards within the Township. (App. at 42, Skrypzak Dec. at 2, ¶ 9.)

48. Jimmy Dallas is a member of The GAIA Defense League since February 2005, and a member of the Save Our Native Species of Lake Erie, a non-voting member of The Erie County Environmental Coalition since the 1980's. (App. at 42, Dallas Dec. at 1, ¶ 1.)

49. Mr. Dallas uses Walnut Creek for fishing and recreational use approximately 5 times a week. (App. at 43, Dallas Dec. at 2, ¶ 6, 7.)

50. Mr. Dallas' use and enjoyment of Walnut Creek has been adversely impacted by Millcreek discharges, which no longer allow Mr. Dallas to eat any fish he catches in Walnut Creek. (App. at 43, Dallas Dec. at 2, ¶ 8.)

51. Mr. Dallas believes his loss of enjoyment is a direct result of Millcreek's failure to implement water quality standards within the Township. (App. at 43, Dallas Declaration at 2, ¶ 9.)

52. James Gwinn is a member of The GAIA Defense League and The Erie County Environmental Coalition since February 2005 and a member of the Save Our Native Species of Lake Erie, a non-voting member of The Erie County Environmental Coalition since the early 1990's. (App. at 45, Gwinn Dec. at 1, ¶ 1.)

53. Mr. Gwinn uses Walnut Creek for fishing and conservation activities to monitor, measure and report causes of pollution, approximately 450 to 600 hours a year. (App. at 46, Gwinn Dec. at 2, ¶¶ 6, 7.)

54. Mr. Gwinn's use and enjoyment of Walnut Creek has been adversely impacted by Millcreek discharges, which no longer allow Mr. Gwinn to eat any fish taken in Walnut Creek. (App. at 46, Gwinn Dec. at 2, ¶ 8.)

55. Mr. Gwinn believes his loss of enjoyment is a direct result of Millcreek's failure to implement water quality standards within the Township. (App. at 46, Gwinn Dec. at 2, ¶ 10.)

56. Cathy Pedler is a member of The GAIA Defense League since November 2004 and a member of The Erie County Environmental Coalition since 2000. (App. at 48, Pedler Dec. at 1, ¶ 1.)

57. Ms. Pedler uses Lake Erie and its tributaries, including Walnut Creek, for swimming, scuba diving and for a project to create an underwater preserve. (App. at 49, Pedler Dec. at 2, ¶ 6.)

58. Ms. Pedler's use and enjoyment of Walnut Creek has been adversely impacted by Millcreek discharges, which no longer allow Ms. Pedler to swim in Lake Erie and have jeopardized project efforts and undermines conservation and restoration efforts of her member organizations. (App. at 49, Pedler Dec. at 2, ¶¶ 6, 7.)

59. Ms. Pedler believes her loss of enjoyment is a direct result of Millcreek's failure to implement water quality standards within the Township. (App. at 49, Pedler Dec. at 2, ¶ 8.)

60. Martin Visnosky is a member of The GAIA Defense League since November 2004 and a member of The Erie County Environmental Coalition since 1985. (App. at 51, Visnosky Dec. at 1, ¶ 1.)

61. Mr. Visnosky uses Walnut Creek for hiking, fishing, and bird watching activities, approximately 30 times a year. (App. at 52, Visnosky Dec. at 2, ¶¶ 6, 7.)

62. Mr. Visnosky's use and enjoyment of Walnut Creek has been adversely impacted by Millcreek discharges, which significantly alter the aquatic life and wildlife associated with Mr. Visnosky's recreational activities. (App. at 52, Visnosky Dec. at 2, ¶ 8.)

63. Mr. Visnosky believes his loss of enjoyment is a direct result of Millcreek's failure to implement water quality standards within the Township. (App. at 52, Visnosky Dec. at 2, ¶ 9.)

64. Jesse T. Davis III is a member of The GAIA Defense League since October 2005. (App. at 53, Davis Dec. at 1, ¶ 1.) Mr. Davis uses Walnut Creek to fish for steelhead and numerous species of bass and trout, approximately 12 times a month. (App. at 54, Davis Dec. at 2, ¶¶ 6, 7.)

65. Mr. Davis' use and enjoyment of Walnut Creek has been adversely impacted by Millcreek discharges, which limit his ability to fish and eat fish that have been caught in the Creek. (App. at 54, Davis Dec. at 2, ¶ 8.)

66. Mr. Davis believes his loss of enjoyment is a direct result of Millcreek's failure to implement water quality standards within the Township. (App. at 55, Davis Dec. at 3, ¶ 9.)

67. Paul F. Burroughs is a member of The GAIA Defense League since October 2005. (App. at 56, Burroughs Dec. at 1, ¶ 1.)

68. Mr. Burroughs owns property on Walnut Creek and uses the creek for recreational enjoyment, including fishing. (App. at 57, Burroughs Dec. at 2, ¶ 5.)

69. Mr. Davis' use and enjoyment of Walnut Creek has been adversely impacted by Millcreek discharges, causing him to reduce his recreational use of the creek, and handle trespass as a landowner. (App. at 57-58, Burroughs Dec. at 2-3, ¶ 7-10.)

70. Mr. Burroughs believes his loss of enjoyment is a direct result of Millcreek's failure to implement water quality standards within the Township. (App. at 59, Burroughs Dec. at 4, ¶ 11.)

Respectfully submitted,

s/ Jennifer A. Murphy
Jennifer A. Murphy, Esquire
PA90851
Mid-Atlantic Environmental Law Center
4601 Concord Pike, P.O. Box 7474
Wilmington, DE 19803-0474
(302) 477-2182
(302) 477-2032 (fax)
jennifer.a.murphy@law.widener.edu
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document by electronic means utilizing the Court's CM/ECF system that will serve notice of electronic filing to Mark J. Shaw, Esq., McDonald, Illig, Jones & Britton, LLP, Attorney for Defendants on this 5th day of May, 2006.

    /s/ Jennifer A. Murphy
Jennifer A. Murphy
PA90851
Mid-Atlantic Environmental Law Center
c/o Widener University School of Law
4601 Concord Pike
P.O. Box 7474
Wilmington, DE  19803