IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIE COUNTY ENVIRONMENTAL COALITION, PENNENVIRONMENT, INC. and THE GAIA DEFENSE LEAGUE,<br>    Plaintiffs<br><br>        v.<br><br>MILLCREEK TOWNSHIP SEWER AUTHORITY AND MILLCREEK TOWNSHIP,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 05-59 ERIE<br>)  ELECTRONICALLY FILED<br>)<br>)  JUDGE COHILL<br>)<br>) |

**SUR-REPLY BRIEF IN RESPONSE TO SUPPLEMENTAL PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendants MILLCREEK TOWNSHIP SEWER AUTHORITY and MILLCREEK TOWNSHIP, by and through their attorneys, MacDonald, Illig, Jones & Britton LLP, file this Sur-Reply Brief in Response to Supplemental Plaintiffs' Reply to Defendants' Brief in Opposition to Plaintiffs' Motion for Summary Judgment:

I.  Introduction

On February 16, 2007, Defendants Millcreek Township Sewer Authority ("MTSA") and Millcreek Township ("Millcreek") filed a Supplement to Brief in Support of Defendants' Motion for Summary Judgment and Brief in Opposition to Plaintiffs' Motion for Summary Judgment, a Supplement to Concise Statement of Material Facts in Support of Motion for Summary

Judgment on behalf of Millcreek Township Sewer Authority and Millcreek Township and a Second Supplemental Affidavit of George W. Riedesel (hereinafter collectively referred to as "Supplements").  MTSA and Millcreek filed these Supplements to support their argument that the violations alleged by the Plaintiffs relating to overflows at various manhole areas had been rendered moot by the work that MTSA and Millcreek had completed pursuant to the 2003 Consent Decree and Agreement ("2003 COA") entered into with the Pennsylvania Department of Environmental Protection (Department").[1]

On April 4, 2007, Plaintiffs filed their Response to Defendants' Supplement to Concise Statement of Material Facts ("Response").  In the Response, Plaintiffs ignore the work done by MTSA and Millcreek relating to the alleged overflows associated with the three separate manhole areas and, instead, claim that the overflow at the Kearsarge Pump Station still has not been removed.  Not only is Plaintiffs' argument regarding the overflow at the Kearsarge Pump Station irrelevant in determining whether the alleged violations associated with the three separate manhole areas are moot, but it also is incorrect as the overflow at the Kearsarge Pump Station now has been removed.

In addition, Plaintiffs claim that mootness does not extinguish their alleged claims for civil penalties under the Clean Water Act with respect to the discharges at the various manhole areas.  Plaintiffs' argument ignores United States Supreme Court precedent regarding whether the mootness doctrine can extinguish civil penalty claims.

---

[1] Plaintiffs' Complaint alleged 7 discharges (i.e., overflows) and violations at the Zimmerly manhole area; 3 discharges and violations at the Larchmont and Beaver Street manhole areas; and 3 discharges and violations at the Church and Patton and Pershing Streets manhole areas.

II.   <u>Argument</u>

      A.   THE ARGUMENTS RAISED BY PLAINTIFFS IGNORE THE CLEAR FACTS THAT THERE HAVE BEEN NO OVERFLOWS AT THE MANHOLE AREAS FOR OVER 30 MONTHS AND THE WORK NECESSARY TO RESOLVE THE CAUSES OF THE HISTORIC OVERFLOWS HAS BEEN COMPLETED PURSUANT TO THE 2003 COA.

Plaintiffs' argument attempts to lump together the alleged violations associated with overflows in the three separate manhole areas with the alleged violations associated with the overflows at the Kearsarge Pump Station.[2] Based on that unsubstantiated link, Plaintiffs argue that because the overflow mechanism of the Kearsarge Pump Station remains, Plaintiffs' claims are not moot. Plaintiffs attempt to link the alleged violations at the manhole areas to the Kearsarge Pump Station is not supported by any evidence and, in fact, the evidence indicates that there is no link.

As indicated above, there were three separate manhole areas from which Plaintiffs alleged in their February 2005 Complaint there were discharges in violation of the Clean Water Act: (1) 51st and 52nd Streets and Zimmerly Road; (2) Larchmont and Beaver Streets; and (3) Church, Patton and Pershing Streets.

---

[2] Plaintiffs argue that the improvements to these areas are too new and the discharge events are too intermittent to determine whether the problem has been fixed. This argument fails on several levels. First, it ignores the plain fact presented by MTSA and Millcreek that there has been no overflow from these areas in 31 months. Second, the argument ignores the evaluation contained in the Special Study that indicates that these projects will fix the problem. Plaintiffs have offered no evidence to contradict the findings and recommendations of the Special Study.

Under the 2003 COA, entered into long before Plaintiffs filed suit, MTSA and Millcreek were to conduct a Special Study to correct the overflow problems at the manhole areas. (2003 COA, ¶ 3(a), App. at 167-168). The Special Study found that the Zimmerly manhole area problem was occurring because the Zimmerly Road sewer lines were too small. (Aff. of G. Allender, ¶ 25). The Special Study recommended that a relief sewer be installed to correct the problem, and such relief sewer was installed in September 2004, five months before Plaintiffs filed suit. (App. at 208, 212, 251; Affidavit of G. Allender, ¶ 25; Aff. of G. Riedesel, ¶ 23).

The Special Study required by the 2003 COA also found that the 18" Beaver Run Interceptor was too small, and that it was causing the discharges at both the Larchmont and Beaver Streets manhole areas and the Church, Patton and Pershing Streets manhole areas. (App. at 208, 212, 248, 251; Aff. of G. Riedesel, ¶ 24; Aff. of G. Allender, ¶ 26). The Special Study recommended that a diversion to the Beaver Run relief sewer be constructed, known as the Peach Street Diversion. (App. at 208, 212). The Peach Street Diversion would take 1.2 MGD from the Beaver Run Interceptor to the Beaver Run relief sewer, which has more than enough capacity. (Aff. of G. Allender, ¶ 26; Special Study, App. at 285). Once the Peach Street Diversion would be completed, there would be no discharges from the manholes in the areas of Larchmont and Beaver Streets and Church, Patton and Pershing Streets. (App. at 285). The Peach Street Diversion was constructed and became operational on October 24, 2006. (Second Supp. Aff. of G. Riedesel, ¶ 2).

On top of all of the work that has been completed is the fact that there have been no overflows at any of these manhole areas for 31 months. (Third Supp. Aff. of G. Riedesel, ¶ 1).

Plaintiffs have no evidence establishing that any discharge in these areas was due to the overflow at the Kearsarge Pump Station. Thus, whether the Kearsarge Pump Station overflow

remains in place is irrelevant to whether the alleged violations associated with these three manhole areas are moot. To the contrary, the 31 months of no discharges from these areas, together with the work performed to solve the problems in those areas, establishes that there is no reasonable expectation that the discharges from these areas will recur.

Accordingly, the injunctive and declaratory relief and the civil penalties requested by the Plaintiffs relating to discharges from all three manhole areas are moot. There is nothing further for this Court to order MTSA and Millcreek to do to stop the alleged violations (which have, in fact, stopped), and civil penalties will achieve no purpose where MTSA and Millcreek have completed the work and already have paid civil penalties, and where there would be no deterrent effect.

      B.    THE COMPLETION OF THE TWO STORAGE TANKS AND THE REMOVAL OF THE OVERFLOW TO WALNUT CREEK FROM THE KEARSARGE PUMP STATION COMPLETELY ELIMINATES THE POTENTIAL FOR FUTURE DISCHARGES FROM THE OVERFLOW AND THE KEARSARGE PUMP STATION TO WALNUT CREEK AND PRECLUDE THE COURT FROM GRANTING PLAINTIFFS' REQUESTS FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES SOUGHT IN THEIR MOTION FOR SUMMARY JUDGMENT.

Subsequent to the filing of Defendants' Supplements, several additional events have occurred that counter the arguments raised in Plaintiffs' Motion for Summary Judgment and in Plaintiffs' Response to Defendants' Supplements.

As predicted in Defendants' Motion to Supplement, MTSA and Millcreek completed construction of the two overflow retention tanks at the Kearsarge Pump Station and the two tanks were fully operational by March 19, 2007, one week prior to the March 26, 2007 completion date in the 2003 COA. (Third Supp. Aff. of G. Riedesel, ¶ 2). Because the two tanks were fully operational, MTSA and Millcreek Township also removed the overflow mechanism at the Kearsarge Pump Station on March 19, 2007, over five weeks prior to the April 25, 2007 removal date contained in the 2003 COA. (Third Supp. Aff. of G. Riedesel, ¶ 4). The photographs attached to the Third Supplemental Affidavit of George Riedesel document the completed tanks and the removal of the overflow mechanism at the Kearsarge Pump Station. (Third Supp. Aff. of G. Riedesel, ¶¶ 3 and 5, Exhibits 1 and 2).

Thus, MTSA and Millcreek have diligently complied with the 2003 COA. (Third Supp. Aff. of G. Riedesel, ¶ 6). With the removal of the overflow mechanism and the operation of the two completed retention tanks, there is no longer an overflow problem at the Kearsarge Pump Station. (Third Supp. Aff. of Riedesel, ¶ 7). The successful resolution of the overflow problem at the Kearsarge Pumping Station in accordance with the 2003 COA supports MTSA's and Millcreek's position that the injunctive relief and civil penalties sought by the Plaintiffs in their Motion for Summary Judgment are not appropriate.

The removal of the overflow in connection with the construction of the two retention tanks as described above also undermines the core argument raised in Plaintiffs' Response. (Third Supp. Aff. of G. Riedesel, ¶ 8). In Plaintiffs' Response, Plaintiffs place great emphasis on the assertion that:

> At this point the improvements to the Kearsarge Pump Station have not been completed nor has the overflow for Kearsarge been removed. Therefore, there is still potential for discharge from Kearsarge.

However, the improvements now have been completed and the overflow now has been physically removed. Thus, even if the alleged violations regarding overflows at the manhole areas were dependent on the removal of the Kearsarge Pump Station overflow and the construction of retention tanks, such work has been completed and provides assurance that there is no reasonable expectation that the alleged violations at the manhole areas will recur, thus the Plaintiffs' claims for relief are moot. Natural Resources Defense Council v. Texaco Refining and Marketing, 2 F.3d 493, 502 (3d Cir. 1993). (Holding injunctive relief moot where an outfall could no longer violate permit limits because the outfall had been removed from regulation under the facility permit.)

      C.      THE PLAINTIFFS' CLAIMS FOR CIVIL PENALTIES FOR THE ALLEGED VIOLATIONS OF THE CLEAN WATER ACT ASSOCIATED WITH DISCHARGES FROM THE MANHOLE AREAS CAN BE MOOT UNDER THE UNITED STATES SUPREME COURT'S DECISION IN FRIENDS OF THE EARTH, INC V. LAIDLAW ENVIRONMENTAL SERVICES, INC., AND THE UNDISPUTED FACTS OF THIS CASE ESTABLISH THAT THE CASE IS MOOT WITH RESPECT TO PLAINTIFFS' CLAIMS REGARDING THE MANHOLE AREAS.

Plaintiffs argue that they are entitled to an order requiring MTSA and Millcreek to pay civil penalties because claims for civil penalties under the Clean Water Act cannot be made moot even though an intervening act has eliminated any reasonable possibility that a defendant would

continue to violate the Act.[3]  Plaintiffs' argument fails because it relies upon a case that has subsequently been undermined by a decision of the United States Supreme Court.  In addition, Plaintiffs have offered no evidence to rebut the evidence supporting MTSA's and Millcreek's argument that the problems have been corrected, that there is no reasonable likelihood of recurrence, that MTSA and Millcreek already have paid civil penalties, and that additional civil penalties will simply be punitive, and will not provide deterrence.

In Natural Resources Defense Council, Inc. v. Texaco Refining and Marketing, Inc., 2 F.3d 493, 503 (3d Cir. 1993), the Third Circuit Court of Appeals held that claims for civil penalties under the Clean Water Act are not rendered moot because an intervening event eliminates any reasonable possibility that a violation will continue.  The Court reasoned that civil penalty claims could not be moot in part because "[t]he potential imposition of penalties is an important mechanism to deter companies from violating their "NPDES permits."  Id.  Furthermore, the Court reasoned that if civil penalty claims could be mooted by post-complaint conduct, then "polluters would be encouraged to 'delay litigation as long as possible, knowing

---

[3] Plaintiffs confuse the concepts of the statutory bar on citizen suits under Section 309(g) of the Clean Water Act and the doctrine of mootness.  While MTSA and Millcreek assert that Section 309(g) bars the Plaintiffs' action, whether the Plaintiffs' claims of violations relating to the manhole areas also are moot is a separate question.  Plaintiffs offer no support for the notion that an action not barred by Section 309(g) cannot become moot.  Furthermore, for the extensive reasons previously offered by MTSA and Millcreek, Section 309(g) does bar Plaintiffs' suit in its entirety because the Department was diligently prosecuting MTSA and Millcreek under a state law comparable to Section 309(g) prior to the commencement of Plaintiffs' suit and where the Department had issued a final order under which Defendants paid civil penalties under a comparable state law.  The arguments raised by Plaintiffs in their Response regarding comparability, public participation and the use of stipulated penalties have been adequately addressed in the prior filings of MTSA and Millcreek.  See Brief in Support of Defendants' Motion for Summary Judgment, pp. 21 - 36; Reply Brief to the Response in Opposition to Defendants' Motion for Summary Judgment, pp. 2 - 21.

that they will thereby escape liability even for post-complaint violations, as long as violations have ceased at the time the suit comes to trial." Id.

Subsequent to the Third Circuit's decision in Texaco, however, the United States Supreme Court addressed the issue of mootness in the context of a claim for civil penalties in a Clean Water Act case.  In Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 189, 120 S.Ct. 693, 708 (2000), the Supreme Court held that "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  In Laidlaw, the district court had rejected plaintiffs' claims for injunctive relief because after suit was filed, the defendant came into compliance, but the district court awarded civil penalties for purposes of deterrence.  On appeal, the Fourth Circuit Court of Appeals held that the claim for civil penalties had become moot once defendant complied with its permit and plaintiffs failed to appeal the decision that their claim for injunctive relief was moot.

The United States Supreme Court reversed and remanded the decision of the Fourth Circuit Court of Appeals.  First, the Supreme Court held that the denial of injunctive relief does not necessarily mean that a claim for a civil penalty is automatically mooted; and, in the case before it, since the district court found a need to impose a civil penalty for deterrence purposes, the defendant's compliance in this case did not moot the claim for civil penalties.  However, the Court further held that the closure of the facility alone or combined with the compliance "might moot the case, but … only if [the event] made it absolutely clear that Laidlaw's permit violations could not reasonably be expected to recur."  Laidlaw, 528 U.S. at 193, 120 S.Ct at 711.

Thus, contrary to the Third Circuit's decision in Texaco, the United States Supreme Court has concluded that a claim for civil penalties under the Clean Water Act can become moot.

Mississippi River Revival, Inc. v. City of Minneapolis, 319 F.3d 1013 (8th Cir. 2003); San Francisco BayKeeper, Inc. v. Tosco Corporation, 309 F.3d 1153 (9th Cir. 2002), cert. denied, 539 U.S. 924, 123 S. Ct. 2296 (2003).

The question then is whether it is absolutely clear that discharges from the three manhole areas could not reasonably be expected to recur. In applying this standard, it should be noted that where the defendant's actions are compelled by actions of other governmental bodies with the authority to require such action, the actions are not considered voluntary and there is not a genuine concern that the defendant is "free to return to its old ways." Ailor v. City of Maynardville, Tennessee, 368 F.3d 587, 600 (6th Cir. 2004) (case was moot where the City was already under an Order and Assessment from the Tennessee Department of Environment and Conservation before suit was filed which required work that was performed during the pendency of the suit); Tomaiolo v. Mallinoff, 281 F.3d 1, 5 (1st Cir. 2002) (injunctive and declaratory relief claims were moot where municipality changed its law due to action by the state Attorney General and the state legislature). Further, when the defendant is a governmental body, courts have treated the "cessation of the allegedly illegal conduct … with more solicitude … than similar action by private parties." Ammex, Inc. v. Cox, 351 F.3d 697, 705 (6th Cir. 2003); Ragsdale v. Turnock 841 F.2d 1358, 1365 (7th Cir. 1988), cert. denied, 503 U.S. 916, 112 S. Ct. 1309 (1992); National Wildlife Federation v. U.S. Army Corps of Engineers, 404 F.Supp.2d 1015, 1018 (M.D. Tenn. 2005).

Here, MTSA and Millcreek entered into the 2003 COA long before Plaintiffs filed suit. Entering into the 2003 COA was not an effort to avoid an impending citizen suit. The compliance achieved by MTSA and Millcreek has been directed and dictated by the 2003 COA. Thus, the concerns raised by the Third Circuit in Texaco do not apply here. First, MTSA and

Millcreek have not delayed the litigation only to come into compliance at the end of the litigation; rather, MTSA's and Millcreek's compliance was independent of the Plaintiffs' litigation. Under the 2003 COA, MTSA and Millcreek were to eliminate the Kearsarge overflow and address the other issues by April 26, 2007 -- they have done so. Second, there is no deterrent effect of imposing additional civil penalties on MTSA and Millcreek as they already have paid nearly $100,000 in civil penalties. MTSA and Millcreek got the message and complied with the 2003 COA. Any additional penalties at this point would be purely punitive.

The "facts" that Plaintiffs present to support the notion that a claim for civil penalties would not be moot ignore the undisputed facts of record and fail to cite to any support in the record. Although MTSA and Millcreek acknowledge that it took time to correct the Kearsarge problem, the time it took was not due to a lack of effort or inaction on the part of MTSA and Millcreek. MTSA and Millcreek spent over thirty million dollars ($30,000,000.00) trying to fix the problem, only to find at the end of that effort that the problem was not fixed. (Aff. of G. Allender, ¶ 14; Aff of G. Riedesel, ¶ 16). Contrary to Plaintiffs' unsupported claim that there was capacity available to the "Erie Wastewater System for a fee," there simply was no capacity available to handle the Kearsarge flows during wet weather events. (Id.). Plaintiffs have introduced no evidence contradicting the evidence presented by MTSA and Millcreek. Now, at the end of another effort during which MTSA and Millcreek spent over four million dollars ($4,000,000.00), MTSA and Millcreek have solved the Kearsarge problem.

In addition, the problem relating to the manhole areas is not a problem that existed for 15 years, as asserted by the Plaintiffs in their Response. First, Plaintiffs do not cite to anything in the record to support this claim. Second, Plaintiffs' own Complaint undermines its claim. According to the Complaint, the first discharge from the Zimmerly area occurred in August

2000, and the last discharge was in September 2004. In the intervening four years, there were only five additional discharges. With respect to the other two manhole areas, the first alleged discharge occurred in February 2002, with the last discharge occurring in September 2004. In the intervening two and one-half years, there were only two other discharges. See Plaintiffs' Complaint, ¶ 34. MTSA and Millcreek responded promptly to these issues, and studied, designed and constructed solutions to these problems by September 2004 with respect to the Zimmerly Road issues and by October 24, 2006 for the other areas. More importantly, there have been no discharges from any of these manholes areas for 31 months. Given that these were issues driven by severe rain events, MTSA and Millcreek responded quite promptly to these problems.

In summary, the uncontradicted evidence presented by MTSA and Millcreek establishes that the Plaintiffs' claims relating to the alleged discharges from the three manhole areas are moot. There is nothing left for the Court to decide on these issues. The problems causing the discharges have been corrected; the corrections occurred independently of the Plaintiffs' litigation; and the Defendants have already paid substantial civil penalties. Thus, there is no injunctive relief which this Court could grant to correct the problem as the problem has been corrected. Furthermore, the imposition of additional civil penalties by the Court would not act as a deterrent as Defendants already have paid substantial civil penalties and Plaintiffs' lawsuit did not spur any actions by Defendants.

III.   Conclusion

In conclusion, Defendants MTSA and Millcreek respectfully ask this Court, based on the undisputed material facts presented in the original Motion, Defendants' Supplement to that Motion, and this Sur-Reply Brief, to grant Defendants' Motion for Summary Judgment regarding the alleged violations at the three manhole areas because Plaintiffs' claims are moot.  Defendants also reiterate their request to deny Plaintiffs' Motion for Summary Judgment for the reasons stated above and for the reasons stated in previous filings.

Respectfully submitted,

_____s / Mark J. Shaw_____
Mark J. Shaw
PA50763
Robert E. Gandley
PA82524
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7607
(814) 454-4647 (Facsimile)
mshaw@mijb.com

Attorneys for Defendants
   Millcreek Township Sewer Authority
   and Millcreek Township

Dated:  April 27, 2007

1013149