IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIE COUNTY ENVIRONMENTAL COALITION, PENNENVIRONMENT, INC. and THE GAIA DEFENSE LEAGUE,   ) Plaintiffs   ) ) v.   ) ) MILLCREEK TOWNSHIP SEWER AUTHORITY AND MILLCREEK TOWNSHIP,   ) Defendants   ) | CIVIL ACTION NO. 05-59 ERIE ELECTRONICALLY FILED JUDGE COHILL |

**BRIEF IN SUPPORT OF DEFENDANTS' AMENDED MOTION
FOR SUMMARY JUDGMENT, SECOND SUPPLEMENT TO BRIEF
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
<u>BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

Defendants MILLCREEK TOWNSHIP SEWER AUTHORITY and MILLCREEK TOWNSHIP, by and through their attorneys, MacDonald, Illig, Jones & Britton LLP, file this Brief in Support of Defendants' Amended Motion for Summary Judgment, Second Supplement to Brief in Support of Defendants' Motion for Summary Judgment and Brief in Opposition to Plaintiffs' Motion for Summary Judgment:

I.   <u>Introduction</u>

Since the filing of Defendants' Motion to Supplement Defendants' Motion for Summary Judgment and Defendants' Response to Plaintiffs' Motion for Summary Judgment, several

additional events have occurred that add further support to the arguments raised by Defendants Millcreek Township Sewer Authority ("MTSA") and Millcreek Township ("Millcreek") in their Motion for Summary Judgment and Brief in Support of Motion for Summary Judgment ("Brief in Support"). In addition, some of these events are such that MTSA and Millcreek have amended their Motion for Summary Judgment to add a new basis upon which this Court may grant summary judgment in favor of MTSA and Millcreek.

MTSA and Millcreek supplement the Concise and Responsive Concise Statement of Facts, supplement the arguments made under Sections A and C of the Brief in Support, add new Section H to the Brief in Support to address the issue raised in the Amended Motion for Summary Judgment, and supplement the argument made under Section E of the Brief in Opposition.

II.     Supplemental Statement of Facts

MTSA and Millcreek have completed successfully all of the work that was required of them by the Pennsylvania Department of Environmental Protection ("Department") pursuant to the 2003 Kearsarge Consent Order and Agreement ("2003 COA").

First, MTSA and Millcreek have completed the substantial system upgrades at the Kearsarge Pump Station, including construction of the overflow retention facility. (Supp. Aff. of B. McGrath, ¶ 3). The work relating to the construction of the overflow retention tanks and accompanying improvements to the Kearsarge Pump Station were substantially completed and the overflow to Walnut Creek was disconnected on March 19, 2007. (Fourth Supp. Aff. of G. Riedesel, ¶ 14). In the approximately one year since the overflow retention tanks have been

completed, the tanks have functioned properly and there have been no overflows to Walnut Creek. (Fourth Supp. Aff. of G. Riedesel, ¶ 15).

Second, MTSA and Millcreek have completed the Inflow and Infiltration ("I&I") Program outlined in the 2003 Kearsarge Consent Order and Agreement ("2003 COA"). (Fourth Supp. Aff. of G. Riedesel, ¶ 3). MTSA and Millcreek have inspected all of the areas of the sewer system that are tributary to three manhole locations and to the Kearsarge Pump Station. (Fourth Supp. Aff. of G. Riedesel, ¶ 3). MTSA and Millcreek have eliminated a total of 110 illegal stormwater connections that were impacting the sewer system during storm events. (Fourth Supp. Aff. of G. Riedesel, ¶ 4). MTSA and Millcreek also have repaired 16 lateral sewer lines that were impacting the sewer system during storm events. (Fourth Supp. Aff. of G. Riedesel, ¶ 5).

In addition to the I&I Program implemented by MTSA and Millcreek, neighboring Summit Township, whose sewer flows are directed to the Kearsarge Pump Station, has provided MTSA and Millcreek with records documenting a total of 168 repairs to manholes and private sewer connections within Summit Township that were impacting the sewer system tributary to the Kearsarge Pump Station during storm events. (Fourth Supp. Aff. of G. Riedesel, ¶ 6).

It is estimated that each of the 294 system repairs or removals of illegal connections has reduced average flows by at least 720 gallons per day ("GPD") for a total flow removal of 211,700 GPD or 77.2 million gallons per year ("MGY"). (Fourth Supp. Aff. of G. Riedesel, ¶ 7).

In addition, as a result of inflow and infiltration discovered in the Glade Drive area pursuant to the I&I Program implemented under the 2003 COA, Millcreek completed the replacement of the Glade Drive Sanitary Sewer in 2007. (Fourth Supp. Aff. of G. Riedesel, ¶ 8).

The replacement of the Glade Drive Sanitary Sewer alone reduced flows by an estimated 97,800 GPD and approximately 35.7 MGY.  (Fourth Supp. Aff. of G. Riedesel, ¶ 9).

The sewer system repairs performed by Millcreek, MTSA and Summit Township combined with the Glade Drive Sanitary Sewer replacement are estimated to result in a 112.9 MGY reduction inflow to the Kearsarge Pump Station.  (Fourth Supp. Aff. of G. Riedesel, ¶ 12).[1]  These estimated flow reductions are supported further by actual flow data collected at the Kearsarge Pump Station for 2007, which showed a reduction in flow of 143 MGY as compared to historical averages.  (Fourth Supp. Aff. of G. Riedesel, ¶ 13).

Third, pursuant to the 2003 COA, Millcreek and MTSA required a subdivision of 16 homes with failing on-lot septic systems to connect to the Millcreek/MTSA public sewer system to prevent degradation of Walnut Creek from the failing on-lot systems.  (Supp. Aff. of B. McGrath, ¶ 4).

In sum, Millcreek and MTSA have completed all of the corrective measures required under the 2003 COA with PADEP, including connecting a subdivision of 16 homes with failing septic systems to the MTSA public sewer system, conducting a Special Study, conducting extensive I&I investigations and repairs in the area tributary to the Kearsarge Pump Station, obtaining permitting for and constructing the overflow retention facilities at the Kearsarge Pump Station, and removing of the overflow at the Kearsarge Pump Station.  (Fourth Supp. Aff. of G. Riedesel, ¶ 16).  Thus, MTSA and Millcreek now have performed all of the work that PADEP

---

[1] The estimated flow reductions are even more dramatic in very wet weather when overflows were most likely to occur.  The replacement of the Glade Drive Sanitary Sewer alone reduces instantaneous peak wet weather flows by an estimated 1.0 million gallons per day (MGD).  (Fourth Supp. Aff. of G. Riedesel, ¶ 10).  The combined effect of all of the I&I projects completed in the project area is an estimated reduction of 1.5 MGD in instantaneous peak flows at the Kearsarge Pump Station.  (Fourth Supp. Aff. of G. Riedesel, ¶ 11).

believed was necessary to remedy the overflows to Walnut Creek. The 2003 COA will terminate 24 months after the March 19, 2007 date of the removal of the overflow (March 19, 2009) provided there continues to be no post-removal overflow events from areas tributary to the Kearsarge Pump Station. (Fourth Supp. Aff. of G. Riedesel, ¶ 17).

In addition to the work associated with the 2003 COA, Millcreek and MTSA have been working with a number of entities on projects to improve further the water quality and recreational opportunities on Walnut Creek. (Supp. Affidavit of B. McGrath, ¶¶ 5-14). Since 2003, Millcreek and MTSA have connected to public sewer approximately 100 additional homes (beyond the 16 homes required to be connected pursuant to the 2003 COA) with failing on-lot septic systems in the Walnut Creek watershed. (Supp. Aff. of B. McGrath, ¶ 5). Pursuant to a funding request by Pennsylvania Sea Grant, Millcreek has committed $3,754.00 in its 2008 budget to funding a proposal to work with USGS and a number of other organizations to create a Walnut Creek Gage Station to measure stream flows on Walnut Creek to assist in projects to monitor and enhance the health of Walnut Creek, as well as increase recreation opportunities on Walnut Creek by providing a source of real-time stream flow information to anglers via the internet. (Supp. Aff. of B. McGrath, ¶ 6). Millcreek is working actively with the Department and the owners of the Millcreek Mall to develop a plan to address stormwater management for the Millcreek Mall property, the single largest area of impervious surface in the Walnut Creek watershed. (Supp. Aff. of B. McGrath, ¶ 7). Millcreek, in partnership with the Department, the Pennsylvania Department of Conservation and Natural Resources ("PaDCNR"), Pennsylvania Sea Grant, the Pennsylvania Fish and Boat Commission ("Fish Commission") and others, has agreed to sponsor/participate in a proposed streambank stabilization project on the stretch of

Walnut Creek in the area of the stormwater discharge from the Millcreek Mall. (Supp. Aff. of B. McGrath, ¶ 8).

Lastly, through efforts that began in 2001, Millcreek purchased an approximately 22-acre parcel of property, having approximately 5,442 feet of frontage along Walnut Creek, from a private owner (Marea F. Cassidy) for the purpose of creating a Township park on the property. (Supp. Aff. of B. McGrath, ¶ 9). Millcreek purchased the property for $320,000.00, which included a $168,288.00 acquisition grant from the PaDCNR and $7,346.00 for a bridge easement. (Supp. Aff. of B. McGrath, ¶ 10). Millcreek allocated the remaining $144,366.00 needed to purchase the property from the Township's budget as well as contributed considerable employee resources to arrange the transaction. (Supp. Aff. of B. McGrath, ¶ 11).

After purchasing the property, Millcreek sold a perpetual access easement to the Fish Commission for $50,000.00 to ensure future fishing access to Walnut Creek. (Supp. Aff. of B. McGrath, ¶ 12). Millcreek plans to use the $50,000.00 from the Fish Commission along with additional Township money and resources to develop and maintain this parcel as Cassidy Park for public recreational use. (Supp. Aff. of B. McGrath, ¶ 13). Currently the ultimate planned use for the parcel is as a passive municipal park including picnic pavilions, picnic tables, hiking trails, steelhead fishing with access for the disabled, a sand volleyball court, bocce court, playground area, horseshoe pits and public restroom facilities. (Supp. Aff. of B. McGrath, ¶ 14).

III.     Supplemental Argument to Brief in Support

      A.    PLAINTIFFS' CIVIL PENALTY ACTION IS BARRED BY 33 U.S.C.§ 1319(g)(6)(A)(ii) AND (iii) WHERE THE DEPARTMENT WAS DILIGENTLY PROSECUTING DEFENDANTS UNDER A STATE LAW COMPARABLE TO 33 U.S.C. § 1319(g) PRIOR TO THE COMMENCEMENT OF PLAINTIFFS' CITIZEN SUIT AND WHERE THE DEPARTMENT HAS ISSUED A FINAL ORDER UNDER WHICH DEFENDANTS PAID CIVIL PENALTIES UNDER A COMPARABLE STATE LAW.

Since the filing of MTSA's and Millcreek's Motion for Summary Judgment, their Brief in support thereof and their supplemental brief, additional events have occurred that further support MTSA's and Millcreek's argument that Plaintiffs' claims are barred by Section 1319(g)(6) of the CWA. Section 1319(g)(6) of the CWA bars a citizen suit where the appropriate federal or state authorities are acting or have acted to diligently prosecute the matter. In the two years since MTSA's and Millcreek's Motion for Summary Judgment was filed, MTSA and Millcreek have completed all tasks required pursuant to the 2003 COA. (Fourth Supp. Aff. of G. Riedesel, ¶ 16). MTSA and Millcreek have met all of the deadlines imposed by the 2003 COA for the work that is to be performed under the 2003 COA. (Aff. of R. Gilson, ¶ 7; Third Supp. Aff. of G. Riedesel, ¶ 6)). Thus, MTSA's and Millcreek's completion of the work required under the 2003 COA, and the success of that work in eliminating overflows to Walnut Creek during sewer storm events is further evidence supporting a conclusion that the Department's actions constitute diligent prosecution.

In addition, recent case law further supports MTSA's and Millcreek's position that Plaintiffs' claims are barred by the Department's diligent prosecution under Section 1319(g)(6) of

the Clean Water Act.  In <u>Karr v. Hefner</u>, 475 F.3d 1192 (10th Cir. 2007), the United States Court of Appeals for the Tenth Circuit, in examining a diligent prosecution claim involving a USEPA consent decree under the CWA, held that:

> Particularly when the EPA chooses to enforce the CWA through a consent decree, failure to defer to its judgment can undermine agency strategy.  If a defendant is exposed to a citizen suit whenever the EPA grants it a concession, defendants will have little incentive to negotiate consent decrees.

<u>Id.</u> at 1197.  The government's prosecution does not need to be far-reaching or zealous, it requires only diligence.  <u>Id</u>.  Therefore, consistent with this recent opinion and earlier case law, the Court should give deference to the Department with respect to the specific language and requirements of the 2003 COA.  The Court should hold that the prosecution against MTSA and Millcreek was diligent where Department has chosen to investigate and reach an agreement with MTSA and Millcreek concerning the same violations alleged in Plaintiffs' complaint.  <u>Id.</u> at 1198.  This is especially true where compliance with the Department's actions has resolved the problem.

> C. PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES RELATING TO THE DISCHARGES FROM THE MANHOLES AT VARIOUS LOCATIONS ARE MOOT AS THE MTSA AND MILLCREEK HAVE COMPLETED PROJECTS REQUIRED BY THE 2003 COA THAT ENSURE THAT SUCH DISCHARGES CANNOT REASONABLY BE EXPECTED TO OCCUR AT THOSE LOCATIONS IN THE FUTURE.

Since the filing of MTSA's and Millcreek's Motion for Summary Judgment, their Brief in Support and their 2006 supplemental materials, additional events have occurred that further support MTSA's and Millcreek's argument that Plaintiffs' claim for injunctive relief and civil

penalties relating to the overflow at the manholes at 51st and 52nd Streets and Zimmerly Road,[2] Larchmont and Beaver Streets, and Church and Patton and Pershing Streets have become moot.

As outlined in the Statement of Facts above, Millcreek has completed its work to remove illegal connections to its sanitary sewer system that introduced stormwater into the sanitary system. MTSA and Millcreek now have inspected all of the areas that are tributary to the manholes at all three locations and implemented repairs to the areas where problems were found. (Fourth Supp. Aff. of G. Riedesel, ¶ 3-5, 8). Thus, MTSA and Millcreek have completed the I&I Program outlined in the 2003 COA. (Fourth Supp. Aff. of G. Riedesel, ¶ 3). The I&I work performed by MTSA, Millcreek, and neighboring Summit Township has resulted a total flow removal of 211,700 GPD or 77.2 MGY from the area tributary to the manhole overflows. (Fourth Supp. Aff. of G. Riedesel, ¶ 7). This is a significant reduction of flows, especially during rain events. In fact, since September 9, 2004, there have been no overflows at any of the manhole locations, a period of over 42 months. (Fourth Supp. Aff. of G. Riedesel, ¶ 1).

These additional facts that have arisen over the last year provide additional evidence that supports MTSA's and Millcreek's argument that the Plaintiffs' claims regarding the manhole locations at Larchmont and Beaver Streets, and Church, Patton and Pershing Streets are moot. The overwhelming evidence presented previously to this Court and here, demonstrates and makes it absolutely clear that future overflows from the manhole locations "could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 189, 120 S. Ct. 693, 708 (2000). Accordingly, Plaintiffs' claims for injunctive relief and civil penalties from these manhole locations are moot.

---

[2] Defendants point out that Plaintiffs have withdrawn their claims with respect to the alleged overflows relating to the 51st and 52nd Streets and Zimmerly Road manhole area. Thus, the Court does not need to reach the mootness issue with respect to those claims.

IV.    <u>Argument in Support of Amended Motion for Summary Judgment</u>

        H.    PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES RELATING TO THE DISCHARGES FROM THE KEARSARGE PUMP STATION ARE MOOT AS THE MTSA AND MILLCREEK HAVE COMPLETED THE PROJECTS REQUIRED BY THE 2003 COA WHICH ENSURE THAT SUCH DISCHARGES CANNOT REASONABLY BE EXPECTED TO OCCUR AT THOSE LOCATIONS IN THE FUTURE.

The relief sought by Plaintiffs relating to alleged violations at the Kearsarge Pump Station also has become moot due to the MTSA's and Millcreek's compliance with the 2003 COA. Plaintiffs' Complaint alleged 16 instances of discharges without a permit from the Kearsarge Pump Station. (Complaint, ¶ 34a). Work performed and completed by MTSA and Millcreek pursuant to the 2003 COA has made it absolutely clear that the discharges from the Kearsarge Pump Station cannot reasonably be expected to recur.

Pursuant to the 2003 COA, Millcreek and MTSA conducted extensive I&I investigations and repairs and completed substantial sewer system upgrades, including construction of an overflow retention facility at the Kearsarge Pump Station. (Supp. Aff. of B. McGrath, ¶ 3). The I&I repairs performed by MTSA and Millcreek, namely the elimination of 110 illegal stormwater connections, the repair of 16 lateral sewer lines and the Glade Drive Sanitary Sewer replacement project, together with the 168 repairs performed by Summit Township, were all tributary to the Kearsarge Pump Station, and reduced flows to the Kearsarge Pump Station by a total of 112.9 MGY. (Fourth Supp. Aff. of G. Riedesel, ¶ 12). These estimated flow reductions are further supported by actual flow data collected at the Kearsarge Pump Station for 2007 that identified a

reduction in flow of 143 MGY at the Kearsarge Pump Station as compared to historical averages. (Fourth Supp. Aff. of G. Riedesel, ¶ 13).

At the same time that the flow rates were reduced due to the I&I work, the Kearsarge Pump Station's pumping capacity was improved and 2.3 million gallons of storage capacity was added. (Aff. of G. Riedesel, ¶ 35). The work relating to the construction of the overflow retention tanks and the accompanying improvements to the Kearsarge Pump Station were substantially completed and the overflow bypass to Walnut Creek was disconnected on March 19, 2007. (Fourth Supp. Aff. of G. Riedesel, ¶ 14).[3] In approximately one year since the overflow retention tanks have been completed, the tanks have functioned properly and there have been no overflows to Walnut Creek. (Fourth Supp. Aff. of G. Riedesel, ¶ 15). MTSA and Millcreek's Experts previously have presented unrebutted testimony that the completion of the Kearsarge Pump Station capacity expansion and overflow retention projects in accordance with the 2003 COA would be sufficient to eliminate overflows at the Kearsarge Pump Station. (Aff. of G. Allender, ¶ 23; Expert Report, App. at 739; Aff. of A. Maas, ¶ 9; Expert Report, App. at 727).

These facts presented by MTSA and Millcreek demonstrate and make it absolutely clear that future overflows from the Kearsarge Pump Station "could not reasonably be expected to recur." Laidlaw, 528 U.S. at 189, 120 S. Ct. at 708. In addition, civil penalties for these alleged violations will achieve no purpose as MTSA and Millcreek have completed the work under the 2003 COA and already have paid significant civil penalties for those overflows to ensure

---

[3]  The physical removal of the Kearsarge overflow assures that it will never again discharge to Walnut Creek, thus making Plaintiffs' claims with respect to releases from the Kearsarge Pump Station and Plaintiffs' request for injunctive relief ordering the removal of the Kearsarge overflow moot.

deterrence. Accordingly, Plaintiffs' claims for injunctive relief and civil penalties from this location are moot.

V.     Supplemental Argument to Brief in Response

        E.     THE CIVIL PENALTIES SOUGHT BY PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS MUST BE DENIED WHERE PLAINTIFFS HAVE SUBMITTED NO EVIDENCE TO SUPPORT THEIR CLAIMS AND DEFENDANTS HAVE PRESENTED EVIDENCE SHOWING THAT CIVIL PENALTIES WOULD NOT BE APPROPRIATE.

In the nearly two years since the filing of the Brief in Opposition to Plaintiffs' Motion for Summary Judgment on All Claims, additional events have occurred that further support MTSA's and Millcreek's argument that Plaintiffs' claim for $435,000.00 in civil penalties should be denied.

First, with respect to the issue of whether MTSA and Millcreek have seen an economic benefit as a result of their alleged noncompliance with the Clean Water Act, MTSA and Millcreek have now completed approximately $34 million worth of work to address the overflows alleged by Plaintiffs including the completion, on time, of all work required by the 2003 COA. The work completed by MTSA and Millcreek under the 2003 COA includes connecting a subdivision of 16 homes with failing septic systems to the MTSA public sewer system, conducting a Special Study, conducting extensive I&I investigations and removals in the area tributary to the Kearsarge Pump Station, obtaining permitting for and constructing the overflow retention facilities at the Kearsarge Pump Station, and removing the overflow at the

Kearsarge Pump Station. (Fourth Supp. Aff. of G. Riedesel, ¶ 16). MTSA and Millcreek also incurred the additional costs associated with increasing the size of the overflow retention facilities and redesigning the configuration of the overflow retention facilities as outlined in our earlier filings. The timely work performed by MTSA and Millcreek also demonstrates clearly their good faith efforts to comply with the 2003 COA.

In addition to the work required under the 2003 COA, MTSA and Millcreek have worked with various entities to undertake a number of projects to improve water quality and increase recreational opportunities on Walnut Creek.[4] (Supp. Affidavit of B. McGrath, ¶ ¶ 5-14). Since 2003, Millcreek and MTSA have connected 100 homes with failing on-lot septic systems in the Walnut Creek watershed to public sewer. MTSA and Millcreek have committed $3,754.00 in its 2008 budget to fund a proposed Walnut Creek Gage Station to measure stream flows on Walnut Creek. MTSA and Millcreek are working with the Department and the owners of the Millcreek Mall to develop a plan to address stormwater management for the Millcreek Mall property. MTSA and Millcreek have agreed to sponsor/participate in a proposed streambank stabilization project on Walnut Creek. Lastly, through efforts that began in 2001, Millcreek has purchased an approximately 22-acre parcel of property, having approximately 5,442 feet of frontage along Walnut Creek for the purpose of creating a Township park on the property with access to Walnut Creek. (Supp. Aff. of B. McGrath, ¶ ¶ 5-14).

The ongoing efforts by MTSA and Millcreek provide further strong support for the position that imposition of civil penalties in this matter is inappropriate and will achieve no

---

[4] The projects undertaken outside the scope of the 2003 COA can be considered by the Court in consideration of economic benefit, good faith efforts to comply, and "such other matters as justice may require" pursuant to the standard for civil penalties set forth in Section 1319(d) of the CWA.

benefit as MTSA and Millcreek have diligently completed all work required under the Department's 2003 COA, and for several years has otherwise been engaged in many other projects to improve Walnut Creek. MTSA and Millcreek have presented sufficient facts to preclude this Court from granting Plaintiffs' Motion for Summary Judgment on civil penalties.

VI.     Conclusion

In conclusion, Defendants Millcreek Township Sewer Authority and Millcreek Township respectively request this Honorable Court to grant Defendants' Motion for Summary Judgment and Amended Motion for Summary Judgment against Plaintiffs Erie County Environmental Coalition, PennEnvironment, Inc. and the Gaia Defense League. Defendants also request this Honorable Court to deny Plaintiffs' Motion for Summary Judgment.

Respectfully submitted,

s / Mark J. Shaw
Mark J. Shaw
PA50763
Robert E. Gandley
PA82524
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7607
(814) 454-4647 (Facsimile)
mshaw@mijb.com

Attorneys for Defendants
  Millcreek Township Sewer Authority
  and Millcreek Township

Dated:   March 31, 2008