IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIE COUNTY ENVIRONMENTAL COALITION, PENNENVIRONMENT, INC. and THE GAIA DEFENSE LEAGUE, Plaintiffs | ) | |
| v. | ) | CIVIL ACTION NO. 05-59 ERIE ELECTRONICALLY FILED |
| MILLCREEK TOWNSHIP SEWER AUTHORITY AND MILLCREEK TOWNSHIP, Defendants | ) | JUDGE COHILL |

**FIRST SUPPLEMENT TO RESPONSIVE CONCISE STATEMENT OF DEFENDANTS MILLCREEK TOWNSHIP SEWER AUTHORITY AND MILLCREEK TOWNSHIP**

Defendants MILLCREEK TOWNSHIP SEWER AUTHORITY and MILLCREEK TOWNSHIP, by and through their attorneys, MacDonald, Illig, Jones & Britton LLP, hereby file this First Supplement to Responsive Concise Statement of Defendants Millcreek Township Sewer Authority and Millcreek Township pursuant to LR 56.1.C.1 of the Local Civil Rules of the United States District Court for the Western District of Pennsylvania: and state the following.

I. Response to Plaintiffs' Concise Statement of Facts

1. Admitted.

2. Admitted.

3. Denied as stated. The Millcreek Defendants admit that prior to March 19, 2007, during or immediately following times of heavy precipitation events or other heavy run-off

events and/or as a result of one-time malfunctions of the sewage collection system which have since been repaired, overflow from its sewage collection system has been discharged into Walnut Creek through the Kearsarge overflow by-pass on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property, and to protect the health and welfare of their employees, residents and customers.  (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

4.    Denied as stated.  On March 19, 2007, the bypass from the Kearsarge Pump Station to Walnut Creek was removed.  (Third Supp. Aff. of G. Riedesel, ¶ 4).

5.    Admitted.

6.    MTSA and Millcreek are unable to respond this statement as it unintelligible.

7.    Denied as stated.  It is admitted that the Millcreek Defendants and the Pennsylvania Department of Environmental Resources entered into a Consent Order and Agreement in 1992 in accordance with the CWA and the Pennsylvania Clean Streams Law.  (Aff. of G. Riedesel ¶ 13; App. to Motion for Summary Judgment at 99-120)

8.    Denied as stated.  It is admitted that the Millcreek Defendants and the Pennsylvania Department of Environmental Protection entered into a Consent Order and Agreement in 2003.  (Aff. of G. Riedesel ¶ 17; App. to Motion for Summary Judgment at 162-184)

9.    Denied as stated. The Millcreek Defendants admit that on September 17, 2004 as a result of the remnants of a hurricane and due to a malfunction of the sewage collection system, which was subsequently repaired, overflow from its sewage collection system was discharged to Walnut Creek on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of

their employees, residents and customers.  (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

10. Denied as stated.  The Millcreek Defendants admit that on September 10, 2004 as a result of the remnants of a hurricane and due to a malfunction of the sewage collection system, which was subsequently repaired, overflow from its sewage collection system was discharged to Walnut Creek at the Kearsarge Pump Station on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers.  (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

11. Denied as stated.  The Millcreek Defendants admit that on September 9, 2004 as a result of the remnants of a hurricane and due to a malfunction of the sewage collection system, which was subsequently repaired, overflow from its sewage collection system was discharged to Walnut Creek at the Kearsarge Pump Station on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers.  (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

12. Denied as stated.  The Millcreek Defendants admit that on August 1, 2004 as a result of a heavy rainfall event overflow from its sewage collection system was discharged to Walnut Creek at the Kearsarge Pump Station on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers.  (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

13. Denied as stated. The Millcreek Defendants admit that on July 31, 2004 as a result of a heavy rainfall event overflow from its sewage collection system was discharged to Walnut Creek at the Kearsarge Pump Station on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers. (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

14. Denied as stated. The Millcreek Defendants admit that on July 16, 2004 as a result of a heavy rainfall event overflow from its sewage collection system was discharged to Walnut Creek at the Kearsarge Pump Station on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers. (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

15. Denied as stated. The Millcreek Defendants admit that on May 21, 2004 as a result of a heavy rainfall event overflow from its sewage collection system was discharged to Walnut Creek at the Kearsarge Pump Station on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers. (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

16. Denied as stated. The Millcreek Defendants admit that on March 20, 2004 as a result of a heavy rainfall event and accompanying snow melt overflow from its sewage collection system was discharged to Walnut Creek at the Kearsarge Pump Station on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers'

property and to protect the health and welfare of their employees, residents and customers. (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

17. Denied as stated. The Millcreek Defendants admit that on November 28, 2003 as a result of a heavy rainfall event overflow from its sewage collection system was discharged to Walnut Creek at the Kearsarge Pump Station on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers. (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

18. Denied as stated. The Millcreek Defendants admit that on September 29, 2003 as a result of the remnants of a hurricane overflow from its sewage collection system was discharged to Walnut Creek at the Kearsarge Pump Station on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers. (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

19. Denied as stated. The Millcreek Defendants admit that on May 12, 2002 as a result of a heavy rainfall event overflow from its sewage collection system was discharged to Walnut Creek at the Kearsarge Pump Station on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers. (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

20. Denied as stated. The Millcreek Defendants admit that on April 14, 2002 as a result of a heavy rainfall event overflow from its sewage collection system was discharged to Walnut Creek at the Kearsarge Pump Station on an emergency basis to protect against potential

damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers. (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

21. Denied as stated. The Millcreek Defendants admit that on February 1, 2002 as a result of a heavy rainfall event overflow from its sewage collection system was discharged to Walnut Creek at the Kearsarge Pump Station on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers. (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

22. Plaintiffs have withdrawn this claim. See Response in Opposition to Defendants' Motion for Summary Judgment, p. 20.

23. Denied as stated. The Millcreek Defendants admit that on November 7, 2000 as a result of a one-time malfunction, which was subsequently fixed, overflow from its sewage collection system was discharged to Walnut Creek at the Kearsarge Pump Station on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers. (Answer ¶ 12; Aff. of G. Riedesel ¶¶ 39-40).

24. Plaintiffs have withdrawn this claim. See Response in Opposition to Defendants' Motion for Summary Judgment, p. 20.

25. Plaintiffs have withdrawn this claim. See Response in Opposition to Defendants' Motion for Summary Judgment, p. 20.

26. Plaintiffs have withdrawn this claim. See Response in Opposition to Defendants' Motion for Summary Judgment, p. 20.

27.     Plaintiffs have withdrawn this claim. See Response in Opposition to Defendants' Motion for Summary Judgment, p. 20.

28.     Plaintiffs have withdrawn this claim. See Response in Opposition to Defendants' Motion for Summary Judgment, p. 20.

29.     Plaintiffs have withdrawn this claim. See Response in Opposition to Defendants' Motion for Summary Judgment, p. 20.

30.     Plaintiffs have withdrawn this claim. See Response in Opposition to Defendants' Motion for Summary Judgment, p. 20.

31.     Plaintiffs have withdrawn this claim. See Response in Opposition to Defendants' Motion for Summary Judgment, p. 20.

32.     Denied as stated. The Millcreek Defendants admit that on September 9, 2004 as a result of the remnants of a hurricane overflow from its sewage collection system was discharged to Walnut Creek from the manholes in the area of Larchmont and Beaver Streets on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers. This was the last time an overflow occurred from this area. (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

33.     Denied as stated. The Millcreek Defendants admit that on April 14, 2002 as a result of a heavy rainfall event overflow from its sewage collection system was discharged to Walnut Creek from the manholes in the area of Larchmont and Beaver Streets on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers. (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

34.     Denied as stated. The Millcreek Defendants admit that on February 1, 2002 as a result of a heavy rainfall event overflow from its sewage collection system was discharged to Walnut Creek from the manholes in the area of Larchmont and Beaver Streets on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers. (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

35.     Denied as stated. The Millcreek Defendants admit that on September 9, 2004 as a result of the remnants of a hurricane overflow from its sewage collection system was discharged to Walnut Creek from the manholes in the area of Church, Patton and Pershing Streets on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers. This was the last time an overflow occurred from this area. (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

36.     Denied as stated. The Millcreek Defendants admit that on September 9, 2004 as a result of the remnants of a hurricane overflow from its sewage collection system was discharged to Walnut Creek from the manholes in the area of Church and Patton and Pershing Streets on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers. This was the last time an overflow occurred from this area. (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

37.     Denied as stated. The Millcreek Defendants admit that on July 31, 2004 as a result of a heavy rainfall event overflow from its sewage collection system was discharged to Walnut Creek from the manholes in the area of Church, Patton and Pershing Streets on an

emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers. (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

38.    Denied as stated. The Millcreek Defendants admit that on April 14, 2002 as a result of a heavy rainfall event overflow from its sewage collection system was discharged to Walnut Creek from the manholes in the area of Church, Patton and Pershing Streets on an emergency basis to protect against potential damage to the system, to prevent damage to residents' and customers' property and to protect the health and welfare of their employees, residents and customers. (Answer ¶ 12; Supplemental Aff. of G. Riedesel, ¶¶ 5-8).

39.    MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

40.    MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

41.    MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

42.    MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

43. MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

44. MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

45. MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

46. MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

47. MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

48. MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

49. MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

50.     MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

51.     MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

52.     MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

53.     MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

54.     MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

55.     MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

56.     MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

57.　　MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

58.　　MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

59.　　MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

60.　　MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

61.　　MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

62.　　MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

63.　　MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

64.  MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

65.  MTSA and Millcreek are unable to admit or deny these factual statements as they were precluded from taking any discovery with respect to these factual issues by this Court's Order dated February 1, 2006.

66.  Admitted.

67.  Admitted.

II.  Statement of Material Facts in Opposition to
Plaintiffs' Motion for Summary Judgment on all Claims

14a.  The work relating to the construction of the overflow retention tanks and accompanying improvements to the Kearsarge Pump Station were substantially completed and the overflow to Walnut Creek was disconnected on March 19, 2007. (Fourth Supp. Aff. of G. Riedesel, ¶ 14).

14b.  In approximately one year since the overflow retention tanks have been completed, the tanks have functioned properly and there have been no overflows to Walnut Creek. (Fourth Supp. Aff. of G. Riedesel, ¶ 15).

14c.  Millcreek and MTSA have completed all of the corrective measures required under the 2003 COA with PADEP including connecting a subdivision of 16 homes with failing septic systems to the MTSA public sewer system, conducting a Special Study, conducting extensive I&I investigations and removals in the area tributary to the Kearsarge Pump Station, obtaining permitting for and construction of the overflow retention facilities at the Kearsarge

pump station, and removal of the overflow at the Kearsarge Pump Station. (Fourth Supp. Aff. of G. Riedesel, ¶ 16).

51a.    Beyond the work required under the 2003 COA, Millcreek and MTSA have been working with a number of entities on projects to improve water quality and recreational opportunities on Walnut Creek. (Supp. Affidavit of B. McGrath, ¶ ¶ 5-14).

51b.    In addition, since 2003, Millcreek and MTSA have connected to public sewer approximately 100 additional homes with failing on-lot septic systems in the Walnut Creek watershed. (Supp. Aff. of B. McGrath, ¶ 5).

51c.    Pursuant to a funding request from Pennsylvania Sea Grant, Millcreek has committed $3,754.00 in its 2008 budget to funding a proposal to work with USGS and a number of other organizations to create a Walnut Creek Gage Station to measure stream flows on Walnut Creek to assist in projects to monitor and enhance the health of Walnut Creek, as well as increase recreational opportunities on Walnut Creek by providing a source of real-time stream flow information to anglers via the internet. (Supp. Aff. of B. McGrath, ¶ 6).

51d.    Millcreek actively is working with the Department and the owners of the Millcreek Mall to develop a plan to address stormwater management for the Millcreek Mall property, the single largest area of impervious surface in the Walnut Creek watershed. (Supp. Aff. of B. McGrath, ¶ 7).

51e.    Millcreek, in partnership with the Department, the Pennsylvania Department of Conservation and Natural Resources ("PaDCNR"), Pennsylvania Sea Grant, the Pennsylvania Fish and Boat Commission ("Fish Commission") and others, has agreed to sponsor/participate in a proposed streambank stabilization project on a stretch of Walnut Creek in the area of the stormwater discharge from the Millcreek Mall. (Supp. Aff. of B. McGrath, ¶ 8).

51f.   Through efforts that began in 2001, Millcreek negotiated the purchase of an approximately 22-acre parcel of property, having approximately 5,442 feet of frontage along Walnut Creek, from a private owner (Marea F. Cassidy) for the purpose of creating a Township park on the property.  (Supp. Aff. of B. McGrath, ¶ 9).

51g.   Millcreek purchased the property for $320,000.00, which included a $168,288.00 acquisition grant from the PaDCNR and $7,346.00 for a bridge easement.  (Supp. Aff. of B. McGrath, ¶ 10).

51h.   Millcreek allocated the remaining $144,366.00 needed to purchase the property from the Township's budget as well as contributed considerable employee resources to arrange the transaction.  (Supp. Aff. of B. McGrath, ¶ 11).

51i.   After purchasing the property, Millcreek sold a perpetual access easement to the Fish Commission for $50,000.00 to ensure future fishing access to Walnut Creek.  (Supp. Aff. of B. McGrath, ¶ 12).

51j.   Millcreek plans to use the $50,000.00 from the Fish Commission along with additional Township money and resources to develop and maintain this parcel as Cassidy Park for public recreational use.  (Supp. Aff. of B. McGrath, ¶ 13).

51k.   Currently the ultimate planned use for the parcel is as a passive municipal park including picnic pavilions, picnic tables, hiking trails, steelhead fishing with access for the disabled, a sand volleyball court, bocce court, playground area, horseshoe pits and public restroom facilities.  (Supp. Aff. of B. McGrath, ¶ 14).

Respectfully submitted,

s / Mark J. Shaw

Mark J. Shaw
PA50763
Robert E. Gandley
PA82524
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7607
(814) 454-4647 (Facsimile)
mshaw@mijb.com

Attorneys for Defendants
Millcreek Township Sewer Authority
and Millcreek Township

Dated: April 22, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2008, the foregoing First Supplement to Responsive Concise Statement of Defendants Millcreek Township Sewer Authority and Millcreek Township was filed electronically with the Clerk of Court using the Electronic Case Filing system. Notice of this filing will be sent to all parties by operation of the Court's ECF system and constitutes service of this filing under Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's ECF system.

s/ Mark J. Shaw

Mark J. Shaw
PA 50763
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7607
(814) 454-4647 (facsimile)
mshaw@mijb.com (e-mail)