IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIE COUNTY ENVIRONMENTAL COALITION, PENNENVIRONMENT, INC. and THE GAIA DEFENSE LEAGUE,<br>    Plaintiffs<br><br>        v.<br><br>MILLCREEK TOWNSHIP SEWER AUTHORITY AND MILLCREEK TOWNSHIP,<br>    Defendants | CIVIL ACTION NO. 05-59 ERIE<br><br><br>ELECTRONICALLY FILED |

**DEFENDANTS' REPLY BRIEF TO PLAINTIFFS' BRIEF IN SUPPORT
OF ITS RESPONSE TO DEFENDANTS' BRIEF IN SUPPORT
OF THEIR AMENDED MOTION FOR SUMMARY JUDGMENT**

Defendants MILLCREEK TOWNSHIP SEWER AUTHORITY and MILLCREEK TOWNSHIP, by and through their attorneys, MacDonald, Illig, Jones & Britton LLP, hereby submit this Reply Brief to Plaintiffs' Brief in Support of Its Response to Defendants' Amended Motion for Summary Judgment pursuant to LR 35.1(D) of the Local Rules of the United States District Court for the Western District of Pennsylvania and state the following in support:

I.    Introduction

Plaintiffs repeatedly ignore the need under the summary judgment standards to produce evidence either establishing their claim or disputing Defendants' claims. See, Pastore v. Bell Telephone Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994). Instead, Plaintiffs rely on the hyperbole

of their counsel to overcome the unrebutted evidence presented by Defendants that Plaintiffs' case is barred by 33 U.S.C. § 1319(g)(6)(A)(ii), that Plaintiffs' case has become moot due to Defendants' compliance with the 2003 Consent Order and Agreement, and that Plaintiffs are not entitled to summary judgment on their civil penalty claim, even if the Court were to decide that the case is not either barred or moot.  Such hyperbole is not sufficient to oppose Defendants' well-supported Summary Judgment Motion, or to support Plaintiffs' Summary Judgment Motion.

II.    <u>Contrary to Plaintiffs' Claims Pennsylvania State Law Is Comparable to 33 U.S.C. § 1319(g) and the Pennsylvania Department of Environmental Protection Diligently Prosecuted Defendants.</u>

Although Defendants did not address specifically the comparability issue in its Brief in Support of Defendants Amended Motion for Summary Judgment, Plaintiffs again assert that a citizen's right to appeal any Consent Order and Agreement under the Pennsylvania Clean Streams Law is not comparable to the public participation requirements under the Clean Water Act.  For the reasons stated in Defendants' prior filings at Docket No. 37, pp. 21-36 and Docket No. 51, pp. 4-18, Pennsylvania law is comparable to Section 1319(g) of the Clean Water Act.  The unfettered right of appeal to the Pennsylvania Environmental Hearing Board based on actual notice offers as much, if not more, public participation and notice than is afforded under Section 1319(g).  In addition, and contrary to Plaintiffs' argument, the Pennsylvania Environmental Hearing Board reviews Pennsylvania Department of Environmental Protection ("PaDEP") decisions on civil penalties in Consent Orders and Agreements on a *de novo* basis. <u>Sunoco, Inc. (R & M) v. Commonwealth of Pennsylvania, Dept. of Environmental Protection</u>, 2004 EHB 191, 2004 Pa.Lexis 20, 65 (2004), <u>aff'd.</u>, 865 A.2d 960 (Pa. Cmwlth 2005).  Thus, is

it not "virtually impossible to successfully challenge the agency's original decision in an administrative appeal." (Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment, Docket No. 41, p. 6).

In response to Defendants successfully completing their obligations under the October 31 2003 Consent Order and Agreement ("2003 COA") in a timely fashion, Plaintiffs argue for the first time that the question of diligence is determined at the time of filing their citizen suit and that Defendants had made little progress towards alleviating the problems at that time. Once again, Plaintiffs' argument is made without any reference to any evidence of record that supports their position.

Plaintiffs filed suit on February 14, 2005. (App. 1). As of that date, Defendants had made significant progress towards remedying the overflow problem at the Kearsarge Pump Station. On October 31, 2003, the Defendants entered into the 2003 COA with PaDEP. (App. 162-184). This was 15½ months prior to Plaintiffs filing suit. Under the 2003 COA, Defendants were required to submit a Special Study that evaluated the alternatives to remove the Kearsarge Overflow on or before July 1, 2004. (App. 167-168). In addition, the 2003 COA required Defendants to submit a permit application to PaDEP within nine months of receiving approval of the Special Study, and construct all facilities needed to remove the Kearsarge Overflow within 18 months of receiving the permit from PaDEP. (App. 168). The 2003 COA also required Defendants to continue a program of reducing inflow and infiltration ("I&I") into the sanitary sewer system. (App. 169, ¶ 3(f)). The 2003 COA also imposed a civil penalty of $25,000 on Defendants.

In accordance with the 2003 COA, Defendants paid the $25,000 civil penalty to PaDEP when they executed the 2003 COA in October 2003. (Aff. of G. Riedesel, ¶ 19). In March 2004,

Defendants' passed new ordinances, resolutions, and regulations to enable them to better enforce against illegal connections to their sanitary sewer system to reduce inflow and infiltration ("I&I") of groundwater and storm water.  (Aff. of G. Riedesel, ¶ 29; Aff. of B. McGrath, ¶ 4; App. 441-525).  Between March 2004 and February 14, 2005 when Plaintiffs filed suit, Defendants conducted 99 I&I inspections, initiated 27 enforcement actions, and obtained 11 repairs pursuant to the new ordinances, resolutions and regulations, and the 2003 COA.  (App. 527-532, 540)  Defendants submitted the Special Study required under the 2003 COA on June 29, 2004, in accordance with the July 1, 2004 deadline contained in the 2003 COA.  (Aff. of G. Riedesel, ¶ 21; App. 184-413).  One of the items in the Study was to construct the Zimmerly Road relief sewer.  (App. 208).  By September 20, 2004, Defendants completed the Zimmerly Road relief sewer.  (Aff. of G. Riedesel, ¶ 23).  On September 21, 2004, Defendants approved the issuance of sewer revenue bonds, which would raise the estimated $3+ million Defendants believed was needed to construct the improvements at the Kearsarge Pump Station required under the 2003 COA.  (Affidavit of E. Adair, ¶ 4).  On September 30, 2004, PaDEP approved the Special Study.  (Aff. of G. Riedesel, ¶ 11-12; App. 418-419).  On October 20, 2004, Defendants issued the bonds that were used to finance the improvements required at the Kearsarge Pump Station under the 2003 COA.  (Affidavit of E. Adair, ¶ 5).  All of this work was completed by the time Plaintiffs filed suit on February 14, 2005.

      Thus, by the time Plaintiffs filed suit on February 14, 2005, Defendants were well on their way towards achieving the removal of the Kearsarge Pump Station overflow.  Defendants had paid civil penalties.  Defendants had completed the Special Study and received PaDEP's approval.  Defendants, through the bond issue, had secured the money needed to fund the improvements required under the 2003 COA.  Defendants had completed the Zimmerly Road

relief sewer, which was part of the Special Study. Defendants had strengthened and successfully initiated their I&I efforts. All of this work was completed under the auspices of the 2003 COA prior to Plaintiffs filing suit. Plaintiffs' claim that there was "very little progress" at the time Plaintiffs filed suit simply is not supported by the evidence.

In addition, subsequent to Plaintiffs filing suit, Defendants completed the balance of the tasks associated with the Kearsarge Pump Station required under the 2003 COA in a timely fashion. Under the 2003 COA, Defendants had to submit their permit application for the Kearsarge Pump Station upgrades, including the retention tanks, to PaDEP on or before June 30, 2005. (App. 168, ¶ 3(b)). Defendants submitted the Application on June 28, 2005. (Aff. of G. Allender, ¶ 22). The Department issued the Construction Permit on September 26, 2005. (Aff. R. Gibson, ¶¶ 26 27; App. 604-608). Thus, under the 2003 COA, Defendants had to complete the Kearsarge Pump Station project on or before March 26, 2007 and remove the overflow on or before April 25, 2007. (App. 168-169, ¶ 3(c) and (d)). The Defendants completed the Kearsarge Pump Station Project and removed the overflow on March 19, 2007 ahead of the schedule contained in the 2003 COA. (Third Supp. Aff. of G. Riedesel, ¶¶ 2, 4). Plaintiffs cannot legitimately claim that the timely completion of the requirements of the 2003 COA is not diligent prosecution.

III.  **Defendants' Unrebutted Evidence Is Sufficient to Establish That Plaintiffs' Claims Associated with the Manholes Are Moot.**

Citing Friends of the Earth, Inc. v. Laidlaw Envtl. Svcs. (TOC), Inc., 528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d. 610 (2000), Plaintiffs challenge the evidence contained in the Fourth Supplemental Affidavit of George W. Riedesel, which Defendants rely upon, in part, to establish that Plaintiffs' claims associated with the manholes are moot. Specifically, and without any evidence to support its claims or to dispute Defendants' evidence, Plaintiffs assert that the estimates of flow reduction should be rejected because there is no explanation as to how they were determined. Plaintiffs then suggest that the absence of overflows at these manholes for 42 months, without accompanying meteorological data, renders that evidence meaningless. Plaintiffs' challenge has no basis.

As a preliminary matter, George Riedesel is the Executive Director of the Millcreek Township Sewer Authority. (Aff. of G. Riedesel, ¶ 1). Mr. Riedesel has a B.S. in Civil Engineering and is a Registered Professional Engineer in the States of Pennsylvania, New York and Ohio. (Aff. of G. Riedesel, ¶ 2). Mr. Riedesel has spent much of his 35+ years of professional life as an engineer working on the operations, planning and construction of sanitary sewer systems. (Id. at ¶¶ 2-4). Mr. Riedesel's education and experience certainly qualifies him as an expert, and should give the Court the needed confidence in Mr. Riedesel's flow reduction estimates.

In addition, and contrary to Plaintiffs' claims, Mr. Reidesel's Affidavit does explain his methodology. First, Mr. Riedesel describes the 294 system repairs made pursuant to the 2003 COA. (Fourth Supp. Aff. of G. Riedesel, ¶¶ 4-6). Mr. Riedesel, using his engineering judgment, provides an estimated volume of reduction due to each repair (720 gpd) and comes up

with a total reduction of 211,700 gpd (294 x 720) or 77.2 MGY (211,700 x 365).  Mr. Reidesel's reference to the Glade Drive reductions is supported by Plaintiffs Exhibit #1 attached to Plaintiffs' Brief.  The "estimate" for Glade Drive is based upon actual flow metering data compared to the annual expected domestic flow.  See Pl. Ex. #1.  The difference of 97,800 gpd was then multiplied by 365 days to produce the yearly estimate.  Thus, Plaintiffs' unsupported attack on how Mr. Riedesel arrived at the estimated flow reductions has no basis.

     Similarly, Plaintiffs assert, without any factual support, that the lack of overflows at the manholes is not evidence that the problem has been fixed without Defendants presenting accompanying meteorological data.  Plaintiffs, without any evidentiary support, suggest that the lack of overflows is due to a lack of precipitation.  Despite suggesting a lack of precipitation between September 2004 and the present as the reason for no overflows at the manholes, Plaintiffs eagerly point out in another section of their Brief that there were overflows at the Kearsarge Pump Station in April and November 2005, during the period of this supposed lack of precipitation.  See Plaintiff Ex. # 3 and #4.  This alone undermines Plaintiffs' unsupported suggestion of lack of precipitation.

     Furthermore, as reflected in the attached 2007 Local Climatological Data Annual Survey with Comparative Data published by the National Oceanic and Atmospheric Administration, precipitation in Erie for the years 2004, 2005, 2006 and 2007 all exceeded Erie's average precipitation.  (See Supplemental Appendix, App. 747)  Thus, the factual basis of Plaintiffs' suggestion that precipitation was only average or below average during the 42 plus months of no overflows at the manholes is not correct.

IV.  **Defendants' Unrebutted Evidence Applied to the Legal Standards Enunciated Under *Laidlaw* Regarding Mootness Establishes That Plaintiffs' Claims Associated with the Kearsarge Pump Station Are Moot.**

Plaintiffs argue that under Laidlaw, supra, mootness can be proven only if it is absolutely clear that the violations cannot be reasonably expected to recur in the future. While this is an accurate statement from Laidlaw, supra, Plaintiffs are using it out of context. Plaintiffs fail to point out that this standard for mootness applies to judge the effect of <u>voluntary</u> conduct on the mootness of a claim. Laidlaw, 528 U.S. at 189, 120 S.Ct. at 708. That is a critical distinction here, as the conduct that has caused this case to become moot was due to complying with a government order, namely the 2003 COA, not voluntary conduct.

Where a defendant's actions are compelled by actions of other governmental bodies with the authority to require such action, the actions are not considered voluntary and there is not a genuine concern that the defendant is "free to return to its old ways." Ailor v. City of Maynardville, 368 F.3d 587, 600 (6th Cir. 2004) (case was moot where the City was already under an Order and Assessment from the Tennessee Department of Environment and Conservation before suit was filed which required act was performed during the pendency of the suit); Tomaiolo v. Mallinoff, 281 F.3d 1,5 (1st Cir. 2002) (injunctive and declaratory relief claims were moot where municipality changed its law due to action by the State Attorney General and the State Legislature). Furthermore, where the defendant is a governmental body, courts have refused to assume that the governmental body will resume its violating conduct. Ammex, Inc. v. Cox, 351 F.3d 697, 705 (6th Cir. 2003); Mississippi River Revival, Inc. v. City of Minneapolis, 319 F.3d 1013, 1017 (8th Cir. 2003); Ragsdale v. Turnock, 841 F.2d 1358, 1365

(7th Cir. 1988); National Wildlife Federation v. U.S. Army Corps of Engineers, 404 F.Supp.2d 1015, 1018 (M.D. Tenn. 2005).

In a decision just handed down at the end of May 2008, the Fifth Circuit Court of Appeals, in Environmental Conservation Organization v. City of Dallas, 2008 U.S.App., Lexis 11381 (5th Cir. May 27, 2008), upheld a district court's dismissal of a citizen suit filed under the Clean Water Act that sought both injunctive relief and civil penalties based on mootness. The Court recognized the important distinction between voluntary conduct that may moot a case and conduct required by compliance with a consent order initiated by governmental agency action that may moot a case. The Court stated,

> "[T]he actions that allegedly moot ECO's suit are actions of third parties …, not those of the City. As such, we would not be relying solely on the City's assurances that it will not "return to [its] old ways." [Citation omitted]. Under such circumstances, Carr's stringent test for 'voluntary' mootness is inappropriate. Instead, we apply the test that has been endorsed by the Second and Eighth Circuits under which ECO's claims for relief are moot unless ECO (the citizen-suit plaintiff) proves that there is a realistic prospect that the violations alleged in its complaint will continue notwithstanding the consent decree."

ECO, 2008 U.S.App. Lexis 11381, 18.

In enunciating this standard, the Court explained that it comported with Congress's intent that citizen suits "supplement rather than … supplant governmental action." Id. at 19, quoting Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 60, 108 S. Ct. 376, 98 L. Ed. 2d. 306 (1987). The Court expressed concern that applying the stringent "voluntary" standard could "effectively cede primary enforcement authority under the [Clean Water Act] to citizens" and could discourage defendants from settling with government enforcement agencies. Id. at 20. The Court further explained that the "realistic prospect" mootness standard also

comported with the diligent prosecution concept: "If a citizen-suit plaintiff demonstrates that there is a realistic prospect that the violations alleged in its complaint will continue notwithstanding the government-backed consent decree, then a less-than-diligent prosecution might have been shown." Id. at 20-21.

This standard and its accompanying rationale apply equally to the present case. In ECO, the citizen group actually filed suit prior to the United State Environmental Protection Agency ("USEPA") taking action. Eventually, the defendant City of Dallas and the USEPA entered into a settlement agreement, resolving the Clean Water Act claims, which was latter approved by a court in a Consent Decree. The Court held that this later action mooted the citizen group's case. In this case, Defendants and PaDEP entered into the 2003 COA prior to the citizen group's suit, and subsequently, Defendants have complied with the 2003 COA requirements, thereby eliminating the underlying causes of the Kearsarge Pump Station overflows. Thus, under the standard enunciated in ECO, it is the Plaintiffs burden to show that despite Defendants completing the requirements of the 2003 COA, "there is a realistic prospect that the violations alleged in its complaint will continue." Plaintiffs have not met that burden.

The case cited by Plaintiffs, Puerto Rico Campers' Association v. P.R. Aqueduct & Sewer Auth., 219 F.Supp.2d 201 (D.P.R. 2002), is inapplicable to this case. First, and most importantly, P.R. Aqueduct & Sewer Auth. involved the voluntary cessation of the conduct; there was not an order with which defendant was complying. Second, although the outfall was sealed, the evidence indicated that the plant's capacity exceeded its ability to convey the wastewater it received to the next plant, thereby leaving the possibility that overflows at the plant could discharge to the river, which in fact, had happened previously. In contrast, in this case, the overflow at the Kearsarge Pump Station was removed and the upgrades and retention tanks were

constructed to eliminate any overflows, thereby eliminating any reasonable expectation that discharges to Walnut Creek are likely to recur in the future.

Plaintiffs, again without any evidentiary support, assert that the retention tanks are not adequately sized. Essentially, Plaintiffs ask this Court to ignore the unrebutted expert testimony of August E. Maas, P.E. and Gerald C. Allender, P.E. who both opined that the design of the Kearsarge Pump Station improvements and the retention tanks is sufficient to handle a 50-year storm event. (Aff. of A. Maas, ¶¶ 4, 9; App. 727; Aff. of G. Allender, ¶¶ 19, 29; App. 738-739). Plaintiffs also ask this Court to ignore the decision of the Pennsylvania Department of Environmental Protection that the Kearsarge Pump Station and retention tanks are sufficient. (App. 600-602).

Plaintiffs argue, without the support of any expert testimony, that the 2.3 million gallon tanks are too small because a September 9, 2004 storm led to the overflow of 5.2 million gallons, and charge that Defendants are irresponsible for claiming that the retention tanks are sufficient to prevent future violations. Plaintiffs, however, chose to ignore the unrebutted evidence submitted by Defendants. The Act 537 Special Study Addendum submitted by Defendants, which recommended the Kearsarge Pump Station upgrades and 2.3 million gallon retention tank, specifically evaluated the ability of the upgrades to handle the September 9, 2004 storm event. (Aff. of G. Allender, ¶ 19; App. 542-599). Based on the analysis performed by its retained engineers, the September 9, 2004 storm event would have required a storage capacity of 2.2 million gallons. (Aff. of G. Allender, ¶ 19; App. 563, 574). Thus, Defendants' retained engineer recommended a 2.3 million gallon retention tank. (Aff. of G. Allender, ¶ 19; App. 575). Plaintiffs' misguided effort to suggest that the retention tanks are not sized properly simply ignores the unrebutted evidence presented by Defendants.

Plaintiffs next repeat their claim that the I&I efforts taken by Defendants should be rejected. Again, Plaintiffs argument must fail. First, as indicated earlier, Mr. Riedesel has the education and experience as a Registered Professional Engineer to provide estimates of reduced flows due to the I&I efforts. Second, Plaintiffs reference to Mr. McGrath is in error as he offered no testimony regarding reduced flows. Thus, there has been no "improper expert testimony" by the Defendants.

Plaintiffs suggest that the flow reductions achieved by the I&I work are based on false assumptions. To support their claim, they rely upon data provided by the City of Erie.[1] Then, absent any expert testimony to interpret the data, Plaintiffs' counsel proceeds to act as expert witness providing what he claims is an analysis that undermines Defendants' claim. Defendants' counsel, using that same data used by Plaintiffs' counsel, can present a similar analysis that supports the I&I reduction claim. For example, the total City of Erie Wastewater Treatment Plant flow from 2006 to 2007 decreased at a rate of 2.8% while the alleged Kearsarge flows decreased at a rate of 13.7% from 2006 to 2007. This percentage reduction supports the actual evidence presented by Defendants that the I&I work completed in 2007 has resulted in a significant reduction in flows at the Kearsarge Pump Station. Ultimately, however, the Court's decision must be based on the evidence presented, not Plaintiffs' counsel's misguided attempt in its Brief to act also as Plaintiffs' expert witness. See Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1372 (3d Cir. 1996) (legal memoranda are not evidence).

Plaintiffs also suggest that once the 2003 COA is terminated, any benefits gained by the flow reductions achieved by the I&I work will be lost due to new connections. Plaintiffs'

---

[1]     It is important to point out that the Defendants' I&I work was completed in 2007. Thus, comparisons back to 2002 simply are not relevant.

argument evidences a failure to understand the differences between normal sanitary flows and wet weather flows. (Aff. of G. Riedesel, ¶ 11). In addition, Plaintiffs' counsel's fear of significant new flows from new customers makes the unsupported factual assumption that such growth exists in Erie. Unsupported speculation is not sufficient to undermine the evidence Defendants have presented to support their position that Plaintiffs' Kearsarge Pump Station claims have been mooted.

Lastly, Plaintiffs argue that their civil penalties claim should not be mooted due to the deterrent effect of civil penalties. Plaintiffs' claim that the occurrence of overflows subsequent to the filing of their suit is evidence that deterrence is still needed. Of course, Plaintiffs fail to recognize the true nature of these overflows: they are caused by an act of God. Defendants obviously have no control over the weather, and until the Kearsarge Pump Station improvements were completed, Defendants were totally subject to such acts of God. No amount of deterrence would have prevented these overflows.

Plaintiffs also would have this Court ignore the fact that Defendants have paid over $100,000 in civil penalties relating to the overflows at the Kearsarge Pump Station covered by Plaintiffs' Complaint. (Supp. Aff. of G. Riedesel, ¶ 16). Contrary to Plaintiffs' assertion, the civil penalties paid by Defendants have not been inadequate, and, in fact, far exceed the amount that USEPA would seek under these circumstances under its Civil Penalty Policy. (See Defendants' Brief in Opposition to Plaintiffs' Motion for Summary Judgment On All Claims, pp. 23-23, n. 6). Thus, this Court can conclude that Plaintiffs' civil penalties claim is moot given that Defendants have completed the requirements imposed under the 2003 COA to fix the problem, that Defendants have paid significant civil penalties, and that this was all accomplished pursuant to the 2003 COA that was executed some fifteen (15) months <u>before</u> Plaintiffs filed suit.

V.       Plaintiffs Are Not Entitled to Summary Judgment on Their Claims for Civil Penalties.

Plaintiffs continue to insist that their claim of civil penalties in the amount of $435,000.00 is appropriate at the summary judgment stage. Plaintiffs own arguments undermine their claim. For example, Plaintiffs recognize that the efforts taken by Defendants relating to Cassidy Park, connecting failing septic systems and removing illegal connections of clean water flows to the sanitary sewer system are things the Court can consider in determining a civil penalty. Plaintiffs' demand for civil penalties in their Summary Judgment Motion does not consider such actions. Therefore, summary judgment on their civil penalties claim is not appropriate.

Plaintiffs also suggest that the Defendants obtained a substantial economic benefit by not spending the $34 million in the early and mid-1990s, and that the Court should take this into account. Factually, however, Plaintiffs' suggestion is wrong. Defendants spent much of the $34 million during the 1990s trying to solve the problem. Once it was recognized that the 1990s effort did not fix the problem, Defendants then spent the balance implementing the current solution, which has fixed the problem. There has been no economic benefit to the Defendants.

A review of Plaintiffs' Motion for Summary Judgment and accompanying Brief quickly establishes that Plaintiffs have failed to supply any evidence establishing their entitlement to the civil penalties they seek based in their Summary Judgment Motion. Defendants again respectfully request that this Court deny Plaintiffs' Summary Judgment Motion.

VI.    <u>Conclusion</u>

In conclusion, the undisputed evidence presented by Defendants demonstrates that as a matter of law Plaintiffs' claims are barred by 33 U.S.C. 1319(g)(6)(A)(ii), and have otherwise become moot. Consequently, this Honorable Court should enter summary judgment in favor of Defendants and against Plaintiffs. Furthermore, this Court should deny Plaintiffs' Motion for Summary Judgment.

                Respectfully submitted,

                s / Mark J. Shaw
                Mark J. Shaw
                PA50763
                Robert E. Gandley
                PA82524
                MacDONALD, ILLIG, JONES & BRITTON LLP
                100 State Street, Suite 700
                Erie, Pennsylvania 16507-1459
                (814) 870-7607
                (814) 454-4647 (Facsimile)
                mshaw@mijb.com

                Attorneys for Defendants
                  Millcreek Township Sewer Authority
                  and Millcreek Township

Dated:   June 5, 2008

# **CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2008, the foregoing Reply Brief to Plaintiffs' Brief in Support of Its Response to Defendants' Amended Motion for Summary Judgment pursuant to Local Rule 35.1(D) was filed electronically with the Clerk of Court using the Electronic Case Filing system. Notice of this filing will be sent to all parties by operation of the Court's ECF system and constitutes service of this filing under Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's ECF system.

                                      s/ Mark J. Shaw
                                      Mark J. Shaw
PA 50763
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7607
(814) 454-4647 (facsimile)
mshaw@mijb.com (e-mail)

1079599